UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHRISTOPHER HART, JEFFREY BEYER, MARIA
SARGENT, TAYLOR RAMSEY, ANDREA
RANDLETT AND SHELLY CARRERA *on behalf of
themselves and all other employees similarly situated,*

                                    Plaintiffs,

                      – against –

CRAB ADDISON, INC. d/b/a JOE'S CRAB SHACK,
IGNITE RESTAURANT GROUP, INC., RAYMOND
A. BLANCHETTE III, KEVIN COTTINGIM and
RODNEY MORRIS,

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No.:
13 CV 6458


## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR TO TRANSFER VENUE


**EPSTEIN BECKER & GREEN, P.C.**
250 Park Avenue
New York, New York 10177-1211
Tel: 212.351.4500

Attorneys for Defendants
Crab Addison, Inc., d/b/a Joe's Crab Shack and
Ignite Restaurant Group, Inc.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

FACTS AND ALLEGATIONS............................................................................................2

ARGUMENT .......................................................................................................................4

POINT I     THE COMPLAINT FAILS TO STATE A CLAIM
UNDER THE FLSA .................................................................................4

POINT II    PLAINTIFFS CANNOT MEET THE REQUIREMENTS
OF RULE 23 TO OBTAIN CLASS-ACTION RELIEF FOR
THEIR FIVE STATE LAW WAGE CLAIMS .....................................10

   A. Plaintiffs' State Law Claims Fail to Meet the
Commonality Requirements of Rule 23(a)(2) .................................................11

      i.   Different Statutes of Limitations..................................................... 12

      ii.  Lack of Uniformity in the Definition of "Tipped Employee" ................ 12

      iii. Difference in Each State's Recordkeeping Requirements ..................... 13

      iv. Limits on Permissible Non-Tipped Work ........................................... 13

      v.  Available Remedies Differ by State..................................................... 14

      vi. Differences in the Calculation of Back Wages ................................... 15

      vii. Liquidated Damages.......................................................................... 15

   B. Plaintiffs' State Law Claims Fail To Satisfy Rule 23(b) .................................16

POINT III   THE COURT SHOULD TRANSFER VENUE
OF THIS ACTION TO HOUSTON, TEXAS .......................................18

   A. This Action Might Have Been  Brought in the Southern District of Texas....................19

   B. Transfer Promotes the Interests of Justice and Judicial Economy..................................21

CONCLUSION..................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant:small-caps">Cases</span>

*Andrews v. A.C. Roman & Assocs., Inc.*,
  914 F. Supp. 2d 230 (N.D.N.Y. 2012)................................................................21, 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................5, 9

*Barrus v. Dick's Sporting Goods, Inc.*,
  732 F. Supp. 2d 243 (W.D.N.Y. 2010) ................................................2, 10, 11, 16, 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................4, 9

*Cole v. Gen. Motors Corp.*,
  484 F.3d 717 (5th Cir. 2007) ..........................................................................................12

*Daniel v. Am. Bd. of Emergency Med.*,
  428 F.3d 408 (2d Cir. 2005)............................................................................................20

*Dejesus v. HF Mgmt. Servs., LLC*, -- F.3d --,
  2013 WL 3970049 (2d Cir. Aug. 15, 2013)..........................................................5, 6, 8, 9

*Fedotov v. Peter T. Roach & Assocs., P.C.*,
  354 F. Supp. 2d 471 (S.D.N.Y. 2005)..............................................................................10

*Georgine v. Amchem Prods.*,
  83 F.3d 610 (3d Cir. 1996).............................................................................................17

*Glewwe v. Eastman Kodak Co.*,
  No. 05-cv-6464T, 2006 WL 1455476
  (W.D.N.Y. May 25, 2006) ...............................................................................10, 11, 17

*Gold v. New York Life Ins. Co.*,
  No. 12-2344, 2013 U.S. App. LEXIS (2d Cir. Sep. 18, 2013) ................................................16

*Gortat v. Capala Bros., Inc.*,
  257 F.R.D. 353 (E.D.N.Y. 2009) ....................................................................................11

*Hicks v. T.L. Cannon Corp.*,
  No. 12-CV-6517T, 2013 WL 2423782 (W.D.N.Y. June 4, 2013) ............................................23

FIRM:23867368v3

*In re Am. Med. Sys.,*
    75 F.3d 1064 (6th Cir. 1996) ............................................................................17

*In re Cuyahoga Equip. Corp.,*
    980 F.2d 110 (2d Cir. 1992)..............................................................................19

*In re Warrick,*
    70 F.3d 736 (2d Cir. 1995)................................................................................21

*Jones v. Casey's Gen. Stores,*
    538 F. Supp. 2d 1094 (S.D. Iowa 2008) ............................................................5

*Letouzel v. Eastman Kodak Co.,*
    No. 05-cv-6464T, 2006 WL 1455478 (W.D.N.Y. May 25, 2006) ............10, 11, 17

*Luciano v. Eastman Kodak Co.,*
    No. 05-cv-6463T, 2006 WL 1455477 (W.D.N.Y. May 25, 2006) ......10, 11, 16, 17

*Lundy v. Catholic Health Sys. of Long Island,*
    711 F.3d 106 (2d Cir. 2013)........................................................................5, 6, 9

*Madison v. Dyal,*
    746 F. Supp. 2d 450 (W.D.N.Y. 2010) .............................................................18

*N.Y. Marine and Gen. Ins. Co. v. Lafarge N. Am.,*
    599 F.3d 102 (2d Cir. 2010).............................................................................19

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.,*
    723 F.3d 192 (2d Cir. 2013)........................................................................5, 6, 9

*Pilgrim v. Universal Health Card, LLC*
    660 F.3d 943 (6th Cir. 2001) ...........................................................................10

*Roberts v. Apple Sauce, Inc.,*
    -- F. Supp. 2d --, 2013 WL 2083467 (N.D. Ill. May 13, 2013) .....................5, 8, 9

*Scherer v. Combined Ins. Co. of Am.,*
    253 F.R.D. 40 (D. Conn. 2008).........................................................................11

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011)......................................................................................16

*White v. Classic Dining Acquisition Corp.,*
    No. 1:11-CV-712-JMS-MJD, 2012 WL 1252589 (S.D. Ind. Apr. 13, 2012)...........5

*Zinser v. Accufix Research Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001) .........................................................................11

iii

**STATUTES**

820 Ill. Comp. Stat. Ann. ................................................................................................................12, 16

28 U.S.C. § 1331 ..................................................................................................................................19

28 U.S.C. § 1391(b)(1) .......................................................................................................................20

28 U.S.C. § 1391(b)(2) .......................................................................................................................20

28 U.S.C. § 1404(a) .......................................................................................................................18, 19

29 U.S.C. § 201, *et seq.*..................................................................................................................3, 19

