UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHRISTOPHER HART, JEFFREY BEYER, MARIA
SARGENT, TAYLOR RAMSEY, ANDREA
RANDLETT AND SHELLY CARRERA, *on behalf of
themselves and all other employees similarly situated*,

        Plaintiffs,

   – against –

CRAB ADDISON, INC. d/b/a JOE'S CRAB SHACK,
IGNITE RESTAURANT GROUP, INC., RAYMOND
A. BLANCHETTE III, KEVIN COTTINGIM and
RODNEY MORRIS,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No.:
13 CV 6458 (CJS)


# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RODNEY MORRIS'S MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER VENUE


EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, New York 10177-1211
Tel: 212.351.4500

Attorneys for Defendant
Rodney Morris

FIRM:23961193v1

## TABLE OF CONTENTS

**PAGE(S)**

PRELIMINARY STATEMENT ..................................................................................................1

FACTS AND ALLEGATIONS....................................................................................................2

ARGUMENT..................................................................................................................................5

      PLAINTIFFS' CONCLUSORY ALLEGATIONS
      ARE INSUFFICIENT TO ESTABLISH THAT MORRIS
      IS AN "EMPLOYER" WITHIN THE MEANING OF
      THE FLSA AND THE VARIOUS STATE LAWS ......................................................5

CONCLUSION.............................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alladin v. Paramount Mgmt., LLC,*
   No. 12 Civ. 4309, 2013 U.S. Dist. LEXIS 121949 (S.D.N.Y. Aug. 27, 2013) .......................... 7

*Arteaga v. Lynch,*
   No. 10 C 1444, 2012 U.S. Dist. LEXIS 126784 (N.D. Ill. Sept. 6, 2012) ................................. 5

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................................................... 11

*Barfield v. N.Y.C. Health and Hosp. Corp.,*
   537 F.3d 132 (2d Cir. 2008) ..................................................................................................... 5

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................................... 11

*Bravo v. Eastpoint Int'l, Inc.,*
   No. 99 Civ. 9474, 2001 U.S. Dist. LEXIS 3647 (S.D.N.Y. Mar. 30, 2001) .................. 8, 10, 11

*Campusano v. Lusitano Constr. LLC,*
   56 A.3d 303 (Md. 2012) ........................................................................................................... 5

*Herman v. RSR Sec. Servs. Ltd.,*
   172 F.3d 132 (2d Cir. 1999) ...................................................................................... 5, 6, 10, 11

*Irizarry v. Catsimatidis,*
   722 F.3d 99 (2d Cir. 2013) .................................................................................................... 6, 8

*Juarez v. Precision Apparel, Inc.,*
   No. 12-CV-2349, 2013 U.S. Dist. LEXIS 131418 (E.D.N.Y. Aug. 21, 2013) ......................... 7

*Magnuson v. Newman,*
   No. 10 Civ. 6211, 2013 U.S. Dist. LEXIS 138595 (S.D.N.Y. Sept. 25, 2013) ........................ 7

*Manning v. Boston Reg'l Med. Ctr., Inc.,*
   725 F.3d 34 (1st Cir. 2013) .................................................................................................. 9-10

*Sethi v. Narod,*
   No. 11-cv-2511, 2013 U.S. Dist. LEXIS 141485 (S.D.N.Y. Sept. 30, 2013) .......................... 5

*State of Missouri v. Turner,*
   952 S.W.2d 354 (Mo. Ct. App. 1997) ...................................................................................... 5

FIRM:23961193v1

*Switzoor v. SCI Eng'g, P.C.*,
   No. 11 Civ. 9332, 2013 U.S. Dist. LEXIS 129994 (S.D.N.Y. Sept. 11, 2013) .........................6

*Tracy v. NVR, Inc.*,
   667 F. Supp. 2d 244 (W.D.N.Y. 2009) ..............................................................................8, 10, 11

*Tracy v. NVR, Inc.*,
   No. 04-cv-6541L, 2009 U.S. Dist. LEXIS 90778 (W.D.N.Y. Sept. 30, 2009), *adopted in part*, 667 F. Supp. 2d 244 (W.D.N.Y. 2009) .................................................................6, 7, 8, 10

*Wood v. TriVita, Inc.*
   No. CV-08-0765-PHX-SRB, 2009 U.S. Dist. LEXIS 63996 (D. Ariz. June 22, 2009) .............8

