UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHRISTOPHER HART, JEFFREY BEYER, MARIA     :
SARGENT, TAYLOR RAMSEY, ANDREA             :
RANDLETT AND SHELLY CARRERA, *on behalf of* :
*themselves and all other employees similarly situated,* :
                                           :            Civ. Action No.13 CV 6458 (CJS)
                    Plaintiffs,            :
                                           :
                                           :
                 – against –               :
                                           :
CRAB ADDISON, INC. d/b/a JOE'S CRAB SHACK,  :
IGNITE RESTAURANT GROUP, INC., RAYMOND      :
A. BLANCHETTE III, KEVIN COTTINGIM and      :
RODNEY MORRIS,                             :
                                           :
                    Defendants.            :
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**REPLY MEMORANDUM IN FURTHER SUPPORT OF
DEFENDANT KEVIN COTTINGIM's MOTION TO DISMISS OR,
ALTERNATIVELY, TO TRANSFER VENUE**


EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, NY 10177
(212) 351-4500
*Attorneys for Defendant*
*Kevin Cottingim*

FIRM:24373800v1

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT .......................................................................................................... 1

    PLAINTIFFS HAVE FAILED TO PLEAD THAT
    COTTINGIM IS AN "EMPLOYER" .................................................................. 1

    PLAINTIFFS' SHOULD NOT BE GRANTED LEAVE TO REPLEAD ......................... 9

CONCLUSION ...................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alladin v. Paramount Mgmt., LLC,*
   No. 12 Civ. 4309, 2013 U.S. Dist. LEXIS 121949 (S.D.N.Y. Aug. 27, 2013) .........................3

*Anderson News, L.L.C. v. American Media, Inc.,*
   680 F.3d 162 (2d Cir. 2012), *cert. denied,* 133 S. Ct. 846 (2013) ............................................9

*Bravo v. Eastpoint Int'l, Inc.,*
   No. 99 Civ. 9474, 2001 WL 314622 (S.D.N.Y. Mar. 30, 2001) .................................................8

*Herman v. RSR Sec. Servs. Ltd.,*
   172 F.3d 132 (2d Cir. 1999)..................................................................................................3, 5

*Hinterberger v. Catholic Health Sys.,*
   284 F.R.D. 94 (W.D.N.Y. 2012)................................................................................................9

*Hunt v. Alliance North Am. Gov't Income Trust Inc.,*
   159 F.3d 723 (2d Cir. 1998).......................................................................................................9

*Irizarry v. Catsimatidis,*
   722 F.3d 99 (2d Cir. 2013).................................................................................................. *passim*

*Juarez v. Precision Apparel, Inc.,*
   No. 12-CV-2349, 2013 U.S. Dist. LEXIS 131418 (E.D.N.Y. Aug. 21, 2013).......................3, 4

*Kalloo v. Unlimited Mech. Co. of NY, Inc.,*
   908 F. Supp. 2d 344 (E.D.N.Y. 2012) .......................................................................................4

*Kalloo v. Unlimited Mech. Co. of NY, Inc.,*
   No. 11-cv-6215, 2013 U.S. Dist. LEXIS 147487 (E.D.N.Y. Oct. 10, 2013).............................4

*Magnuson v. Newman,*
   No. 10 Civ. 6211, 2013 U.S. Dist. LEXIS 138595 (S.D.N.Y. Sept. 25, 2013) .....................3-4

*Switzoor v. SCI Eng'g, P.C.,*
   No. 11 Civ. 9332(RA), 2013 U.S. Dist. LEXIS 129994 (S.D.N.Y. Sept. 11, 2013)..................4

*Tracy v. NVR, Inc.,*
   No. 04-cv-6541L, 2009 U.S. Dist. LEXIS 90778 (W.D.N.Y. Sept. 30, 2009), *adopted
   in part,* 667 F. Supp. 2d 244 (W.D.N.Y. 2009) ........................................................................8

*Tracy v. NVR, Inc.,*
   667 F. Supp. 2d 244 (W.D.N.Y. 2009) ..................................................................................7, 8

Defendant Kevin Cottingim ("Cottingim") respectfully submits this reply memorandum in further support of his motion to dismiss the complaint with prejudice or, alternatively, to transfer this action to the United States District Court for the Southern District of Texas in Houston.[1]

## PRELIMINARY STATEMENT

Plaintiffs in their opposition argue that Cottingim must be considered an employer simply because he is a former human resources executive for Ignite who was allegedly engaged in corporate-wide employment-related decision-making. Plaintiffs' argument, however, is at odds with the Second Circuit's decision in *Irizarry* and its progeny, which dictate that a corporate executive will only be considered an "employer" if he exercises proximate control over employees in a manner directly affecting their working conditions. This includes store-by-store decision-making, including individual employee's schedules and compensation, hiring and firing, and close supervision. As plaintiffs have failed to allege any such facts, their claims against Cottingim should be dismissed.

