UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| CHRISTOPHER HART, JEFFREY BEYER, MARIA SARGENT, TAYLOR RAMSEY, ANDREA RANDLETT AND SHELLY CARRERA, *on behalf of themselves and all other employees similarly situated,* | : : : : : |
| Plaintiffs, | : : : |
| – against – | : : |
| CRAB ADDISON, INC. d/b/a JOE'S CRAB SHACK, IGNITE RESTAURANT GROUP, INC., RAYMOND A. BLANCHETTE III, KEVIN COTTINGIM and RODNEY MORRIS, | : : : : : : |
| Defendants. | : : : |

Civ. Action No.13 CV 6458 (CJS)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
DEFENDANT RODNEY MORRIS' MOTION TO DISMISS OR,
ALTERNATIVELY, TO TRANSFER VENUE**

EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, NY 10177
(212) 351-4500
*Attorneys for Defendant
Rodney Morris*

## TABLE OF CONTENTS

**PAGE**

Preliminary Statement.................................................................................................. 1

Argument ..................................................................................................................... 1

    A.  PLAINTIFFS HAVE FAILED TO PLEAD THAT MORRIS IS AN "EMPLOYER".... 1

    B.  PLAINTIFFS' SHOULD NOT BE GRANTED LEAVE TO REPLEAD........................ 9

Conclusion ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alladin v. Paramount Mgmt., LLC*,
  No. 12 Civ. 4309, 2013 U.S. Dist. LEXIS 121949 (S.D.N.Y. Aug. 27, 2013) ..........................3

*Anderson News, L.L.C. v. American Media, Inc.*,
  680 F.3d 162 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 846 (2013) ..............................................8

*Bravo v. Eastpoint Int'l, Inc.*,
  No. 99 Civ. 9474, 2001 WL 314622 (S.D.N.Y. Mar. 30, 2001) ................................................7

*Herman v. RSR Sec. Servs. Ltd.*,
  172 F.3d 132 (2d Cir. 1999).......................................................................................................2

*Hinterberger v. Catholic Health Sys.*,
  284 F.R.D. 94 (W.D.N.Y. 2012) .................................................................................................8

*Hunt v. Alliance North Am. Gov't Income Trust Inc.*,
  159 F.3d 723 (2d Cir. 1998).......................................................................................................8

*Irizarry v. Catsimatidis*,
  722 F.3d 99 (2d Cir. 2013)................................................................................................ *passim*

*Juarez v. Precision Apparel, Inc.*,
  No. 12-CV-2349, 2013 U.S. Dist. LEXIS 131418 (E.D.N.Y. Aug. 21, 2013)..........................3

*Kalloo v. Unlimited Mech. Co. of NY, Inc.*,
  No. 11-cv-6215, 2013 U.S. Dist. LEXIS 147487 (E.D.N.Y. Oct. 10, 2013).........................3, 4

*Magnuson v. Newman*,
  No. 10 Civ. 6211, 2013 U.S. Dist. LEXIS 138595 (S.D.N.Y. Sept. 25, 2013) ........................3

*Switzoor v. SCI Eng'g, P.C.*,
  No. 11 Civ. 9332(RA), 2013 U.S. Dist. LEXIS 129994 (S.D.N.Y. Sept. 11, 2013).................3

Tracy *v. NVR, Inc.*,
  667 F. Supp. 2d 244 (W.D.N.Y. 2009) ................................................................................6, 7, 8

*Tracy v. NVR, Inc.*,
  No. 04-cv-6541L, 2009 U.S. Dist. LEXIS 90778 (W.D.N.Y. Sept. 30, 2009), *adopted
  in part*, 667 F. Supp. 2d 244 (W.D.N.Y. 2009) .....................................................................7, 8

Defendant Rodney Morris ("Morris") respectfully submits this reply memorandum in further support of his motion to dismiss the complaint with prejudice or, alternatively, to transfer this action to the United States District Court for the Southern District of Texas in Houston.[1]

## PRELIMINARY STATEMENT

Plaintiffs in their opposition argue that Morris must be considered an employer simply because he is a human resources executive who is generally engaged in high-level employment-related decision-making.   However, plaintiffs' argument runs afoul of the Second Circuit's decision in *Irizarry* and its progeny, which dictate that a corporate executive will only be considered an "employer" if he exercises close control over and directly affects employees' working conditions.   This includes decision-making concerning an individual employee's schedule or compensation, hiring or firing, or active management or supervision.  As plaintiffs have failed to allege any such facts, their claims against Morris should be dismissed.

