UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHRISTOPHER HART, JEFFREY BEYER, MARIA
SARGENT, TAYLOR RAMSEY, ANDREA
RANDLETT AND SHELLY CARRERA *on behalf of
themselves and all other employees similarly situated,*

                              Plaintiffs,

                – against –

CRAB ADDISON, INC. d/b/a JOE'S CRAB SHACK,
IGNITE RESTAURANT GROUP, INC., RAYMOND
A. BLANCHETTE III, KEVIN COTTINGIM and
RODNEY MORRIS,

                           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No.:
13 CV 6458

 

 

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FLSA AND STATE LAW TIP CREDIT CLAIMS

 

 

**EPSTEIN BECKER & GREEN, P.C.**

250 Park Avenue
New York, New York 10177-1211
Tel: 212.351.4500

Attorneys for Defendants

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ..................................................................................1

FACTS AND ALLEGATIONS................................................................................3

ARGUMENT..........................................................................................................5

POINT I    THE AMENDED COMPLAINT FAILS TO
           STATE A CLAIM UNDER THE FLSA ..............................................5

      i.   The Amended Complaint Fails to Contain the Required
          Specificity Regarding Alleged Non-Tipped Work.................................. 6

     ii.   Even if the Tip Credit Claim is Sufficiently Pleaded, Plaintiffs
          Alleged Violation of the FLSA Minimum Wage Requirement Still Fails............. 16

POINT II   PLAINTIFFS' STATE LAW TIP-CREDIT CLAIMS
           ARE INSUFFICIENTLY PLEADED AND
           SHOULD LIKEWISE BE DISMISSED ..............................................18

POINT III  THE COURT SHOULD NOT PERMIT PLAINTIFFS
           TO AGAIN AMEND THEIR COMPLAINT........................................19

CONCLUSION.....................................................................................................21

FIRM:25991367v1

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................................... 2, 5-6, 18

*Barcellona v. Tiffany English Pub., Inc.*
    597 F.2d 464 (5th Cir. 1979) ................................................................................15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...........................................................................2, 5-6, 17-18

*Berger v. Apple Reit Ten, Inc.*
    No. 13-1395-cv, 2014 U.S. App. LEXIS 7583 (2d Cir. Apr. 23, 2014)........................ 19-20

*Chhab v. Darden Rests., Inc.,*
    No. 11 Civ. 8345 (NRB) 2013 U.S. Dist. LEXIS 135926 (S.D.N.Y. Sept. 19, 2013) ..............7

*Crate v. Q's Rest. Group LLC,*
    8:13-Cv-2549-T-24, 2014 U.S. Dist. LEXIS 61360 (M.D. Fla. May 2, 2014) ................10, 15

*DeJesus v. HF Mgmt. Servs., LLC,*
    726 F.3d 85 (2d Cir. 2013), *cert. denied,* 134 S. Ct. 918 (2014) ................................ 2, 5-6, 18

*Denny v. Barber,*
    576 F.2d 465 (2d Cir. 1978).....................................................................................20

*Fast v. Applebee's Int'l, Inc.,*
    502 F. Supp. 2d 996 (W.D. Mo. 2007) ....................................................................10

*Hatch v. Dep't for Children, Youth & Their Families,*
    274 F.3d 12 (1st Cir. 2001).....................................................................................20

*Jones v. Casey's Gen. Stores,*
    538 F. Supp. 2d 1094 (S.D. Iowa 2008) ....................................................................6

*Lundy v. Catholic Health Sys. of Long Island, Inc.,*
    711 F.3d 106 (2d Cir. 2013).....................................................................2, 5-6, 16, 18

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.,*
    723 F.3d 192 (2d Cir. 2013).....................................................................2, 5-6, 16, 18

FIRM:25991367v1

*Pellon v. Bus. Representation Int'l, Inc.*,
    528 F. Supp. 2d 1306 (S.D. Fla. 2007), *aff'd*, 291 F. App'x 310 (11th Cir. 2008) ........... 12-13

*Psihoyos v. John Wiley & Sons, Inc.*,
    748 F.3d 120 (2d Cir. 2014)................................................................................................19

*Roberts v. Apple Sauce, Inc.*,
    945 F. Supp. 2d 995 (N.D. Ind. 2013) ........................................................ 6, 11-14

*Sampson v. Medisys Health Network, Inc.*,
    No. 10-CV-1342, 2013 U.S. Dist. LEXIS 43771 (E.D.N.Y. Mar. 18, 2013).........................21

*Townsend v. BG-Meridian, Inc.*,
    No. Civ.-04-1162-F, 2005 U.S. Dist. LEXIS 45200 (W.D. Okla. Nov. 7,2005)....................13

*U.S. v. Brow*,
    462 F. App'x 19 (2d Cir. 2012) ........................................................................................20

*White v. Classic Dining Acquisition Corp.*, No. 1:11-CV-712-JMS-MJD,
    2012 U.S. Dist. LEXIS 52215 (S.D. Ind. Apr. 13, 2012) ..........................................6, 17

## RULES AND STATUTES

29 C.F.R. § 531.56(e)................................................................................................... 8-9

29 C.F.R. § 785.47.........................................................................................................15

29 U.S.C. § 201, *et seq.*....................................................................................................4

