UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTOPHER HART, et al.,

                    Plaintiffs,

      -v-

CRAB ADDISON, INC. d/b/a JOE'S CRAB
SHACK, IGNITE RESTAURANT GROUP, INC.,
RAYMOND A. BLANCHETTE, III, KEVIN
COTTINGIM, and RODNEY MORRIS,

                    Defendants.

DECISION AND ORDER

13-CV-6458 CJS

---

APPEARANCES

For Plaintiffs:                J. Nelson Thomas, Esq.
                                Jared Kimball Cook, Esq.
                                Michael J. Lingle, Esq.
                                Thomas & Solomon LLP
                                693 East Avenue
                                Rochester, NY 14607

For Defendants:             Jeffrey Howard Ruzal, Esq.
                                Kenneth John Kelly, Esq.
                                Epstein, Becker & Green, P.C.
                                250 Park Avenue
                                New York, NY 10177

INTRODUCTION

This is an action asserting claims under the Fair Labor Standards Act ("FLSA") and the minimum-wage statutes of the states of New York, Maryland, Missouri, Illinois and Arizona. Now before the Court is Plaintiff's motion (Docket No. [#7]) for conditional certification of an FLSA collective action. The application is granted as discussed below.

BACKGROUND

The Court has already issued two Decisions and Orders [#63][#71] in this action, containing detailed discussions of Plaintiffs' claims, with which the reader is presumed to be familiar.  Essentially, defendant Crab Addison operates 136 restaurants across the United States, and Plaintiffs, who were employed as tipped servers/hostesses/bartenders in that chain of restaurants, maintain that Defendants violated the FLSA and the pertinent state minimum-wage laws by, *inter alia*, paying them less than the full required minimum wage pursuant to the "tip credit," while requiring them to spend an excessive amount of their work shifts performing non-tipped duties.

The Amended Complaint [#64] asserts that Plaintiffs were required to perform either unrelated non-tipped duties ("dual job" duties), or an excessive amount of related non-tipped duties (*i.e.*, more than twenty percent of the shift), during each and every shift, and that they were therefore necessarily paid less than the minimum wage for each and every week that they worked for Defendants.  The pleading further alleges that Defendants failed to provide employees with the proper notice regarding the tip credit.

In  support of the instant application for conditional certification of an FLSA collective action, Plaintiffs have submitted affidavits [#9-2]-[#9-22] from twenty-one employees who worked for defendant Crab Addison in Arizona, Florida, Illinois, Indiana, Maryland, Missouri, New Jersey, New York, Ohio, Texas, Utah and  Virginia.  The employees all indicate that although they were paid as tipped employees, they were consistently required to perform untipped opener duties, closing duties and running sidework more than twenty percent of the time. Many of the  employees further indicate that they were told by their local managers and/or their corporate trainers that the requirement that they perform such work was part of

defendant Crab Addison's corporate policies.  The affidavits are all essentially identical, except for the names of the affiants, the locations where they worked, and the names of their local managers.  Plaintiffs maintain that the affidavits establish that they are "similarly situated," with the meaning of the FLSA's collective action provision, 29 U.S.C. § 216(b).

Defendants oppose the motion, and have submitted affidavits from ninety-five of their tipped employees, and managers, from Arizona, California, Colorado, Florida, Georgia, Illinois, Kentucky, Louisiana, Maryland, Michigan, Missouri, Nebraska, Nevada, New York, South Carolina, Tennessee and Texas, who estimate that they spent 20% or less of their time performing non-tipped duties.  These employees further state either that they were never required to perform many of the tasks that Plaintiffs contend were required of all tipped employees, or that the tasks took only a few minutes to complete.  These affidavits, like those of the Plaintiffs, are essentially identical in most respects.  Defendants have also submitted an affidavit from Crab Addison's Director of Process Improvement, denying that there is any corporate policy to pay tipped employees less than the minimum wage.

Generally, Defendants contend that Plaintiffs' application for certification of a collective action should be denied because Plaintiffs have not shown either the existence of a common policy, or that they are similarly situated to the putative class they seek to represent.  As to the former point, Defendants maintain that Plaintiffs have not shown a nationwide policy, since, according to Defendants' submissions, "local management teams make their own staffing and scheduling decisions."[1] With regard to the latter point, Defendants emphasize that the proposed class would comprise approximately thirty-thousand people, and that Plaintiffs have provided only a relatively small number of

---

[1]Def. Memo of Law [#35] at p. 13.

affidavits attesting to the existence of the alleged illegal policy at certain restaurants. Defendants contend that in a case such as this, involving 136 restaurants across the U.S., and 30,000 potential class members, a greater factual showing should be required than what Plaintiffs have made.

