UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

CHRISTOPHER HART, MARIA
SARGENT, TAYLOR RAMSEY,
ANDREA RANDLETT, and SHELLY
CARRERA, *on behalf of themselves and all
other employees similarly situated,*

      Plaintiffs,

v.

CRAB ADDISON, INC., d/b/a JOE'S
CRAB SHACK, IGNITE RESTAURANT
GROUP, INC., RAYMOND A.
BLANCHETTE III, KEVIN COTTINGIM,
AND RODNEY MORRIS,

      Defendants.

-------------------------------------------------------------

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 13-cv-6458 (CJS-MWP)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL
AND FOR A PROTECTIVE ORDER**


Brian J. Gershengorn
Melissa J. Osipoff
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
1745 Broadway, Floor 22
New York, NY  10019
(212) 492-2500
*Attorneys for Defendants*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS .......................................................................................................3

I.      The Court Conditionally Certified a FLSA Collective Action of Joe's Crab Shack Tipped
        Employees...............................................................................................................3

II.     Defendants Inadvertently Produced Data In Connection With The Notice List .................5

III.    Defendants Discover The Inadvertent Production ..................................................7

IV.     Defendants Provide A Corrected Notice List ......................................................8

V.      Defendants Inform The Court About The Inadvertent Production .....................................8

VI.     Plaintiffs' Counsel Has Not Returned, And Continues To Use, The Inadvertently
        Produced Data................................................................................................10

        A.      Plaintiffs Sent Macaroni Grill Employees Misleading Communications and an
                Unapproved Consent Form...................................................................10

        B.      Plaintiffs Inappropriately Move to Amend the Complaint ....................................13

ARGUMENT ......................................................................................................................14

I.      Plaintiffs Must Return The Inadvertently Produced Class List .........................................14

        A.      The Inclusion of Employees Other than Joe's Crab Shack Tipped Employees Paid
                a Subminimum Wage on the Notice List was Inadvertent ....................................14

        B.      Plaintiffs Must Return the Inadvertently Produced Data.......................................15

II.     Plaintiffs' Counsel Improperly Used the Inadvertently Produced Data To Send
        Misleading Communications ...............................................................................15

        A.      The Court Has Broad Discretion to Manage the Notice Process...........................16

        B.      Plaintiffs' Letters Are Misleading, Vague and Confusing.....................................17

        C.      The First Amendment Does Not Provide a Blanket Protection of Plaintiffs'
                Communications ...................................................................................22

        D.      The Court Should Direct the Issuance of a Corrective Notice...............................23

CONCLUSION....................................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaniz v. Sam Kane Beef Processors, Inc.*,
   CC-07-335, 2007 U.S. Dist. LEXIS 89161 (S.D. Tex. Dec. 4, 2007) ....................................17

*Bouder v. Prudential Fin., Inc.*,
   06-cv-4359, 2007 U.S. Dist. LEXIS 83338 (D.N.J. Nov. 8, 2007) ........................................17

*Camesi v. Univ. of Pittsburgh Med. Ctr.*,
   No. 09-85J, 2009 WL 3719483 (W.D. Pa. Nov. 4, 2009) .................................................19, 22

*Forauer v. Vermont Country Store, Inc.*,
   No. 5:12-cv-276, 2013 WL 6086202 (D. Vt. Nov. 19, 2013) .................................................16

*Goody v. Jefferson Cnty.*,
   CV-09-437, 2010 WL 3834025 (D. Id. Sept. 23, 2010) .........................................................24

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981)............................................................................................................16, 17

*Hoffmann-La Roche Inc. v. Sperling*,
   493 U.S. 165 (1989)..........................................................................................................16, 23

*Jackson v. Papa John's USA, Inc.*,
   08-CV-2791, 2009 WL 650181 (N.D. Oh. Mar. 10, 2009) .................................................18, 19

*Lucas v. Bell Trans.*,
   2:08-cv-01792, 2011 WL 5877467 ........................................................................................23

*Otsuka v. Polo Ralph Lauren Corp.*,
   No. C 07-02780, 2009 WL 799306 (N.D. Cal. Mar. 24, 2009)..............................................24

*Ouedraogo v. A-1 Int'l Courier Serv., Inc.*,
   12-cv-5651, 2014 WL 4652549 (Sept. 18, 2014) ..................................................................23

*Rubery v. Buth-Na-Bodhaige, Inc.*,
   514 F. Supp. 2d 431 (W.D.N.Y. 2007) ...............................................................19, 20, 22, 24

*Ruggles v. Wellpoint, Inc.*,
   591 F. Supp. 2d 150 (N.D.N.Y. 2008)..............................................................................18, 22

*Spoerle v. Kraft Foods Global, Inc.*,
   253 F.R.D. 434 (W.D. Wis. 2008) .........................................................................................24

*Stransky v. HealthONE of Denver, Inc.*,
    929 F. Supp. 2d 1100 (D. Col. 2013)......................................................................................24

*Taylor v. CompUSA, Inc.*,
    04CV718, 2004 WL 1660939 (N.D. Ga. Nov. 10, 2009)........................................................17

*Taylor v. Pittsburgh Mercy Health Sys., Inc.*,
    09-377, 2009 WL 2762531 (W.D. Pa. Aug. 25, 2009)................................................18, 19, 22

*Tilton v. Capital Cities/ABC, Inc.*,
    938 F. Supp. 748 (N.D. Okla. 1995)......................................................................................15

*Warren v. Corizon Health*,
    14-cv-00011, 2015 WL 1268269 (D. Idaho Mar. 19, 2015)....................................................15

*Young v. Dollar Trees Stores, Inc.*,
    11-cv-1840, 2012 WL 5494000 (D. Col. Nov. 13, 2012)........................................................21

## PRELIMINARY STATEMENT

Defendants Crab Addison, Inc., d/b/a Joe's Crab Shack ("Joe's Crab Shack"), Ignite Restaurant Group, Inc. ("Ignite"), Raymond A. Blanchette III, Kevin Cottingim and Rodney Morris (together, the "Defendants") respectfully submit this memorandum of law in support of their motion: (1) to compel the return of inadvertently produced data; (2) for a protective order requiring Plaintiffs' counsel to cease and desist from initiating communications with individuals using the inadvertently produced data; and (3) to issue a corrective notice to the individuals who inadvertently received class notice and/or Plaintiffs' misleading communications.

