UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER HART, MARIA SARGENT, TAYLOR RAMSEY, ANDREA RANDLETT, SHELLY CARRERA, MICHAEL WILLIAMS, LEAH HENCHELL, COURTNEY HOLLINS, AMBER INGRAM, and WHITNEY DOLAN *on behalf of themselves and all other employees similarly situated*<br><br>        Plaintiffs,<br><br>          v.<br><br>CRAB ADDISON, INC., d/b/a JOE'S CRAB SHACK, IGNITE RESTAURANT GROUP, INC., RAYMOND A. BLANCHETTE III, KEVIN COTTINGIM, and RODNEY MORRIS,<br><br>        Defendants. | Civil Action No. 13-cv-6458(CJS-MWP) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER TO PRECLUDE PLAINTIFFS FROM SERVING THEIR PROPOSED SUBPOENAS ON DEFENDANTS AND THEIR CURRENT AND FORMER <u>COUNSEL OR OTHERWISE ENFORCING THE SUBPOENAS</u>**

Brian J. Gershengorn
Melissa J. Osipoff
Seth D. Kaufman
FISHER & PHILLIPS LLP
1 Rockefeller Plaza
11th Floor
New York, NY 10020
(212) 956-0897
*Attorneys for Defendants*

## **TABLE OF CONTENTS**

**Page(s)**

FACTS ............................................................................................................................................ 1

ARGUMENT .................................................................................................................................. 5

    I.    Plaintiffs' Ten (10) Subpoenas, On Their Face, Command Almost Exclusively Testimony and Documents Protected By The Attorney Client And Work Product Privileges, And, Thus, There is Good Cause For The Court to Grant a Protective Order Precluding Plaintiffs From Serving, Or Otherwise Enforcing, The Subpoenas .................................................................... 6

CONCLUSION ............................................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Carpenter v. Churchville Greene Homeowner Ass'n*,
  2011 WL 4711961 (W.D.N.Y. Sept. 29, 2011) ...................................................................7, 9

*Chevron Corp. v. Donziger*,
  2012 WL 6634680 (S.D.N.Y. Dec. 19, 2012) ................................................................5, 6, 10

*Geist v. Ammary*,
  2014 WL 4996209 (E.D. Pa. Oct. 7, 2014)..............................................................................6

*In re Application of Minebea Co., Ltd.*, 143 F.R.D. 494 (S.D.N.Y. 1992)......................................7

*In re Friedman*,
  350 F.3d 65 (2d Cir. 2003)...................................................................................................7, 8

*In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*
  318 F3d 379 (2d Cir. 2003)......................................................................................................6

*Mauna Kea Resort v. Affiliated FM ins. Co.*,
  2009 WL 578529 (E.D.N.Y. Mar. 4, 2009)..............................................................................5

*Rofail v. U.S.*,
  227 F.R.D. 53 (E.D.N.Y. Feb. 1, 2005) ...................................................................................5

*Roseman v. Bloomberg L.P.*,
  2016 WL 3866375 (S.D.N.Y. June 17, 2016) ................................................................. passim

*Spin Master Ltd. v. Bureau Veritas Consumer Products Service, Inc.*,
  2013 WL 4718589 (W.D.N.Y. Sept. 3, 2013) .......................................................................10

*Stavola v. Northeast Utilities*,
  2006 WL 2850414 (D. Conn. Oct. 4, 2006) ............................................................................6

*U.S. v. Mejia*,
  655 F. 3d 126 (2d Cir. 2011)....................................................................................................6

**Rules**

Fed. R. Civ. P. 26................................................................................................................. passim

Fed. R. Civ. P. 45................................................................................................................. passim

Defendants Crab Addison, Inc. d/b/a Joe's Crab Shack, Ignite Restaurant Group, Inc. ("Ignite"), Raymond A. Blanchette III, Kevin Cottingim, and Rodney Morris (collectively, "Defendants") hereby submit this Memorandum of Law in Support of their Motion for a Protective Order to Preclude Plaintiffs from Serving their Proposed Subpoenas on Defendants and their Current and Former Counsel or Otherwise Enforcing the Subpoenas.[1]