29 U.S.C. § 203(m) ...............................................................................................................................3

Ariz. Rev. Stat. Ann. § 23-363(C) ...................................................................................................14

Ariz. Rev. Stat. Ann. § 23-364(D) ...................................................................................................13

Ariz. Rev. Stat. Ann. § 23-364(G) ...................................................................................................15

Ariz. Rev. Stat. § 23-364(H) .............................................................................................................12

Class Action Fairness Act, 28 U.S.C. § 1367 .................................................................................19

Md. Code Ann., Cts. & Jud. Proc. § 5-101 ....................................................................................12

Md. Code Ann., Lab. & Empl. § 3-419 ...........................................................................................13

Md. Code Ann., Lab. & Empl. § 3-507, 2 .................................................................................14, 15

Mo. Stat. Ann. §290-527 ..............................................................................................................12, 16

N.Y. Lab. Law § 198(1-a)...................................................................................................................14

N.Y. Lab. Law § 661 ...........................................................................................................................13

N.Y. Lab. Law § 663 ...........................................................................................................................14

N.Y. Lab. Law § 663(1).................................................................................................................15, 16

N.Y. Lab. Law § 663(3).......................................................................................................................12

**OTHER AUTHORITIES**

29 C.F.R. § 531.56(e)...........................................................................................................................3, 8

Ariz. Admin. Code § R20-5-1207(A) ...............................................................................................14

FIRM:23867368v3

Fed. R. Civ. P. 23 .................................................................................................... passim

F.R. Civ. P. 8(a)(2) ........................................................................................................4

http://dol.gov/whd/FOH/index.htm, section 30d00(e) ..................................................4

http://www.dllr.state.md.us/labor/wagepay/wptipped.shtml. ......................................14

http://www.nywd.uscourts.gov .....................................................................................23

http://www.txs.uscourts.gov/district/judges/ ...............................................................23

http://www.uscourts.gov/Statistics/StatisticalTablesForTheFederalJudiciary.aspx .....................23

Ill. Admin. Code tit. 56, §§ 210-700, 210-720 ...........................................................13

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.1..........................................................13

N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-2.9.........................................................14

FIRM:23867368v3

Defendants Crab Addison, Inc. and Ignite Restaurant Group, Inc. (collectively, "Ignite" or "defendants") respectfully submit this memorandum in support of their motion to dismiss the complaint with prejudice or, alternatively, to transfer this action to the United States District Court for the Southern District of Texas in Houston, where the two corporate defendants' headquarters are located.[1]

## Preliminary Statement

Plaintiffs have brought claims both as a putative collective action under the Fair Labor Standards Act ("FLSA") and as a Rule 23 class action under the widely differing state wage-hour laws of Arizona, Illinois, Maryland, Missouri and New York.  Plaintiffs advance the implausible claim that, although each was employed as a "tipped" server at one of more than 135 Joe's Crab Shack restaurants nationwide, they "regularly" spent more than half of their eight-hour shifts not generating tips at all, but rather working as janitors, cooks' helpers and dishwashers, at a pay rate of $2.13 an hour.  None of the plaintiffs provides any degree of specificity as to any date he or she worked at these tasks, how long each task took, or how often they were done.  They simply claim in conclusory fashion that they "regularly" worked a shift and "would" spend a majority of their time engaging in activities contained in an identical list of non-serving tasks.  Such allegations fail to meet the specific pleading requirements recently enunciated by the Second Circuit for FLSA actions, and, what is more, are contradicted by their affirmations and those of their co-workers.

As for the named plaintiffs' attempt to represent five separate Rule 23 subclasses under the different wage-hour laws of five states, they ignore a recent ruling of this Court.  Dismissing a multiplicity of state law wage subclass claims brought in a single action, this Court explained that litigating a multitude of mini-actions brought under different state laws in a single action is

---

[1] Ignite Restaurant Group, Inc. is the parent company of Crab Addison, Inc. which owns and operates a nationwide chain of restaurants known as Joe's Crab Shack.

neither practical nor feasible.[2]  Other than proffering conclusions, the complaint here ignores the issue of whether the five subclasses in fact present common and predominant questions of law, and whether bringing five mini-class actions under the aegis of an FLSA opt-in collective action is preferable from a practical standpoint.[3]

In the event the Court denies defendants' motion to dismiss, or plaintiffs request leave to replead to attempt to cure the defects in the complaint and the Court grants such a request, defendants respectfully ask that this action be transferred to the Southern District of Texas, in Houston, where the corporate defendants' headquarters are located, from which the alleged (but unspecified) policies presumably emanated, and where the key witnesses and records are located. It makes little sense arbitrarily to maintain this action in this judicial district, or in any of the other 31 states where Joe's Crab Shack restaurants are located, when only two of the six named plaintiffs reside in New York and Ignite's nerve center is unquestionably in Texas.

### Facts and Allegations[4]

Ignite owns and operates more than 135 informal, family-friendly restaurants under the trade name "Joe's Crab Shack" in 32 states, and employs, on the average, about 10,000 employees each year.  The two corporate defendants' headquarters are located in Houston,

---

[2] *Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp. 2d 243 (W.D.N.Y. 2010).

[3] Plaintiffs also name in their complaint three Ignite executives as individual defendants: (1) Raymond A. Blanchette III, Ignite Restaurant Group's Chief Executive Officer; (2) Kevin Cottingim, Ignite Restaurant Group's former Senior Vice President and Chief Administrative Officer; and (3) Rodney Morris, Ignite Restaurant Group's Senior Vice President of Human Resources.  Plaintiffs have not, to date, served Messrs. Blanchette or Cottingim with the summons and complaint.  Mr. Morris was served on October 1, 2013.  His time to respond is October 22, 2013.  Accordingly, this motion does not address any of the claims or allegations asserted against the individual defendants.  Rather, the individual defendants will, at the appropriate time, assert all applicable defenses by answer or motion, and also incorporate by reference all applicable arguments contained herein.

[4] The facts are set forth in the accompanying declaration of Patricia Simpson, dated October 7, 2013 ("Simpson Dec."), and in the Complaint ("Comp.").

2

Texas, where their executive offices, human resources, payroll, financial, marketing, and IT functions are located.  (Simpson Dec. ¶ 4; Comp. ¶¶ 83-85.)

Plaintiffs are former employees of Ignite who worked as servers.  They allege, without specifying a single date, simply that each "regularly" worked an eight- or six-hour shift as a server, and that they "regularly" spent more than half their time doing a multiplicity of tasks completely unrelated to serving patrons.  Instead, they claim that, depending on the shift, they were assigned tasks in connection with opening the restaurant, such as sanitizing woodwork, degreasing garage doors and window sills, and portioning vegetables.  Likewise, they allege they were assigned tasks relating to closing the restaurant for the night, such as removing light fixtures, "cleaning every" window in the store, and servicing soda machines.  And, plaintiffs allege, that apart from opening and closing tasks, during the shift the servers engaged in what they term "running sidework," which seemingly consisted of everything other than serving necessary to operate a restaurant, such as washing dishes, and sanitizing coffee cups and tea kettles. (Comp. ¶¶ 43-78).