**RULES AND STATUTES**

29 C.F.R. § 531.56(e) .........................................................................................................................4

29 U.S.C. § 201, *et seq.* ....................................................................................................................3

Ariz. Min. Wage Act Prac. & Proc. R20-5-1205(A) .........................................................................5

**OTHER AUTHORITIES**

U.S. Dep't of Labor Field Operations Manual, *located at*
   *http://dol.gov/whd/FOH/index.htm*, Chapter 30, § 30d00(e) (June 30, 2000) ...........................4

FIRM:23961193v1

Defendant Rodney Morris ("Morris") respectfully submits this memorandum in support of his motion to dismiss the complaint with prejudice or, alternatively, to transfer this action to the United States District Court for the Southern District of Texas in Houston, where the two corporate defendants' headquarters are located, and where Morris both lives and works.[1]

**Preliminary Statement**

In this tip-credit hybrid action, six former employees of Joe's Crab Shack are pursuing a putative collective action under the Fair Labor Standards Act ("FLSA") and a Rule 23 class action under the disparate state wage-hour laws of Arizona, Illinois, Maryland, Missouri and New York. The crux of plaintiffs' implausible allegations is that they were employed as tipped employees, but regularly spent more than half of their eight-hour shifts working as janitors, housekeepers, and dishwashers. Plaintiffs claim that because they spent so much time engaged in non-tip earning work, their hourly wages fell below the minimum wage. Plaintiffs seek to represent tens of thousands of current and former tipped employees who work at 135 Joe's Crab Shack restaurants nationwide.

On October 8, 2013, defendants Crab Addison, Inc. d/b/a Joe's Crab Shack and Ignite (collectively, the "corporate defendants"), filed a motion to dismiss or, in the alternative, to transfer venue. (*See* Docket Entry Nos. 23-26.) Morris incorporates herein all arguments made in that motion, and seeks dismissal of the complaint for the same reasons as the corporate defendants, and one other: plaintiffs have failed to plead any plausible facts by which Morris could, in reality, be found liable as an "employer" of the tens of thousands of servers, bartenders, bussers, hosts and all other tipped employees who work at 135 Joe's Crab Shack restaurants

---

[1] Neither Raymond Blanchette III nor Kevin Cottingim have been served in this action. Raymond Blanchette lives and works in Houston and Kevin Cottingim recently relocated to Florida; however, he often travels to Houston, Texas to consult for Ignite Restaurant Group, Inc ("Ignite").

located in 32 states.[2] Plaintiffs advance the unrealistic and unsubstantiated position that Morris, Ignite's newly-hired National Head of Human Resources, who works for Ignite in Houston, had operational control over plaintiffs' hour-to-hour assignments and working conditions, and is thus responsible for plaintiffs' unpaid wages as alleged in the complaint. In certain instances, a "boots on the ground" owner or executive deeply entrenched in the operational control of plaintiff-employees' working conditions may be subject to FLSA liability. By plaintiffs' own allegations, Morris does not fit that profile. Nor is it even plausible to claim that this senior executive in Houston, who only started with Ignite in April 2013, decides, or is even aware of, whether a server in Henrietta, New York is regularly assigned to remove chewing gum from underneath tables before patrons arrive for lunch, or the amount of time a server in Greenbelt, Maryland devotes to housekeeping chores between taking orders or serving meals.

### Facts and Allegations[3]

Ignite, along with Crab Addison, Inc., owns and operates 135 informal, family-friendly restaurants under the trade name "Joe's Crab Shack" in 32 states, and employs, on average, about 10,000 employees each year. The two corporate defendants' headquarters are located in

---

[2] The corporate defendants' argued that the FLSA and state law wage claims should be dismissed because plaintiffs failed to satisfy the specific pleading requirements recently enunciated by the Second Circuit. Among other deficiencies, plaintiffs failed to plead any particular date(s) on which they performed any of the purported non-tip earning tasks, the frequency with which they performed these tasks, or the duration of time it took to complete them. The corporate defendants further argued that plaintiffs' state law claims should likewise be dismissed, as they are based on the disparate wage-hour laws of five states, and thus fail to satisfy the commonality and predominance requirements of Rule 23. Finally, the corporate defendants argued that if their motion to dismiss was denied or plaintiffs were permitted to replead, this action should be transferred to the Southern District of Texas, in Houston, where their headquarters are located, where three of the individual defendants work and two reside, and where key witnesses and records are located.