## ARGUMENT

### A. PLAINTIFFS HAVE FAILED TO PLEAD THAT COTTINGIM IS AN "EMPLOYER"

Plaintiffs, in their opposition, misconstrue *Irizarry*[2], and all but ignore the many district court decisions that have since followed its rule. Plaintiffs contend that the Second Circuit found the individual defendant liable as an employer because he was "involved at a high-level" in the company, and that a corporate officer is an employer "whenever" he possesses operational

---

[1] Cottingim's reply in further support of his alternative motion to transfer the action incorporates by reference the entirety of defendants Crab Addison, Inc.'s and Ignite Restaurant Group, Inc.'s reply memorandum in further support of their alternative motion to transfer the action.

[2] *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013).

control.  Plaintiffs' Opposition ("Pl. Opp.") at 1-2, 6.  This is not at all what the Second Circuit held.

The Second Circuit explained that "[a] person exercises operational control over employees if his or her role within the company, and the decisions it entails, *directly affect* the nature or conditions of the employees' employment," and that "the relationship between the individual's operational function and the plaintiffs' employment must be *closer in degree than simple but-for causation*." *Irizarry*, 722 F.3d at 110 (emphasis added).

"Closer in degree than simple but-for causation" means that an employer exercises "boots-on-the-ground" control over the business operations that directly affects employees' working conditions.  *Id.*  The *Irizarry* Court did not find individual defendant CEO John Catsimatidis liable as an employer because he was "involved at a high-level."  To the contrary, he was found liable because he exercised management directly affecting plaintiffs' employment. The Second Circuit found that "'there is no area of Gristede's which is not subject to [Catsimatidis'] control,'" and that he was "active in running Gristede's, including contact with individual stores, employees, vendors, and customers." *Id.* at 103, 116.  Among other things, the Court considered that Catsimatidis regularly visited stores, made suggestions to managers in individual stores regarding product displays, personally handled individual customer complaints and then consulted with the particular store employees involved to address those complaints. The Court also considered the absolute financial control Catsimatidis had over the business.  *Id.* at 116 ("he could shut down the business, declare bankruptcy, as well as provide the personal signature necessary for a bank letter of credit to be issued in favor of Gristede's") (citation omitted).

In *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999), an earlier decision the *Irizarry* Court expressly followed, the Second Circuit found an individual corporate executive to be an "employer," where he directly controlled plaintiff-employees' working conditions. Among other things, RSR Chairman Murray Portnoy supervised and controlled security guard employees' work schedules; personally assigned guards to clients; instructed managers about guard operations; hired managers who were in charge of the guards; and, forwarded complaints about guards to managers.[3]

Since *RSR Sec. Servs.* and *Irizarry*, District Courts in this Circuit have consistently found individual defendants liable as employers where they exercised proximate control directly affecting plaintiffs' employment in much more than an indirect, "but-for" sense; and, refused to find others liable where their operational control was only attenuated. *See, e.g., Juarez v. Precision Apparel, Inc.*, No. 12-CV-2349, 2013 U.S. Dist. LEXIS 131418, at *16-19 (E.D.N.Y. Aug. 21, 2013) (finding individual defendant co-owner of defendant company to be an "employer" where he, among other things, hired and fired the plaintiff, directly supervised and controlled the plaintiff's work schedules and conditions of employment, and directly paid and issued punch cards and receipts to the plaintiff; but, declining to find individual defendant CEO of the company an employer where she did not hire or fire employees, determine their rates of pay, or personally maintain records); *Alladin v. Paramount Mgmt., LLC*, No. 12 Civ. 4309, 2013 U.S. Dist. LEXIS 121949, at *10-11 (S.D.N.Y. Aug. 27, 2013) (finding employer status where individual defendant owner and CEO was plaintiff's direct supervisor and established the terms of plaintiff's employment including her schedule and wages); *Magnuson v. Newman*, No. 10 Civ.

---

[3] The Second Circuit also considered Portnoy's testimony that he could have dissolved the company if his directions were not followed. *Irizarry*, 722 F.3d at 107.