## ARGUMENT

## A.  PLAINTIFFS HAVE FAILED TO PLEAD THAT MORRIS IS AN "EMPLOYER"

Plaintiffs, in their opposition, misconstrue *Irizarry*[2], and all but ignore the many district court decisions that have since followed its rule.  Plaintiffs (incorrectly) argue that the Second Circuit found the individual defendant liable as an employer because he was "involved at a high-level" in the company's operational control, and that an individual officer of a corporation is generally an employer under the FLSA "whenever" he possesses operational control.  Plaintiffs' Opposition ("Pl. Opp.") at 1-2, 6.  This is not what the Second Circuit has held.

---

[1] Morris' reply in further support of his alternative motion to transfer the action incorporates by reference the entirety of defendants Crab Addison, Inc.'s and Ignite Restaurant Group, Inc.'s reply memorandum in further support of their alternative motion to transfer the action.

[2] *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013).

The Second Circuit explained that "[a] person exercises operational control over employees if his or her role within the company, and the decisions it entails, *directly affect* the nature or conditions of the employees' employment," and that "the relationship between the individual's operational function and the plaintiffs' employment must be closer in degree than *simple but-for causation*."[3]  *Irizarry*, 722 F.3d at 110 (emphasis added).

"Closer in degree than simple but-for causation" means that an employer exercises "boots-on-the-ground" control over the business operations that directly affects employees' working conditions.  *Id.*  The *Irizarry* Court did not find individual defendant CEO John Catsimatidis liable as an employer because he was "involved at a high-level."  To the contrary, he was found liable because he exercised management that directly affected plaintiffs' employment.  The Second Circuit found that "'[t]here is no area of Gristede's which is not subject to [Catsimatidis'] control,'" and that he was "active in running Gristede's, including contact with individual stores, employees, vendors, and customers."  *Id.* at 103, 116.  Among other things, the Court considered that Catsimatidis regularly visited stores, made suggestions to managers in individual stores regarding product displays, received individual customer complaints and then consulted with store employees to address those complaints.  The Court also considered the absolute financial control Catsimatidis had over the business.  *Id.* at 115 ("he could shut down the business, declare bankruptcy, as well as provide the personal signature necessary for a bank letter of credit to be issued in favor of Gristede's") (citation omitted).

---

[3] *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999) (finding individual defendant company Chairman to be an "employer" where he supervised and controlled security guard employees' work schedules; personally assigned guards to clients; instructed managers about guard operations; hired managers who were in charge of the guards; and, forwarded complaints about guards to managers).  *Irizarry*, 722 F.3d at 106.

Since *Irizarry*, District Courts in this Circuit have consistently found individual defendants liable as employers where they exercised close control that directly affected plaintiffs' employment in much more than an indirect, "but-for" sense; and, refused to find others liable where their operational control was only attenuated. *See, e.g., Juarez v. Precision Apparel, Inc.*, No. 12-CV-2349, 2013 U.S. Dist. LEXIS 131418, at *16-19 (E.D.N.Y. Aug. 21, 2013) (finding individual defendant co-owner of defendant company to be an "employer" where he, among other things, hired and fired the plaintiff, directly supervised and controlled the plaintiff's work schedules and conditions of employment, and directly paid and issued punch cards and receipts to the plaintiff; but, declining to find individual defendant CEO of the company an employer where she did not hire or fire employees, determine their rates of pay, or personally maintain records); *Alladin v. Paramount Mgmt., LLC*, No. 12 Civ. 4309, 2013 U.S. Dist. LEXIS 121949, at *10-11 (S.D.N.Y. Aug. 27, 2013) (finding employer status where individual defendant owner and CEO was plaintiff's direct supervisor and established the terms of plaintiff's employment including her schedule and wages); *Magnuson v. Newman*, No. 10 Civ. 6211, 2013 U.S. Dist. LEXIS 138595, at *30-31 (S.D.N.Y. Sept. 25, 2013) (finding that individual defendant was an employer where, among other things, he controlled the rates and methods of payment of individual plaintiffs' wages; and he controlled and directly supervised the plaintiffs' daily work environment); *Switzoor v. SCI Eng'g, P.C.*, No. 11 Civ. 9332(RA), 2013 U.S. Dist. LEXIS 129994, at *18 (S.D.N.Y. Sept. 11, 2013) (finding individual defendants liable as employers where they were "personally involved in all dealings" with plaintiff, and exercised direct "authority over management, supervision, and oversight" of plaintiff's work); *Kalloo v. Unlimited Mech. Co. of NY, Inc.*, No. 11-cv-6215, 2013 U.S. Dist. LEXIS 147487, at *4 (E.D.N.Y. Oct. 10, 2013) (finding individual defendant liable as an employer where, as the