Ariz. Admin. Code § R20-5-1207(A) ...............................................................................19

Ariz. Rev. Stat. Ann. § 23-363(C) ....................................................................................19

Fed. R. Civ. P. 15(a)(2)....................................................................................................19

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.9.............................................................18

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.3.............................................................18

## OTHER AUTHORITIES

DOL, Wage and Hour Div. Fact Sheet No. 15:
    Tipped Employees Under the Fair Labor Standards Act (Rev. July 2013) ................... 9-10, 12

DOL, Wage and Hour Div. Opn Letter 78-81 (Mar. 28, 1980)........................................12

DOL, Wage and Hour Div. Opn Letter 854 (Dec. 20, 1985) ..........................................14

DOL Wage and Hour Div. Field Operations Manual,
    located at http://dol.gov/whd/FOH/index.htm ...................................................................9, 14

DOL Occupational Information Network,
    located at http://www.onetcenter.org/overview.html...............................................................14

Md. DOL, Licensing & Regs. Wage and Hour Guide FAQs, located at
    www.dllr.state.md.us/labor/wagepay/wptipped.shtml............................................................19

FIRM:25991367v1

Defendants Crab Addison, Inc. ("Crab Addison"), Ignite Restaurant Group, Inc. ("Ignite"), Raymond Blanchette III, Kevin Cottingim and Rodney Morris respectfully submit this memorandum in support of their motion to dismiss with prejudice plaintiffs' Fair Labor Standards Act ("FLSA") claims, and their tip-credit claims brought under the laws of Arizona, Illinois, Maryland, Missouri and New York.[1] Despite being given a second opportunity to plead plausible FLSA and state law tip-credit claims, and specific guidance from this Court on how to do that, plaintiffs remain entirely unable to do so. For the reasons set forth below, these claims should now be dismissed with prejudice.

## PRELIMINARY STATEMENT

Plaintiffs filed their initial complaint on August 28, 2013. (DE 1.) They brought claims under the FLSA and the wage-hour laws of Arizona, Illinois, Maryland, Missouri and New York. Plaintiffs advanced the implausible claim that, although each was employed as a "tipped" server at one of more than 135 Joe's Crab Shack restaurants nationwide, they all "regularly" spent more than half of their six- or eight-hour shifts not generating tips at all, but rather working as janitors, cooks' helpers and dishwashers, at a pay rate of $2.13 an hour. None of the Plaintiffs provided any degree of specificity as to any date he or she worked at these tasks, how long each task took, or how often they were done. They simply claimed, in conclusory fashion, that they all "regularly" worked a shift and "would" spend a "majority" of their time engaging in activities contained in a list of non-serving tasks.

Because of the overwhelming deficiencies in plaintiffs' initial complaint, and the fact that the allegations of the complaint were contradicted by their affirmations and those of their co-

---

[1] Ignite is the parent company of Crab Addison, which owns and operates a nationwide chain of restaurants known as Joe's Crab Shack. For the purposes of this brief, Ignite and Crab Addison will be referred to jointly as "Ignite."

workers, on October 8, 2013 defendants moved to dismiss the complaint on the grounds that it failed to meet the "plausibility standard" enunciated by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as well as the specific pleading requirements enunciated by the Second Circuit for FLSA actions in *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 918 (2014); *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013); and *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192 (2d Cir. 2013). (DEs 23-26.) Plaintiffs opposed that motion. (DEs 38-39.)

On June 24, 2014 the Court rendered its decision. (DE 63.) The Court noted that "[t]he Complaint does not allege any particular date on which any particular event occurred . . . ." (Decision at 14.) The Court agreed with defendants that " 'a plaintiff seeking to plead a violation of the FLSA must set forth, at a minimum, at least some dates and times with some degree of quantifiable specificity, to show that the claim crosses the line into the realm of plausibility' " and that given "the relatively short length of time that each Plaintiff worked for Ignite" they should be able to provide some specific information to support their claims. (*Id.*, at 18, 23.) The Court ruled that to demonstrate plausibility, plaintiffs must allege that for "a substantial amount of time, or more than twenty percent of their workweeks, [they were] engaged in related but non-tip-producing work." (*Id.* at 21) (citation omitted) (emphasis in original). Plaintiffs have not done that in their amended complaint, and it is now clear that they cannot.

## FACTS AND ALLEGATIONS[2]

Ignite owns and operates more than 135 informal, family-friendly restaurants under the trade name "Joe's Crab Shack" in 32 states, and employs, on average, about 10,000 employees each year. (Simpson Dec. ¶ 4; Amended Comp. ¶¶ 83-85.)