Alternatively, Defendants contend that Plaintiffs' proposed notice and method of distribution are deficient in various respects.

DISCUSSION

*The Request for Preliminary Certification of an FLSA  Collective Action*

Unlike class certification motions under Rule 23, motions for preliminary certification of FLSA collective actions are more easily supported, and are designed to be made prior to discovery.

> A majority of district courts, including those within the Second Circuit, employ a two-step process to determine whether a lawsuit should proceed as an FLSA collective action.

> At the first step—the notice stage—the court determines, based on the pleadings, affidavits, and declarations, whether the named plaintiffs have demonstrated that the employees they seek to notify are "similarly situated." The evidentiary standard is lenient at this stage, the plaintiffs need make only a modest factual showing that they and the other putative collective action members together were victims of a common policy or plan that violated the law.   A plaintiff's burden on this step is minimal, especially since the determination that potential plaintiffs are similarly situated is merely a preliminary one.

> The second step occurs after discovery is complete, when the court examines the evidentiary record and makes a factual finding as to whether the conditionally certified plaintiffs are, in fact, similarly situated to the lead plaintiffs. If the court determines the opt-in plaintiffs are not similarly situated, the court will decertify the class, the claims of the opt-in plaintiffs will be

dismissed without prejudice, and the class representatives may proceed to trial on their individual claims.  Alternatively, if the class description is shown to require modification, that can be accomplished at the second tier inquiry.

*Gordon v. Kaleida Health*, No. 08–CV–378S, 2009 WL 3334784 at *3-4  (W.D.N.Y. Oct. 14, 2009) (citations, internal quotation marks and footnote omitted); *see also, Myers v. Hertz Corp.*, 624 F.3d 537, 554-555 (2d Cir. 2010) (Indicating that while the two-step process described above is "not required by the terms of the FLSA or the Supreme Court's cases," it is nonetheless "sensible.").

According to the Second Circuit, plaintiffs may demonstrate that they and the potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law,"

by making some showing that there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions . . . .   The modest factual showing cannot be satisfied  simply by unsupported assertions, but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether similarly situated plaintiffs do in fact exist.

*Myers v. Hertz Corp.*, 624 F.3d at 555.

Defendants' most compelling argument against certification is that Plaintiffs' factual showing to date, consisting of twenty-one affidavits from employees in sixteen restaurants in twelve states, is insufficient to establish that the potential class is similarly situated, given that Defendants operate a large nationwide chain, consisting of 136 restaurants in thirty-four states.  However, the Court notes that another court in this circuit recently approved a conditional FLSA "tip credit" collective action against a much bigger defendant based on far less proof.  Specifically, in *Flood v. Carlson Restaurants, Inc.*, No. 14 Civ. 2740(AT), 2015

5

WL 260436 (S.D.N.Y. Jan. 20, 2015) ("*Flood*"), the court approved a conditional FLSA collective action against the T.G.I. Friday's restaurant chain, involving "920 T.G.I. Friday's restaurants in 60 countries and territories," based upon a mere "six declarations from . . . tipped workers containing substantially similar allegations of Defendants' unlawful policies across eight different  T.G.I. Friday's restaurants in Four states," as well as "averments" concerning the existence of company-wide policy, and evidence of centralized control, such as proof that the defendant utilized "uniform nationwide training programs." *Id*., 2015 WL 260436 at *2-3.  The *Flood* defendants argued that the plaintiffs had "made no factual showing that [they were] similar to each other, let alone to the other 42,000 tipped workers employed by T.G.I. Friday's nationwide." *Id*. at *4.  However, the court in *Flood* found that such proof was sufficient to warrant conditional certification of a collective action, observing that "Courts in this district have authorized nationwide certification on comparable or thinner records." *Id*. at *4 (collecting cases).

In the instant case, Plaintiffs have submitted the aforementioned affidavits from twenty-one employees working in sixteen restaurants across twelve states, which describe the same alleged unlawful practice, that is, requiring tipped workers to perform untipped jobs more than 20% of the time.  The affidavits further indicate that the employees were told by Crab Addison's corporate trainers that they had to complete the untipped work before they could leave the restaurant at the end of each shift, which suggests the existence of other similarly-situated employees at Defendants' other locations.  Such proof is sufficient to warrant conditional certification of an FLSA collective action.  Accordingly, Plaintiff's application for conditional certification is granted.