On January 27, 2015, Judge Siragusa conditionally certified a FLSA collective action consisting of Joe's Crab Shack tipped employees paid a subminimum wage and ordered Defendants to produce a list of the putative plaintiffs to facilitate sending them a court approved notice (the "Notice List"). The Notice List produced to Plaintiffs' counsel inadvertently contained a master human resources list which contained data about Ignite's employees well beyond the conditionally certified class. Admittedly, this was an egregious mistake, but it was solely the result of inadvertent human error.

As soon as Defendants discovered the inadvertent production, new and current defense counsel informed both Plaintiffs' counsel and the Court. Defendants' position has always been that Plaintiffs' counsel must return or destroy the inadvertently produced data and that Plaintiffs' counsel cannot in any way use the inadvertently produced data. But for months, Plaintiffs' counsel has refused to return or destroy the inadvertently produced data. Instead, Plaintiffs' counsel has used, and continues to use, the inadvertently produced data to send misleading and deceptive communications to an untold number of current and former employees of Macaroni Grill. Plaintiffs' counsel is doing this in an attempt to solicit these individuals to opt-in to this lawsuit, despite the fact that Macaroni Grill is not a defendant to this Action.

In an attempt to justify their untoward actions, Plaintiffs' counsel has set forth the incredulous position that prior defense counsel *intended* to include Macaroni Grill employees on the Notice List because Macaroni Grill employees have always been part of this Action.[1] Continuing this ruse, Plaintiffs' counsel has stated that current defense counsel had an "apparent change of strategy" by claiming that the production was inadvertent; however, these positions are belied by the facts. It is beyond dispute that Macaroni Grill was never part of this Action. It is also beyond dispute that the inclusion on the Notice List of individuals outside the putative class was inadvertent. Rather, it is *Plaintiffs' counsel* who had an "apparent change of strategy" by claiming Macaroni Grill was always part of this Action, in an attempt to impermissibly enlarge the scope of the putative class, and in turn, increase their own fees. Moreover, the facts clearly demonstrate this Action is only about Joe's Crab Shack: (i) Macaroni Grill was never mentioned in the underlying briefs regarding conditional certification: (ii) Macaroni Grill was never mentioned in Judge Siragusa's Order granting conditional certification; (iii) Macaroni Grill was never mentioned in the Court approved notice; and (iv) emails with Plaintiffs' counsel confirm the conditionally certified class only includes Joe's Crab Shack employees. Thus, the Court should not allow Plaintiffs' counsel to capitalize on an inadvertent production error. Finally, it should be noted that this is not the first time Plaintiffs' counsel overstepped their bounds in communications with putative class members. As discussed herein, courts have previously intervened to prevent Thomas & Solomon from making misleading and confusing communications to putative class members.

---

[1] Defendant Ignite owned Macaroni Grill from approximately February 2013 through March 2015. Affirmation of Melissa J. Osipoff ("Osipoff Aff."), ¶ 3.

Accordingly, Plaintiffs must return or destroy the inadvertently produced data and cease and desist from using the data to initiate communications with anyone inadvertently included.

**STATEMENT OF FACTS**

I.   **The Court Conditionally Certified a FLSA Collective Action of Joe's Crab Shack Tipped Employees**

On August 28, 2013, the Named Plaintiffs, former employees of Joe's Crab Shack, initiated this lawsuit claiming Joe's Crab Shack improperly paid them, and other tipped employees, a tip credit rate of pay in violation of the FLSA and other state labor laws (the "Action").  (*See* Dkt. No. 1.)  Macaroni Grill is ***not*** a named defendant in this Action.  In fact, none of the Named Plaintiffs worked at Macaroni Grill.[2] (*See* Dkt. Nos. 1, 64.)  Neither the Complaint nor the Amended Complaint contains ***any*** allegations about Macaroni Grill.  *Id.*

On January 27, 2015, Judge Siragusa conditionally certified an FLSA collective action of current and former employees of Joe's Crab Shack who were paid subminimum wage during the past three (3) years.  (*See* Dkt. No. 80.)  It is beyond dispute that the conditionally certified class includes only current and former employees of Joe's Crab Shack, and does not include Macaroni Grill employees or any other Ignite employees.  Judge Siragusa made no findings as to whether employees of Macaroni Grill were similarly situated to the conditionally certified class, because there were no allegations whatsoever regarding Macaroni Grill before him.  (*See id.*)

As part of his Decision and Order conditionally certifying the collective action, Judge Siragusa approved Plaintiffs' proposed notice to be sent to all potential opt-in plaintiffs, with certain modifications (the "Court Approved Notice").  Osipoff Aff., Ex. A.  The Court Approved

---

[2] Jeff Beyer, who withdrew as a Named Plaintiff, was also only employed by Joe's Crab Shack. (*See* Dkt. Nos. 1, 64.)

Notice precludes any argument that the conditionally certified class somehow extends beyond

Joe's Crab Shack employees:

- The large print, bolded heading at the top of the Court Approved Notice informs recipients: "If you worked at ***Joe's Crab Shack*** as a tipped employee, a lawsuit may affect your rights." Osipoff Aff., Ex. A (emphasis added).

- The Court Approved Notice further explains: "Employees have sued ***Joe's Crab Shack*** claiming ***Joe's Crab Shack*** failed to properly pay all wages due to its tipped employees. The court has allowed the lawsuit to be conditionally certified as a collective action under the Fair Labor Standards Act ("FLSA") on behalf of tipped employees affected by ***Joe's Crab Shack's*** pay policies." *Id.* (emphasis added).

- In describing the recipient's legal rights, the Court Approved Notice states, "If you worked for ***Joe's Crab Shack*** at one of its restaurants as a tipped employee between August 28, 2010 and the present, you may be eligible to become a member of the FLSA collective action." *Id.* (emphasis added).

- In answering the question "How do I know if I am part of the collective action?," the Court Approved Notice explains, "You may be eligible to be a member of the FLSA collective action, or may already be a member of the FLSA collective action, ***if you worked for Joe's Crab Shack as a tipped employee*** in one of its restaurants from August 28, 2010 to the present." *Id.* (emphasis added).

Judge Siragusa also expressly approved the consent form as part of the Court Approved Notice.[3]

Also telling is Plaintiffs' counsel's own website, which explains that the Action is only

on behalf of Joe's Crab Shack employees. The website (aptly named, joescrabshackwageclaims.

com) is rife with statements confirming that this lawsuit is *only* about Joe's Crab Shack:

- The website homepage states, "If you are or were a tipped employee at ***Joe's Crab Shack*** within the past three years, you may be entitled to back wages for time you were paid less than the minimum wage."