## FACTS

For the convenience of the Court, Defendants hereby incorporate by reference, as if fully set forth herein, the facts in Defendants' Memorandum of Law in Support of Defendants' Motion for a Protective Order and the Affirmation of Seth D. Kaufman in support thereof, together with Exhibits A through Q, dated June 17, 2016 (Dkt. No. 359-01 through 359-19) and in Defendants' Memorandum of Law in Support of Defendants' Motion for Reconsideration (Dkt. No. 363-1). As detailed therein, on June 10, 2016, this Court entered an Order scheduling a sanctions hearing for August 11, 2016 at 10:00 a.m. and required the parties to submit a joint list of witnesses for the sanctions hearing by August 1, 2016. (Dkt. No. 357.) On June 24, 2016, Defendants filed a Motion for Reconsideration (Dkt. No. 363), requesting that this Court reconsider its June 10, 2106 Order setting a sanctions hearing, or, in the alternative, requesting that this Court require Plaintiffs to clarify the grounds for sanctions, the specific conduct for which sanctions are being considered, the types of sanctions being considered, and against whom the sanctions are being considered, as well as requesting from the Court clarification with respect to whether the Court is ordering Defendants' current and former outside and in-house counsel to testify at the sanctions hearing. (Dkt. No. 363-1.)

---

[1] Defendants reserve the right to file a Motion to Quash to address the substantive deficiencies in the subpoenas if and when the subpoenas are actually served.

Plaintiffs filed their Opposition to Defendants' motion and supporting documents on July 8, 2016. (Dkt. No. 369 through 369-15.) Defendants filed their Reply Memorandum of Law in Further Support of Defendants' Motion for Reconsideration (Defendants' "Reply Brief") on July 18, 2016 at 5:59 PM. (Dkt. No. 372; Affirmation of Melissa Osipoff dated July 24, 2016 ("Osipoff Aff.") ¶ 3, Ex. A.) A mere three (3) minutes later, Plaintiffs' Counsel emailed Defendants' Counsel to provide Defendants with notice of ten (10) subpoenas that Plaintiffs' Counsel stated they intend to serve on July 25, 2016, related to the sanctions hearing.[2] (*Id.* at ¶ 4, Exs. B-L.) Specifically, the ten (10) subpoenas are directed to the following individuals:

- Robyn Martin, former General Counsel of Ignite, to produce specified documents (the "Martin Sub.", attached as Ex. C to the Osipoff Aff.);

- A designee of Ignite to testify on specified matters and produce specified documents (the "Ignite Sub.", attached as Ex. D to the Osipoff Aff.);

- A designee of the law firm of former counsel of record in this action, Epstein, Becker & Green, P.C. ("Epstein"),[3] to testify on specified matters and produce specified documents (the "Epstein Sub.", attached as Ex. E to the Osipoff Aff.);

- Epstein attorney and Defendants' former counsel of record in this action, Jeffrey Howard Ruzal, to testify and produce specified documents (the "Ruzal Sub.", attached as Ex. F to the Osipoff Aff.);

- Epstein attorney and Defendants' former counsel of record in this action, Kenneth John Kelly, to testify and produce specified documents (the "Kelly Sub.", attached as Ex. G to the Osipoff Aff.);

- A designee of the former law firm of Defendants' counsel of record in this action, Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree"), to testify on specified matters and produce specified documents (the "Ogletree Sub.", attached as Ex. H to the Osipoff Aff.);

---

[2] Plaintiffs' Counsel's decision to email Defendants' Counsel a mere three (3) minutes after Defendants filed their Reply Brief cannot be considered coincidental; indeed, it can be best described as a transparent attempt by Plaintiffs' Counsel to avoid having the subpoenas discussed in Defendants' Reply Brief.

[3] Although Epstein attorneys have not filed a formal withdrawal, no Epstein attorney has been involved in the defense of this litigation or appeared on any filed papers since on or about March 2015.

2

- Ogletree attorney and Defendants' former counsel of record in this action, Patrick Hulla, to produce specified documents (the "Hulla Sub.", attached as Ex. I to the Osipoff Aff.);

- Defendants' counsel of record in this action, Brian Gershengorn, to testify and produce specified documents (the "Gershengorn Sub.", attached as Ex. J to the Osipoff Aff.);

- Defendants' counsel of record in this action, Melissa Jill Osipoff, to testify and produce specified documents (the "Osipoff Sub.", attached as Ex. K to the Osipoff Aff.); and

- Defendants' counsel of record in this action, Seth D. Kaufman, to testify and produce specified documents (the "Kaufman Sub.", attached as Ex. L to the Osipoff Aff.).