Plaintiffs allege that they were not paid the minimum wage required by the FLSA, 29 U.S.C. § 201, *et seq.*, and each alleges that defendants violated the specific minimum wage laws of the respective states where they worked: Arizona, Illinois, Maryland, Missouri and New York.  As to the FLSA, plaintiffs claim that they were paid the "subminimum" wage permitted to be paid to tipped employees by 29 U.S.C. § 203(m), but that defendants should be prohibited from applying the statutory "tip credit" for the difference between the sub-minimum wage and the minimum wage because they worked at non-tipped functions more than 20 percent of their time.[5]

---

[5] Although neither the FLSA nor the Department of Labor ("DOL") regulations quantify the amount of permissible "related duties" in a tipped occupation that may not be by themselves directed toward producing tips (*see* 29 C.F.R. § 531.56(e)), the DOL's Field Operations Manual dated June 30, 2000 states that "where employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing

Plaintiffs purport to bring their FLSA claim as a collective action representing a nationwide FLSA class of tipped employees, seeking the difference between the federal minimum wage and the subminimum wage payable to tipped employees that they received.  Although the complaint alleges in several introductory paragraphs (¶¶ 4, 5, 6, 43) that "defendants" have a "policy" not to pay the federal or various state minimum wages, the complaint fails to specify who instituted the "policy," where (if anywhere) it is memorialized, or whether, when and how it was disseminated.  In fact, no such policy exists.

Each of the five plaintiffs also purports to bring a Rule 23 class action in New York for a separate "subclass" of tipped employees under the different wage-hour laws of the states in which they worked – Arizona, Illinois, Maryland, Missouri and New York.   In each of the subclasses, plaintiffs seek damages allegedly incurred during the two, three, or six years preceding the filing of the complaint, per each state's different statute of limitations.

### Argument

### POINT I

### THE COMPLAINT FAILS TO STATE A
### CLAIM UNDER THE FLSA

The Supreme Court has stated that, when a complaint is attacked by Rule a 12(b)(6) motion to dismiss, a plaintiff is obligated to provide the "grounds" for his "entitlement to relief," which grounds must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Id.* at 570.  "Under Federal Rule of Civil Procedure 8(a)(2), a 'plausible' claim contains 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

general preparation work or maintenance, no tip credit may be taken for the time spent in such duties." *See http://dol.gov/whd/FOH/index.htm*, section 30d00(e).

4

misconduct alleged.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Pleadings that contain "no more than conclusions . . . are not entitled to the assumption of truth" otherwise applicable to complaints in the context of motions to dismiss.  *Iqbal*, 556 U.S. at 679; *Dejesus v. HF Mgmt. Servs., LLC*, -- F.3d at --, 2013 WL 3970049 (2d Cir. Aug. 5, 2013); *Lundy v. Catholic Health Sys. of Long Island*, 711 F.3d 106 (2d Cir. 2013); *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192 (2d Cir. 2013).

These pleading standards are the same in minimum wage actions relating to tip credits under the FLSA as in FLSA overtime cases.  *Roberts v. Apple Sauce, Inc.*, -- F. Supp. 2d --, 2013 WL 2083467 (N.D. Ill. May 13, 2013) (allegations in complaint not specific enough to state a plausible claim); *White v. Classic Dining Acquisition Corp.*, No. 1:11-CV-712-JMS-MJD, 2012 WL 1252589 (S.D. Ind. Apr. 13, 2012) (failure, among other things, to allege how often the "subminimum" wage plus tips did not pay the minimum wage is fatal to the complaint); *Jones v. Casey's Gen. Stores*, 538 F. Supp. 2d 1094 (S.D. Iowa 2008).

The Second Circuit stated in a prominent FLSA decision in March 2003, that "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *Lundy*, 711 F.3d at 114.  "Determining whether a plausible claim has been pled is 'a context–specific task that requires the reviewing court to draw on its judicial experience and common sense' " and "[u]nder a case-specific approach, some courts may find that an approximation of overtime hours worked may help draw a plaintiff's claim closer to plausibility."  *Id*. at 114 & n.7.  In *Lundy*, the Second Circuit found "no plausible claim that the FLSA was violated, because plaintiffs have not alleged a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours."  *Id*. at 114; *see also Nakahata*, 723 F.3d at 201 ("To plead a plausible FLSA overtime claim, plaintiffs must provide sufficient detail about the length

5

and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week.")  The *Nakahata* court "therefore concluded that the allegations lacked the 'specificity' required because though they 'raise[d] the possibility' of an overtime claim, 'absent any allegation that plaintiffs were scheduled to work 40 hours in a given week,' they did not state a plausible claim for relief."  *Dejesus*, 2013 WL 3970049, at *3 (quoting *Nakahata*, 723 F.3d at 201).

Most recently, in *Dejesus*, the Second Circuit evaluated whether the allegation that plaintiff "worked more than 40 hours per week during 'some or all weeks' of her employment" stated a plausible overtime claim under the FLSA.  It held that it did not:

> Dejesus provided less factual specificity than did the plaintiffs in *Lundy* or *Nakahata*, although she made allegations of widespread improper behavior by the defendant.  She did not estimate her hours in any or all weeks or provide any other factual context or content.  Indeed, her complaint was devoid of any numbers to consider beyond those plucked from the statute.  She alleged only that in "some or all weeks" she worked more than "40 hours" a week without being paid "1.5" times her rate of compensation,[  ] no more than rephrasing the FLSA's formulation specifically set forth in section 207(a)(1).  Whatever the precise level of specificity that was required of the complaint, Dejesus was at least required to do more than repeat the language of the statute.

*Id.*, at *4 (footnote omitted).  *Lundy* and its progeny demonstrate that a plaintiff seeking to plead a violation of the FLSA must set forth, at a minimum, at least some dates and times with some degree of quantifiable specificity, to show that the claim crosses the line into the realm of plausibility.