[3] The facts are set forth in the declaration of Patricia Simpson, dated October 7, 2013 ("Simpson Dec."), and in the Complaint ("Comp."), attached to the Affidavit of Jeffrey H. Ruzal, sworn to on October 7, 2013. (*See* Docket Entry Nos. 24, 25).

Houston, Texas, where their executive offices, human resources, payroll, financial, marketing, and IT functions are located. (Simpson Dec. ¶¶ 3, 4; Comp. ¶¶ 83-85). Morris is one of the most senior corporate officers of Ignite. He joined Ignite in April 2013 and assumed human resources responsibilities for all of Ignite's lines of business. (Simpson Dec. ¶ 5; Comp. ¶¶ 100-121).

Plaintiffs are six former employees of Ignite who worked as tipped employees – four as servers, a server/bartender and one as a hostess. They allege, without specifying a single date, that they "regularly" worked a six- or eight-hour shift, but "regularly" spent more than half their shift performing tasks completely unrelated to serving patrons. They claim that, depending on the shift, they were assigned tasks in connection with opening the restaurant, such as sanitizing sinks and woodwork, degreasing garage doors and window sills, and dusting pictures. Likewise, they allege they were assigned tasks relating to closing the restaurant for the night, such as removing light fixtures, "cleaning every" window in the store, and servicing soda machines. And further, plaintiffs allege, that apart from opening and closing tasks, servers engaged in what they term "running sidework" during their shifts, which seemingly consisted of everything other than serving necessary to operate a restaurant, such as washing dishes, and sanitizing coffee cups and tea kettles. (Comp. ¶¶ 43-78).

Plaintiffs allege that they were not paid the minimum wage required by the FLSA, 29 U.S.C. § 201, *et seq.*, and that the "defendants" violated the specific minimum wage laws of the respective states where they worked: Arizona, Illinois, Maryland, Missouri and New York. As for their FLSA claims, plaintiffs allege that they were paid the "sub-minimum" wage permitted to be paid to tipped employees by 29 U.S.C. § 203(m), but that defendants should be prohibited from applying the statutory "tip credit" for the difference between the sub-minimum wage and the minimum wage because they worked at non-tipped functions more than 20 percent of their

3

time.[4]  Plaintiffs purport to bring their FLSA claim as a collective action representing a nationwide FLSA class of tipped employees, seeking the difference between the federal minimum wage and the subminimum wage payable to tipped employees that they received. Although the complaint alleges in several introductory paragraphs (¶¶ 4, 5, 6, 43) that "defendants" have a "policy" not to pay the federal or various state minimum wages, the complaint fails to specify who instituted the "policy," where (if anywhere) it is memorialized, or whether, when, or how it was disseminated.  Further, while the complaint purports to describe Morris's responsibilities and functions, the paragraphs relating to him do not even mention the so-called "policy" that forms the basis of this action.  In fact, no such unlawful policy exists.

Each of the six plaintiffs also purports to bring a Rule 23 class action in New York for a separate "subclass" of tipped employees under the different wage-hour laws of the states in which they worked – Arizona, Illinois, Maryland, Missouri and New York.  In each of the subclasses, plaintiffs seek damages allegedly incurred during the two, three, and six years preceding the filing of the complaint, per each state's different statute of limitations.

---

[4] Although neither the FLSA nor the Department of Labor ("DOL") regulations quantify the amount of permissible "related duties" in a tipped occupation that may not be by themselves directed toward producing tips (*see* 29 C.F.R. § 531.56(e)), the DOL's Field Operations Manual dated June 30, 2000 states that where "employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties." *See http://dol.gov/whd/FOH/index.htm*, Chapter 30, § 30d00(e).

4

**Argument**

**PLAINTIFFS' CONCLUSORY ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH THAT MORRIS IS AN "EMPLOYER" WITHIN THE MEANING OF THE FLSA AND THE VARIOUS STATE LAWS**

Morris should be dismissed from this lawsuit, as he is not an "employer" within the meaning of the FLSA, or the wage-hour laws of Arizona, Illinois, Maryland, Missouri, or New York[5].