6211, 2013 U.S. Dist. LEXIS 138595, at *30-31 (S.D.N.Y. Sept. 25, 2013) (finding that individual defendant was an employer where, among other things, he controlled the rates and methods of payment of individual plaintiffs' wages; and he controlled and directly supervised the plaintiffs' daily work environment); *Switzoor v. SCI Eng'g, P.C.*, No. 11 Civ. 9332(RA), 2013 U.S. Dist. LEXIS 129994, at *18-19 (S.D.N.Y. Sept. 11, 2013) (finding individual defendants liable as employers where they were "personally involved in all dealings" with plaintiff, and exercised direct "authority over management, supervision, and oversight" of plaintiff's work) (internal quotation marks omitted); *Kalloo v. Unlimited Mech. Co. of NY, Inc.*, No. 11-cv-6215, 2013 U.S. Dist. LEXIS 147487, at *4 (E.D.N.Y. Oct. 10, 2013) (finding individual defendant liable as an employer where, as the defendant in *Irizarry*, he "directed [ ] employees on a daily basis, set workers' schedules, determined rates of pay, visited job sites . . . monitored their hours worked, reviewed their payroll, and told them when and where to work").[4]

Here, plaintiffs have failed to allege that Cottingim exercised the kind of close operational control that Catsimatidis or Portnoy wielded over their employees in *Irizarry* and

---

[4] In these cases, where the defendants were considered "employers", each company was a mere speck compared to Ignite. *See Juarez*, 2013 U.S. Dist. LEXIS 131418, at *16-19 (company employs fewer than five employees; *see* http://www.manta.com/c/mrs4g64/precision-apparel-inc; http://www.manta.com/c/mtc5ppf/precision-warehousing-inc); *Kalloo v. Unlimited Mech. Co. of NY, Inc.*, 908 F. Supp. 2d 344, 344 (E.D.N.Y. 2012) (company employs 12 or fewer employees at all times); *Switzoor*, 2013 U.S. Dist. LEXIS 129994, at *18-19 (company employs fewer than 50 employees.

Unlike the companies in these cases, here, Ignite owns three restaurant brands, which operate in 328 restaurants in 36 states and 10 countries, and employ tens of thousands of employees. Thus, it is inconceivable (that is, not plausible) that Cottingim would (or even could) exercise operational control that directly affects the working conditions of individual servers, bartenders, bussers, and hosts.

*RSR Sec. Servs.* Instead, plaintiffs offer non-specific allegations that would apply to any human resources executive.[5]

For example, plaintiffs allege that Cottingim "oversaw a team of human resources professionals at Defendants' headquarters in Houston, Texas;" and, "was actively involved in the determination and drafting of human resources policies . . . [and] keeping and maintaining employees' payroll records." Cmpl. at ¶¶ 110, 111, 113. These allegations provide a helicopter view of what a human resources executive generally does at the corporate level of a multi-national company; but, that is not nearly enough to plead individual employer status. Cottingim's alleged management of human resources executives in Houston does not demonstrate, or even imply, that his work directly affected any of the work schedules, wages, assignments, or other working conditions of individual servers, bartenders, bussers and hosts in 136 Joe's Crab Shack restaurants located throughout the country. Indeed, these allegations fall far short of branding Cottingim as an "employer" under the Second Circuit's standard.

Paragraph 109 of the complaint exemplifies the conclusory nature of plaintiffs' allegations:

> Kevin Cottingim is directly in charge of overseeing human resources and payroll and ensuring defendants' compliance or non-compliance with the Federal and State Labor laws where Defendants operate Joe's Crab Shack restaurants. As such, Kevin Cottingim was responsible for the creation and application of the illegal policies complained of in this case.

---

[5]  Repeated throughout plaintiff's opposition is their argument that Cottingim does not dispute the allegations against him in the complaint, and that he admits the complaint alleges that he exercises authority over employment-related activities. Cottingim disputes these assertions, and neither admits to the truth nor sufficiency of any allegations made against him or any of the other defendants in this action. Plaintiffs well know that motions under Rule 12(b)(6) are not utilized for disputing allegations (as is a Rule 56 motion).

Cmpl. at ¶ 109.  There is a logical gap in this allegation.  To the extent that Cottingim was directly in charge of overseeing human resources, payroll, and *ensuring compliance* with federal and state labor laws (which plaintiffs fail to sufficiently explain, and would not, in any event, demonstrate that Cottingim is an employer), plaintiffs fail to show how it follows that Cottingim was responsible for "creating" or "applying" any "*illegal* policies".  This allegation further fails to explain what these alleged policies prescribed; how Cottingim was allegedly responsible for "creating" or "applying" these policies; or, whether Cottingim implemented these purported policies in any Joe's Crab Shack restaurants.