3

defendant in *Irizarry*, he "directed [ ] employees on a daily basis, set workers' schedules, determined rates of pay, visited job sites . . . monitored their hours worked, reviewed their payroll, and told them when and where to work")[4].

Here, plaintiffs have not come close to alleging that Morris exercised operational control that proximately affected the putative plaintiff employees of each of the 136 Joe's Crab Shack restaurants located in 33 states.  For example, the complaint contains no allegations that Morris hired or fired individual busboys,[5] determined rates of pay for bartenders; configured workday shifts for servers; or, assigned work assignments or schedules for hosts.  Instead, plaintiffs merely offer opaque, non-specific, and generic allegations that would apply to any top human resources officer; and, which fail to show that Morris took any action that had any direct impact on plaintiffs' employment.[6]

---

[4] In these cases, where the defendants were considered "employers", each company was significantly smaller than Ignite here.  *See Juarez*, 2013 U.S. Dist. LEXIS 131418, at *16-19 (company employs fewer than five employees; *see* http://www.manta.com/c/mrs4g64/precision-apparel-inc; http://www.manta.com/c/mtc5ppf/precision-warehousing-inc); *Kalloo v. Unlimited Mech. Co. of NY, Inc.*, 908 F. Supp. 2d 344, 344 (E.D.N.Y. 2012) (company employs 12 or fewer employees at all times); *Switzoor*, 2013 WL U.S. Dist. LEXIS 129994, at *18-19 (company employs fewer than 50 employees).

Unlike the companies in these cases, here, the Ignite Corporation owns three restaurant brands, which operate in 328 restaurants in 36 states and 10 countries, and employ tens of thousands of employees.  Thus, it is inconceivable (that is, not plausible) that Morris would (or even could) exercise operational control that directly affects the working conditions of individual servers, bartenders, bussers, and hosts.

[5] And indeed they cannot.  Morris has been employed by Ignite since April 2013, and not one of the six named plaintiffs was employed during the time Morris has held his current position.  Five of the six named plaintiffs ceased working for Joe's Crab Shack in 2012, and the sixth in January 2013.  Complaint ("Cmpl.") at ¶¶ 37-42.

[6] Repeated throughout plaintiff's opposition is their argument that Morris does not dispute the allegations against him in the complaint, and that he admits the complaint alleges that he exercises authority over employment-related activities.  Morris disputes these assertions, and neither admits to the truth nor sufficiency of any allegations made against him or any of the other

4

For example, plaintiffs allege that "given his specialty in building organizational relationships [*sic*] from the dish room to the board room, Mr. Morris is responsible for the management of the work environment at Joe's Crab Shack restaurants." Cmpl. at ¶ 117. This allegation sounds catchy, but what does it mean? Among other things, it fails to explain what "building organizational relationships" entails, or if such "organizational relationships" directly affects any aspect of plaintiffs' working conditions.

Plaintiffs also allege that Morris "oversees a team of human resources professionals based in defendants' headquarters in Houston, Texas." *Id.* at ¶ 118. This allegation may be accurate, and it certainly makes sense simply because Morris is Ignite's chief human resources officer. However, it does not demonstrate, or even imply, that Morris' management of other executives in Houston directly affects any of the individual employee's schedules, wages, or assignments in their respective restaurants scattered throughout the country.

Plaintiffs also allege that Morris' responsibilities include "the resolution of issues and disputes regarding hiring and firing Plaintiffs, determining rates of pay and maintaining employment records."[7] Cmpl. at ¶ 117. However, the complaint fails to identify the (presently

---

defendants in this action. Plaintiffs well know that motions under Rule 12(b)(6) are not utilized for disputing allegations (as a Rule 56 motion).