Plaintiffs are former employees of Ignite who worked as servers. In 17 paragraphs that are verbatim repetitions of their original complaint, they simply allege -- *again without specifying a single date or work week* -- that each "regularly" worked an eight- or six-hour shift as a server, and that they "regularly" spent more than half their time doing a multiplicity of tasks completely unrelated to serving patrons. Instead, they claim that, depending on the shift, they were assigned tasks in connection with opening the restaurant, such as sanitizing woodwork, degreasing garage doors and window sills, and portioning vegetables. Likewise, they allege they were assigned tasks relating to closing the restaurant for the night, such as removing light fixtures, "cleaning every" window in the store, and servicing soda machines. And, plaintiffs allege, that apart from opening and closing tasks, during the shift the servers engaged in what they term "running sidework," which seemingly consisted of everything, other than taking orders and serving, necessary to operate a restaurant, such as washing dishes, and sanitizing coffee cups and tea kettles. (Amended Comp. ¶¶ 43-78.) They allege that the opening and closing work each took an hour, and the running sidework, presumably interspersed between taking and delivering orders, generally took 2.5 or 3.5 hours. (*Id.*, ¶¶ 48-50, 54-56, 60-61, 64-66, 69-71, 75-77.)[3] Thus, they allege they spent a total of 3.5 or 4.5 hours "on every shift, or almost every shift," performing non-tip producing work (*id.*, ¶ 129), and accordingly, they were not paid the

---

[2] The facts are set forth in the declaration of Patricia Simpson, dated October 7, 2013 ("Simpson Dec."), and in the Amended Complaint ("Amended Comp."). (DEs 24, 64.)

[3] These paragraphs are virtually identical to the same numbered paragraphs in the original complaint.

minimum wage required by the FLSA, 29 U.S.C. § 201, *et seq.*, and the minimum wage laws of Arizona, Illinois, Maryland, Missouri and New York.

Specifically as to the FLSA, plaintiffs claim that they were paid the "subminimum" wage permitted to be paid to tipped employees by 29 U.S.C. § 203(m), but that defendants should be prohibited from applying the statutory "tip credit" for the difference between the sub-minimum wage and the minimum wage for three reasons: (1) "[d]uring every workweek, and during every shift (or almost every shift), each plaintiff and class member performed jobs that were not related to his or her tip-producing job, including opener or closer duties (or both) and sidework, as described above" (Amended Comp. ¶ 134.; *see also Id.,* ¶¶ 132-135) (the "dual jobs" claim); (2) "the plaintiffs and class members spent more than 20% of the workweek performing tasks that did not produce tips, the time they spent performing such tasks does not qualify for the tip credit, and the time plaintiffs and class members spent doing such jobs must be paid at least at the minimum wage" (Amended Comp. ¶ 138; *see also Id.,* ¶¶ 136-138) (the "20% claim"); and (3) "defendants failed to inform the plaintiffs and class members of the tip credit provisions as required under Federal law." (*Id.* ¶ 139) (the "tip-notice claim").

Plaintiffs purport to bring their FLSA claim as a collective action representing a nationwide FLSA class of tipped employees, seeking the difference between the federal minimum wage and the subminimum wage payable to tipped employees that they received. Although the amended complaint alleges in several introductory paragraphs (¶¶ 4, 5, 6, 43) that "defendants" have a "policy" not to pay the federal or various state minimum wages, the

FIRM:25991367v1

complaint fails to specify who instituted the "policy," where (if anywhere) it is memorialized, or whether, when and how it was disseminated (if at all). (In fact, no such policy exists.)[4]

Each of the five plaintiffs also purports to bring a Rule 23 class action in New York for a separate "subclass" of tipped employees under the different wage-hour laws of the states in which they worked -- Arizona, Illinois, Maryland, Missouri and New York. (*Id.*, 141-157, 163-174, 180-191, 197-210, 216-227.) In each of the subclasses, plaintiffs seek damages allegedly incurred during the two, three, or six years preceding the filing of the complaint, per each state's different statute of limitations.

## ARGUMENT

### POINT I

### THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE FLSA

The Supreme Court has stated that, when a complaint is attacked by Rule a 12(b)(6) motion to dismiss, a plaintiff is obligated to provide the "grounds" for his "entitlement to relief," which grounds must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555-56. (Citation omitted) A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Id.* at 570. "Under Federal Rule of Civil Procedure 8(a)(2), a to relief plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Pleadings that contain "no more than

---

[4]Although this motion does not specifically address plaintiffs' claim that "defendants failed to inform the plaintiffs" of the tip credit provision as required by federal law (Amended Comp., ¶ 139), all tipped employees were, in fact, informed of the tip credit in multiple ways. This issue of fact, however, cannot be addressed on this motion to dismiss. If this motion is granted without leave to replead, plaintiffs' case stands or falls on their proving that each of the class members was not informed of the tip credit practice.

conclusions, are not entitled to the assumption of truth" otherwise applicable to complaints in the context of motions to dismiss. *Id.* at 679; *DeJesus*, 726 F.3d at 85; *Lundy*, 711 F.3d at 106; *Nakahata*, 723 F.3d at 192.

*Lundy* and its progeny demonstrate that a plaintiff seeking to plead a violation of the FLSA must set forth, at a minimum, at least some dates and times with some degree of quantifiable specificity, to show that the claim crosses the line into the realm of plausibility. *See also Roberts v. Apple Sauce, Inc.*, 945 F. Supp. 2d 995 (N.D. Ind. 2013) (allegations in complaint not specific enough to state a plausible claim); *White v. Classic Dining Acquisition Corp.*, No. 1:11-CV-712-JMS-MJD, 2012 U.S. Dist. LEXIS 52215 (S.D. Ind. Apr. 13, 2012) (failure, among other things, to allege how often the "subminimum" wage plus tips did not pay the minimum wage is fatal to the complaint); *Jones v. Casey's Gen. Stores*, 538 F. Supp. 2d 1094 (S.D. Iowa 2008).[5] Despite guidance from this Court in its decision dismissing the previous FLSA claims, plaintiffs remain unable to plead a plausible claim that defendants improperly took a tip credit and, instead of clarifying the amended complaint, the addition of a "dual jobs" theory only leads to further confusion and implausibility.