<u>The Form of the Notice To Be Sent and the Method of Distribution</u>

Defendants object to various aspects of the proposed notice, and have submitted a proposed revised notice.[2]  For example, Defendants contend that the notice should include a statement that Defendants' deny the allegations in this action, as well as a warning to potential class members that they may be liable for Defendants' costs and attorney fees if they lose the lawsuit.  Defendants further maintain that the notice should instruct class members to return their forms to the Clerk of the Court rather than to Plaintiffs' counsel.  Additionally, Defendants contend that notices should be sent by first class mail but not also posted in the workplace, and that Plaintiffs should be required to retain a third-party administrator to mail the notices.  Defendants also balk at having to produce a list of the names and contact information of the 30,000 former or current employees who comprise the proposed class.

District Courts have broad discretion in approving the content of proposed notices to class members in FLSA collective actions, with the objective being to provide "accurate and timely notice concerning the pendency of the collective action, so that an individual receiving the notice can make an informed decision about whether to participate." *Valasquez v. Digital Page, Inc.*, No. CV 11–3892(LDW)(AKT), 2014 WL 2048425 at *9 (E.D.N.Y. May 19, 2014) (citations and internal quotation marks omitted).  In exercising such discretion, District Courts have denied many of the same objections raised by Defendants here. *See, e.g., Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014) (Observing that requiring defendants to produce the identification information of "all class members" "is common in

---

[2]*See*, Def. Memo of Law [#35] at pp. 23-25.

wage and hour actions to facilitate the notice process."); *Sharma v. Burberry Ltd.*, —
F.Supp.2d — , 2014 WL 4385426 at *18-19 (E.D.N.Y. Sep. 4, 2014) (Observing that courts
routinely approve the posting of collective action notices in the workplace).

However, the Court agrees with some of Defendants' objections. For example, the
Court agrees that the section of the proposed notice, entitled "Why is this lawsuit a collective
action?," is redundant and should be stricken. The Court also agrees that the notice should
include the name and contact information for Defendants' attorneys' law firm. *See, Slamna
v. API Restaurant Corp.*, No. 12 Civ. 757(RWS), 2013 WL 3340290 at *5 (S.D.N.Y. Jul. 2,
2013) ("Courts in this Circuit have generally concluded that [the name, address and
telephone number of Defendants' counsel] is appropriate for inclusion in a notice of
collective action.").

Additionally, the Court agrees that, in the interests of full disclosure, the notice should
advise potential opt-in plaintiffs that there is a possibility they may be responsible for
Defendants' costs if their claim is unsuccessful. *See, Slamna v. API Restaurant Corp.*, 2013
WL 3340290 at *4 ("Courts in this District have found that such notification is appropriate,
provided that the operative language makes clear that is there is only possibility, rather than
a probability, that putative plaintiffs will be responsible for costs."); *but see, Velasquez v
Digital Page, Inc.*, 2014 WL 2048425 at *12 (Courts in this district "have generally
disapproved [of] the inclusion of language about costs" being imposed against the plaintiffs
if they lose the lawsuit.). In that regard, the first page of Plaintiffs' proposed notice contains
this sentence: "You will be bound by the decisions of the Court concerning this litigation,
whether they are favorable or unfavorable." Such sentence should be amended to read as
follows: "If you choose to be included, you will be bound by the decisions of the Court

concerning this litigation, whether they are favorable or unfavorable, and you may be held responsible for Defendants' costs if your claim  is unsuccessful."

To avoid confusion, the Court further directs that the following changes be made. The heading "What is the plaintiff asking for?," should be changed to read, "What are the plaintiffs asking for?"  The heading, "How do I know if I am part of the collective action?," should be changed to read, "How do I know if  I am eligible to be part of the collective action, or if I am already part of the collective action?"  Moreover, the paragraph immediately below that heading should read:

> You may be eligible to be a member of the FLSA collective action, or may already be a member of the FLSA collective action, if you worked for Joe's Crab Shack as a tipped employee in one of its restaurants from August 28, 2010 to the present and if you either: (1) already joined this lawsuit by submitting a Consent Form prior to getting this Notice, or (2) complete the **two enclosed forms** and return them on or before the date set forth in Paragraph 9.

Additionally, the heading entitled "Do I have a lawyer in this case?" should be amended to read, "Will I have a lawyer in this case?"  Finally, under the heading "Should I get my own lawyer?," the sentence, "You do not need to hire your own lawyer because Thomas & Solomon LLP will be working on your behalf," should be stricken as redundant.