---

[3] Plaintiffs' counsel submitted their proposed consent form for approval by the Court on August 28, 2013 as part of Plaintiffs' Motion for Expedited Collective Action Notification Pursuant to the FLSA. (*See* Dkt. Nos. 7, 8 and 9.)  In support of this motion, Plaintiffs' counsel submitted an Affirmation of Justin M. Cordello, an attorney with Thomas & Solomon LLP.  Mr. Cordello's affirmation included, as an exhibit, a "proposed notice, consent form, information sheet and envelope for the members of the Hart collective action." (*See* Dkt. Nos. 9, ¶ 7 and 9-1.)

- The website homepage also states, "Current and former employees have sued *Joe's Crab Shack* claiming that *Joe's Crab Shack* pay policy improperly pays employees."

- The website homepage also states, "[Y]our legal rights may be affected by the lawsuit if you . . . are or were employed by *Joe's Crab Shack* and were paid a subminimum wage at some point during the past three years."

- On the website's FAQs page, in response to the question "Do I qualify for the lawsuit?", the website states, "Our lawsuit involves persons who worked for *Joe's Crab Shack* in the last three years and were paid a subminimum wage.  Therefore, if you are a current or former *Joe's Crab Shack* employee and were paid a subminimum wage, then you qualify to participate in the lawsuit."

*See* excerpts from joescrabshackwageclaims.com, Osipoff Aff., Ex. B (emphasis added).

## II.     Defendants Inadvertently Produced Data In Connection With The Notice List[4]

To facilitate sending the Court Approved Notice, Judge Siragusa directed Defendants to

provide Plaintiffs' counsel with a list of contact information for the putative class members (*i.e.*,

Joe's Crab Shack tipped employees paid a subminimum wage). (*See* Dkt. No. 80.)  On January

30, 2015, prior defense counsel confirmed with Plaintiffs' counsel both the definition of the

putative class as well as the categories of information to be provided on the Notice List:[5]

> In light of the Court's recent decision and order on plaintiffs' motion to conditionally certify the collective, we are starting to gather the: (1) employee names, (2) current or last known addresses, (3) telephone numbers, (4) locations of employment, (5) positions held, and (6) dates of employment for the following *Joe's Crab Shack* employees:
>
> All current and former employees of *Joe's Crab Shack Restaurants* who at any time since September 30, 2010 to present have worked as

---

[4] Defendants believe that the facts contained in the Osipoff Affidavit and set forth herein are sufficient to show that production was inadvertent. The inadvertent production implicates a multitude of attorney-client privilege, privacy and confidentiality issues. Should the Court deem it necessary to hear additional details as to facts surrounding the inadvertent production, Defendants can provide an affidavit or testimony on an *in camera* basis.

[5] Defendants were represented by predecessor defense counsel, Epstein Becker & Green, P.C. ("Epstein"), until the end of March 2015.  Osipoff Aff., ¶ 6.  At this time, the undersigned counsel assumed representation of Defendants.  *Id.*

> tipped hourly food service workers, and were paid subminimum
> wages.  This includes all servers, bartenders, bussers, and hosts.

*See* January 30, 2015 email chain between Jeffrey Ruzal (Epstein) and Jared Cook, Ex. C.

(emphasis added).  Mr. Cook replied that the putative class included any employee paid a

subminimum tip credit rate, not limited to servers, bartenders, bussers and hosts.  *Id.*  Notably,

Mr. Cook did ***not*** contend that the putative class extended beyond Joe's Crab Shack employees,

or suggest in any way that the putative class included Macaroni Grill employees.  *Id.*

On or about February 18, 2015, the Notice List was provided to Plaintiffs' counsel, via

approximately 250 spreadsheets, broken down by restaurant location, containing the contact

information for the potential opt-ins.  Osipoff Aff., ¶ 8.  Two of those files inadvertently

contained a company-wide master human resources list that should have ***never*** been provided to

Plaintiffs' counsel.  Osipoff Aff., ¶ 9.  The master human resources list included, not just Joe's

Crab Shack employees (both tipped and non-tipped) and not just Macaroni Grill employees (both

tipped and non-tipped), but rather contained the names of over ***124,000*** employees from all

reaches of the Ignite organization, including the individual defendants, Ignite's General Counsel,

corporate executives, salaried employees, exempt employees, and management—individuals

who in no conceivable way could ever be deemed part of the class of Joe's Crab Shack tipped

employees who were paid a subminimum wage.[6]  *Id.*  Moreover, the data provided for these

employees went well beyond the scope of what Defendants were ordered to provide (*i.e.*, contact

information, location of employment, position held and dates of employment). *Id.* Defendants

***never*** intended to provide this information to Plaintiffs' counsel.

---

[6] At Plaintiffs' counsel's insistence, they were subsequently provided the data in a single,
consolidated spreadsheet.  Osipoff Aff., ¶ 10.  Because the consolidated spreadsheet merely
electronically consolidated the data in the individual lists, it too included all of the individuals
contained on the master human resources list. *Id.*

### III.    Defendants Discover The Inadvertent Production

Plaintiffs' counsel sat on the Notice List for three and a half months.  On June 1, 2015, Plaintiffs finally mailed out the Court Approved Notice. Osipoff Aff., ¶ 11. The Court Approved Notice was, presumably, mailed to all 124,601 individuals on the Notice List, well beyond the scope of the potential opt-ins.  Prior to the mailing, Defendants had no reason to suspect there were any issues with the Notice List.  Osipoff Aff., ¶ 12.

Tellingly, *Plaintiffs' counsel* was surprised to learn that the Court Approved Notice was sent to individuals who did not work at Joe's Crab Shack and did not work in tip credit positions. On or about June 8, Plaintiffs' counsel alerted defense counsel that they were contacted by individuals who received the Court Approved Notice but did not work at Joe's Crab Shack and/or did not work in a tipped position.  Osipoff Aff., ¶ 13.  Mr. Cook followed up that conversation with an email, stating, "Just to confirm what we discussed yesterday, as I said, we need to figure out why there are apparently people included in the notice list that did not work in tip credit positions, and also ***why there are people in the notice list that did not work at Joe's Crab Shack locations***."  *See* June 9, 2015 email from Mr. Cook to Ms. Osipoff, Osipoff Aff., Ex. D. (emphasis added).  Plaintiffs' counsel followed up days later, providing Defendants with a sampling of names of individuals who worked at Macaroni Grill or did not work in a tipped position, who had apparently received the Court Approved Notice.  *See* June 12, 2015 email from Mr. Cook to Ms. Osipoff, Osipoff Aff., Ex. E.  If Plaintiffs' counsel expected Macaroni Grill to be part of this Action, as they now suggest, it is preposterous that they would question why the list included names beyond the putative class of Joe's Crab Shack tipped employees, and particularly why the list included the names of Macaroni Grill employees.