The eight (8) subpoenas seeking testimony command the presence of the witnesses at the August 11, 2016 sanctions hearing ordered by this Court. However, all of the subpoenas command the production of a tremendous number of documents by August 1, 2016, a mere one (1) week after Plaintiffs' Counsel indicated the subpoenas are to be served.

The specified testimony sought from the designees of Ignite, Epstein, and Ogletree all generally concern the same topics—Defendants' admitted inadvertent errors in the March 2015 and July 2015 Class Lists. More specifically, Plaintiffs command testimony on topics including, but not limited to:

- The compilation of the March 2015 and July 2015 Class Lists. (*See* Ignite Sub. Ex. A ¶¶ 1, 6; Epstein Sub. Ex. A ¶ 1; Ogletree Sub. Ex. A ¶ 1.)

- The steps taken to ensure that the March 2015 and July 2015 Class Lists complied with the Court's Order granting Plaintiffs' conditional certification motion. (*See* Ignite Sub. Ex. A ¶¶ 5, 13; Epstein Sub. Ex. A ¶ 6; Ogletree Sub. Ex. A ¶ 9.)

- The process and reasoning that caused the inadvertent errors in the March 2015 and July 2015 Class Lists, and the identity of individuals having knowledge of the process and reasoning that caused the inadvertent errors. (*See* Ignite Sub. Ex. A ¶¶ 2, 3, 7, 8, 10, 11; Epstein Sub. Ex. A. ¶¶ 3, 4; Ogletree Sub. Ex. A ¶ 3, 4, 6, 7.)

- The steps taken in responding to Plaintiffs' Counsel's March 14-16, 2016 emails regarding the fifteen (15) individuals that Plaintiffs' Counsel claimed were improperly excluded from the July 2015 Class List, and the identity of individuals having knowledge of the process and reasoning of Defendants' Counsel's accurate response that only two (2) individuals were improperly excluded. (*See* Ignite Sub. Ex. A ¶ 14; Ogletree Sub. Ex. A ¶ 10, 12.)

3

- The identification of the amount of hours spent—including time spent by Ignite's attorneys—on the investigation into the inaccuracies in the July 2015 Class List and the creation of the Corrected Class Notice List. (*See* Ignite Sub. Ex. A ¶ 17; Ogletree Sub. ¶ 15.)

- The steps taken to produce a witness at the June 6, 2016 hearing, and the process and reasoning that led to the decision to not produce a witness, including Counsel of record Melissa Osipoff, at the hearing. (*See* Ignite Sub. Ex. A ¶¶ 18, 19; Ogletree Subpoena Ex. A ¶¶ 16, 17.)

The specified documents sought from all of the subpoenaed individuals and designees similarly concern Defendants' admitted inadvertent errors in the March 2015 and July 2015 Class Lists. More specifically, Plaintiffs command the production of documents including, but not limited to:

- Any documents reflecting, identifying, or concerning the compilation of the March 2015 and July 2015 Class Lists. (*See* Ignite Sub. Ex. B ¶¶ 1, 7; Martin Sub. Ex. A ¶¶ 1, 7; Epstein Sub. Ex. B ¶ 1; Ruzal Sub. Ex. A ¶ 1; Kelly Sub. Ex. A ¶ 1; Ogletree Sub. Ex. B ¶ 1; Hulla Sub. Ex. A ¶ 1; Gershengorn Sub. Ex. A ¶ 1; Osipoff Sub. Ex. A ¶ 1; Kaufman Sub. Ex. A ¶ 1.)

- Any copies, including drafts, of the March 2015 and July 2015 Class Lists. (*See* Ignite Sub. Ex. B ¶¶ 2, 8; Martin Sub. Ex. A ¶¶ 2, 8; Epstein Sub. Ex. B ¶ 2; Ruzal Sub. Ex. A ¶ 2; Kelly Sub. Ex. A ¶ 2; Ogletree Sub. Ex. B ¶ 2; Hulla Sub. Ex. A ¶ 2; Gershengorn Sub. Ex. A ¶ 2; Osipoff Sub. Ex. A ¶ 2; Kaufman Sub. Ex. A ¶ 2.)