The complaint here suffers from the same deficiencies that led the Second Circuit to reject the complaints in *Lundy*, *Dejesus* and *Nakahata*.  Rather than pleading even a minimum of specificity to give rise to a plausible claim, the complaint here merely states, as to each of the six plaintiffs, that he or she was "regularly" scheduled to work a shift of six or eight hours and "would" spend at least half of that shift allegedly performing one or more tasks from a panoply

of non-tip producing work.  Not a single date, or even a date range, is specified as to when any of the plaintiffs' work exceeded the presumed 20 percent non-tip threshold.  Nothing is said, even by way of example, as to how long each task took, or the frequency with which a particular task was assigned, or the circumstances under which the duties were performed.  Indeed, the complaint does not even contain an approximation of the number of days any one of the plaintiffs' non-tip producing tasks exceeded 20 percent of the time worked.  The fact that plaintiffs Taylor Ramsey and Andrea Randlett were employed by Ignite for a mere three and four months, respectively, makes their inability to provide any specifics all the more troubling.

Plaintiffs' vague conclusions as to time spent and the absence of any detail as to dates in the complaint, when coupled with the other allegations, render the complaint even more implausible.  All but one plaintiff alleges that they worked an "eight hour" shift, either at the beginning of the business day for lunch time ("openers") or for the dinner shift ("closers"). Assuming that the dinner service at the "family-friendly" restaurants begins early and ends at 10 P.M., an eight-hour shift would begin at 2 P.M.  It is not plausible that any employee would work from 2 P.M. to approximately 5:30 P.M. (dinner time) doing non-serving work for $2.13 per hour without any possibility of tips at all, particularly when (as alleged, Comp. ¶¶ 47, 53, 63, 68, 74, 127) a substantial portion of the meal time work was also devoted to work away from the tip-giving patrons.  The lack of specificity in the complaint implies that such was plaintiffs' employment, day in and day out.  This is plainly implausible.[6]

---

[6] The complaint also fails to explain with specificity the regular duties of each type of tipped employee who plaintiffs define as "servers, bartenders, bussers, hosts and all other tipped employees." *See* Comp. ¶ 1.  Plaintiffs do not adequately explain the job descriptions of the employees who work within these different job titles, or the exact nature or specific quantity of work that employees in these job categories performed outside the scope of whatever their normal job duties are.  Of the six named plaintiffs, five are former servers, and only one is a hostess – the complaint thus lacks specificity about the jobs of the bartenders, bussers and hosts. Moreover, plaintiffs submit the affirmations of 21 former employees, in which the employees explain their regular job duties and the type and general amount of alleged "side work" they

Rather than support the allegations in the complaint, the 21 "affirmations" submitted by the plaintiffs and other former employees in support of their motion for expedited notice undermine those allegations. Although the complaint alleges that each of the named plaintiffs spent "more than half" of his or her six- or eight-hour shift on non-tip producing tasks, none of the affirmations -- including those of the named plaintiffs themselves -- contains any specificity. (*See* Docket Entry No. 9.)  Rather, each merely proffers the identical vague conclusion that he or she "spent more than 20% of [the] time" on work unrelated to serving.  Indeed, *every one* of the 21 affirmations submitted contains the identical language, which is no doubt intended talismanically to invoke the interpretation of 29 C.F.R. § 531.56(e) by the DOL in its Field Operations Handbook that "substantial time" performing non-tipped work is considered by the DOL to be more than 20 percent of hours worked, a number simply "plucked" from the DOL's Handbook. (*See Dejesus*, 2013 WL 3970049, at *4.)

In this way, this action is little different from *Roberts*, 2013 WL 2083467.  There, the employer supposedly engaged in a practice of "regularly" utilizing tipped employees to perform dishwashing, food preparation, kitchen and bathroom cleaning, trash removal and other duties outside the scope of the tipped occupations while paying those employees less than the tip-credit wage rate.  The court noted that the DOL recognizes that some of the tasks plaintiffs identified are related to serving, and that post-closing work (such as cleaning the salad bar, stocking server stations, and vacuuming the carpets) "constituted tipped employment . . . insofar as the after-hours clean up" was "assigned generally to the waitress/waiter staff."  *Id.*, at *6.  In addition, the court stated:

---

performed.  However, 19 of these affirmations are provided by former servers, and only two are provided by hosts.  Again, there is not any acceptable level of detail about the non-server job positions which plaintiffs classify as "tipped employees."  It is thus clear that plaintiffs are merely attempting to "shoehorn" into this action as many employees as possible through an overly broad definition of tipped employee.

FIRM:23867368v3

> [T]he Court does note that it would consider an allegation that the Defendants required the Plaintiff to spend more than 20% of her time on duties that did not generate tips or that were outside her tipped occupation *an abstract recitation of the elements of a dual jobs cause of action.* Although the degree of specificity required in a pleading is not easily quantified, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together [citation omitted]. . . .
>
> Evolving DOL interpretation, the briefing in connection with this case, and amicus curiae submitted by the Secretary of Labor in other cases reveal the complexity of the type of claim the Plaintiff seeks to advance in this litigation.   Given such complexity, *merely stating that the Plaintiff performed duties outside her occupation more than 20% of the time does not adequately connect the dots.*  The Plaintiff must provide more.  For example, *she must identify the non-tip producing duties she performed, state how many minutes or hours they took to perform, and place that time in the context of the hours worked during the entire shift.  If the Plaintiff is unable to provide the requisite facts to support a claim, then the Court will have no reason to consider the deference that should be awarded the interpretation of the dual jobs regulation.*

*Id.*, at *7.  (Emphasis added.)  (Notably, because of the defects in the complaint, the court in *Roberts* also denied plaintiff's request to give notice to the putative class.  *Id.*)

Accordingly, the complaint here should be dismissed with prejudice for failure to meet the pleading requirements set down by the Second Circuit for FLSA actions.[7]

---

[7] Plaintiffs also assert the same wage and tip credit violations under the laws of Arizona, Illinois, Maryland, Missouri and New York.  Even though the laws of each state maintain different definitions of "tipped employees" and different standards regarding the amount of tip credit forfeited for employees engaged in non-tipped work, which is discussed *infra* under Point II, plaintiffs' state law claims should likewise be dismissed as plaintiffs fail to satisfy the minimal pleading standards under *Iqbal, Twombly*, and their progeny for those claims.  *Iqbal*, 556 U.S. at 679, *Twombly*, 550 U.S. at 555 *Dejesus, LLC*, 2013 WL 3970049, at *3; *Lundy*, 711 F.3d at 114; *Nakahata,* 723 F.3d at 201.

9

## POINT II

### PLAINTIFFS CANNOT MEET THE REQUIREMENTS OF RULE 23 TO OBTAIN CLASS-ACTION RELIEF FOR THEIR FIVE STATE LAW WAGE CLAIMS[8]

The Court should dismiss plaintiffs' five state law claims as it is clear from the face of the complaint that plaintiffs cannot meet the requirements for class certification under Rule 23. Specifically, plaintiffs could not satisfy the commonality requirement of Rule 23(a), or the predominance and superiority requirements of Rule 23(b)(3).