The "determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality.'" *Barfield v. N.Y.C. Health and Hosp. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (citations omitted). It is determined on a case-by-case basis, and by facts; not conclusions. This "economic reality" test examines whether a defendant has actual control over the employment of an individual such that an employer-employee relationship exists. Courts consider whether a putative defendant: (1) has the power to hire and fire the employee, (2) supervises and controls the employee's work schedules or conditions of employment, (3) determines the rate and method of payment, and (4) maintains the employee's employment records. *Id.* at 142 (citations omitted). No single factor is determinative. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

---

[5] The wage-hour laws of Arizona, Maryland, Missouri, and New York apply versions of the economic reality test to determine employer liability that are nearly identical to that of the FLSA; and, in Illinois, there is a heightened standard through a scienter requirement. *See* Ariz. Min. Wage Act Prac. & Proc. R20-5-1205(A) (reciting the economic realities factors of the FLSA); *Campusano v. Lusitano Constr. LLC*, 56 A.3d 303, 307-09 (Md. 2012) (finding that Maryland's wage and hour laws are substantially similar to the FLSA for the economic reality test to apply); *State of Missouri v. Turner*, 952 S.W.2d 354, 356-57 (Mo. Ct. App. 1997) (applying an economic reality test comparable to that of the FLSA to determine employer liability); *Sethi v. Narod*, No. 11-cv-2511, 2013 U.S. Dist. LEXIS 141485, at *71-72 (S.D.N.Y. Sept. 30, 2013) (New York Labor Law applies the same standards of "employer" as the FLSA); *Arteaga v. Lynch*, No. 10 C 1444, 2012 U.S. Dist. LEXIS 126784, at *54 (N.D. Ill. Sept. 6, 2012) (finding that Illinois law adopts language from the FLSA in defining employer, but that Illinois law imposes liability on officers of a corporation or agents of the employer corporation only if " 'those individual decision makers [] knowingly permitted the Wage Act violation.' ") (citations omitted.)

The Second Circuit has held that for an individual defendant executive or officer of a corporation to be an "employer," he must "possess control over a company's actual 'operations' *that relates to a plaintiff's employment.*" *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013) (emphasis added); *Herman*, 172 F.3d at 140. "Evidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status." *Irrizary*, 722 F.3d at 109; *Tracy v. NVR, Inc.*, No. 04-cv-6541L, 2009 U.S. Dist. LEXIS 90778, at *13 (W.D.N.Y. Sept. 30, 2009), *adopted in part*, 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009) (Larimer, J.) (individual officers or directors of the corporation may only be "deemed employers under the FLSA where the individual has overall *operational control* of … the employees' salaries and makes hiring decisions") (internal quotation marks and citations omitted); *Switzoor v. SCI Eng'g, P.C.*, No. 11 Civ. 9332, 2013 U.S. Dist. LEXIS 129994, at *17 (S.D.N.Y. Sept. 11, 2013) ("A person may not be held individually liable for a company's FLSA violations simply because he was an executive of that company.") (citation omitted.)

In *Irizarry*, the Court found the individual defendant chairman, president, and CEO of 35 Gristede's supermarkets located in New York City was an "employer" under the FLSA, where he regularly visited stores, interacted with store employees, addressed problems specific to individual stores, and personally reviewed customer complaints. The Court reasoned that "[the individual defendant's] actions and responsibilities – particularly as demonstrated by his active exercise of overall control over the company, his ultimate responsibility for the plaintiffs' wages, his supervision of managerial employees, and his actions in individual stores – demonstrate that he was an 'employer' for purposes of the FLSA." *Irizarry*, 722 F.3d at 117.

In the wake of *Irizarry*, a number of district courts in this Circuit have ruled that employer status is appropriate only for individual defendants who exercise direct control over

6

plaintiff employees' working conditions. *See, e.g., Juarez v. Precision Apparel, Inc.*, No. 12-CV-2349, 2013 U.S. Dist. LEXIS 131418, at *16-18 (E.D.N.Y. Aug. 21, 2013) (finding individual defendant co-owner of defendant company to be an "employer" where he, among other things, directly supervised and controlled the plaintiff's work, and directly paid and issued receipts to the plaintiff; but declining to find individual defendant CEO of the company an employer where she did not hire or fire employees, determine their rates of pay, or personally maintain records); *Alladin v. Paramount Mgmt., LLC*, No. 12 Civ. 4309, 2013 U.S. Dist. LEXIS 121949, at *10-11 (S.D.N.Y. Aug. 27, 2013) (finding individual employer status where individual defendant owner and CEO was plaintiff's direct supervisor and was responsible for establishing plaintiff's work schedule and pay rate); *Magnuson v. Newman*, No. 10 Civ. 6211, 2013 U.S. Dist. LEXIS 138595, at *30-31 (S.D.N.Y. Sept. 25, 2013) (finding that individual defendant was an employer where, among other things, he directly controlled employees' daily work environment, which included setting their work schedules).