Apparently sensing that their conclusory allegations against Cottingim were incurably infirm, plaintiffs (improperly) attached to their opposition exhibits B and C, which are a chain of e-mail messages involving named plaintiff Christopher Hart, Ignite's Senior Director for Human Resources Patricia Simpson ("Simpson"), and Cottingim.[6]  Plaintiffs assert that a single e-mail between plaintiff Hart and Cottingim establishes him as an "employer" under the FLSA.  It does no such thing.

In this e-mail chain, plaintiff Hart, who had been employed as a server for Joe's Crab Shack in Henrietta, New York, complained to Simpson of employment attrition and on-going dissension between employees and local management caused by a "hostile work environment."[7]  Exhibit ("Exh.") B to Pl. Opp.  In a single e-mail, Cottingim merely informed Hart that Simpson had been scheduled to visit the Henrietta location, and encouraged Hart to discuss his grievances

---

[6] Plaintiffs are well aware that this factual submission in support of their opposition to a Rule 12(b)(6) motion is improper.  Despite that exhibits B and C fail to support plaintiffs' argument, the Court should in any event disregard these ancillary facts.

[7] Among other things, Hart complained in his e-mails to Simpson that local management used foul language, engaged in inappropriate touching and verbal assault against subordinates, and retaliated against vocal employees by reducing their shift hours.  Exh. B to Pl. Opp.

with her.  That was the extent of the message.  This e-mail fails to demonstrate that Cottingim had been, or would become, involved in personally handling the purported "hostile" workplace issues; or, that he exercised any specific control over employees' working conditions in Henrietta, or elsewhere.[8]  Quite the contrary; it shows that he delegated inquiries and issues to a subordinate.  Plaintiffs' improper factual submission is in vain.

In addition, the Court should consider Judge Larimer's decision in *Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244 (W.D.N.Y. 2009), which is instructive because it is analogous to this action. In *Tracy*, the Court refused to allow plaintiffs to amend their complaint to name defendants' chief human resources officer as a defendant in a FLSA collective action because plaintiffs failed to adequately plead that he was an employer.[9]  *Id.* at 247.

Judge Larimer recited in his decision the allegations which the Court found insufficient: Madigan has the authority to make decisions concerning the human resources, training, payroll, employee hiring and firing, FLSA classification and benefits aspects of NVR's business, and that he provides support or controls policies which ultimately impact day-to-day operations,

---

[8] In paragraph 110 of the complaint, plaintiffs allege that (seemingly as a matter of practice) Cottingim "would directly email plaintiffs who complain about defendants' human resource policies.  Mr. Cottingim personally encouraged employees at Joe's Crab Shack restaurants to have open dialogue with himself and Ignite's HR team concerning working conditions and pay rates."  Cmpl. at ¶ 110.  Exhibits B and C to plaintiffs' opposition fail to support this allegation. Exhs. B & C to Pl. Opp.  According to exhibits B and C, Cottingim did not directly e-mail "plaintiffs"; rather, he sent one e-mail to one plaintiff (Hart) stating that Simpson would address his grievances.  In addition, exhibits B and C do not show that Cottingim had any substantive discussions with Hart or any other employees concerning working conditions, including but not limited to pay rates.  *Id.*  This isolated incident does not create the practice plaintiffs attempt to allege.

[9] Plaintiffs argue in their opposition that *Tracy* is not controlling because it preceded *Irizarry*. This is irrelevant since *Tracy* is in all respects consistent with *Irizarry*.

employees' work schedules and conditions of employment.[10]  *Id.* at 247.  Among other

deficiencies, Judge Larimer noted that:

> Plaintiffs' allegations establish only that . . . Madigan had the
> general authority to hire and/or fire employees, and that he
> maintained employee records.  Plaintiffs offer no supporting
> details . . . and allege no facts concerning the extent of Madigan's
> alleged involvement in NVR's hiring and/or firing processes[,
> n]otably, plaintiffs do not allege that they or anyone else were
> hired by Madigan. . . .  Plaintiffs' allegations concerning
> Madigan's level of control, if any, over their work schedules,
> conditions of employment, and compensation, are even more
> attenuated.