[7] This allegation is inappropriately directed to Morris. Plaintiffs explain in their opposition that this allegation actually refers to defendant Cottingim and not Morris, and then argue that the allegation should automatically implicate Morris simply because he assumed Cottingim's responsibilities. Pl. Opp. at 9 ("[T]here is a[n unspecified] good faith basis to believe that Morris and his human resources team are in fact actively involved in interacting directly with employees just as his predecessor was"). Plaintiffs attach as a factual submission, exhibits B and C to their opposition (Dkt. #39), which are a number of e-mail messages exchanged among defendant Cottingim, Ignite's former Chief Administrative Officer responsible for human resources and payroll, Patricia Simpson, Ignite's Senior Director for Human Resources, and named plaintiff Christopher Hart. In these e-mails, plaintiff Hart explains several grievances he had as an employee of Joe's Crab Shack; and Simpson replies by attempting to resolve those grievances. However, conspicuously absent from this correspondence is Morris. In fact, these e-mails were

small number of) plaintiffs who were involved in such disputes, or explain the actions Morris

took to resolve them; whether Morris determined rates of pay for different employees in different

locations, and in which job categories (*e.g.,* supervisor, busboy, Ignite executive); or, how

merely "maintaining" employment records had any real impact on plaintiffs' working conditions.

Indeed, paragraph 116 of the complaint exemplifies the pervasive conclusory nature of

the allegations:

> Rodney Morris is directly in charge of overseeing human resources
> and payroll and ensuring defendants' compliance or non-
> compliance with the Federal and State Labor laws where
> Defendants operate Joe's Crab Shack restaurants.   As such,
> Rodney Morris is responsible for the maintenance and application
> of the illegal policies complained of in this case.

Cmpl. at ¶ 116.  Plaintiffs' conclusion does not follow from the statements that precede it.  To

the extent that Morris is directly in charge of overseeing human resources, payroll, and ensuring

compliance with federal and state labor laws (which plaintiffs fail to sufficiently explain, and

would not in any event demonstrate that Morris is an employer), plaintiffs fail to show how it

follows that Morris was responsible for disseminating "illegal policies" to Joe's Crab Shack

restaurants.  This allegation further fails to explain what these alleged policies prescribed; how

Morris was responsible for the "maintenance and application" of these policies; or, whether

Morris implemented these policies in any of the 135 Joe's Crab Shack restaurants located

throughout the country.

---

all exchanged before Morris had even been hired as Senior Vice President of Human Resources
for Ignite.  Thus, plaintiffs' exhibits, in addition to being an inappropriate factual submission, fail
to support the hollow allegation that Morris was engaged in resolving disputes, determined rates
of pay, or ever communicated with any Joe's Crab Shack employees.

Tracy v. NVR, Inc., 667 F. Supp. 2d 244 (W.D.N.Y. 2009) is instructive because it is analogous to this action.  In Tracy, Judge Larimer refused to allow plaintiffs to amend their complaint to name defendants' chief human resources officer as a defendant in a FLSA collective action because plaintiffs failed to adequately plead that he was an employer.[8]  Id. at 247.

Judge Larimer recited in his decision the allegations which the Court found insufficient: Madigan has the authority to make decisions concerning the human resources, training, payroll, employee hiring and firing, FLSA classification and benefits aspects of NVR's business, and that he provides support or controls policies which ultimately impact day-to-day operations, employees' work schedules and conditions of employment.[9]  Id. at 247.   Among other deficiencies, Judge Larimer noted that:

> Plaintiffs' allegations establish only that . . . Madigan had the general authority to hire and/or fire employees, and that he maintained employee records.  Plaintiffs offer no supporting details . . . and allege no facts concerning the extent of Madigan's alleged involvement in NVR's hiring and/or firing processes[, n]otably, plaintiffs do not allege that they or anyone else were hired by Madigan. . . .   Plaintiffs' allegations concerning Madigan's level of control, if any, over their work schedules, conditions of employment, and compensation, are even more attenuated.

Id.

---

[8]  Plaintiffs argue in their opposition that Tracy is not controlling because it preceded Irizarry. This is irrelevant since Tracy is in all respects consistent with Irizarry, and is thus controlling.

[9]  As discussed below, these allegations which Judge Larimer found to be insufficient are strikingly similar to the plaintiffs' allegations against Morris here.