### i. The Amended Complaint Fails to Contain the Required Specificity Regarding Alleged Non-Tipped Work

The amended complaint suffers from the same deficiencies that led the Second Circuit to reject the complaints in *Lundy, DeJesus* and *Nakahata*, and that led this Court to reject the initial complaint here. In its decision, this Court noted that the allegations in the initial complaint "pertain only to particular shifts, as opposed to entire work weeks" and that "[t]he Complaint [did] not allege any particular date on which any particular event occurred", nor was "[t]he actual

---

[5]The standards to plead a plausible claim are more fully set forth in Defendants' Memorandum of Law in Support of Motion to Dismiss Complaint or to Transfer Venue at 4-6. (DE 26.)

frequency of such shifts . . . stated." (Decision at 14, 15, 22.) Without such information a determination could not be made whether plaintiffs spent " 'more than twenty percent of their workweeks engaged in related but non-tip-producing work.' "[6] (Decision at 21 (citing *Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345 (NRB) 2013 U.S. Dist. LEXIS 135926, at \*11 (S.D.N.Y. Sept. 19, 2013).)) Plaintiffs attempt to address the Court's direction in footnote 26 by alleging that they performed "opener" or "closer" duties and "running sidework" every shift; however, the amended complaint does not cure this deficiency, but only exacerbates it by "block pleading" how much time they spent as a whole on each of these general categories of work, and by including a new legal theory on which plaintiffs base their claim that the FLSA tip credit provision was violated.

Plaintiff Hart's allegations illustrate the amended complaint's deficiencies. Hart generally alleges that, depending on the shift, he performed either "opener duties" or "closer duties". (Amended Comp. ¶ 48.) "Opener duties" consisted of "cleaning the dining room and all the wood work . . ., dusting the pictures on the walls and windexing the interior windows and picture frames; scrubbing the legs of all the chairs; degreasing and shining exposed metal including: tables, garage doors and window sills; cleaning out the cracks of the booths; cleaning, cutting and portioning out vegetables, noodles and rice for cooks; preparing sanitation buckets for prep and expo areas and setting up the expo line." (*Id.*) He alleges that all told these tasks took an hour to perform. There is not a single allegation as to how long any specific task within this group took. (*Id.*)

He then alleges that he sometimes performed "closing duties" which consisted of "breaking apart and cleaning the soda machines, tea dispensers and expo line; removing, then

---

[6]This Court explained the difference between related but non-tip producing work and non-tipped (*i.e.,* dual occupation) work. (Decision at 19-21.)

cleaning the light fixtures; scraping the gum from under every table in the store; cleaning and wiping down all the shelves in the kitchen after removing all the items on the shelves; cleaning every window in the store; moving furniture to clean underneath; deck brushing the floors; cleaning and sanitizing sinks; sweeping the entire restaurant; emptying garbage and replacing liners then taking the garbage to the dumpsters." (*Id.*, ¶ 49) Again, *plaintiffs lump all these tasks together and allege that they all took one hour to perform.* As with the opener duties, *there is not a single allegation as to how long any specific task within this group took.* (*Id.*)

Finally, Hart alleges that he performed "running side work" during each shift, which consisted of "washing dishes because often the restaurant did not have a dishwasher; emptying trash cans and replacing liners; hand wiping all plates and silverware; sweeping, dusting, sanitizing and bleaching coffee cups, mugs, pots and tea kettles." (*Id.*, ¶ 50) He alleges that it took him an aggregate of 3.5 hours to perform these tasks, but provides no specifics as to how long any discrete task took.[7] (*Id.*) This "block pleading," which does not differentiate between (1) tipped duties, (2) non-tipped duties related to the tipped occupation, and (3) non-tipped duties unrelated to the tipped occupation, is fatal to their claims.[8]

The Department of Labor ("DOL"), 29 C.F.R. § 531.56(e), provides as follows:

> *Dual jobs.* In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he

[7] The other five plaintiffs' allegations are similar, if not identical. (*Id.*, ¶¶ 53-78.)

[8] Plaintiffs' affirmations and those of their co-workers do not provide any additional detail and, in fact, are even more conclusory and unhelpful. Virtually all of those affirmations allege that the declarant performed "opener" janitorial and kitchen work; "closer" janitorial and kitchen work; and janitorial and kitchen work for the entire store. Other than to assert in every instance that "[t]hese janitorial and kitchen jobs were so time consuming at the store where I worked that I and other servers were spending more than 20% of our time performing work that was not directly part of our job that generated tips" plaintiffs provide no detail whether by specific task, category of tasks or workweek. (*See, e.g.,* Affirmation of Jeffrey Beyer, ¶¶ 5-9, dated January 15, 2013 at DE 9-3.)

FIRM:25991367v1

customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. *Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.*

29 C. F. R. § 531.56(e) (emphasis added).

The DOL's Field Operations Manual dated June 30, 2000 elaborates on this. It states:

> *Reg. 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities).* For example a waiter/waitress, who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers. However, where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties.