Except as stated above, Defendants' objections to the form and method of notice are denied.

<u>Equitable Tolling is Appropriate</u>

For purposes of the FLSA statute of limitations, a collective action class member is deemed to have commenced the action only when his or her own opt-in consent is filed with the Court. *See*, 29 U.S.C. § 256(b); *see also, Mark v. Gawker Media LLC*, No. 13–cv–4347

(AJN), 2014 WL 5557489 at *2 (S.D.N.Y. Nov. 3, 2014) ("FLSA carries a limitation period of two years, which is extended to three years if the violation was willful. 29 U.S.C. § 255(a). Ordinarily, the question whether any particular opt-in plaintiff's action is timely is keyed to the date she actually opts in to the lawsuit, not to the filing of the complaint. 29 U.S.C. § 256(b).").

Here, Plaintiffs have not expressly raised the issue of equitable tolling, but the Court nevertheless interprets their submissions as impliedly requesting relief as to the statute of limitations.[3]   The Court observes that an unusually long delay has occurred between the filing of Plaintiff's motion for conditional certification and the Court's issuance of this Decision and Order, which may result in some class members not receiving notice of this action in time to file a timely request to opt into the action.  Since the delay was beyond the parties' control and may adversely affect the rights of class members who may have no notice of this lawsuit, equitable tolling is appropriate.  In that regard, equitable tolling may be appropriate when a significant delay in ruling on an FLSA motion for conditional certification is attributable to the Court and not the parties. *See*, *Yahraes v. Restaurant Associates Events Corp.*, No. 10-CV-935 (SLT), 2011 WL 844963 at *2 (E.D.N.Y. Mar. 8, 2011) ("The delay caused by the time required for a court to rule on a motion, such as one for certification of

---

[3]Simultaneously with the filing of this action Plaintiffs moved for conditional certification of the FLSA collective action and requested an expedited hearing. *See*, Docket Nos. [#7] & [#10]. Then, after Defendants moved to dismiss the Complaint, or, in the alternative, to transfer venue, Plaintiffs asked the Court to hear oral argument on their motion to collectively certify the FLSA collective action at the same time that it heard argument on the Defendants' motions.  In making that request, Plaintiffs pointed out that a delay in ruling on the certification application would cause the FLSA class members' claims to "die daily" due to the statute of limitations.  The Court denied that request because it was unclear whether transfer of venue was appropriate. As it turned out, the Court denied the motion to transfer, but granted the motion to dismiss in part and allowed Plaintiffs to amend the Complaint, after which Plaintiffs filed an amended pleading and Defendants filed a second motion to dismiss, which the Court denied.  As a result of all of this, a significant amount of time has elapsed through no fault of the Plaintiffs.

a collective action in a FLSA case, may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine.") (citation omitted; collecting cases); *McGlone v. Contract Callers, Inc.*, 867 F.Supp.2d 438, 445 (S.D.N.Y. 2012) (Applying equitable tolling in FLSA action, observing that, "While plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings."); *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170-171 (S.D.N.Y. 2014) (applying equitable tolling to avoid prejudice to potential class members from delay in deciding motion to conditionally certify an FLSA collective action); *Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784(WHP), 2013 WL 4834428 at *2 (S.D.N.Y. Aug. 26, 2013) ("Equitable tolling is particularly appropriate here, where [the defendants' employees] may not realize they have potential claims under the FLSA.").

Equitable tolling is appropriate here because the delay was substantial and beyond the control of the parties, and could result in significant prejudice to potential class members. Defendants cannot claim to be prejudiced, since they have been aware from the commencement of this action that Plaintiffs are asserting FLSA claims going back as far as three years from the date that this action was filed.

Previously in this action, the parties stipulated to toll the statute of limitations on the FLSA claims until midnight on October 24, 2013, in order to allow Defendants time to respond to the motion for conditional certification. *See*, Docket Nos. [#21]. Accordingly, in light of the Court's discussion concerning equitable tolling, the statute of limitations on the FLSA claims is equitably tolled from October 25, 2013 through the date of this Decision and Order.

CONCLUSION

Plaintiff's motion for conditional certification [#7] is granted.  The proposed notice is approved, as modified above.  The statute of limitations on the FLSA claims  is equitably tolled from October 25, 2013 through the date of this Decision and Order.

SO ORDERED.

Dated:      Rochester, New York
            January 27, 2015

                                              /s/ Charles J. Siragusa
                                             CHARLES J. SIRAGUSA
                                             United States District Judge