Defendants investigated why individuals outside the putative class received notice. Osipoff Aff., ¶ 16. Defendants' investigation revealed that the Notice List inadvertently included the

master human resources list discussed above. *Id.* After investigating, on or about June 16, 2015, and again on or about June 19, 2015, Defendants informed Plaintiffs' counsel that the Notice List provided to them inadvertently included tens of thousands individuals that did not work at Joe's Crab Shack and/or did not work in a tipped position. Osipoff Aff., ¶ 17.  Defendants set forth that the data related to the inadvertently included individuals could not be used by Plaintiffs' counsel and must be returned or destroyed.  *Id.*  Though Plaintiffs' counsel took a different position, they agreed not to disseminate the data, other than to those performing work for their firm.  *Id.*  Defendants informed Plaintiffs' counsel that they were in the process of preparing a revised class list that would include only the putative class members. Osipoff Aff., ¶ 18.

**IV.**     **Defendants Provide A Corrected Notice List**

On July 17, Defendants provided Plaintiffs' counsel with a corrected list of the 32,962 putative class members of Joe's Crab Shack tipped employees who were paid a subminimum wage (the "Corrected Notice List").  Osipoff Aff., ¶ 19.  Any individual listed on the Notice List, but not on the Corrected Notice List, is not a putative member of the conditionally certified class. After receiving the Corrected Notice List, Plaintiffs' counsel had no legitimate reason to keep or continue to use the Notice List.

**V.**      **Defendants Inform The Court About The Inadvertent Production**

Recognizing the myriad of issues resulting from the inadvertently produced Notice List, defense counsel informed Judge Siragusa of the inadvertent production on June 24, 2015.  *See* June 24, 2015 letter to Judge Siragusa from defense counsel.   Defendants informed Judge Siragusa that, though the parties have agreed not to disseminate the data, the parties could not reach an agreement on Plaintiffs' return or destruction of the data, and any limitations on the use of the inadvertently provided information. *Id.* Defendants also informed Judge Siragusa that corrective notice should be sent to the individuals who inadvertently received the Court

Approved Notice.  Defendants requested a conference to resolve these issues.  *Id.*  On July 6, 2015, Judge Siragusa's law clerk informed Defendants that their application should be directed to Judge Payson.  Osipoff Aff., ¶ 20.  Accordingly, on that same date, Defendants sent the same correspondence on to Judge Payson.  *See* July 6, 2015 letter to Judge Payson from defense counsel.

Upon receipt of Defendants' letter, Judge Payson set a telephone conference with the parties for July 9, 2015.  Osipoff Aff., ¶ 21.  During this call, Judge Payson discussed the inadvertent production with the parties, as well as the issues arising therefrom.  Osipoff Aff., ¶ 22.  The Court ordered the parties to confer on all of the outstanding issues and appear for a telephone conference with Judge Payson the following day. *Id.*  Defendants reiterated their position that *all* inadvertently provided information must be returned to Defendants and/or deleted, including all information regarding any individual not included in the putative class.

From there, Judge Payson worked closely with the parties to resolve the issues arising out of the inadvertent production:

- Judge Payson scheduled a status conference for July 17, and directed the parties to submit a status letter in advance of that call.  *See* July 16, 2015 joint status letter to Judge Payson.

- Pursuant to Judge Payson's Order, the parties submitted a joint status letter on July 22, 2015. *See* July 22, 2015 joint status letter to Judge Payson.

- Judge Payson held a conference with the parties on August 18, 2015, after which she directed the parties to provide a status letter detailing the parties' positions on all remaining issues. Osipoff Aff., ¶ 23.

- On August 21, 2015, the parties each submitted status letters to Judge Payson.  *See* Defendants' August 21, 2015 and Plaintiffs' August 21, 2015 status letters to Judge Payson.

- Defendants provided supplemental status letters to Judge Payson on September 28, 2015 and October 8, 2015.  *See* Defendants' September 28, 2015 and October 8, 2015 supplemental status letters to Judge Payson.

## VI.    Plaintiffs' Counsel Has Not Returned, And Continues To Use, The Inadvertently Produced Data

Defendants' position has been clear from the first time it voluntarily raised this issue with the Court:  (1) Plaintiffs' counsel must return or destroy the inadvertently produced data; and (2) Plaintiffs' counsel cannot in any way use the inadvertently produced data.  Knowing full well that the issues stemming from the inadvertent production remained pending before the Court, Plaintiffs' counsel has refused to return the inadvertently produced data; used the inadvertently provided data to send misleading communications to individuals outside the putative class implying that they are somehow part of this Action (and continues to do so); unilaterally changed the Court Approved Notice to send unapproved consent forms to individuals outside the putative class and filed those unapproved consent forms in this Action on behalf of individuals not part of the putative class; and moved to amend the complaint to include claims by individuals outside the putative class against a defendant not a party to this litigation.

### A.    Plaintiffs Sent Macaroni Grill Employees Misleading Communications and an Unapproved Consent Form

As detailed in Defendants' August 21 status letter to the Court, Defendants learned that Plaintiffs' counsel filed a number of consent forms with the Court on behalf of opt-in plaintiffs that are substantially different from the consent form approved by Judge Siragusa in his January 27, 2015 Decision and Order.[7]  Attached as Exhibit F to the Osipoff Aff. is a sample unapproved consent form filed by Plaintiffs' counsel in this Action.

Based on the filing of the unapproved consent forms, Defendants had concerns Plaintiffs' counsel was using the inadvertently produced data to send individuals not part of the putative

---

[7] Many of these consent forms are untimely as they are dated after the July 30, 2015 opt-in cutoff period.  Defendants reserve all rights regarding their ability to contest these opt-ins' ability to join this litigation on the grounds that they did not timely file a consent form.

class an unapproved consent form which implied that Macaroni Grill is a defendant in this

Action.  On August 21, 2015, Defendants asked Plaintiffs' counsel how individuals received the

unapproved consent form and whether Plaintiffs' counsel had initiated contact with individuals

who were inadvertently included on the class list.  Osipoff Aff., ¶ 25.  However, Plaintiffs'

counsel would not provide Defendants a response until they made a written request—which

Defendants immediately did by email.  Osipoff Aff., Ex. G.  Rather than provide a response to

Defendants' email, Plaintiffs elected to the treat the email as a request for documents.  *See id.*