- Any documents reflecting, identifying, or concerning the process and reasoning that caused the inadvertent errors in the March 2015 and July 2015 Class Lists, and the identity of individuals having knowledge of the process and reasoning that caused the inadvertent errors. (*See* Ignite Sub. Ex. B ¶¶ 3, 4, 9, 10, 12, 13; Martin Sub. Ex. A ¶¶ 3, 4, 9, 10, 12, 13; Epstein Sub. Ex. B ¶¶ 4, 5; Ruzal Sub. Ex. A ¶¶ 4, 5; Kelly Sub. Ex. A ¶¶ 4, 5; Ogletree Sub. Ex. B ¶¶ 4, 5, 7, 8; Hulla Sub. Ex. A ¶¶ 4, 5, 7, 8; Gershengorn Sub. Ex. A ¶¶ 4, 5, 7, 8; Osipoff Sub. Ex. A ¶¶ 4, 5, 7, 8; Kaufman Sub. Ex. A ¶¶ 4, 5, 7, 8.)

- Any documents reflecting, identifying, or concerning the steps taken to ensure that the March 2015 and July 2015 Class Lists complied with the Court's Order granting Plaintiffs' conditional certification motion. (*See* Ignite Sub. Ex. B ¶¶ 6, 15; Martin Sub. Ex. A ¶¶ 6, 15; Epstein Sub. Ex. B ¶ 7; Ruzal Sub. Ex. A ¶ 7; Kelly Sub. Ex. A ¶ 7; Ogletree Sub. Ex. B ¶ 10; Hulla Sub. Ex. A ¶ 10; Gershengorn Sub. Ex. A ¶ 10; Osipoff Sub. Ex. A ¶ 10; Kaufman Sub. Ex. A ¶ 10.)

- Any documents reflecting, identifying, or concerning the steps taken in responding to Plaintiffs' Counsel's March 14-16, 2016 emails regarding the fifteen (15) individuals that Plaintiffs' Counsel claimed were improperly excluded in the July

4

        2015 Class List, and the identity of individuals having knowledge of the process and reasoning of Defendants' Counsel's accurate response that only two (2) individuals were improperly excluded. (*See* Ignite Sub. Ex. B ¶¶ 16, 18; Martin Sub. Ex. A ¶¶ 16, 18; Ogletree Sub. Ex. B ¶¶ 11, 13; Hulla Sub. Ex. A ¶ 11, 13; Gershengorn Sub. Ex. A ¶ 11, 13; Osipoff Sub. Ex. A ¶ 11, 13; Kaufman Sub. Ex. A ¶ 11, 13.)

- Any documents reflecting, identifying, or concerning the amount of time spent—including time by Defendants' attorneys—on the investigation into the inaccuracies in the July 2015 Class List and the creation of the Corrected Class Notice List. (*See* Ignite Sub. Ex. B ¶ 21; Martin Sub. Ex. A ¶¶ 21; Ogletree Sub. Ex. B ¶ 16; Hulla Sub. Ex. A ¶ 16; Gershengorn Sub. Ex. A ¶ 16; Osipoff Sub. Ex. A ¶ 16; Kaufman Sub. Ex. A ¶ 16.)

- Any documents reflecting, identifying, or concerning the steps taken to produce a witness at the June 6, 2016 hearing, and the process and reasoning that led to the decision to not produce a witness, including Counsel of record Melissa Osipoff, at the hearing. (*See* Ignite Sub. Ex. B ¶ 22, 23; Martin Sub. Ex. A ¶¶ 22, 23; Ogletree Sub. Ex. B ¶¶ 17, 18; Hulla Sub. Ex. A ¶¶ 17, 18; Gershengorn Sub. Ex. A ¶¶ 17, 18; Osipoff Sub. Ex. A ¶ ¶¶ 17, 18; Kaufman Sub. Ex. A ¶ ¶¶ 17, 18.)

On July 22, 2016, Defendants met and conferred with Plaintiffs' Counsel by telephone regarding the inappropriateness of these ten (10) subpoenas, but, despite Defendants' concerns, Plaintiffs' Counsel stated that they still intended to serve them on July 25, 2016. (*See* Osipoff Aff. ¶ 16.)