A court may decide the issue of certification based on a review of the complaint prior to the plaintiff's motion to certify. *See* Fed. R. Civ. P. 23(c)(1) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."); *Pilgrim v. Universal Health Card, LLC* 660 F.3d 943, 949 (6th Cir. 2001); *Barrus v. Dick's Sporting Goods, Inc.,* 732 F. Supp. 2d 243, 251-254 (W.D.N.Y. 2010) (Siragusa, J.) (denying certification based on review of complaint prior to plaintiff's motion to certify); *Luciano v. Eastman Kodak Co.*, No. 05-cv-6463T, 2006 WL 1455477, at *3 (W.D.N.Y. May 25, 2006) (Telesca, J.). ("Although plaintiff has not yet moved for class certification . . . , a court may decide the issue of certification based on a review of the complaint prior to a party's motion to certify the proposed class.") (citations omitted); *Glewwe v. Eastman Kodak Co.,* No. 05-cv-6464T, 2006 WL 1455476, at *2 (W.D.N.Y. May 25, 2006) (Telesca, J.) (same); *Letouzel v. Eastman Kodak Co.,* No. 05-cv-6464T, 2006 WL 1455478, at *2 (W.D.N.Y. May 25, 2006) (Telesca, J.) (same); *Fedotov v. Peter T. Roach & Assocs., P.C.,* 354 F. Supp. 2d 471, 478 (S.D.N.Y. 2005) ("procedural 'preemptive strike' against this purported class action . . .

---

[8] Plaintiffs have not yet sought class certification by motion under Rule 23. Accordingly, if litigation progresses to the stage where plaintiffs choose to make such a motion, defendants intend to file their opposition thereto, and specifically reserve the right to do so.

FIRM:23867368v3

is properly before this court"); *Gortat v. Capala Bros., Inc.,* 257 F.R.D. 353, 361 (E.D.N.Y. 2009) (same).

## A.    Plaintiffs' State Law Claims Fail to Meet the Commonality Requirements of Rule 23(a)(2)

Plaintiffs' state law claims cannot meet the commonality requirement of Rule 23(a)(2), as their claims are brought under the very different and specific wage-hour laws of five states – Arizona, Illinois, Maryland, Missouri and New York.

Under Rule 23(a), a plaintiff may sue on behalf of a class if all of the following factors are met: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there exist questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy").  Fed. R. Civ. P. 23(a).

This Court and numerous others in this Circuit have found commonality lacking in cases involving multiple, diverse state wage claims. *See Barrus*, 732 F. Supp. 2d at 255 (dismissing state-law claims, finding that "[p]laintiffs have not demonstrated that the governing laws in the 36 state jurisdictions involved in this action are substantially similar, or that a common issue predominates."); *Luciano,* 2006 WL 1455477, at *3 (dismissing state-law claims brought under multiple separate wage laws, "each with its own peculiar requirements and defenses"); *Glewwe,* 2006 WL 1455476, at *2 (same); *Letouzel,* 2006 WL 1455478, at *2 (same); *Scherer v. Combined Ins. Co. of Am.,* 253 F.R.D. 40, 43-44 (D. Conn. 2008) (finding that questions of law are not common to the subclass where multiple wage statutes are implicated).

Courts of other Circuits throughout the country have likewise found that variations in state laws undermine commonality.  *See Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1189 (9th Cir. 2001) (finding that "where the applicable law derives from the law of the 50

11

states, as opposed to a unitary federal cause of action, differences in state law will compound the disparities among class members from the different states") (internal quotation marks and citations omitted); *Cole v. Gen. Motors Corp.,* 484 F.3d 717, 724 (5th Cir. 2007) (quoting *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 741 (5th Cir. 1996)) (recognizing that in a class action governed by the laws of multiple states, such as this one, "variations in state law may swamp any common issues and defeat predominance").

Here, plaintiffs' state law claims defeat commonality.  Plaintiffs are pursuing wage-hour claims under the disparate laws of Arizona, Illinois, Maryland, Missouri and New York, alleging that defendants paid sub-minimum wages to tipped employees by not properly applying tip credit allowances per each of those five states' specific wage-hour laws.  As such, proper adjudication of these claims would require interpretation and application of the individual laws of each of these five states.  The stark differences among these states' wage-hour laws include the following:

### i.  Different Statutes of Limitations

One significant difference among the five states' wage laws is their statutes of limitations.  In Arizona and Missouri, the applicable statute of limitations is two years;[9] in Illinois and Maryland, it is three years; and in New York, it is six years.  Ariz. Rev. Stat. § 23-364(H); Mo. Stat. Ann. §290-527; 820 Ill. Comp. Stat. Ann. 105/12; Md. Code Ann., Cts. & Jud. Proc. § 5-101; N.Y. Lab. Law § 663(3).  It would be a confusing, if not impossible, task for a jury to sort and apply all of the state-specific evidence across divergent limitations periods.

### ii.  Lack of Uniformity in the Definition of "Tipped Employee"

The states prescribe different monetary thresholds of tip income for an employee to be considered a "tipped employee."  For example, under Illinois law, to be considered a "tipped

---

[9]  Under Arizona law, the statute of limitations is extended to three years in the case of a willful violation.  Ariz. Rev. Stat. § 23-364(H).

12

employee," an individual must earn at least $20 per month in tips.  However, in Maryland, an individual must earn more than $30 per month in tips to be considered a "tipped employee."  Md. Code Ann., Lab. & Empl. § 3-419.  Thus, a jury would need to analyze the evidence under different laws.

### iii. Difference in Each State's Recordkeeping Requirements

Each state also has different recordkeeping requirements for the hours worked and wages earned by employees, and for tip credit allowances taken by employers.  In New York, employers must maintain, for not less than six years, contemporaneous, true and accurate payroll records showing, among other information, deductions and allowances claimed as part of the minimum wage.  N.Y. Lab. Law § 661; N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.1.  Under Arizona law, employers are required to maintain payroll records showing the hours worked by and wages paid to each of their employees for four years.  Ariz. Rev. Stat. Ann. § 23-364(D).  In Illinois, employers must maintain records for three years; and, for tipped employees, employers must, among other things, specifically note which of their employees receive tips, the dollar amounts in tips that each employee receives, the amount per hour that the employer takes as a tip credit, the daily hours during which employees do not receive tips, and the daily or weekly straight time payment the employer makes for such hours.  Ill. Admin. Code tit. 56, §§ 210-700, 210-720.  Thus, there will be different documentation for each of the states, an issue that is guaranteed to confound a jury.

### iv. Limits on Permissible Non-Tipped Work

There are also state-specific requirements concerning the maximum amount of time that tipped employees may perform non-tipped duties, and the amount of tip credit that would be forfeited as a result of exceeding the prescribed limit.  For example, in New York, a tip credit may not be applied *on any (full) day of work* for those employees who perform non-tipped work

13

for two hours or more, or for more than twenty percent of their shifts, whichever is less.  N.Y.