In *Tracy v. NVR, Inc.*, No. 04-cv-6541L, 2009 U.S. Dist. LEXIS 90778 (W.D.N.Y. Sept. 30, 2009), *adopted in part*, 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009)) Magistrate Judge Payson found that plaintiffs failed to allege any facts to support the assertion that the Chairman and CEO "ever hired, fired or supervised 'the workers in question.'" *Id.*, at *20 (citation omitted). Rather, the court held that the sole factual support for the plaintiffs' allegations was the mere fact that the proposed defendants held the positions of Chairman and CEO, respectively. The court found such allegations wholly inadequate:

> In other words, upon careful analysis, the complaint asserts little more than because Schar was Chairman and Saville was President of NVR, then each must have had authority to take the actions that comprise the "economic realities" test, and that because each had the authority to take those actions, then each must have in fact taken those actions. *To accept the adequacy of these allegations would license suit under the FLSA against every high level officer*

7

> *and board member of large public companies simply because of the position the individual holds.* Although the definition of employer under the FLSA is indeed broad, I do not believe that it is this broad or unbounded by the requirements recently enunciated in *Iqbal* and *Twombly*.

*Id.* at *21 (emphasis added).

In addition, on review, Judge Larimer held that plaintiffs' allegation that the Vice President of Human Relations "had the general authority to hire and/or fire employees, and that he maintained employee records" wholly insufficient to state a claim. *Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009). The Court specifically found fault with the plaintiffs' failure to allege that the Vice President of Human Relations hired any employees, as well as their failure to provide any evidence that the Vice President of Human Relations exercised control over employees' work schedules, conditions of employment, and compensation:

> [M]ere boilerplate allegations that an individual meets the various prongs of the economic reality test stated solely upon information and belief and without any supporting details - essentially "a formulaic recitation of the elements of a cause of action" - are insufficient to raise plaintiffs' right to relief "above a speculative level" with respect to that individual's liability as an employer under the FLSA.

*Id.* (citation omitted). *See also Bravo v. Eastpoint Int'l, Inc.*, No. 99 Civ. 9474, 2001 U.S. Dist. LEXIS 3647, at *4-5 (S.D.N.Y. Mar. 30, 2001) (dismissing complaint against individual because plaintiffs alleged no facts establishing power to control the plaintiffs); *Wood v. TriVita, Inc.* No. CV-08-0765-PHX-SRB, 2009 U.S. Dist. LEXIS 63996, at *9 (D. Ariz. June 22, 2009) (denying plaintiff's motion to join individual defendants because the proposed allegations were "insufficient to show that the additional defendants were joint employers for purposes of the FLSA.").

Unlike the direct control exercised by the individual defendants described in *Irizarry* and other cases, plaintiffs allege no operational control over plaintiffs' working conditions by Morris.

8

There are no allegations that he hired or fired plaintiffs, or the class of tipped employees whom plaintiffs seek to represent; determined the tipped employees' shift schedules, or hour-by-hour assignments; interacted with the tipped employees or with their local restaurant managers; or that he exercised hands-on authority or control over any of the plaintiffs' actual working conditions.

Although the complaint purports to allege that Ignite has a formal "policy" to pay "subminimum wage rate[]" or "to not pay . . . the legally required minimum wage" and identifies Morris as the current Senior Vice President of Human Resources (Comp. ¶¶ 4-5, 115), there are no allegations linking Morris to that alleged "policy." Nor does the complaint allege anything about his involvement in the day-to-day assignments of individual servers or bartenders to non-tip tasks, or even the alleged "policy" to underpay servers, which is the essence of the complaint.