*Id.*

Judge Larimer's decision also took into account the fact that the defendant company was

a substantial corporate entity.[11]  ("[The Court finds] that plaintiffs have failed to sufficiently

allege that Madigan – the chief human resources officer in an enormous, multi-billion dollar

corporation scattered across hundreds of miles – had and exercised sufficient control over them

to satisfy the economic reality test, or that he was otherwise their 'employer' for FLSA

purposes").  *Id.*

The Tracy holding – which is consistent with *Irizarry* – is directly applicable here.  Like

the allegations in *Tracy*, plaintiffs' allegations here are attenuated, at best.  Similarly, Cottingim

---

[10]  As discussed below, these allegations which Judge Larimer found to be insufficient are
strikingly similar to the plaintiffs' allegations against Cottingim here.

[11]  Plaintiffs argue in their opposition that the size of the defendant corporation in *Tracy* is not
relevant.  However, Judge Larimer's decision adopted, in part, Magistrate Judge Payson's report
and recommendation, which found that "[w]here the relationship between the putative employer
and the plaintiff employee is more attenuated and the size of the corporation larger, employer
liability may not be found."  *Tracy v. NVR, Inc.*, No. 04-cv-6541L, 2009 U.S. Dist. LEXIS
90778, at *15-16 (W.D.N.Y. Sept. 30, 2009), *adopted in part*, 667 F. Supp. 2d 244, 247
(W.D.N.Y. 2009) (citing *Bravo v. Eastpoint Int'l, Inc.*, No. 99 Civ. 9474, 2001 WL 314622, at
*2 (S.D.N.Y. Mar. 30, 2001).

was a Senior Vice President and Chief Administrative Officer for an enormous company. Ignite owns three restaurant brands, which together operate 328 restaurants in 36 states and 10 countries.[12]  It is inconceivable (that is, not "plausible") that Cottingim would exercise operational control that directly affects the working conditions of the tens of thousands of employees of 136 Joe's Crab Shack restaurants nationwide.[13]  Accordingly, Cottingim should be dismissed from this action.

## B. PLAINTIFFS' SHOULD NOT BE GRANTED LEAVE TO REPLEAD

Plaintiffs should not be allowed to replead their allegations against Cottingim because there would be no merit in any proposed amendment. *Hunt v. Alliance North Am. Gov't Income Trust Inc.*, 159 F.3d 723, 728 (2d Cir. 1998) ("[I]t is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile.") (citations omitted); *Hinterberger v. Catholic Health Sys.*, 284 F.R.D. 94, 107 (W.D.N.Y. 2012) ("Leave to amend may properly be denied if the amendment would be futile. . .") (citing *Anderson News, L.L.C. v. American Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 846 (2013)).

Here, for the reasons explained above, Cottingim's former executive position with the corporate defendant standing alone does not deem him to be an "employer" for purposes of the FLSA, or the state laws under which plaintiffs bring their claims. Furthermore, plaintiffs' opposition contains no factual allegations that suggest any viable claim could be pleaded against

---

[12]  Defendant Ignite Restaurant Group, Inc. ("Ignite") owns Joe's Crab Shack, Romano's Macaroni Grill, and Brick House Tavern + Tap.  *See* http://joescrabshack.com/locations; http://www.macaronigrill.com/locations; http://brickhousetavernandtap.com/locations/.

[13]  It is, in part, the very size of the Ignite Corporation and its operations that distinguishes Cottingim from the defendant CEO in *Irizarry*. In *Irizarry*, the defendant owned approximately 35 grocery stores which are all located in New York City. While 35 grocery stores is certainly not a small enterprise, it pales in comparison to Ignite, which is a corporate behemoth. Cottingim's executive responsibilities were not limited to restaurants operating in one city, or state, or country for that matter.

Cottingim, but rather repeats the conclusory assertions that doom the complaint. Accordingly, the Court should not allow plaintiffs to replead their allegations against Cottingim.

## CONCLUSION

For the reasons set forth in Cottingim's motion, as well as those set forth in the corporate defendants' motion to dismiss, the complaint should be dismissed against Cottingim in its entirety. Alternatively, venue of this action should be transferred to the Southern District of Texas in Houston for all further proceedings.

New York, New York
December 26, 2013

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By: /s/ Kenneth J. Kelly
   Kenneth J. Kelly
   Jeffrey H. Ruzal
  250 Park Avenue
  New York, New York  10177-1211
  (212) 351-4500
  *Attorneys for Defendant*
  *Kevin Cottingim*