The Court's decision also took into account the fact that the defendant company was a substantial corporate entity.[10] ("[The Court finds] that plaintiffs have failed to sufficiently allege that Madigan – the chief human resources officer in an enormous, multi-billion dollar corporation scattered across hundreds of miles – had and exercised sufficient control over them to satisfy the economic reality test, or that he was otherwise their 'employer' for FLSA purposes"). *Id.*

The Tracy holding makes perfect sense, is consistent with *Irizarry*, and is directly applicable here.  Like the allegations in *Tracy*, plaintiffs' allegations here are attenuated, at best.  Similarly, Morris is the chief human resources officer for an enormous company.  Ignite owns three restaurant brands, which together operate 328 restaurants in 36 states and 10 countries.[11]  It is inconceivable (that is, not "plausible") that Morris would exercise operational control that directly affects the working conditions of the tens of thousands of employees of 136 Joe's Crab Shack restaurants nationwide.[12]  Accordingly, Morris should be dismissed from this action.

---

[10]  Plaintiffs argue in their opposition that the size of the defendant corporation in *Tracy* is not relevant.  However, Judge Larimer's decision adopted, in part, Magistrate Judge Payson's report and recommendation, which found that "[w]here the relationship between the putative employer and the plaintiff employee is more attenuated and the size of the corporation larger, employer liability may not be found." *Tracy v. NVR, Inc.*, No. 04-cv-6541L, 2009 U.S. Dist. LEXIS 90778, at *15-16 (W.D.N.Y. Sept. 30, 2009), *adopted in part*, 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009) (citing *Bravo v. Eastpoint Int'l, Inc.*, No. 99 Civ. 9474, 2001 WL 314622, at *2 (S.D.N.Y. Mar. 30, 2001).

[11]  Defendant Ignite Restaurant Group, Inc. ("Ignite") owns Joe's Crab Shack, Romano's Macaroni Grill, and Brick House Tavern + Tap.  *See* http://joescrabshack.com/locations; http://www.macaronigrill.com/locations; http://brickhousetavernandtap.com/locations/.

[12]  It is, in part, the very size of the Ignite Corporation and its operations that distinguishes Morris from the defendant CEO in *Irizarry*.  In *Irizarry*, the defendant owned approximately 35 grocery stores which are all located in New York City.  While 35 grocery stores is certainly not a small enterprise, it pales in comparison to Ignite, which is a corporate behemoth.  Morris' executive responsibilities are not limited to restaurants operating in one city, or state, or country for that matter.

## B. PLAINTIFFS' SHOULD NOT BE GRANTED LEAVE TO REPLEAD

Plaintiffs should not be allowed to replead their allegations against Morris because there would be no merit in any proposed amendment. *Hunt v. Alliance North Am. Gov't Income Trust Inc.*, 159 F.3d 723, 728 (2d Cir. 1998) ("[I]t is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile.") (citations omitted); *Hinterberger v. Catholic Health Sys.*, 284 F.R.D. 94, 107 (W.D.N.Y. 2012) ("Leave to amend may properly be denied if the amendment would be futile. . .") (citing *Anderson News, L.L.C. v. American Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 846 (2013)).

Here, for the reasons explained above, Morris' executive position with the corporate defendant standing alone does not deem him to be an "employer" for purposes of the FLSA, or the state laws under which plaintiffs bring their claims. Furthermore, plaintiffs' opposition contains no factual allegations that suggest any viable claim could be pleaded against Morris, but rather repeats the conclusory assertions that doom the complaint. Accordingly, the Court should not allow plaintiffs to replead their allegations against Morris.

## CONCLUSION

For the reasons set forth in Morris' motion, as well as those set forth in the corporate defendants' motion to dismiss, the complaint should be dismissed against Morris in its entirety. Alternatively, venue of this action should be transferred to the Southern District of Texas in Houston for all further proceedings.

New York, New York
December 26, 2013

                                        Respectfully submitted,

                                        EPSTEIN BECKER & GREEN, P.C.

                                        By:  /s/ Kenneth J. Kelly
                                               Kenneth J. Kelly
                                               Jeffrey H. Ruzal
                                        250 Park Avenue
                                        New York, New York  10177-1211
                                        (212) 351-4500
                                        *Attorneys for Defendant*
                                        *Rodney Morris*

Of Counsel:

Michael S. Kun, Esq.
Epstein Becker & Green, P.C.
1925 Century Park East
Suite 500
Los Angeles, CA 90067-2506
(310) 556-8861