*See* http://dol.gov/whd/FOH/index.htm, section 30d00(e) (emphasis added.)

The DOL further clarified this issue in a July 2013 Fact Sheet in which it stated that:

> [w]hen an employee is employed by one employer in both a tipped and a non-tipped occupation, such as an employee employed both as a maintenance person and a waitperson, the tip credit is available only for the hours spent by the employee in the tipped occupation. The FLSA permits an employer to take the tip credit for some time that the tipped employee spends in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips. For example, a waitperson who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses is considered to be engaged in a tipped

9

occupation even though these duties are not tip producing. However, where a tipped employee spends a substantial amount of time (in excess of 20 percent in the workweek) performing related duties, no tip credit may be taken for the time spent in such duties.

*See* DOL, Wage and Hour Div. Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (rev. July 2013).

Several conclusions flow from the DOL's guidelines:

> [A] tipped employee's duties must fall into one of three categories. The first category includes all tip producing duties. An employer may take the tip credit for any employee time that falls within the first category. If an employee's duty is not tip producing, then it must be incidental to one of the employee's tip producing duties (the second category), or it must be a duty that is unrelated to any of the employee's tip producing duties (the third category). If the duty falls within the second category, then the employer may take the tip credit for the time the employee spent on incidental duties so long as the incidental duties do not exceed 20 percent of the employee's overall duties. If the employee's second category duties exceed 20 percent of the employee's overall duties, then the employer may not take the tip credit for any of the employee's time spent on second category duties. Finally, an employer may not take the tip credit for any employee time that falls within the third category because third category duties are treated as separate and distinct occupations.

*Fast v. Applebee's Int'l, Inc.*, 502 F. Supp. 2d 996, 1002 (W.D. Mo. 2007). "The distinction between (1) tipped duties, (2) non-tipped duties related to the tipped occupation, and (3) non-tipped duties unrelated to the tipped occupation is important, because the applicability of the tip credit is based, in part, on which of these types of duties is being performed." *Crate v. Q's Rest. Group LLC*, No. 8:13-CV-2549-T-24, 2014 U.S. Dist. LEXIS 61360, at *16-17 (M.D. Fla. May 2, 2014) (also describing categories of work and when the tip credit may be taken).

10

### (a) Plaintiffs' Lack of Specificity Makes it Impossible to Determine in Which Category Their Duties Belong

Plaintiff Hart alleges that in an 8-hour shift he performed either "opener duties" or "closer duties," and that each set of these duties cumulatively took one hour, and that he also performed "running sidework" which took a total of 3.5 hours, all for a total of 4.5 hours in an 8 hour shift. *He provides no detail as to how long any of the specific tasks within each category took to perform.* Given their relatively short periods of employment and their allegation that they performed these functions day in and day out, plaintiffs should be able to provide "some specific information" as to how long these tasks took and how often, within each work week, they were required to perform these tasks. Yet the amended complaint provides none of this--not for one hour, one day, several days, or any specific week or weeks. (Decision at 23); *see also Roberts*, 945 F. Supp. 2d at 1004 ("merely stating that the Plaintiff performed duties outside her occupation more than 20% of the time does not adequately connect the dots. The Plaintiff must provide more. For example, she must identify the non-tip producing duties she performed, *state how many minutes or hours they took to perform,* and place that time in the context of the hours worked during the entire shift.") (emphasis added).

Plaintiffs' refusal to specify how much time each spent on any discrete task, or when it occurred during the day, *i.e.*, before the restaurant opened or after it closed, makes it impossible to determine which tasks belong in which category, and thus to determine whether plaintiffs have alleged a plausible claim. Instead, plaintiffs lump all the tasks together, assign a block of time to each of the three categories (opening, closing, sidework), and then allege all the tasks simultaneously support their dual jobs claim and their tip-credit claim. (Amended Comp. ¶¶ 132-135, 136-138.) These are not plausible allegations in view of the case law that has developed regarding tipped and non-tipped work.

*First*, Ignite may utilize the tip credit for all of the time plaintiffs performed tipped duties. Certain of the duties plaintiffs characterize in the amended complaint as opening and closing duties actually constitute tipped duties.

In *Roberts*, 954 F. Supp. 2d at 1001, the employer supposedly engaged in a practice of "regularly" utilizing tipped employees to perform dishwashing, food preparation, kitchen and bathroom cleaning, trash removal and other duties outside the scope of the tipped occupations while paying those employees less than the tip-credit wage rate. The court noted that the DOL recognizes that some of the tasks plaintiffs identified are related to serving, and that even post-closing work (such as cleaning the salad bar, stocking server stations, and vacuuming the carpets) *"constituted tipped employment . . .* insofar as the after-hours clean up" was "assigned generally to the waitress/waiter staff," which is precisely what plaintiffs here allege. The DOL, Wage and Hour Div. Opinion Letter 78-81 (Mar. 28, 1980) concurs with *Roberts*, stating that the following *after-hours clean up duties* generally assigned to the wait staff *constituted tipped employment*: "clean the salad bar, place the condiment crocks in the cooler, clean and stock the waitress station, clean and reset the tables (including filling cheese, salt and pepper shakers) and vacuum the dining room carpet, after the restaurant is closed". *See also* DOL, Wage and Hour Div., Fact Sheet No. 15: Tipped Employees Under the Fair Labor Standards Act (Rev. July 2013) ("a wait person who spends some time clearing and setting tables, making coffee, and occasionally washing dishes or glasses is considered to be engaged in a tipped occupation even though these duties are not tip producing"); *See also Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1313-14 (S.D. Fla. 2007), *aff'd*, 291 F. App'x 310 (11th Cir. 2008) (court concluded that "because plaintiff skycaps do not have dual jobs the same is true here," *i.e.,* "defendants were entitled to apply tip credit to the entirety of the plaintiffs waitress shifts, not