On September 21, Plaintiffs' counsel finally provided a response to Defendants' email. In

the response, Plaintiffs' counsel admitted they sent a letter to "a sampling of the defendants'

employees."  *See* Plaintiffs' Response to Defendants' Request for Production of Documents,

Osipoff Aff., Ex. H.  Further, Plaintiffs' counsel ***admitted they used the inadvertently produced***

***Notice List as the source of the contact information to send the letter***. *Id*. The letter

misleadingly states that Plaintiffs' counsel "obtained [the individual's] name from Ignite through

the litigation," and does not explain that Defendants provided their name to Plaintiffs' counsel

inadvertently and have been demanding return of this inadvertently provided data since mid-

June. *See id*. at Ex. A. The letter encloses the unapproved consent form.  *Id.*

The unapproved consent form contains the following language:

> I consent to become a "party plaintiff," named, or a representative
> plaintiff in any Fair Labor Standards Act action of unpaid wages,
> including overtime wages and/or tip credit violations, and related
> relief against my employer(s), including Ignite Restaurant Group,
> Joe's Crab Shack, Macaroni Grill, and any related entity or person,
> on behalf of myself and other former and current employees of the
> employer(s).
>
> I wish to preserve and pursue any claim that I may have to the
> greatest extent possible.  Therefore, I expressly consent to the use
> of this consent form for purposes of making me a party plaintiff in
> any lawsuit and/or lawsuits that plaintiffs' attorneys have brought

> and/or may bring on behalf of myself and other employees alleged
> to be similarly situated.

*Id.* The unapproved consent form significantly changes the language approved by the Court.[8] The unapproved form does not specifically reference the *Hart* litigation and creates the impression that Macaroni Grill (and any other "related entity or person") is a defendant in this Action, which is simply not true.  As of October 23, 2015, Plaintiffs' counsel has filed over 300 unapproved consent forms with the Court, and Plaintiffs' counsel continues to file additional unapproved consent forms on a daily basis.[9]  Osipoff Aff., ¶ 28.  Of these, most are on behalf of individuals who worked at Macaroni Grill, not Joe's Crab Shack.  *Id.*

On October 21, 2015, after this Court set a briefing schedule and oral argument to address the outstanding issues arising out of the inadvertent production, Plaintiffs' counsel provided a copy of yet *another* letter it sent to an untold number of individuals inadvertently included on the Notice List.  *See* Plaintiffs' Supplemental Response to Defendants' Request for Production of Documents, Osipoff Aff., Ex. I.  Plaintiffs' counsel *again* admitted that it used the inadvertently produced Notice List as the source of the contact information to send the letter.  *Id.* The letter *again* misleadingly states that Plaintiffs' counsel obtained the recipient's name from Ignite through the litigation, *again* implies that Macaroni Grill is a defendant to this Action and Macaroni Grill employees or former employees are properly included in this Action, and *again* encloses the unapproved consent form. *Id.*

---

[8] In contrast, the approved consent form contains, in pertinent part, the following language: "I consent to become a 'party plaintiff,' named, or a representative plaintiff, in the action entitled *Hart, et al. v. Joe's Crab Shack, et al.*, Civil Action No. 13-cv-6458 (W.D.N.Y.), for purposes of asserting a claim under the Fair Labor Standards Act for unpaid wages, including overtime wages, and related relief against my employer, on behalf of myself and other former and current employees of the employer."  Osipoff Aff., Ex. A.

[9] Defendants reserve any and all rights to contest these improper opt-in forms.

Plaintiffs' counsel has now established a website, igniterestaurantwageclaims.com, to which Plaintiffs direct the recipients of its letters to visit, which contains further misleading statements. The website states:

> You may have gotten a letter from us asking whether you worked at Joe's Crab Shack or at Macaroni Grill. If so, you received that letter because we obtained your name through the litigation process in our lawsuit against Joe's Crab Shack. The Judge ordered Ignite to provide us with a list of their tipped employees so we could inform them of the Joe's Crab Shack lawsuit and give them the opportunity to decide whether to participate. . . . However, we need your help. In response to the Judge's order, Ignite gave us a list of employees, but they did not distinguish between those employees that worked at Joe's Crab Shack and those that worked at Macaroni Grill. We therefore need your held to determine which employees worked at Macaroni Grill and which worked at Joe's Crab Shack.

*See* relevant excerpts from igniterestaurantwageclaims.com, Osipoff Aff., Ex. J. This is a blatant misrepresentation of what the Court ordered.

### B.    Plaintiffs Inappropriately Move to Amend the Complaint

On October 5, 2015, Plaintiffs moved to amend the Complaint to add, *inter alia*, Macaroni Grill as a defendant and to assert claims on behalf of Macaroni Grill employees (the "Motion to Amend").[10] (*See* Dkt. No. 207).   In the Motion to Amend, Plaintiffs make the outlandish assertion that employees of Macaroni Grill were always meant to be included in the putative class and Macaroni Grill employees were intentionally included on the Notice List for that reason. *Id.*  Plaintiffs' counsel claims they are now merely seeking to amend the complaint to "eliminate any doubt" that Macaroni Grill employees are part of this Action.[11]  *Id.*

---

[10] The impropriety of the Motion to Amend will be addressed fully in Defendants' Opposition to Plaintiffs' Motion to Amend, to be filed on November 6, 2015 per the Court's briefing schedule.

[11] Curiously, and contrary to Plaintiffs' claims that Macaroni Grill employees were always a part of this Action, Plaintiffs' igniterestaurantwageclaims.com website makes clear that, though

**ARGUMENT**

I. **Plaintiffs Must Return The Inadvertently Produced Class List**

A. **The Inclusion of Employees Other than Joe's Crab Shack Tipped Employees Paid a Subminimum Wage on the Notice List was Inadvertent**

It is beyond dispute that Macaroni Grill was not originally contemplated as part of this Action. Plaintiffs' attempt to claim that Macaroni Grill employees were always a part of this Action, and that the names of Macaroni Grill employees were intentionally produced to them, is nothing more than a farce. Plaintiffs only belatedly make this disingenuous assertion in an attempt to justify their refusal to return the inadvertently provided data. In actuality, this Action never included claims against Macaroni Grill and Macaroni Grill employees are not part of the putative class. See Facts, Sect. I, supra.

It is also beyond dispute that production of a master human resources list containing information about individuals well beyond the putative class was inadvertent. Plaintiffs' counsel's preposterous claim that Macaroni Grill employees were intentionally included on the Notice List is contrary to all of the facts herein and defies all logic. As shown above, Macaroni Grill employees were *never* contemplated as part of this Action, and thus there was no intent to produce data for anyone who worked there. *See* Facts, Sections II & III, *supra*.