## ARGUMENT

      Under Fed. R. Civ. P. 26(c), "for good cause shown, the court 'may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Rofail v. U.S.*, 227 F.R.D. 53, 54 (E.D.N.Y. Feb. 1, 2005). A court may enter a protective order pursuant to Fed. R. Civ. P. 26(c) where the moving party demonstrates "good cause and the privilege or protection that applies." *Mauna Kea Resort v. Affiliated FM ins. Co.*, 2009 WL 578529, at *1 (E.D.N.Y. Mar. 4, 2009); *see also Roseman v. Bloomberg L.P.*, 2016 WL 3866375, at *5 (S.D.N.Y. June 17, 2016) (granting defendant's motion for a protective order prohibiting plaintiffs from questioning defendant's counsel concerning their legal advice to defendant); *Chevron Corp. v. Donziger*, 2012 WL 6634680, at *2, (S.D.N.Y. Dec. 19, 2012) (granting plaintiff's motion for a protective order pursuant to Fed. R. Civ. P. 26(c) where

5

defendants subpoenaed privileged material related to litigation conduct by plaintiff, stating that "a party may seek a Rule 26(c) protective order to preclude another party from obtaining discovery from a non-party via subpoena . . ."); *Stavola v. Northeast Utilities*, 2006 WL 2850414 (D. Conn. Oct. 4, 2006) (granting a motion for a protective order where a party sought to compel the deposition of opposing counsel regarding opposing counsel's litigation conduct). Additionally, courts may enter a protective order to prevent parties from serving subpoenas without leave of the court or to preclude parties from enforcing subpoenas. *See, e.g. Geist v. Ammary*, 2014 WL 4996209, at *2 n.13 (E.D. Pa. Oct. 7, 2014) ("When I quashed the subpoenas, I also entered a protective order to prevent further subpoenas from being served without prior leave of court."); *Chevron*, 2012 WL 6634680, at *2 (granting motion for a protective order and ordering that plaintiffs "shall not seek to enforce the subpoenas listed . . .")

I. **Plaintiffs' Ten (10) Subpoenas, On Their Face, Command Almost Exclusively Testimony and Documents Protected By The Attorney Client And Work Product Privileges, And, Thus, There is Good Cause For The Court to Grant a Protective Order Precluding Plaintiffs From Serving, Or Otherwise Enforcing, The Subpoenas**

All of Plaintiffs' proposed subpoenas, all but one of which are directed to Defendants' current or former counsel, on their face, request almost exclusively privileged testimony and documents. In fact, it appears that Plaintiffs drafted these subpoenas as if neither the attorney client privilege nor work product privilege applies to the sanctions hearing, a notion for which Defendants are unaware of any support and with which Defendants vehemently disagree. The attorney client privilege protects "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *Roseman*, 2016 WL 2866375, at *5 *citing United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). The attorney work product privilege, on the other hand, protects "materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *Id. citing In re Grand Jury Subpoenas Dated Mar. and Aug. 2002*, 318 F.3d 379, 383 (2d Cir. 2003).

6

Although there are circumstances where the attorney work product privilege can be pierced, the Court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id. citing* Fed. R. Civ. P. 26(b)(3)(B). Indeed, this Court has held that "'Opinion' work product, or work product 'implicating the mental impressions, conclusions, opinions or legal theories of an attorney,' enjoys '***near absolute immunity***.'" *Carpenter v. Churchville Greene Homeowner Ass'n*, 2011 WL 4711961, at *8 (W.D.N.Y. Sept. 29, 2011) (Payson, M.J.) (emphasis added) *citing In re Application of Minebea Co., Ltd.*, 143 F.R.D. 494, 499 (S.D.N.Y. 1992).

Through the topics specified in the Ignite, Epstein, and Ogletree subpoenas, Plaintiffs have indicated that almost all of the testimony that they command from Ignite and their current and former counsel goes to the ***heart*** of Defendants' attorney client and work product privileges.[4] For instance, Plaintiffs command testimony regarding the steps Defendants and their counsel took to comply with Judge Siragusa's Order conditionally certifying the class and the amount of time Defendants and their counsel spent on this, topics which undoubtedly involve confidential communications between Defendants and their counsel to obtain and provide legal advice. (*See* Ignite Sub. Ex. A ¶¶ 5, 13, 17; Epstein Sub. Ex. A ¶ 6; Ogletree Sub. Ex. A ¶¶ 9, 15.) Moreover, these communications also undoubtedly involve communications among Defendants' outside