Comp. Codes R. & Regs. tit. 12, §§ 146-2.9; 146-3.3.  Maryland, however, does not set a

specific maximum number of non-tip earning hours, or assess as severe a penalty in tip credit

forfeitures as New York.  According to Maryland's Department of Labor, Licensing and

Regulation, tipped employees who are "from time to time" assigned to perform non-tip related

tasks must be paid by their employer at least the full minimum wage rate *for only that non-tipped*

*time*.[10]  The standard under Arizona law is slightly less vague than in Maryland, as Arizona

allows a tip credit applicable against the wages of employees who "customarily and regularly"

receive tips.[11]  Ariz. Rev. Stat. Ann. § 23-363(C); Ariz. Admin. Code § R20-5-1207(A).  Again,

these differences could not be addressed by any jury without great confusion.

### v.  Available Remedies Differ by State

Assuming, *arguendo*, that a jury were to find that defendants had violated the law in one

or more of the five states, the confusion would not end there.  There are also significant

differences in the remedies available to putative class members under each state's wage-hour

laws.  Under New York law, the availability of liquidated damages is contingent upon the

employers' ability to show a good faith basis for non-compliance.[12]  N.Y. Lab. Law § 663.

Under Maryland law, a court may award treble damages to an employee seeking back wages, but

not if the wages were withheld as a result of a bona fide dispute.  Md. Code Ann., Lab. & Empl.

---

[10] *See* Maryland Department of Labor, Licensing and Regulation Wage and Hour Guide FAQs, *located at* http://www.dllr.state.md.us/labor/wagepay/wptipped.shtml.

[11] Arizona law defines "customarily and regularly" as "receiving tips on a consistent and recurrent basis, the frequency of which may be greater than occasional, but less than constant. . . ." Ariz. Admin. Code § R20-5-1207(A).

[12] Prior to November 24, 2009, employees seeking liquidated damages under the New York Labor Law carried the burden of proving that their employers willfully violated the law.  N.Y. Lab. Law § 663.  Accordingly, a jury would be tasked with an even greater amount of fact-finding and analysis to determine the availability of liquidated damages for those putative class members who worked in New York.

FIRM:23867368v3

§ 3-507, 2.  Under Arizona law, an employee may seek back wages for two years; however, if the employee can prove a willful violation he can be awarded back wages for three years.  Ariz. Rev. Stat. Ann. § 23-364(G).  Such differences can only perplex a jury.

### vi.  Differences in the Calculation of Back Wages

Another variation among the states exists in the calculation of back wages, which would have to be computed by using each state's different hourly minimum wage and tip credit values should plaintiffs prevail.  For example, New York's and Maryland's current hourly minimum wage is $7.25; Missouri's is $7.35; Arizona's is $7.80; and, Illinois' is $8.25.[13]  And there is even greater variation in each state's current maximum tip credit allowance: $2.25 in New York; $3.00 in Arizona; $3.30 in Illinois; $3.62 in Maryland; and $3.675 in Missouri.  There is no reason to believe that any jury could address these state law differences without overwhelming confusion.

### vii. Liquidated Damages

Assuming, *arguendo*, that plaintiffs were to prevail on their claims in one or more states, there would also be a significant differences in the calculation of liquidated damages.  In Arizona and Maryland, treble damages are available.  Ariz. Rev. Stat. Ann. § 23-364(G); Md. Code. Ann., Lab. & Empl. §3-507.2.  However, in New York[14] and Missouri, liquidated damages up to

---

[13]  Illinois law presents an additional complexity in calculating back wages, in that the post tip credit minimum wage (*i.e.*, amount of minimum wage owed by the employer after tip credit is taken) for tipped employees is different for the time periods before and after the first 90 days of employment.  The post tip minimum hourly wage for the first 90 days of employment is $4.65; and the post tip minimum hourly wage after 90 days is $4.95.

[14]  In New York, the calculation of liquidated damages would have to be bifurcated as a result of a change in the law.  Prior to April 9, 2011, the New York Labor Law allowed for liquidated damages in an amount equal to only twenty-five percent of employees' unpaid wages.  N.Y. Lab. Law § 663(1).  Thus, the amount of liquidated damages available (either twenty five or one hundred percent) would depend on the time period worked by each New York putative class member.  The Second Circuit has recently held that this change in the law is not retroactive, *i.e.*, liquidated damages in an amount equal to one hundred percent are not available for claims

an amount equal to the full back wages are available.  N.Y. Lab. Law § 663(1); Mo. Stat. Ann. § 290.527.   Illinois, by contrast, restricts damages to a sum equal to two percent of the underpayment per month for each month of underpayment.  820 Ill. Comp. Stat. Ann. 105/12.

These examples highlight the critical differences in the five states' wage-hour laws.  They demonstrate the absence of commonality among the putative class and illustrate the significant, if not fatal, case management problems for the Court and confusion among the triers of fact that would be created.  "[Plaintiffs'] claims must depend upon a common contention . . . which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011).  "Because adjudication of these claims would require the interpretation and application of several different states, [the Court] finds that plaintiff has failed to establish that the state wage [] claims of the purported class are common amongst the class."   *Luciano*, 2006 WL 1455477, at *3 (citation omitted).  The same result should be reached here.

**B.    Plaintiffs' State Law Claims Fail To Satisfy Rule 23(b)**

Plaintiffs will also be unable to satisfy the requirements of Rule 23(b) on their state law claims because state-specific legal and factual claims defeat the predominance requirement of Rule 23(b)(3).

In addition to satisfying all of the four factors of Rule 23(a), Rule 23(b)(3) requires a plaintiff seeking to maintain a class action to establish that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy . . . ."  Plaintiffs fail to satisfy Rule 23(b)(3) because whatever common questions may exist, they fail to predominate over individual questions.  *See Barrus*,

---

resulting from wage violations that occurred before April 9, 2011.  *Gold v. New York Life Ins. Co.*, No. 12-2344, 2013 U.S. App. LEXIS, at *15-16 (2d Cir. Sep. 18, 2013).

FIRM:23867368v3

732 F. Supp. 2d at 254 ("We have recognized that in a class action governed by the laws of multiple states, such as this one, variations in state law may swamp any common issues and defeat predominance.") (quoting *Castano,* 84 F.3d at 741) (internal quotations omitted); *Luciano,* 2006 WL 1455477, at *4 ("find[ing] that common issues of law or fact do not predominate over the individual issues applicable to the purported class members" where employees worked at several different locations, are subject to different state laws; and, where different methods of wage calculations vary from state to state and different remedies are available in each state); *Glewwe,* 2006 WL 1455476, at *3 (same); *Letouzel,* 2006 WL 1455478, at *3 (same); *Georgine v. Amchem Prods.,* 83 F.3d 610, 618 (3d Cir. 1996) (factual differences, "when exponentially magnified by choice of law considerations, eclipse any common issues in this case"); *In re Am. Med. Sys.,* 75 F.3d 1064, 1085 (6th Cir. 1996) ("[I]f more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law.").