Moreover, the complaint fails to provide any details to support the conclusory allegation that he is responsible for the "maintenance and application" of the so-called "policies" complained of in this action. The complaint attempts to camouflage this gap in pleading by referring to Morris's involvement in the high-level employment-related activities one would expect of a senior level human resources executive: determination of policies and determining company-wide rates of pay, employee relations issues, oversight of the payroll process and responsibility for "building organizational relationships". (Comp. ¶¶ 116-117.) But it is not plausible for Morris to be involved in the slightest in assigning each of the individual plaintiffs, or any putative class members, specific day-to-day tasks. The types of non-tipped tasks that plaintiffs allege they were assigned are determined at the restaurant management level based on day-to-day and hour-to-hour needs, "depending on the shift" that one or another plaintiff worked (*see*, Compl. ¶¶ 48, 49, 54, 55, 64, 65, 69, 70, 75, 76), and are not determined in corporate headquarters in Houston, Texas. *See Manning v. Boston Reg'l Med. Ctr., Inc.*, 725 F.3d 34, 50 (1st Cir. 2013) (affirming the dismissal of FLSA claims against the defendant's former senior

9

human resources officer on the ground that the "allegations against him . . . are nothing more than unadorned assertions that are not supplemented by specific allegations supporting the inference that [he] controlled [the hospital's] purse-strings or made decisions about the allocation of financial resources") (citation omitted).

In addition, Morris has been employed by Ignite since April 2013 as Senior Vice President of Human Resources, and not one of the six plaintiffs was employed during the time Morris has held his position. Five of the six named plaintiffs left Ignite's employ in 2012, and the sixth in January 2013. (Simpson Dec. ¶ 5; Comp. ¶¶ 37-42.) The complaint simply leaps to the conclusion that the alleged "policies" that were supposedly in place at their various restaurants continued after they left, and that Morris affirmatively continued those policies after he was hired.

Individual officers of substantial corporations are not deemed "employers" of that corporation's employees under the FLSA pursuant to the Second Circuit's economic realities test. *Herman*, 172 F.3d at 139. Bare allegations based solely on an executive's job title and presumed duties are insufficient to support a claim that an individual is an "employer." *Tracy*, 667 F. Supp. 2d at 247 (citation omitted); *Bravo*, 2001 U.S. Dist. LEXIS 3647, at *4-5. The fact that Ignite operates a nationwide enterprise comprised of 135 facilities with about 10,000 employees spread across 32 states with decentralized and localized management at each restaurant requires more, not fewer, factual allegations in order to plead a plausible claim against Morris. "Where the relationship between the putative employer [*i.e.*, the natural person defendant] and the plaintiff employee is more attenuated and the size of the corporation larger, employer liability may not be found." *Tracy v. NVR, Inc.*, No. 04-cv-6541L, 2009 U.S. Dist. LEXIS 90778, at *15-16 (W.D.N.Y. Sept. 30, 2009), *adopted in part*, 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009) (Larimer, J.) (citation omitted) ("I find that the plaintiffs have failed to

10

sufficiently allege that . . . the chief human resources officer in an enormous multi-billion dollar corporation scattered across hundreds of miles - had and exercised sufficient control over them to satisfy the economic reality test . . . ."); *see also Bravo*, 2001 U.S. Dist. LEXIS 3467 (dismissing complaint against Donna Karan individually because plaintiffs did not allege any facts establishing "her power to control the plaintiff workers"); *Herman*, 172 F.3d at 139.

Plaintiffs' boilerplate allegations in this action simply fail to pass muster under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *Tracy*, 667 F. Supp. 2d at 247. The allegations here are nothing more than "a formulaic recitation of the elements of a cause of action" and are insufficient to raise plaintiffs' right to relief "above the speculative level" with respect to that individual's liability as an employer. *Twombly*, 550 U.S. at 555 (citations omitted). Morris should be dismissed from the action.

## Conclusion

For the foregoing reasons, the complaint should be dismissed against Morris in its entirety. Should the Court deny Morris's motion or grant plaintiffs leave to replead any part of the complaint, venue of this action should be transferred to the Southern District of Texas in Houston for all further proceedings.

New York, New York
October 22, 2013

                                              Respectfully submitted,

                                              EPSTEIN BECKER & GREEN, P.C.

                                              By: /s/ Kenneth J. Kelly
                                                   Kenneth J. Kelly
                                              250 Park Avenue
                                              New York, New York  10177-1211
                                              (212) 351-4500
                                              Attorneys for Defendant
                                              Rodney Morris

Of Counsel:
Michael S. Kun, Esq.
Epstein Becker & Green, P.C.
1925 Century Park East
Suite 500
Los Angeles, CA 90067-2506
(310) 556-8861

FIRM:23961193v1