FIRM:25991367v1

just those hours spent directly serving tables." The court in *Pellon* further recognized the impracticality of attempting to artificially separate non-tipped from tipped duties and thus minimize the number of tipped hours, stating that "[p]ermitting Plaintiffs to scrutinize every day minute by minute, [in an] attempt to differentiate what qualifies as tipped activity and what does not, and adjust their wage accordingly would create an exception that would threaten to swallow every rule governing (and allowing) for the tip credit for employers" which could potentially create "a cause of action against [an] employer if the employer did not keep the employee under perpetual surveillance or require them to maintain precise time logs accounting for every minute of their shifts"). The amended complaint does not even attempt to segregate and quantify the time spent on these tipped employment duties, and compounds this problem by erroneously styling them as non-tipped work.

*Second*, Ignite may also use the tip credit for time plaintiffs spent performing non-tipped duties related to their tipped functions provided the related, non-tipped work did not exceed 20% of their time, and plaintiffs either mischaracterize or indiscriminately lump together "related" and "unrelated" non-tipped duties. The authorities demonstrate that, just as tipped duties include work not directly generating tips, "related non-tipped" duties encompass a broad scope of activities. *See, e.g., Townsend v. BG-Meridian, Inc.*, No. Civ.-04-1162-F, 2005 U.S. Dist. LEXIS 45200, at *19 (W.D. Okla. Nov. 7, 2005) (waitresses performed duties of cashiers and phone order receptionists, but did not qualify for non-tipped wage because such duties were "merely related duties incident to her waitress position"); *Roberts*, 945 F. Supp. 2d at 1007 ("the cases, together with the regulations and interpretative guidance, lend no merit to the Plaintiff's proposition that duties like food preparation and general cleaning around the dining room cannot be incidental to the regular duties of a server and therefore must be compensated at minimum

FIRM:25991367v1

wage regardless of the percentage of time the employee spends on such duties or whether the duties are generally assigned to servers.")

The DOL has repeatedly stated that related non-tipped work includes a broad range of activities not immediately associated with serving. DOL, Wage and Hour Div., Field Operations Manual, § 30d00(e) (recognizing that related non-tipped duties include general preparation work or maintenance.); DOL, Wage and Hour Div. Opinion Letter 854 (Dec. 20, 1985) ("tip credit could be taken for non-salad bar preparatory work or after-hours clean-up if such duties are incidental to the waiter or waitress regular duties and are assigned generally to the waiter/waitress staff.") The Tasks Section of the Details Report in Occupational Information Network (O*NET)[9] lists the following Core Responsibilities of Waiters and Waitresses as follows: "Clean tables or counters after patrons have finished dining"; "Prepare hot, cold, and mixed drinks for patrons, and chill bottles of wine"; "Roll silverware, set up food stations or set up dining areas to prepare for the next shift or for large parties"; "Stock service areas with supplies such as coffee, food, tableware, and linens"; "Prepare tables for meals, including setting up items such as linens, silverware, and glassware"; "Remove dishes and glasses from tables or counters, take them to kitchen for cleaning"; "Perform cleaning duties, such as sweeping and mopping floors, vacuuming carpet, tidying up server station, taking out trash, or checking and cleaning bathroom"; "Perform food preparation duties such as preparing salads, appetizers, and cold dishes, portioning desserts, and brewing coffee"; "Fill salt, pepper, sugar, cream, condiment, and napkin containers." As with the tipped duties, the amended complaint fails to specify for any dates or any 40 hour workweek, the minutes or hours any of the plaintiffs worked

---

[9]The Occupational Information Network ("O*NET") is a database of occupational requirements and worker attributes sponsored by the DOL, Employment & Training Administration. *See, e.g.*, http://www.onetcenter.org/overview.html.

on truly related non-tipped duties, and there is no way to determine how much time is attributable to this related non-tipped work. Without such specifics it is impossible to determine if the related, non-tipped work crossed the 20% threshold which is critical to determine whether the tip credit can be taken for such work.

*Third*, Ignite may not utilize the tip credit for time plaintiffs spent performing non-tipped duties unrelated to their tipped occupation. *See, e.g., Barcellona v. Tiffany English Pub., Inc.* 597 F.2d 464, 467, n.3 (5th Cir. 1979) (affirming judgment granting waiters full minimum wages "for those hours worked in a nontipped capacity, such as laying tables, cleaning up, and other duties preparing the restaurant for business") (citation omitted). Based on the allegations in the amended complaint, there is no way, again, to determine whether and for how long plaintiffs engaged in such duties, or indeed, whether any of non-server tasks may be subject to the *de minimis* rule in 29 C.F.R. § 785.47. *See, e.g., Crate*, 2014 U.S. Dist. LEXIS 61360, at *17 (because of the "lack of detail regarding Plaintiffs' alleged dual occupation, the Court dismisses without prejudice Count II to the extent that it is based on the dual occupation theory."); 29 C.F.R. § 785.47 ("In recording working time under the Act, insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded.").