Plaintiffs' contention that Macaroni Grill employees were intentionally included on the Notice List is undermined by the fact that the inadvertent Notice List contained individuals well beyond just Joe's Crab Shack or Macaroni Grill employees. The Notice List included individuals at the highest reaches of Ignite, who by no stretch of the imagination qualify as part of the putative class. By Plaintiffs' reasoning, Defendants also "intended" to include as putative

---

Plaintiffs' counsel has initiated a lawsuit on behalf of employees that worked at Joe's Crab Shack, it is currently *investigating* any claims against Macaroni Grill. Osipoff Aff., Ex. J.

plaintiffs in this Action Ignite's highest level corporate executives, including, among others, the individual defendants and Ignite's General Counsel.  Recognizing the absurdity of this logic, Plaintiffs' counsel conveniently ignores this fact and instead implies that the inadvertently produced Notice List contained only Joe's Crab Shack and Macaroni Grill tipped employees, which is simply not true.  It is nonsensical the Defendants would intentionally produce a master human resources list for over 124,000 employees well beyond the scope of the putative class.

### B.      Plaintiffs Must Return the Inadvertently Produced Data

Defendants' inadvertent production of the master human resources list was the product of human error, nothing more.  The data is irrelevant to the Action before the Court, and infringes on the privacy of individuals who are not part of the putative class in this Action.  Accordingly, Plaintiffs' counsel must return the inadvertently produced data.  *See, e.g.*, *Warren v. Corizon Health*, 14-cv-00011, 2015 WL 1268269, at *4 (D. Idaho Mar. 19, 2015) (ordering plaintiff to return inadvertently produced records); *Tilton v. Capital Cities/ABC, Inc.*, 938 F. Supp. 748, 750 (N.D. Okla. 1995) (ordering the return of inadvertently produced employment contract).

### II.     Plaintiffs' Counsel Improperly Used the Inadvertently Produced Data To Send Misleading Communications

As an initial matter, Plaintiffs' counsel should not be using the inadvertently produced data for any reason.  Any use of the data is patently improper for the simple reason that the data was inadvertently produced to them—Plaintiffs' counsel was never supposed to have this data and thus they should now not be using it.  Beyond that, Plaintiffs' counsel's communications with individuals inadvertently included on the Notice List are improper because they are misleading and deceptive. Plaintiffs' counsel's letters to an untold number of individuals inadvertently included on the Notice List, as well as Plaintiffs' unilaterally modified consent form, contain numerous statements that are factually inaccurate, confusing, and misleading; the

15

communications usurp this Court's power and statutory duty to oversee the FLSA-mandated process for court-facilitated notice to potential collective action members and preempt the ability of this Court to determine whether and to whom-class wide notice may be appropriate in the first instance—all critical issues Defendants vigorously disputes.  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (the discretion to facilitate notice to potential opt-in plaintiffs under 29 U.S.C. § 216(b) is vested in district courts).

### A.  <u>The Court Has Broad Discretion to Manage the Notice Process</u>

The Supreme Court has made clear that a District Court has a managerial responsibility to oversee the process by which putative class members are given notice of and allowed to join a § 216(b) collective action. *See Hoffmann-La Roche*, 493 U.S. at 169. Due to "the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981).  The court's "duty and authority . . . to protect the integrity of the potential class extends to communications that mislead or otherwise threaten to create confusion, or that influence the decision of whether to opt-in." *Forauer v. Vermont Country Store, Inc.*, No. 5:12-cv-276, 2013 WL 6086202, at *4 (D. Vt. Nov. 19, 2013) (quotations omitted). Court supervision of any notice issued to members of a putative class is necessary in such an action because "the potential for misuse of the class device, as by misleading communications, may be countered by court-authorized notice." *Hoffmann-La Roche*, 493 at 171. "By monitoring preparation and distribution of [the notice], a court can ensure that the notice is timely, accurate, and informative." *Id.* at 172.

The question of whether to enter an order limiting communications between potential class members and counsel is committed to the sound discretion of the court. *See Gulf Oil Co.*, 452 U.S. at 101; *see also Hoffmann-La Roche*, 492 U.S. at 169.  In order for the Court to issue a

restraint on communications with a putative class, it "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential inference with the rights of the parties." *Gulf Oil Co.*, 452 U.S. at 101.  Such a record is present here.

### B. Plaintiffs' Letters Are Misleading, Vague and Confusing

The receipt of the Court Approved Notice was no doubt confusing to the 91,000 individuals who received it, but who are not properly in the putative class.  For this reason, Defendants requested that the parties work with the Court to prepare and send a corrective notice informing the individuals who inadvertently received the Court Approved Notice that they were not properly in the putative class.  Instead, Plaintiffs' counsel intentionally created further confusion by unilaterally sending letters to an untold number of individuals who are not putative plaintiffs, which contain vague, confusing, and misleading statements.  Plaintiffs' counsel sent these letters knowing full well that parties were working with the Court to address all of the issues arising out of the inadvertent production.

Courts have held consistently that litigants (and their counsel) may not make pre-class certification statements to putative class members that are inaccurate or misleading, or that present one-sided assertions as undisputed or unqualifiedly true.  *See, e.g.*, *Bouder v. Prudential Fin., Inc.*, 06-cv-4359, 2007 U.S. Dist. LEXIS 83338, at *6-7 (D.N.J. Nov. 8, 2007) (ordering plaintiffs to cease and desist misleading communications to putative class members); *Taylor v. CompUSA, Inc.*, 04CV718, 2004 WL 1660939, at *3 (N.D. Ga. Nov. 10, 2009) ("[U]ntil the Court rules on the motion for conditional certification and approval of notice, Plaintiffs shall not include such unqualified, misleading statements communications with potential plaintiffs."); *Alaniz v. Sam Kane Beef Processors, Inc.*, CC-07-335, 2007 U.S. Dist. LEXIS 89161, at *2-4 (S.D. Tex. Dec. 4, 2007) (ordering plaintiffs to cease and desist communications with potential class members where plaintiffs invalidly suggested that any current or former employee was

17

eligible to join the litigation and recognizing an ungoverned notice could create "false expectations for those ineligible to sue and possibly burden[ ] the Court with meritless suits").