---

[4] Additionally, having Plaintiffs' current and former counsel testify would go squarely against the factors set forth by the Second Circuit in *In re Friedman*, 350 F.3d 65 (2d Cir. 2003) as to whether the Court should order the testimony of an attorney. As detailed in Defendants' Motion for a Protective Order (Dkt. 359), those factors are: (1) the need to depose the attorney; (2) the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation; (3) the risk of encountering privilege and work product issues; and (4) the extent of discovery already conducted. Defendants refer this Court to the arguments made by Defendants in their Motion for a Protective Order, wherein Defendants address the reasons why the Court should not order Defendants' Counsel of record, Melissa Osipoff, to testify. The considerations weighing against Ms. Osipoff's testimony apply equally here; however, the risk of encountering privilege and work product issues is even greater, as Plaintiffs' subpoenas have specified many topics of proposed testimony that undoubtedly go straight to the heart of Defendants' privileges.

7

counsel concerning litigation strategy, which is granted ***near absolute immunity*** from disclosure. *See Roseman*, 2016 WL 3866375, at *5 (granting protective order to prevent defendant's attorney from testifying about the steps its client took to learn about its legal obligations; what its client learned; and the steps its client took to comply with its legal obligations because those topics "appear certain to involve privileged communications between counsel and the defendant as well as the work-product doctrine.")  In addition, Plaintiffs command testimony regarding the "process and reasoning" behind Defendants' decisions regarding the Class Lists, on how to respond to Plaintiffs' inquiries regarding individuals purportedly left off the Class Lists, and not to have Counsel of record Melissa Osipoff testify at the June 6, 2016 hearing.  (*See* Ignite Sub. Ex. A ¶¶ 2, 3, 7, 8, 10, 11, 18, 19; Epstein Sub. Ex. A. ¶¶ 3, 4; Ogletree Sub. Ex. A ¶ 3, 4, 6, 7, 16, 17.)  Simply put, the adversarial system would cease to function properly if counsel were free to subpoena their opposing counterparts to probe them about the "process and reasoning" behind their strategic litigation decisions.  *See Friedman*, 350 F.3d 65, 69 (2d Cir. 2003) ("Courts have been especially concerned about the burdens imposed on the adversary process when lawyers themselves have been the subject of discovery requests, and have resisted the idea that lawyers should routinely be subject to broad discovery.")[5]

Moreover, the documents commanded to be produced by Plaintiffs in their subpoenas present even greater attorney client privilege and work product privilege issues.  The starkest example is Plaintiffs' command for "[a]ny documents reflecting, identifying, or concerning the compilation of the March 2015 and July 2015 Class Lists."  (*See* Ignite Sub. Ex. B ¶¶ 1, 7; Martin

---

[5] Defendants note that at the May 17, 2016 conference, Judge Payson stated a desire to hear in-court testimony regarding the class list, as opposed to a deposition setting, because the Court did not want to "end up having disputes about whether [Plaintiffs' Counsel] is exploring beyond the scope of what . . . the purpose of the examination is . . . ."  (*See* Transcript of the May 17, 2016 proceedings, attached to Osipoff Aff. as Exhibit M, at 16:11-22.)  Plaintiffs' subpoenas make it abundantly clear that Plaintiffs' Counsel intends on exploring issues well beyond a necessary or reasonable scope at the sanctions hearing.

Sub. Ex. A ¶¶ 1, 7; Epstein Sub. Ex. B ¶ 1; Ruzal Sub. Ex. A ¶ 1; Kelly Sub. Ex. A ¶ 1; Ogletree Sub. Ex. B ¶ 1; Hulla Sub. Ex. A ¶ 1; Gershengorn Sub. Ex. A ¶ 1; Osipoff Sub. Ex. A ¶ 1; Kaufman Sub. Ex. A ¶ 1.) Plaintiffs' command for Defendants and their current and former counsel to produce literally *every single document* in their possession concerning the Class Lists is incredibly overbroad, and includes a tremendous amount of privileged information, documents, and communication, including attorney emails.