Here, as discussed above, plaintiffs' claims implicate the wage-hour laws of five states, which differ significantly. If plaintiffs' state claims were allowed to proceed, this Court would be required to interpret and apply the peculiar laws of each of the five states in which a putative class member worked, and a jury would be required to consider and apply different sets of instructions and legal standards for each.[15] "The Court would face a daunting task if it tried to

---

[15] Plaintiffs attempt to address the readily apparent problem that the common questions do not predominate by nominally referring in their complaint to each state's class as a "subclass." In limited, appropriate instances, a class may be divided into subclasses that are each treated under Rule 23. Fed. R. Civ. P. 23(c)(5). However, this Court has already addressed and rejected the use of subclasses in a similar wage case in which the plaintiffs were represented by the very same counsel as plaintiffs in this action. *Barrus,* 732 F. Supp. 2d 243. In *Barrus,* this Court rejected plaintiff's request to proceed with subclasses, finding that plaintiffs failed to demonstrate that the governing laws of the different states involved in that action were "substantially similar," or that a common issue predominates. *Id.* at 254. Thus, here, for the very same reasons that the laws of the different states involved in this action are not substantially

fashion a jury instruction that took into account [their state statute claims]". *Barrus,* 732 F.

Supp. 2d at 253.  For these same reasons, this putative class action is not the superior method by

which to adjudicate plaintiffs' state-law claims.  Such an action would create insurmountable

case management problems for the Court and the parties, as well as a morass for a jury.  It is

clear from the face of the complaint that plaintiffs cannot satisfy Rule 23(b)(3) as to their five

state law claims.  This Court should dismiss plaintiffs' state law claims.

**POINT III**

**THE COURT SHOULD TRANSFER VENUE**
**OF THIS ACTION TO HOUSTON, TEXAS**

Should the Court deny defendants' motion to dismiss the complaint or allow the plaintiffs

the opportunity to replead their claims, defendants request that this matter be transferred from

this Court ("WDNY") to the United States District Court Southern District of Texas (the

"Southern District of Texas") pursuant to 28 U.S.C. § 1404(a).  Section 1404 provides that "[f]or

the convenience of parties and witnesses, in the interest of justice, a district court may transfer

any civil action to any other district or division where it might have been brought. . . ."  28

U.S.C. § 1404(a).  In considering whether to transfer venue to another federal court, the district

courts make a two-part inquiry.

First, the court asks whether the case could have been brought in the proposed transferee

district.  28 U.S.C. § 1404(a); *see Madison v. Dyal*, 746 F. Supp. 2d 450, 452 (W.D.N.Y. 2010).

Second, the court asks "whether the convenience of parties and witnesses and the

interests of justice favor transfer."  *Id.* (citation omitted).  In making this determination, the

district court may consider: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses,

(3) the location of relevant documents and relative ease of access to sources of proof, (4) the

similar, and that a common issue does not predominate, this Court should not allow plaintiffs to
utilize subclasses.

FIRM:23867368v3

convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *N.Y. Marine and Gen. Ins. Co. v. Lafarge N. Am.*, 599 F.3d 102, 112 (2d Cir. 2010) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106-7 2d Cir. 2006)).   Motions to transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis. *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992).  As set forth below, this Court should transfer this action to the Southern District of Texas in the interests of justice.  (Notably, although the complaint contains a section (¶¶ 10-12) styled "Jurisdiction and Venue," it does not set forth any allegations regarding venue.)

**A.   This Action Might Have Been Brought in the Southern District of Texas**

Transfer is appropriate to any district where the action could have been brought originally.  *See* 28 U.S.C. § 1404(a).  As set forth below, this action could have been brought in the Southern District of Texas.

First, the Southern District of Texas has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), as plaintiffs allege claims under the FLSA, 29 U.S.C. §§ 201, 216 *et seq*.  The Southern District of Texas also has subject matter jurisdiction, to the extent it exists and to the same degree as the WDNY, over plaintiffs' state law claims pursuant to either the Class Action Fairness Act or 28 U.S.C. § 1367.

Second, the corporate defendants both have their principal places of business and headquarters in Houston, Texas, which is located in the Southern District of Texas.  (Simpson Dec. at ¶¶ 2, 4).  In addition, Blanchette and Morris work out of the corporate headquarters in Houston, Texas, and reside in the Houston, Texas area.  (*Id.*, ¶ 5).  Although defendant Cottingim recently relocated to Florida, he consults for Ignite regularly in Houston.  (*Id.*)

19

Because the defendants are all domiciled and/or do business within the Southern District of Texas, the Southern District of Texas has personal jurisdiction over the defendants.

Third, venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b)(1), which provides, in pertinent part, that venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same State." As the corporate defendants reside within the Southern District of Texas, venue is proper there.

Finally, venue also is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).[16] Plaintiffs, through their complaint and supporting affidavits, admit that only a tiny portion of the alleged acts giving rise to their complaint occurred in the WDNY, and that the majority of the alleged acts originated and occurred in the Southern District of Texas.[17] Specifically, plaintiffs allege that defendants engaged in the following acts from Houston, Texas: (1) devised and implemented the alleged work assignment and tip credit policies that are the basis for their claims; (2) controlled and managed employees' work schedules; (3) performed time keeping practices; (4) maintained employment records; and (5) controlled the payroll. (Comp. ¶¶ 85, 88-90, 110-113, 116-120.) Per plaintiffs own admissions in the complaint, a substantial part of the purported events that allegedly give rise to their claims occurred in the Southern District of Texas, while the effects of those events allegedly were felt throughout the 32 states where Joe's Crab Shack restaurants are located. Thus, venue is proper in the Southern District of Texas.

---

[16] As plaintiffs invoke the "transactional venue" provision of § 1391(b)(2), the Court must inquire into: (1) the nature of the claims and the acts or omissions plaintiffs allege give rise to the claims; and (2) whether a substantial part of those acts or omissions occurred in the district where the suit was filed. *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005).

[17] Plaintiffs append to their Motion for Expedited Notice Pursuant to the Fair Labor Standards Act the affirmations of 21 employees or former employees of Joe's Crab Shack restaurants located in 12 different states. Only four of the 21 affirmations are of employees who worked for a Joe's Crab Shack restaurant in New York.

FIRM:23867368v3

**B.     Transfer Promotes the Interests
of Justice and Judicial Economy**

The "convenience of parties and witnesses" and "interests of justice" factor weighs heavily in favor of transferring this action to the Southern District of Texas.