### (b) Plaintiffs' Amended Complaint Still Fails to Set Forth a Plausible Claim

Plaintiffs try to create the illusion of compliance with the Court's directions by adding new paragraphs 123-140 in the amended complaint, but these new allegations fail to provide the necessary specificity. Instead of providing any details as to "a given workweek" for each of the plaintiffs (*Lundy*, 711 F.3d at 114), plaintiffs simply allege that in "virtually every week" or "almost every shift" (¶ 124), they received less than the minimum wage. This same type of

vague and generalized pleading that plaintiffs "regularly" worked more than 40 hours a week was precisely what was rejected in *Lundy* and *Nakahata*.

Lumping together in one block the time spent on (i) tipped duties; (ii) non-tipped duties related to the tipped occupation; and (iii) non-tipped duties unrelated to the tipped occupation without any specifics as to how long each specific task or category of tasks took or when they occurred, does not plausibly establish plaintiffs' FLSA claim that the tip credit rules have been violated regardless of the claimed legal basis for the violation. That plaintiffs remain unable to address these issues despite the guidance of this Court demonstrates that they cannot do so. Accordingly, plaintiffs' FLSA tip credit claim based on a dual jobs and 20% violation should be dismissed with prejudice.

### ii. Even if the Tip Credit Claim is Sufficiently Pleaded, Plaintiffs Alleged Violation of the FLSA Minimum Wage Requirement Still Fails

Plaintiffs' amended complaint also fails for the same reason that the "claims in *Lundy*, *Nakahata* and *Dejesus* failed [*i.e.*] because the plaintiffs' failed to allege that they worked more than 40 hours during a particular workweek, for which they were not paid at the correct rate." (Decision at 21.)   "No minimum wage violation occurs so long as the total wage paid to an employee in any given workweek divided by the total hours worked in the workweek equals or exceeds the applicable minimum wage." (Decision at 22.) (citation omitted.)   The Court concluded that the initial complaint was deficient because "the factual allegations pertain only to particular shifts, as opposed to entire workweeks. "That is, the Complaint alleges that Plaintiffs would 'regularly' be assigned a *shift* in which an inordinate amount of time was spent on non-tipped work activities. Such allegation, though, does not state a minimum wage claim since the pleading never alleges that during any particular week, the average of Plaintiffs' hourly wages was less than the federal minimum wage." (Decision at 22.) (Emphasis in original) (footnote

omitted.) The Court concluded that, regardless of the frequency with which non-tipped assignments were allegedly given, "no minimum wage claim is stated unless the worker's average wage for the week, including tips, fell below the minimum wage." (Decision at 23 and n. 26.) Thus, to state a viable minimum wage claim plaintiffs must provide "some *specific* information to support those claims, regarding weeks in which they were supposedly paid less than the minimum wage." (Decision at 23.) (emphasis added.)

Plaintiffs have failed to do this. Their amended complaint provides no specifics, but rather alleges only that "[t]he defendants did not pay the minimum wages as required by the FLSA." (Amended Comp. ¶ 124.) They go on to allege that "pursuant to the defendants' policies, in virtually every week in which the plaintiffs and class members worked, the average of their hourly wage from the defendants was less than the minimum wage." (*Id.*; *see also* Amended Comp. ¶¶ 125-130.)

The amended complaint does not identify a single specific workweek in which this occurred; does not provide the total compensation in any workweek that any plaintiff received; and, remarkably enough, *does not even allege the total number of hours worked in any workweek by any plaintiff.*[10] The complaint is devoid of any allegations, *i.e.,* total compensation divided by total hours worked, to conclude that plaintiffs' "average wage for the week, including tips, fell below the minimum wage." (Decision at 23 n.26.) Instead of providing this information, plaintiffs provide "labels and conclusions" and set forth a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted). This will not do. *White*, 2012 U.S. Dist. LEXIS 52215, at *16 (finding complaint failed to state a viable FLSA claim for unpaid minimum wages where plaintiff failed to allege when or how often her subminimum

---

[10] This information would be contained in, for example, pay stubs plaintiffs received and bank statements showing deposited amounts.

FIRM:25991367v1

wage and earned tips did not meet the prevailing minimum wage rate); *Twombly*, 550 U.S. at 555. As it is now clear that plaintiffs cannot comply with their pleading requirements, the FLSA claim should be dismissed with prejudice for this additional reason.

## POINT II

### PLAINTIFFS' STATE LAW TIP-CREDIT CLAIMS ARE INSUFFICIENTLY PLEADED AND SHOULD LIKEWISE BE DISMISSED

Plaintiffs plead the same insufficient facts in support of their claims for wage and tip credit violations under the laws of Arizona, Illinois, Maryland, Missouri and New York. Even though the laws of each state have different definitions of "tipped employees" and different standards regarding the amount of tip credit forfeited for employees engaged in non-tipped work, plaintiffs' state law claims should likewise be dismissed as plaintiffs fail to satisfy the minimal pleading standards under *Iqbal, Twombly*, and their progeny for those claims. *Iqbal*, 556 U.S. at 679, *Twombly*, 550 U.S. at 555; *DeJesus, LLC*, 726 F.3d at 88; *Lundy*, 711 F.3d at 114; *Nakahata,* 723 F.3d at 201.