Likewise, courts have held that, after conditional certification, the court-controlled notice mechanism—the court approved notice to the conditional class—must trump any attorney-driven, post-conditional certification notice or communication. *See Ruggles v. Wellpoint, Inc.*, 591 F. Supp. 2d 150, 164 (N.D.N.Y. 2008); *Taylor v. Pittsburgh Mercy Health Sys., Inc.*, 09-377, 2009 WL 2762531, at *4 (W.D. Pa. Aug. 25, 2009) ("[T]he court-controlled mechanism should trump . . . attorney driven modes of communication after conditional certification") (quotations omitted); *Jackson v. Papa John's USA, Inc.*, 08-CV-2791, 2009 WL 650181, at *2 (N.D. Oh. Mar. 10, 2009) ("This Court has approved of a communication to potential opt-in class members. Other communications . . . during the pendency of the notice period may create confusion or undermine the authority of the Court-approved communication."). In *Ruggles*, the court ordered Plaintiffs' counsel to cease advertisements to the putative class. *Id.* The court recognized the potential for abuse and confusion if Plaintiffs' counsel continued to send advertisement notices to the putative class:

> Now that the Court is fully engaged in supervising this notice process, if Plaintiffs do not desist in employing advertisement notices to the putative class, there could be an apparent conflict between the court-authorized notice and those communications made by counsel to potential plaintiffs. There is also the potential for abuse and confusion. . . [T]o bring order and efficiency to the notice process, the court-controlled mechanism should trump any attorney driven notice and resolve any post-conditional certification notice in favor of the Court's controlled process.
>
> Failure to limit notification to a single process would be dissonant with the intent of the FLSA statute that the Court plays a significant role in prescribing the terms and conditions of communications from the named plaintiffs to the potential members of the class on whose behalf the collective action was commenced.

*Id.*

Plaintiffs' counsel is no stranger to court intervention in their communications with putative class members. Thomas & Solomon has previously been ordered to submit communications with putative class members to the court for advance approval. *See Taylor,* 2009 WL 2762531, at *4 ("Absent court supervision, Plaintiffs' issuance of further mailings may well present a situation in which it is difficult, if not impossible, to 'unscramble the egg.'"); *Camesi v. Univ. of Pittsburgh Med. Ctr.*, No. 09-85J, 2009 WL 3719483, at *4 (W.D. Pa. Nov. 4, 2009) ("[N]umerous disputes resulting from Plaintiffs' mailings serve only to emphasize the need for Court supervision over the FLSA notice process."). In this district, Judge Larimer has cautioned Thomas & Solomon against sending misleading communications to putative class members. *See Rubery v. Buth-Na-Bodhaige, Inc.*, 514 F. Supp. 2d 431, 434 (W.D.N.Y. 2007).

Here, through nothing more than an inadvertent error, the Court Approved Notice was sent to over 90,000 individuals who are not part of the putative class. Instead of working with Defendants and the Court to rectify the inadvertent notice, Plaintiffs' counsel took steps to further confuse and mislead the inadvertently notified individuals. Knowing full well that Macaroni Grill employees are not a part of this Action, Plaintiffs' counsel unilaterally initiated a solicitation campaign targeting these individuals, using the inadvertently produced data that Defendants demanded be returned, and created the impression to current and former Macaroni Grill employees that they are indeed part of this litigation. At the same time, Plaintiffs represented to Defendants and this Court that they would work in good faith with Defendants on the issues arising out of the inadvertently produced Notice List, including the return of any inadvertently produced data and any corrective notice to inadvertently notified individuals.

Plaintiffs' communications to the inadvertently included individuals are misleading and

confusing. Plaintiffs' counsel falsely represents, "We obtained your name from Ignite through the litigation process." Osipoff Aff., Exs. H & I.  But, Plaintiffs fail to explain they obtained the names of these individuals inadvertently, or that Defendants are vigorously pursuing return of such inadvertently produced data.  Although this sentence is false, it creates the impression that recipients of the notice were selected by both Plaintiffs' counsel and Defendants to receive the notice. This would tend to make the recipient more likely to accept the statements therein as genuine and accurate. This statement was deliberately misleading and deceptive and was designed to establish a false sense of trust with the individual who received the notice, to encourage them to join the case.  In fact, Plaintiffs' counsel was previously cautioned by Judge Larimer for sending a letter containing similar language. In *Rubery*, Plaintiffs' counsel sent a solicitation letter to defendant's employees using a confidential manager list plaintiff had misappropriated during her employment.  514 F. Supp. 2d at 434.  In that letter, the Thomas & Solomon firm similarly stated that they had received the recipients' names from documents provided by the defendant.  *Id.*  The court was "troubled" by the letter, noted this statement that was "undeniably false" and "implied that [defendant] voluntarily provided plaintiff's counsel with some or all of the recipients' names and/or addresses, and/or identified them as members of the putative class."  *Id*.  Judge Larimer cautioned Plaintiff's counsel "to ensure that any and all future contacts with the putative class members are straightforward, accurate, and free of misleading omissions."  *Id.* at 435.

Further, Plaintiffs' counsel implies that Macaroni Grill is a defendant to this Action and that the recipient can participate in this lawsuit by filing a consent form.  Plaintiffs' counsel states, "As you may already be aware, our firm is already representing close to two thousand current and former employees in a lawsuit against Ignite Restaurant Group.  We obtained your

name through the litigation process. . . We have enclosed two forms for you to fill out and return

if you wish to participate further."   Osipoff Aff., Ex. I, at Exhibit A.   But Plaintiffs fail to

disclose that the lawsuit in which they represent these "current and former employees" only

involves Joe's Crab Shack and does not include claims against Macaroni Grill.   Plaintiffs

deceptively imply that filling out a consent form allows the recipient to participate in this Action.

But Macaroni Grill employees are not included in the conditionally certified class, and thus any

opt-in form filed by a Macaroni Grill employee in this Action is futile.   Moreover, Plaintiffs'

counsel has refused to identify to whom they have sent these communications.   The individuals

inadvertently included on the Notice List extend well beyond Macaroni Grill tipped employees,

and include employees dating back several years. Plaintiffs' counsel may be sending letters to

individuals who could not possibly have tip credit claims (because they were not tipped

employees paid a subminimum wage) or who, even if they were a tipped employee, would have

no ability to recover in an action against Macaroni Grill because they are barred by the

applicable statute of limitations.  If Plaintiffs' counsel is communicating with such individuals,

they are grossly misinforming individuals as to their legal rights.