Plaintiffs further command the production of all documents reflecting, identifying, or concerning the steps taken to ensure the Class Lists complied with Judge Siragusa's Order conditionally certifying the class, as well as the amount of time Defendants and their Counsel spent on this. (*See* Ignite Sub. Ex. B ¶¶ 6, 15, 21; Martin Sub. Ex. A ¶¶ 6, 15, 21; Epstein Sub. Ex. B ¶ 7; Ruzal Sub. Ex. A ¶ 7; Kelly Sub. Ex. A ¶ 7; Ogletree Sub. Ex. B ¶¶ 10, 16; Hulla Sub. Ex. A ¶¶ 10, 16; Gershengorn Sub. Ex. A ¶¶ 10, 16; Osipoff Sub. Ex. A ¶¶ 10, 16; Kaufman Sub. Ex. A ¶¶ 16.) Again, these broad commands for documents undoubtedly include numerous confidential, attorney client privileged, and work product privileged documents. Lastly, Plaintiffs command the production of all documents regarding the "process and reasoning" behind decisions made in regards to the Class Lists, Defendants decisions on how to respond to Plaintiffs' inquiries regarding individuals purportedly left off the Class Lists, and Defendants' decision not have Counsel of record Melissa Osipoff testify at the June 6, 2016. However, these commands for documents encompass a broad range of communications between Defendants and their counsel and/or among counsel, and other documents directly revealing Defendants' strategy in litigating this case, and, thus, are privileged. *See, e.g. Carpenter*, 2011 WL 4711961, at *8 (email from counsel of record in the litigation was privileged because the email revealed the attorney's mental impression of the case and, thus, qualified as "opinion work product.").

9

Given that Plaintiffs command testimony and documents that are so blatantly privileged, there is good cause for this Court to grant a protective order pursuant to Fed. R. Civ. P. 26(c) precluding Plaintiffs from serving the ten (10) subpoenas or otherwise seeking to enforce them. If this Court were to allow Plaintiffs to serve the ten (10) subpoenas or move to enforce the subpoenas at a later date, this Court would likely have to entertain multiple motions to quash or compel—based on their numerous and significant deficiencies[6] (up to ten (10) of them, regarding each of the individuals or entities subpoenaed), which would cause delay, inconsistent rulings, and undue burden. *See Chevron Corp.*, 2012 WL 6634680, at *6 (granting protective order as to third party subpoenas because the "potential for delay here, in the absence of this protective order, is obvious. But for the protective order issued here, the scope of these subpoenas and privilege issues would be litigated in as many as 26 separate motions . . . with the prospect of appeals. . . . There would be a possibility of inconsistent rulings generating multiple applications by one side or the other for reconsideration . . . .").

Moreover, Defendants (and possibly the individual third parties) will likely seek appropriate sanctions, including, but not limited to, sanctions pursuant to Fed. R. Civ. P. 45(d)(1), which requires that a "party or attorney responsible for issuing and serving a subpoena . . . take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court . . . must enforce this duty and impose appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *See also Spin Master Ltd. v. Bureau Veritas Consumer Products Service, Inc.*, 2013 WL 4718589, at *6

---

[6] Pursuant to Fed. R. Civ. P. 45(d)(3), the Court "must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the [100-mile] geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Plaintiffs' subpoenas contain all four (4) of these issues, and, therefore, the Court would be required to quash them.

10

(W.D.N.Y. Sept. 3, 2013) (quashing subpoena served on defendant's attorney and awarding sanctions to defendant because in "a circumstance, such as this, where a subpoena should not have been issued, literally everything done in response to it constitutes an undue burden or expense within the meaning of [Fed. R. Civ. P. 45(d)(1)]") (quotations omitted).

## **CONCLUSION**

Based on the foregoing, Defendants respectfully request this Court to issue a protective order pursuant to Fed. R. Civ. P. 26(c) precluding Plaintiffs from serving their proposed subpoenas on Defendants and their current and former counsel or otherwise enforcing the subpoenas.

| | |
|---|---|
| Dated: New York, New York<br>July 24, 2016 | Respectfully submitted,<br>FISHER & PHILLIPS LLP<br><br>By *s/ Brian J. Gershengorn*<br>　　Brian J. Gershengorn<br>　　Melissa J. Osipoff<br>　　Seth D. Kaufman<br>　　1 Rockefeller Plaza<br>　　11th Floor<br>　　New York, New York 10020<br>　　(212) 956-0897<br><br>　　*Attorneys for Defendants* |