In this case, plaintiffs' choice of forum should be given little weight in the Court's determination of whether transfer to the Southern District of Texas is warranted.   Indeed, as a general rule, plaintiff's choice of forum is given less weight where a plaintiff seeks to represent a class of persons, as plaintiffs do here.   *See In re Warrick*, 70 F.3d 736, 741 n.7 (2d Cir. 1995); *Andrews v. A.C. Roman & Assocs., Inc.*, 914 F. Supp. 2d 230, 238 (N.D.N.Y. 2012).   Plaintiffs' choice of forum is further diminished when the facts, such as the ones presented in this matter, "'reveal few meaningful connections to the plaintiff's chosen forum.'"   *See Andrews*, 914 F. Supp. 2d at 237 (granting motion to transfer venue and finding, in part, that the defendant's policies and procedures at issue emanated from center of operations in transferee district) (citation omitted).   Thus, as the connections to the Southern District of Texas far outweigh the tenuous connection to the WDNY, this factor favors transfer to the Southern District of Texas.

The convenience of the witnesses is largely considered the most important factor in determining whether transfer should be granted, with the convenience of non-party witnesses accorded more weight than party witnesses.   *Id.* at 238 (citation omitted).   "Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district."   *Id.* (citation omitted).   The center of gravity in this putative nationwide FLSA collective action and Rule 23 class action is undeniably defendants' headquarters in Houston, Texas.   (Simpson Dec. at ¶¶ 2, 4).   In addition, the majority of the witnesses, who would either be parties or current and former party-employees, whom defendant would produce are located within the Southern District of Texas.   These witnesses include the individual defendants and defendants' employees who were involved the alleged "policies," procedures and human

21

resources matters at issue. In contrast, plaintiffs and the proposed classes are scattered across the country. It is no less inconvenient for the plaintiffs who reside in Missouri and Arizona to travel to the Southern District of Texas than it would be for them to travel to the WDNY. Further, at this time, defendants are not aware of any non-party witnesses that they would need to call or rely upon in defense of this action.[18] To the extent discovery reveals relevant non-party witnesses, because this is a putative nationwide action, non-party witnesses who are conceivably scattered throughout the United States would be equally inconvenienced regardless of the venue. Thus, the convenience of the witness factor also lies in favor of transfer to the Southern District of Texas.

The fact that relevant documents are located in Houston, Texas, further favors transfer to the Southern District of Texas. Certain centralized employment files and personnel documents are maintained, located and stored at defendants' headquarters in Houston, Texas. Moreover, defendants also maintain their payroll records at the Houston, Texas headquarters. Originals of these documents and the production of witnesses who could authenticate these documents are much easier for defendants to access and produce in the Southern District of Texas than the WDNY.

The convenience of the parties and the locus of operative facts also favor transfer. First, requiring defendants and their party-employee witnesses to appear in the WDNY could cause disruptions to defendants' nerve center of its business operations in Houston. *See Andrews*, 914 F. Supp. 2d at 240 (finding the potential for business disruption and the diminished deference given to plaintiff's choice of forum if the matter became a certified class action favored transfer). Again, only two of the plaintiffs are even located in New York; the remaining plaintiffs are no

---

[18] Defendants, however, do not waive their right to seek discovery and testimony from non-party witnesses should this matter proceed and new facts and/or witnesses are discovered over the course of the litigation.

more inconvenienced travelling to the WDNY than they would be if they travelled to the Southern District of Texas.  While two of the plaintiffs worked at a restaurant located in the WDNY, the rest of the plaintiffs and the putative class members worked at restaurants located in 32 other states.  Thus, the majority of the relevant events regarding the application of the tip credit occurred in the Southern District of Texas.[19]

With regard to the relative means of the parties, it is undisputable that Ignite is a large corporation.  However, because plaintiffs and their counsel "seek to represent [tens of thousands] employees … , the relative means of the parties does not weigh in favor of or against transfer." *Hicks v. T.L. Cannon Corp.*, No. 12-CV-6517T, 2013 WL 2423782, at *5 (W.D.N.Y. June 4, 2013).

Finally, relative calendar congestion favors the Southern District of Texas.  Indeed, the judges there have a lower caseload (4,729 cases pending in 2012) than the judges in the WDNY (2,406 cases pending in 2012)[20] in view of the fact that the Southern District of Texas has 24 United States District Court Judges and 15 United States Magistrate Judges to cover the docket, while there are only six District Court Judges (three on senior status) and six United States Magistrate Judges assigned to the WDNY.[21]  Similarly, the desirability of having the case tried by a forum familiar with the substantive law to be applied is also a neutral factor, as both the WDNY and Southern District of Texas are presumably familiar with, and would be required to apply, the same federal substantive law.  With regard to plaintiffs' state law claims (assuming the

---

[19] The availability of either court to exercise subpoena power to compel the attendance is admittedly limited regardless of whether this matter is venued in the WDNY or the Southern District of Texas.  Moreover, at this point in time, defendants are unaware of any non-party witnesses who would need to be subpoenaed, and the fact that plaintiffs reside in various states further negates the preference for the WDNY over the Southern District of Texas.

[20] This information is available at http://www.uscourts.gov/Statistics/StatisticalTablesForTheFederalJudiciary.aspx.

[21] *See* http://www.nywd.uscourts.gov;  http://www.txs.uscourts.gov/district/judges/.

23

claims are not dismissed), the Southern District of Texas would presumably have no lesser familiarity with the state law claims brought under Arizona, Illinois, Maryland and Missouri state statutes than the WDNY.  In either instance, both the WDNY and Southern District of Texas, would both be required to apply the same state substantive laws.

The balance of the aforementioned factors weighs heavily in favor of transferring this matter to the Southern District of Texas.  Therefore, in the interests of justice, should defendants' motion be denied or plaintiffs be given leave to replead, this action should be transferred to the Southern District of Texas.

### Conclusion

For the foregoing reasons, the complaint should be dismissed in its entirety.  Should the Court deny defendants' motion or grant plaintiffs leave to replead any part of the complaint, venue of this action should be transferred to the Southern District of Texas for all further proceedings.

New York, New York
October 8, 2013

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By:   s/Kenneth J. Kelly
_____
Kenneth J. Kelly
Jeffrey H. Ruzal
250 Park Avenue
New York, New York  10177-1211
(212) 351-4500
kkelly@ebglaw.com
Attorneys for Defendants
Crab Addison, Inc., d/b/a Joe's Crab Shack and
Ignite Restaurant Group, Inc.

Of Counsel:
Michael S. Kun, Esq.
Epstein Becker & Green, P.C.
1925 Century Park East
Suite 500
Los Angeles, CA 90067-2506
(310) 556-8861

24

FIRM:23867368v3