Plaintiffs' state wage law claims are even more deficient than their FLSA claims, however, because the laws of each state prescribe specific standards for an employer's proper use of the tip credit. Certain of the state laws on which plaintiffs rely for their tip credit claims maintain specific requirements concerning the maximum amount of time tipped employees may permissibly perform non-tipped duties, and the amount of tip credit that would be forfeited as a result of exceeding the prescribed limit. For example, in New York, a tip credit may not be applied at all for any full day of work for employees who perform non-tipped work for two hours or more, or for more than twenty percent of their shifts, whichever is less. N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-2.9, 146-3.3.

18

Under Maryland law, however, there is no specific maximum number of non-tip earning hours. According to Maryland's Department of Labor, Licensing and Regulation, tipped employees who are "from time to time" assigned to perform non-tip related tasks must be paid by their employer at least the full minimum wage rate only during that non-tipped time. *See* Maryland Department of Labor, Licensing and Regulation Wage and Hour Guide FAQs, located at www.dllr.state.md.us/labor/wagepay/wptipped.shtml.

Under Arizona law, a tip credit may be taken against the wages of employees who "customarily and regularly" receive tips. *See* Ariz. Rev. Stat. Ann. § 23-363(C); Ariz. Admin. Code § R20-5-1207(A). Arizona law defines "customarily and regularly" as "receiving tips on a consistent and recurrent basis, the frequency of which may be greater than occasional, but less than constant." *See* Ariz. Admin. Code § R20-5-1207(A).

Here, plaintiffs' failure to plead the FLSA claims with the requisite particularity has the same, if not greater, impact on their state wage law claims as a result of each state's unique tip credit laws. Because their tip credit allegations are pleaded in sweeping and conclusory fashion without any consideration of each state's specific requirements, plaintiffs' state law wage claims should be dismissed.

## POINT III

### THE COURT SHOULD NOT PERMIT PLAINTIFFS
### TO AGAIN AMEND THEIR COMPLAINT

Fed. R. Civ. P. 15(a)(2) provides that leave to amend should be granted only where "justice so requires." The decision to grant a motion for leave to amend falls within the trial court's discretion. *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 126 (2d Cir. 2014) (district courts have "wide discretion" in choosing to grant or deny leave to amend a plaintiff's complaint); *Berger v. Apple Reit Ten, Inc.*, No. 13-1395-cv, 2014 U.S. App. LEXIS 7583, at *8

FIRM:25991367v1

(2d Cir. Apr. 23, 2014). "In practice, this means that the denial of such a motion will be upheld so long as the record evinces an arguably adequate basis for the court's decision (*e.g.*, futility, bad faith, undue delay, or a dilatory motive on the movant's part)." *Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001) (citations omitted).

Plaintiffs' filed their first complaint on August 28, 2013. Defendants moved to dismiss that complaint and the Court granted that motion in part. In doing so, the Court provided specific guidance as to how plaintiffs' claims should be repleaded, subject to Rule 11. Plaintiffs have demonstrated that they are unable to comply. Instead, they filed an amended complaint that contains *in haec verba* the same deficiencies as the initial complaint -- deficiencies which were brought to plaintiffs' attention by defendants and the Court -- and added a new legal theory that only exacerbates these deficiencies. The Court can only conclude, based on plaintiffs' failure to plead even a minimum amount of specifics in light of the Court's clear directives, that plaintiffs simply do not have the facts to support their claims. Simply, if they had them, they would have pled them after being directed to do so.

Under these circumstances, the Court should not permit any further amendment. *See, e.g., U.S. v. Brow*, 462 F. App'x 19, 21 (2d Cir. 2012) (amendment ruled futile when "faced with [a] dispositive motion pointing out several pleading deficiencies, *Brow* attempted to file an amended third-party complaint that . . . failed to correct the deficiencies of his original complaint"); *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (denying motion for second amended complaint where judge had put plaintiff on notice of what would be required in amended complaint and plaintiff failed to comply). This concept is not unknown to plaintiffs' counsel who have previously had complaints dismissed with prejudice for their failure to plead to

the required specificity after being directed to do so. *See, e.g., Sampson v. Medisys Health Network, Inc.*, 10-CV-1342, 2013 U.S. Dist. LEXIS 43771, at *19 (E.D.N.Y. Mar. 18, 2013).

## CONCLUSION

For the foregoing reasons, plaintiffs' FLSA claims and their state law tip-credit claims in the amended complaint should be dismissed with prejudice.

New York, New York
August 5, 2014

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By:  s/Kenneth J. Kelly

     Kenneth J. Kelly
     Jeffrey H. Ruzal
250 Park Avenue
New York, New York  10177-1211
(212) 351-4500
kkelly@ebglaw.com
Attorneys for Defendants
Crab Addison, Inc., d/b/a Joe's Crab Shack and
Ignite Restaurant Group, Inc.

Of Counsel:
Michael S. Kun, Esq.
Epstein Becker & Green, P.C.
1925 Century Park East
Suite 500
Los Angeles, CA 90067-2506
(310) 556-8861

21