Finally, the unapproved consent form significantly changes the language approved by

Judge Siragusa.  The unapproved consent form does not reference the *Hart* litigation and creates

the implication that Macaroni Grill (and any other "related entity or person") is a defendant in

this Action, which is simply not true.   Plaintiffs' counsel cannot unilaterally make changes to the

court approved consent form.  *See Young v. Dollar Trees Stores, Inc.*, 11-cv-1840, 2012 WL

5494000, at *3 (D. Col. Nov. 13, 2012) (after plaintiffs mailed consent forms that omitted

language from the court authorized consent, plaintiffs were ordered to send recipients a new

consent form, and held that any incorrect consent forms "even if executed and returned, shall not

be considered valid"); *Camesi*, 2009 WL 3719483, at *3 n1 (court was "perplexed" why Thomas & Solomon sent consent form other than the one approved by the court, and noted "[s]hould Defendants later challenge the sufficiency of any opt-in forms submitted [on the unapproved form] . . . Plaintiffs' counsel may be said to have made their own beds").

Plaintiffs' confusing and misleading communications, using inadvertently produced data, warrant the court to issue a restraint on further communications and invalidate the consent forms.

### C.      The First Amendment Does Not Provide a Blanket Protection of Plaintiffs' Communications

Plaintiffs will undoubtedly argue, as they did in their August 21 and September 30 letters, that their communications are protected under the First Amendment.  Plaintiffs' counsel may have "a First Amendment right to constitutionally protected commercial speech in its advertisement to a putative class, but it is not absolute." *Ruggles*, 591 F. Supp. 2d at 163.  As Plaintiffs' counsel is well aware, when there is a "clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties," courts can, and do, issue restraints on communications with a putative class. *Ruggles*, 591 F. Supp. 2d at 164; *Taylor*, 2009 WL 2762531, at *4 (requiring Thomas & Solomon to submit any further communications with putative class members for court approval); *Camesi*, 2009 WL 3719483, at *4, (same); *Rubery*, 514 F. Supp. at 434 (cautioning Thomas & Solomon against sending misleading communications to putative class members). "[I]f there is a record of abuse or misleading statements, the court should act to correct it." *Ruggles*, 591 F. Supp. 2d at 164. "Plaintiffs' counsel's efforts to inject themselves into the notice process, outside the scope of judicial supervision, cannot be canonized merely through an invocation, from the highest mountain, of the First Amendment." *Camesi*, 2009 WL 3719483, at *4, n4.

Here, the court must limit Plaintiffs' communications with the individuals inadvertently

listed on the Notice List to prevent further inaccurate statements as to Macaroni Grill's involvement in this case or the ability for Macaroni Grill employees to participate in the Action. Plaintiffs' counsel has gone well beyond constitutionally protected commercial speech. Plaintiffs' counsel acted improperly by widely circulating misleading communications without first discussing it with Defendants or seeking Court approval.  By failing to do so, Plaintiffs denied Defendants, and this Court, the opportunity to correct false and deceptive statements before irreparable harm was done.   Accordingly, Plaintiffs should be ordered to cease and desist from further initiating communications with any individuals using the inadvertently produced data.  The protections Defendants seek to implement in the protective order are narrowly drawn and consistent with the principles of *Hoffmann-La Roche*.  Defendants do not seek a complete ban on communications with Macaroni Grill employees or other potential class members, but rather seek to restrict Plaintiffs' counsel from using the inadvertently produced data and to prevent potential abuses that could undermine the purpose and objectives of the Court authorized notice to proper class members.  *See* Proposed Protective Order, Osipoff Aff., Ex. K.

### D.    The Court Should Direct the Issuance of a Corrective Notice[12]

Corrective notice is appropriately issued to individuals who are inadvertently provided court approved notification.  *See, e.g.*, *Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, 12-cv-5651, 2014 WL 4652549, at *2 (Sept. 18, 2014) (noting that court approved plan to send corrective notice to individuals to whom Plaintiff issued notice, but were not part of the collective action); *Lucas v. Bell Trans.*, 2:08-cv-01792, 2011 WL 5877467, at *12 (denying motion to reconsider magistrate judge's order to issue a curative notice where Plaintiffs' counsel inadvertently sent

---

[12] Although Defendants previously told the Court that it would bear the costs of any corrective notice, in light of Plaintiffs' counsel's misleading communications further confusing and complicating this issue, costs of the corrective notice are now appropriately born by Plaintiffs.

notice prematurely); *see also Otsuka v. Polo Ralph Lauren Corp.*, No. C 07-02780, 2009 WL 799306, at *2 (N.D. Cal. Mar. 24, 2009) (granting motion to split costs of sending corrective notice to individuals inadvertently included on class notice).

Corrective notice is also appropriate where putative class members are sent misleading notices. *See Rubery*, 514 F. Supp. 2d at 435 (noting that a solicitation letter's inaccuracies "can be remedied by the issuance of a corrective notice in the event class certification is granted" and "strik[ing] the consent forms of any putative plaintiffs who are ultimately discovered not to be properly included [in] the class"); *Spoerle v. Kraft Foods Global, Inc.*, 253 F.R.D. 434, 443 (W.D. Wis. 2008) (ordering plaintiffs' counsel to send corrective notice after issuing misleading notice); *Goody v. Jefferson Cnty.*, CV-09-437, 2010 WL 3834025, at *3 (D. Id. Sept. 23, 2010) (ordering corrective notice where defendant sent misleading communications to the putative plaintiffs); *Stransky v. HealthONE of Denver, Inc.*, 929 F. Supp. 2d 1100 (D. Col. 2013) (same).

Here, corrective notice is necessary to both: (1) notify the individuals who inadvertently were recipients of the Court Approved Notice; and (2) clarify the misleading communications Plaintiffs' counsel sent to individuals not part of the putative class.[13]

---

[13] The content of any corrective notice is complicated by Plaintiffs' inappropriate communications with individuals improperly included on the Notice List. Because Defendants do not know the full extent of communications Plaintiffs engaged in with the inadvertently included individuals or to whom such communications were sent, they cannot propose language for the corrective notice. Should the Court grant the herein request, Defendants request that the Court require any such corrective notice be approved by the Court in advance of distribution.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court: (1) order Plaintiffs' counsel to return the inadvertently produced Notice List; (2) issue a protective order requiring Plaintiffs' counsel to cease and desist from initiating communications with individuals using the inadvertently produced data; and (3) order the issuance of a corrective notice, in a form to be approved by the court, to individuals who inadvertently received class notice and/or Plaintiffs' misleading communications.

Dated:  New York, New York
         November 2, 2015

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.

By  *s/ Brian J. Gershengorn*
    Brian J. Gershengorn
    Melissa Osipoff
1745 Broadway
22nd Floor
New York, NY  10019
(212) 492-2500
*Attorneys for Defendants*