```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------
CHRISTOPHER HART, et al,

                    Plaintiffs,

             -vs-                        13-CV-6458

CRAB ADDISON, INC.,
d/b/a JOE'S CRAB SHACK, et al,

                    Defendants.

-------------------------------------
```

                    Proceedings held before the

             Honorable Marian W. Payson, Kenneth B.

             Keating Courthouse, 100 State Street,

             Rochester, New York, on October 19,

             2017.


             APPEARANCES:

             JESSICA L. LUKASIEWICZ, ESQ.,
             Appearing for Plaintiffs.

             BRIAN JEFFREY GERSHENGORN, ESQ.,
             MELISSA JILL OSIPOFF, ESQ.,
             Appearing for Defendants.


             AUDIO RECORDER:  Kathy J. Allen

             TRANSCRIBER:      Michelle L. McLaughlin, RPR,
                               Court Reporter,
                               716/332-3560


             (Proceedings recorded by electronic sound
             recording, transcript produced by computer.)

1          THE COURT:  Good afternoon.  Please be

2     seated.

3          THE CLERK:  Christopher Hart, et al,

4     versus Crab Addison, 15-CV-6458.

5          THE COURT:  Would counsel like to note

6     their appearances for the record, please?

7          MS. LUKASIEWICZ:  Good morning, your

8     Honor.  Jessica Lukasiewicz from Thomas and Solomon

9     for the plaintiffs.

10          THE COURT:  Good afternoon.

11          MR. GERSHENGORN:  Good afternoon, your

12     Honor.  Brian Gershengorn, Melissa Ossipoff from

13     Fisher Phillips for defendants.

14          THE COURT:  Okay.  Good afternoon.  Who's

15     going to be arguing today?

16       You are, Mr. Gershengorn?

17          MR. GERSHENGORN:  Yes, your Honor.

18          THE COURT:  Okay.  In the event that you

19     do not get the relief that you're looking for here

20     and that you have to make another trip to Rochester

21     at some point on this case, I encourage you to take

22     a look at a new policy that's been adopted by

23     couple of judges in our court after New York State

24     report -- you may have seen it -- about women

25     litigators and opportunities afforded to women in

1    the courtroom.  And at this point a couple of

2    judges -- maybe it will be more over the next

3    several months -- have adopted a policy.  I think

4    it's framed as a junior lawyer policy to encourage

5    junior lawyers, not just women junior lawyers, but

6    junior lawyers to have more opportunities in court.

7    One of the things that the policy acknowledges is

8    that -- or at least implicitly acknowledges is it's

9    sometimes hard to get a client to agree to that,

10   and so the -- if one wishes to proceed that way,

11   we're open to supplementing the record, you know,

12   after the oral argument, you know, by the more

13   senior attorney, if that's something that counsel

14   is interested in doing.  So take a look at that.

15       I'm assuming that Miss Osipoff is more junior

16   than you, Mr. Gershengorn.  I think that's true.  I

17   don't know that definitively, and certainly we've

18   had an awful lot of litigation surrounding an

19   issue, and I expected to hear from Miss Osipoff on

20   the witness stand, but I'm not sure that I've heard

21   Miss Osipoff as counsel on any motions.  At least I

22   can't remember that.  So, just encourage you to

23   think about that opportunity in the future if you

24   have to come back here.  Okay.

25            MR. GERSHENGORN:  Thank you.

1          THE COURT:  All right.  So, with respect

2    to the procedural posture of the case, since

3    everybody was in court last on this matter what has

4    happened is that the corporate defendants have

5    filed for bankruptcy protection under Chapter 11.

6    I think that's pending somewhere in Texas, if I'm

7    not mistaken.  And the plaintiffs here, in addition

8    to having sued those corporate defendants, has also

9    sued three individual defendants.  Mr. Gershengorn

10   and Miss Osipoff and their firm is counsel -- to

11   date is counsel both for the corporate defendants

12   and for the individual defendants.

13      This Court acknowledges and recognizes that the

14   automatic bankruptcy stay is in effect with respect

15   to any further proceedings pertaining to the

16   corporate defendants.  That automatic stay does not

17   by its terms extend to the individual defendants.

18      Since the filing of the bankruptcy petition,

19   the firm of Fisher Phillips has moved this Court

20   for permission to withdraw as counsel for the

21   individual defendants.  They have done that as our

22   local rules permit by submitting to me an affidavit

23   and memo of law in camera, which I have considered.

24   The plaintiffs oppose that application, and do so

25   on certain assumptions that they make because they

1    don't have access to what the in camera filings

2    were.  So they're -- they're making certain

3    assumptions which may or may not be correct.  And a

4    reply letter was submitted -- and was that in

5    camera as well, the reply letter?

6          MR. GERSHENGORN:  We submitted part of

7    it --

8          THE COURT:  That's right.  I did take a

9    look at that.  Okay.  So, I have a lot of

10   questions.  Quite a number of them are factual

11   questions.  You're welcome to stay at the table if

12   you like.  You've got a big notebook there.  I

13   don't know whether I'm going to be asking any

14   questions about anything that you need to look at

15   in the notebook.  Whatever you're comfortable doing

16   is fine.

17         MR. GERSHENGORN:  I'm fine at counsel

18   table.

19         THE COURT:  Okay.

20         MR. GERSHENGORN:  If that's okay.

21         THE COURT:  So just pull the base of the

22   microphone, and you can sit if you like or stand,

23   as you wish.

24         MR. GERSHENGORN:  Thank you.

25         THE COURT:  All right.  So, let me ask

1   just a couple updating questions first.  The three

2   individual defendants -- and just again so -- so

3   we're clear on this, at this stage you are still

4   counsel to them, because you would have to get

5   permission from the Court to withdraw, and that

6   hasn't been granted.  So to the extent that your

7   papers may include some kind of disclaimer that the

8   papers are being submitted on their behalf, that's

9   not permitted and you are counsel for those

10  individual defendants.

11      But tell me what is their position with respect

12  to this application, and what -- what's the status

13  of their retaining new counsel to represent them?

14          MR. GERSHENGORN:  Thank you, your Honor.

15  I guess the latter part of your question first, it

16  was news to us when we saw in plaintiffs' counsel's

17  opposition that the three individual defendants

18  were represented by Seyfarth Shaw.  We had not

19  known that to be true.  We have since learned that

20  is not true.  So as far as we've been told, they

21  have not retained new counsel, Seyfarth or anybody

22  else to our knowledge, your Honor.

23          THE COURT:  Okay.  So, they're aware of

24  your application?

25          MR. GERSHENGORN:  They're aware of our

1   application.  Pursuant to the rule and your Honor's

2   directive, we have provided them with

3   documentation.

4           THE COURT:  What is their position on it?

5           MR. GERSHENGORN:  They have no position

6   that we're aware of, your Honor.

7           THE COURT:  All right.  I mean, have

8   you -- have you talked to them about whether their

9   view is that they would like you to continue

10  representing them, whether they would like to be

11  represented by other counsel?

12          MR. GERSHENGORN:  I guess without

13  divulging any attorney-client communication, there

14  has been no substantive dialogue.

15          THE COURT:  Okay.  So, I'm going to assume

16  from that that the individual defendants -- that

17  we're not in a situation where, you know, if they

18  were here, they'd say we join in the application,

19  and we have counsel so and so is ready to take on

20  the representation.

21          MR. GERSHENGORN:  That's certainly

22  correct.

23          THE COURT:  Okay.  Now -- all right.

24  Let's switch to another question.  What is

25  happening in the bankruptcy matter?  I couldn't

1    actually find any docket sheet that pertained to

2    that bankruptcy.  I'm not sure why I couldn't find

3    that, but I -- I searched for it by Ignite

4    Restaurant and Crab Addison and certain things, and

5    I came up with a lot of cases, but I didn't come up

6    with a bankruptcy case.

7              MR. GERSHENGORN:  Well, I'm happy to

8    provide the Court.  I think we have -- we've seen a

9    copy of the docket, your Honor.  We can provide

10   that if the Court wanted.  As best as I recall, I

11   believe the -- the date for the bankruptcy, I'll

12   call it closing, wrap up, finality is for late

13   November.  I think November 27th.  Around

14   November 27th, your Honor.

15             THE COURT:  Okay.

16             MR. GERSHENGORN:  And so I think it's

17   winding its way through bankruptcy court as a case

18   normally would.

19             THE COURT:  And what is the status with

20   respect to -- or what attention has been given by

21   the bankruptcy proceeding to this particular

22   litigation?

23             MR. GERSHENGORN:  So, I'm not privy to

24   those conversations.  I do know that conversations

25   have or are taking place with plaintiffs' counsel.

1     I think they might be able to shed more light on

2     the details --

3               THE COURT:  Okay.

4               MR. GERSHENGORN:  -- of those

5     conversations.

6               THE COURT:  Okay.

7               MR. GERSHENGORN:  My only understanding,

8     your Honor, is that there is a dialogue.

9               THE COURT:  Okay.  Presumably the

10    plaintiffs have claims in that bankruptcy

11    proceeding.

12              MR. GERSHENGORN:  That's my understanding.

13              THE COURT:  Okay.  I do want that

14    information.  Let me just ask one more question to

15    Mr. Gershengorn.  All right.

16         Now, with respect to the individual defendants

17    and the question of indemnification, what -- what

18    have they done to identify themselves in the

19    bankruptcy proceedings as parties that may someday

20    have an indemnification claim against the bankrupt

21    company?

22              MR. GERSHENGORN:  So, your Honor, I

23    believe as part of the bankruptcy filings -- it's a

24    matter of public record -- they have each

25    individually filed claims in the bankruptcy case on

1    those -- well, on the basis of indemnification.

2            THE COURT:  Okay.  And is there some

3    documentation that shows that?

4            MR. GERSHENGORN:  Yes, there is, your

5    Honor.

6            THE COURT:  Okay.  And if I could just

7    take a look at that?

8            MR. GERSHENGORN:  Yeah.  Can I approach?

9            THE COURT:  Yes, please.

10           MR. GERSHENGORN:  It's rather thick, but I

11   think it's because the complaint -- it's really the

12   first couple pages.

13           THE COURT:  Okay.  Thanks.

14           MR. GERSHENGORN:  Those are for all three

15   of them.

16           THE COURT:  Um-hum.  Okay.  So I've been

17   handed a proof of claim -- copy of a proof of claim

18   form.  I'm not going to go through all of them.  I

19   assume they're similar, if not identical.  The one

20   as to Mr. Morris appears to have been executed on

21   September 1st.  In answer to the question how much

22   is the claim, the answer is contingent and

23   unliquidated based on indemnity.  Similar language

24   is probably in the other ones.

25       Okay.  Do you represent any parties in the

1    bankruptcy?

2              MR. GERSHENGORN:  No, we do not, your

3    Honor.

4              THE COURT:  Okay.  Is your firm a creditor

5    in the bankruptcy?

6              MR. GERSHENGORN:  We are, your Honor.

7              THE COURT:  Are you identified as a

8    creditor?

9              MR. GERSHENGORN:  Yes, we are.

10             THE COURT:  Have you made a claim?

11             MR. GERSHENGORN:  We have.

12             THE COURT:  Okay.  Okay.

13        Miss Lukasiewicz, why don't you tell me what

14   you know.  And you just pull the microphone over to

15   you as well and you can remain seated.  What's

16   going on as far as this litigation in the

17   bankruptcy as it pertains to the corporate

18   defendants?

19             MS. LUKASIEWICZ:  First I would just say

20   sorry, I was reached out by an attorney on three

21   different occasions from Seyfarth indicating that

22   they were now -- he was now retained for the

23   individuals, so that was the point.

24             THE COURT:  Okay.  And your last

25   communication with that attorney was when?

1          MS. LUKASIEWICZ:  Say approximately three

2     weeks ago via email, but I could be off on that

3     exact date.  Somewhere around then.

4          THE COURT:  Okay.

5          MS. LUKASIEWICZ:  But in terms of this

6     action as it relates to the bankruptcy proceedings,

7     we have filed a class proof of claim as well as

8     individuals from this action.  I believe for

9     approximately 300-plus have filed individual proofs

10    of claims as well.  We also, as our law firm, have

11    filed a proof of claim.  And so that is all going

12    through.  There's -- the hearing for the class

13    proof of claim was actually supposed to be tomorrow

14    but got postponed.  I think it's supposed to be

15    scheduled in November right now.  So that's where

16    we are in terms of the process.

17         THE COURT:  Okay.  So, nothing -- nothing

18    more concrete than that at this stage?

19         MS. LUKASIEWICZ:  Nothing more concrete

20    than that, your Honor.

21         THE COURT:  Okay.  Who is the attorney

22    from Seyfarth Shaw who you've been in touch with?

23    Or do you not have that?

24         MS. LUKASIEWICZ:  It's an individual from

25    Illinois, from Chicago, and it's a gentleman.  I

1   don't remember his name offhand.

2          THE COURT:  But you have some notes

3   somewhere?

4          MS. LUKASIEWICZ:  Yes, I do.

5          THE COURT:  Okay.  All right.  Okay.  I

6   have reached out to counsel for defendants to

7   obtain copies of some documents which were

8   referenced in their papers.  I don't think this

9   is -- I don't think should be any big secret is

10  that these issues relate to issues of

11  indemnification.  And I asked for copies of the

12  engagement letters that the individual defendants

13  had signed.  I was provided those engagement

14  letters.  They are with prior counsel, Epstein --

15          MR. GERSHENGORN:  Becker and Green.

16          THE COURT:  Becker.  I'm assuming that

17  either -- that there are no engagement letters

18  either for Ogletree or for Fisher Phillips, is that

19  right?

20          MR. GERSHENGORN:  That's correct, your

21  Honor.

22          THE COURT:  Okay.  All right.  And I asked

23  for copies of indemnification agreements.  I did

24  want to ask about that.  I got an indemnification

25  agreement for two of the individual defendants, but

1    not for Morris.  And I don't know if that was an

2    oversight.  Is there -- is there an indemnification

3    agreement for Mr. Morris?

4            MR. GERSHENGORN:  We have not gotten one,

5    your Honor.  That was simply all we had.

6            THE COURT:  Okay.  And your -- I assume by

7    your hesitation that you don't feel comfortable

8    making a representation as to whether one exists or

9    doesn't exist?

10            MR. GERSHENGORN:  We had asked the

11    follow-up.  I haven't gotten a concrete answer to

12    that question.  But we did ask for all three, your

13    Honor, and we provided the Court with what we got.

14            THE COURT:  I'm assuming -- and tell me if

15    my assumption is wrong, I'm assuming that there's a

16    DNO policy?

17            MR. GERSHENGORN:  I assume that to be

18    correct as well, your Honor.  I don't know, if that

19    is true, what that policy looks like.  We have not

20    been privy to it.

21            THE COURT:  You know, I've read at least

22    one case where the issue of policy limits on a DNO

23    policy were relevant to issues that, in my view,

24    are properly before the Court now.  I mean, that is

25    are the policy limits of the DNO policy sufficient

1    that any indemnification claim would be taken care

2    of under the policy?  I mean, those -- that's a

3    consideration that I think has relevance here.  You

4    don't -- you don't have any information as to the

5    terms of any DNO policy or the coverage limits?

6         MR. GERSHENGORN:  I don't, your Honor.

7    The only -- the only conversation we had around if

8    there was a DNO was that it would not be

9    applicable.  I have not seen it.  I can't talk to

10   it specifically.

11        THE COURT:  Why wouldn't it be applicable?

12        MR. GERSHENGORN:  I don't know.

13        THE COURT:  Okay.  I mean, that seems

14   strange to me.  Okay.  So, let's talk about the --

15   your claimed conflict here.  You told me in pretty

16   short motion papers that the claimed conflict is

17   between the debtor defendant, the company and the

18   individual defendants, quote, as a result of the

19   debtor defendants filing for bankruptcy.  So help

20   me understand why is that a conflict?  How is it a

21   conflict?  Is it a conflict that exists now?  How

22   would that conflict affect your ability to

23   represent both sets of defendants consistent with

24   your ethical obligations?

25        MR. GERSHENGORN:  The conflict, your

1    Honor, as we see it, is one under 1.6 and 1.7 of

2    the Professional Responsibility Rules where we're

3    required to raise the issue with the Court.  It's

4    based on the proof of claims.  The individual

5    defendants are ostensibly making a claim for

6    indemnification.  The debtor defendants were taking

7    a different position.  Those are not two positions

8    that could be --

9              THE COURT:  How are they taking a

10   different position?  I mean, the debtor defendants,

11   as I understand it, to date at least have paid the

12   attorneys' fees on behalf of the individual

13   defendants.  Right?  I mean to --

14             MR. GERSHENGORN:  To the extent.

15             THE COURT:  I mean, to the extent that

16   they've paid attorneys' fees.  They haven't said,

17   you know, we're disclaiming and we're not going to

18   pay their attorneys' fees.

19             MR. GERSHENGORN:  That's correct.

20             THE COURT:  Okay.  So how does in this

21   litigation -- you don't represent anybody in the

22   bankruptcy.  But in this litigation how does a --

23   give me a scenario under which you would have

24   divided loyalties as a result of a -- I don't know

25   if the right word is inchoate claim.  They have

1    documented their claim for indemnification, but

2    that claim is no different -- it's not a different

3    fact than existed when you represented both the

4    bankrupt company and the individual defendants, you

5    know, whenever you got into the case.  They've

6    always had a claim for indemnification.  So what's

7    different?

8              MR. GERSHENGORN:  Well, they've asserted

9    the claim now vis-a-vis the bankruptcy filing, and

10   as we currently sit here --

11             THE COURT:  But, I mean, they asserted

12   their claim to some degree by requesting the

13   company to pay their attorneys' fees all along.

14   So, I mean, they've been relying on those

15   provisions for indemnification of, you know -- I

16   recognize there are -- there's the payment of

17   attorneys' fees and the payment of any judgment if

18   it could conceivably be entered.  But they're

19   acting under that -- that indemnification agreement

20   and have been since the beginning of the case by

21   asking the company to pay their attorneys' fees,

22   right?

23             MR. GERSHENGORN:  Yes, but now the

24   company's not, and the company can no longer

25   continue to pay the fees.  So --

1              THE COURT:  So what does that do to you

2      here?  Okay.  So they're going to duke that out in

3      the bankruptcy proceeding.  It seems to me that it

4      is in every bit as much in the company's interest

5      now as it always has been that the individual

6      defendants vigorously defend against these claims.

7      How do they have divergent interests here?

8              MR. GERSHENGORN:  The -- the diversion

9      interest is that they have a different take, your

10     Honor, on if there is ever to be liability

11     potentially in this matter, where that liability

12     holds.  And so the -- and that's an issue that

13     could have arose at any particular point in time in

14     the litigation.  It seems to be an issue now in

15     light of the debtor defendants being in bankruptcy.

16     But --

17             THE COURT:  You haven't come to me and

18     said something has arisen factually or we've

19     developed information that causes us to believe

20     that we have a conflict, in which case the company

21     would still have the same obligations if ultimately

22     it were determined that the defendant should be

23     indemnified, but maybe they would be represented by

24     new counsel.  But I think the company would still

25     be required to pay new counsel fees apart from

1    the -- from the bankruptcy issue.  But that -- I

2    mean, that isn't what you've said.

3        You've said, it seems to me very clearly and

4    starkly in your papers, the conflict is because

5    there is a claim for indemnification in the

6    bankruptcy proceeding.  And you cited a case which

7    is factually quite different from this case, and

8    I'll get to that in a minute.  And, you know,

9    frankly, my view was okay, this situation arises

10   all the time.  Your position that, you know, once

11   there is a bankruptcy and possibly a claim for

12   indemnification by individual defendants against a

13   bankrupt company, that is an actual conflict that

14   mandates withdrawal under the professional rules.

15       You know, my -- my reaction was, number one,

16   somewhat surprised, because I didn't necessarily

17   see that, but then secondly, okay, I'm going to go

18   to the cases and I'm going to find many examples

19   where courts have acknowledged such a conflict and

20   have permitted withdrawal of counsel.  And I think

21   that I said to you in an earlier telephone

22   conference -- said to whoever was participating in

23   that conference that I thought the issue was going

24   to be an issue of a stay, whether there should be a

25   stay on behalf of the individual defendants.  And

1     that individual defendants' counsel would probably

2     seek a stay, and the plaintiffs would probably not

3     seek a stay, and that's what we would be arguing

4     about.  And that seemed to me what we should be

5     arguing about.

6         And so, you know, I certainly read the one

7     case, Mr. Gershengorn, that you cited.  And, you

8     know, it's -- it's legally different because it

9     arises in the context of a bankruptcy where the

10    lawyer was the lawyer for the bankrupt company, and

11    there is a rule under the bankruptcy law that the

12    lawyer has to be disinterested.  So, it was a

13    question of what that means under the bankruptcy

14    code.  But I think, you know, apart -- so I would

15    say that it's -- you know, it is a different

16    legal -- legal question and factual scenario,

17    because the Fisher Phillips firm isn't representing

18    anybody in the bankruptcy.  But more importantly,

19    the case -- the facts were -- were very different,

20    at least as I understand the facts are here.

21        In that case the individual defendant had

22    agreed to contribute a certain sum of money to the

23    debtor company in the bankruptcy proceeding.  And

24    then -- and there had been litigation that had gone

25    on for some period of time before that.  And then

1   the court says -- and this is page 675 of TWI

2   International versus Vanguard Oil and Service

3   Company, 162 Bankruptcy Reporter, and it's -- 162

4   Bankruptcy Reporter, and at 672, Southern District

5   of New York, 1994.  And on page 675 the court notes

6   thereafter Butler agreed to contribute a certain

7   sum of money to Vanguard in bankruptcy proceeding.

8   After the time that Butler agreed to make this

9   contribution, Mr. Simpson's representation of him

10  in any action would have been and would be

11  inappropriate.  Specifically, Mr. Simpson's

12  representation of Butler could put him in a stance

13  of advocating a position that would decrease the

14  value of the bankruptcy estate.  For example, if

15  Mr. Simpson were to negotiate a settlement in the

16  instant case -- which would be analogous to this

17  case -- in which his client agreed to make payments

18  to TWI -- the bankrupt company -- Butler possibly

19  would be unable to make his contribution to the

20  bankruptcy estate.  In such a case, Mr. Simpson

21  would be asserting a, quote, economic interest that

22  would lessen the value of the bankruptcy estate,

23  and thus, would not be disinterested -- again, as

24  defined in the bankruptcy code.  In sum, the court

25  concludes that there is a, quote, potential actual

1    conflict if Mr. Simpson were to represent Butler in

2    this action.

3        And that's the one case that is cited by

4    defendants in support of their application for

5    permission to withdraw.  I -- that case, seems to

6    me, a far cry from support for the basic

7    proposition that when you have a corporate

8    defendant and you have individual defendants who

9    are officers or employees of that corporation, and

10   they're all in litigation together and they're all

11   represented by the same lawyer, if the company

12   files for bankruptcy and there is an issue of

13   possible indemnification, that counsel has to get

14   out of the case.

15       And, you know, to -- there could be a lot of

16   lawyers who are wrong, but my question -- I wanted

17   to know if I deny the motion for counsel and the

18   issue of a stay is litigated, what is the law on

19   that -- on that issue?  And, you know, there are a

20   lot of cases out there that are -- that are very

21   helpful.  I think parsing them I can draw some --

22   you know, some conclusions, and there are generally

23   some -- some rules that the Court acknowledges,

24   although I will say that, you know, they -- some

25   courts come out one way and some courts come out

1  another way.

2      But what was interesting to me was the number

3  of these cases.  And I went back and I said okay,

4  if it's so basic, I'm going to see that in the

5  docket sheet.  And I went case-by-case, and the

6  majority of those cases in which the individual

7  defendant, the question of whether a stay, the

8  bankruptcy stay, should be extended to the

9  individual defendants, either by the bankruptcy law

10 or as a discretionary stay by the court that has

11 the other litigation, that many times that issue is

12 being litigated by the same lawyer.  And, you know,

13 you see it in the front of the decision.  You know,

14 I wanted to be sure that I wasn't overlooking

15 anything, and I went into the dockets for all these

16 cases, and I saw who the lawyers were, and I saw --

17 and they stayed in the case.

18     So, you know, it -- certainly I acknowledge,

19 Mr. Gershengorn, maybe you guys are the only

20 lawyers who seem to have found this issue.  But the

21 one case you cited doesn't seem to me to stand

22 directly for the proposition, and I can find no

23 other case support.  And I find a slew of cases

24 dealing with the issue that I think we should be

25 dealing with in which the same lawyer is

1   representing the bankrupt debtor and the individual

2   defendants.  One of them, which was one that I only

3   saw today, is one that your firm had some

4   involvement in, although not initially, and that's

5   an FLSA case against Dunkin' Donuts and Baskin

6   Robbins, FPSDA, LLC.  I'm sure you're familiar with

7   it.  Eastern District of New York,

8   Bankruptcy, 2012.

9       And there's an interesting decision, long

10  decision, by the bankruptcy judge in 2012.  And the

11  cite is 2012 Westlaw 6681794, December 26th, 2012,

12  ultimately declining to extend the stay to the

13  individual defendants, and addressing, you know,

14  questions of indemnification claims, are they

15  administrative claims?  Are they general unsecured

16  claims?  Is there -- you know, by virtue of a

17  possible indemnification claim, does that

18  essentially put the debtor and the individual

19  defendants in such an identity of interests that it

20  would be unfair for the case to proceed against the

21  individual defendants if the company is the one

22  that is ultimately going to be on the hook for any

23  defendants?  Anyway, it's a -- it's a very long and

24  I think helpful decision that discusses other

25  cases.

1    And, you know, in that case I went back to the

2    docket sheet, and there was a letter January 2012

3    by the firm of Ruskin, Moscou and Faltischek,

4    representing -- and the case had been filed, no

5    answers had been filed, and it was a letter from

6    that firm indicating the firm is counsel to CDDC

7    Acquisition Company, and some other companies,

8    three of the defendants in the above-referenced

9    action, you know, they filed for bankruptcy,

10   letting the court know.

11   And then subsequent to that the -- one of the

12   individual defendants who sought a stay was

13   represented by an attorney with that same firm,

14   and, Mr. Gershengorn, I think, you know, a year and

15   a half later you came in and took over for that --

16   that lawyer withdrew, and you represented the

17   individual defendant.  I recognize that the matter

18   was stayed as to the company at that time, but at

19   least you came into a case where the same lawyer

20   seemed to be representing the company and the

21   individual defendant.  And, you know, I want to

22   give you these cases, because I want you to look at

23   them.

24   I mean, the same is true in -- I'm going to

25   give you the cases.  Texas -- no, I think it's --

1    Tenas, T-E-N-A-S, Tenas-Reynard against Palermo

2    Taxi, and that's 2016 Lexus 42423, Southern

3    District of New York, 2016.  Good thoughtful

4    decision.

5        Le Metier, L-E-M-E-T-I-E-R, Beauty Investment

6    versus Metier Tribecca LLC, 2014 Lexus 136152,

7    Southern District of New York, 2014.

8        Here's an odd one, Lightbody versus Girlie's

9    Ambulette, and that's 2010 Lexus 88862, Eastern

10   District of New York, 2010.

11       Stanford versus Phonex, 2009 Lexus 32405,

12   Eastern District of Pennsylvania, 2009.

13       I certainly recognize that there is no

14   discussion of that issue in those cases, but, you

15   know, it's implicit in those cases that the

16   attorneys didn't seem to think that there certainly

17   was an actual conflict that mandated withdrawal,

18   and there's no indication in any of the decisions,

19   in any of the footnotes by any of the judges that

20   they were troubled by this and thought there was

21   a -- thought there was a conflict.

22       You know, I think that these cases, and, you

23   know, there are a number of them, but I think these

24   cases -- and the FLSA cases -- I found three FLSA

25   cases.  The one I cited has an expansive,

1     thoughtful, helpful decision.  The other two cases

2     go -- one goes one way and the other goes the other

3     way.  And it's -- it's a pretty perfunctory,

4     cursory discussion, and I'll give you those -- one

5     second.  Those cases are Peterson versus Avantair,

6     A-V-A-N-T-A-I-R, 2013 Westlaw 4506414, Middle

7     District of Florida, 2013.  That court did grant a

8     quote, unquote discretionary stay.

9         And then the Lightbody versus Girlie's

10    Ambulette.  In that case the court concluded the

11    individuals did not show that a stay was justified.

12        There are cases which deal with proceeding on

13    sanctions motions against individual defendants

14    rather than where the corporate defendant isn't in

15    bankruptcy.  One of them is Roberts versus

16    Bennaceur, B-E-N-N-A-C-E-U-R, 2015 Westlaw,

17    1471889, District of Connecticut.  Same attorneys

18    represented both parties.

19        So, I mean, to have a response to that, it

20    seems -- it seems -- it seems striking, and it

21    seems like, to me, as if your position is pretty

22    significantly undercut by the absence of any

23    authority out there.

24            MR. GERSHENGORN:  I have two comments,

25    your Honor.  First, I don't know, having not looked

1    at those cases, if they any of those deal with

2    issues where the debtor defendant is saying there

3    is no indemnification, not what the indemnification

4    looks like.  And I think that's -- I think that's

5    where we're at here, which is the individual

6    defendants are saying they should be indemnified,

7    that's their proof of claim.  The debtor defendant

8    is saying no, you're not indemnified.  And so I'm

9    not sure if that is or is not at play in any of

10   those cases.  But I think that that is one of the

11   things that's underlying the conflict here.

12       Second, conflict aside, the individual

13   defendants are not paying nor have they said they

14   can pay, and we cited a number of cases to the

15   Court in which it is permissible for counsel to

16   withdraw.

17           THE COURT:  Yeah, but I'm not interested

18   in leaving these people with no counsel.  They have

19   an agreement with -- they had an engagement

20   letters.  Those engagement letters obligate their

21   lawyers, who at the moment are you, to assist them

22   in finding counsel.  That's an affirmative

23   obligation, and I haven't heard about what's been

24   done to assist them in finding counsel.  And I

25   don't see that -- so, you know, I let you out

1     because they have no ability to pay you.  Well, if

2     they have no ability to pay you, presumably they

3     have no ability to pay anybody else either, and

4     they're the ones who are going to be left without

5     counsel.  And my reaction is, you know, is that --

6     you know, is that fair to them?  I don't -- it

7     seems unfair to them.  It seems to me that maybe

8     the decision ought to be made to withdraw from

9     representing the company as to which the

10    proceedings are going to be stayed and continue

11    representing the individual defendants.  And I

12    recognize that your ability to ultimately recover

13    attorneys' fees there may be contingent.  I'm not

14    sure its a nullity, but it may be contingent.  But

15    there are a lot of cases in which a request to get

16    out of representation because of nonpayment of fees

17    isn't granted under extenuating circumstances.

18         You know, as to the -- as to the first issue,

19    you know, I guess that -- that argument concerns

20    me.  I think if what you're saying is that the

21    company believes that there is a divergence in

22    their interests, they're not entitled to

23    indemnification.  I presume that they would have to

24    say, I've read the documents.  They're not entitled

25    to indemnification because we, as a company, are

1    saying they didn't act in good faith, and they

2    didn't act in what they believe to be the best

3    interest of the corporation, because the

4    indemnification provisions here are I think about

5    as broad as one can get under the law.  And they're

6    pretty similar to every one of these cases I've

7    read that have dealt with indemnification

8    provisions and quote the language.  And it seems to

9    me that, first of all, the fact that you have

10    litigated to date representing both of them and the

11    company has paid their fees, to me, has to stand as

12    a representation that as of last time you were in

13    court before the bankruptcy was filed, there was --

14    you didn't perceive any conflict.

15        So, the fact that they filed for bankruptcy has

16    nothing to do with whether they're entitled to

17    indemnification or not.  I mean, just the simple

18    fact that they filed for bankruptcy is nothing to

19    do with whether they're entitled to

20    indemnification.  Indemnification by its terms

21    turns on their good faith and whatever the language

22    is, believe that their actions were taken in the

23    interest of the corporation.

24        So, if they're facts that the company is saying

25    well, gosh, we now know facts that makes us think

1    that they weren't acting in good faith or in our

2    best interests, then those facts should have been

3    brought to the Court whenever they arose, and they

4    should not have been represented by same counsel.

5         But they weren't.  I mean, what's been brought

6    to the Court's attention is that the company filed

7    for bankruptcy.  And I don't know see how the fact

8    that the company -- you know, and I don't think you

9    can just come in here and say the company says

10   they're not entitled to indemnification.  On what

11   grounds?

12            MR. GERSHENGORN:  Well, I would tell the

13   Court I am certainly not aware of any of those

14   conversations in regards to conduct or behavior.

15   And without delving into any attorney-client

16   communications, the debtor defendant has certainly

17   taken the position that the individual defendants

18   are not indemnified.  Presumably that's why the

19   proof of claim was filed.

20        I think to the extent the Court would want

21   anything additional on that, I would be more than

22   happy to let the debtor defendants know that they

23   should submit something.

24            THE COURT:  Well, I guess, I'm not trying

25   to be, you know, hostile or antagonistic to you.

1    This is a genuine ethical question.  You are

2    representing both of them.  Don't you have an

3    obligation once you come to court and tell me the

4    company is telling me there's no basis for

5    indemnification, you know, there's no secret here.

6    The indemnification language is the same

7    indemnification language you find all across the

8    country in situations like this.  It's good faith,

9    and, you know, whatever the other prong is,

10   reasonable belief.

11       You know, it would seem to me that you are

12   representing the individual defendants right now.

13   You hear from the company, you know, somebody from

14   the company we don't have an obligation to

15   indemnify.  You ought to be saying what do you

16   mean?  I've been representing both entities, you

17   know, the individual and the company.  You know,

18   what do you mean that they're not entitled to

19   indemnification?  You know, you've been

20   representing both of them on the -- on the -- I

21   assume with the belief that there were no divergent

22   interests.

23       So, I am surprised to hear you come to court

24   and say I don't know what that's based on.  I think

25   you have an obligation to find out what's that

1    based on.

2          MR. GERSHENGORN:  And I -- I understand

3    what the Court is saying.  And I believe as counsel

4    along with Miss Osipoff, therein lies the conflict.

5    I can't speak anymore to those dialogues.  I think

6    that that's why we submitted the papers in camera

7    and --

8          THE COURT:  But your papers in camera

9    didn't say anything other than they filed for

10   bankruptcy, see TWI International, there's a

11   conflict.  You know, I'm not granting you relief on

12   that basis.  I don't think that that decision

13   stands for that, and all these other cases counsel

14   do exactly what I expected you to do here, which is

15   to stay it on behalf of the individual defendants.

16   I mean, you can argue with me about -- take the

17   position that, you know, we're not getting paid, we

18   should be allowed to get out.  You know, that's an

19   issue that I may or may not agree with you, and I

20   may keep you in for awhile and let you out down the

21   road.  There are different ways to deal with that.

22      But, you know, your papers didn't say anything

23   about this, you know, factual issue that I think

24   you're saying makes this case different from all

25   those other cases.  You simply made an argument

1    that seems to me would apply to any other situation

2    when, you know, you have this common scenario.  And

3    people aren't getting out under those typical

4    situations.

5              MR. GERSHENGORN:  Factually I understand

6    what the Court is saying.  I'm not sure -- I'd have

7    to look at those cases.  I understand what the

8    Court's saying.  When the issue did first arise,

9    your Honor, the individual defendants asked us, and

10   I believe we were on a telephone conversation, to

11   request a stay pending the bankruptcy.  That was

12   not the road that we ended up going down.  I don't

13   recall sitting here exactly why we were not going

14   to move the Court or follow down a road of a stay.

15   But that was certainly something that we had

16   initially raised.

17       We're not opposed to a stay.  I mean, part of

18   what we -- as representatives and still

19   representatives of the individual defendants, I

20   should state for the record again, they do want a

21   stay.  They don't want to proceed while the

22   bankruptcy issue --

23             THE COURT:  All right.  So if I made you

24   stay in the case, if I denied your motion -- and I

25   am denying it on the basis of what's been submitted

1    to date.  I don't find that the papers that have

2    been submitted to date justify the relief that is

3    sought.  Okay.  So, it seems to me that -- so you

4    know, if you're in the case you're telling me that

5    what you would do is make a motion for a stay on

6    behalf of the individual defendants.

7            MR. GERSHENGORN:  That would be correct,

8    your Honor.

9            THE COURT:  Okay.  So I think what you --

10   what you need to sort out now is to figure out

11   whether you see any ethical constraints in the

12   making a motion for a stay.  And I don't want to

13   suggest at all, you know, any prejudging the merits

14   of that.  I think there are a lot of very

15   thoughtful decisions, and as I said, there are

16   some -- some, you know, common threads that you can

17   cull from the decisions.  But sometimes you say oh,

18   I think this judge saw it this way and a different

19   judge reached a different conclusion on pretty

20   similar considerations.  So, it's not an easy

21   determination.  But, I think you need to -- you

22   need to look at that.

23      Now, you know, I didn't anticipate that you

24   were going to come in and tell me the company

25   thinks they're not entitled to indemnification.  I

1    assumed they made a claim for indemnification

2    because that's the safe thing to do.  And, you

3    know, in bankruptcy, you're supposed to come in if

4    you possibly have a claim.  So, I did not read that

5    as any reflection that the company thought that

6    they were not entitled to indemnification.  And as

7    I said, I've assumed that the company to date has

8    acted as if they're presumptively entitled to -- to

9    indemnification.

10        And many -- most of these stay cases that I've

11   cited deal with questions of indemnifications, and,

12   you know, the black letter law is where there's

13   automatic indemnification by contract, which is

14   pretty hard to find automatic indemnification by

15   contract, because I think by law you can't really

16   have automatic indemnification.  But that taxi

17   case, which is the Palermo taxi case, that was a

18   case where under the New York Vehicle and Traffic

19   Law, if a taxi driver is found to have commit -- I

20   don't know, engaged in negligent conduct, it's

21   imputed to the taxi company.  So there the judge

22   said that is -- they're essentially identical in

23   interests there.  There is an identity in interest

24   there by virtue of operation of law that the

25   conduct of one is going to be imputed to the

1      conduct of the company.

2          So there's a lot of analysis of questions of

3      indemnification, and I don't know, Mr. Gershengorn,

4      about whether, you know, after you have further

5      questions with whoever you need to have further

6      conversations with, you know, you are going to

7      believe that you are able, as so many other counsel

8      in similar situations have done, make a motion for

9      a stay, and at least represent them until we can

10     get that determination issued, or whether because

11     the stay issue may be bound up with indemnification

12     issues.

13         But, you know, if the position is that there is

14     a question of indemnification, I am likely to have

15     a lot of questions about how is it that it's

16     arising now.  I don't understand that.  I'm

17     skeptical about what could have happened between

18     the day before bankruptcy and the day after

19     bankruptcy that all of a sudden created some real

20     issue about indemnification that didn't exist the

21     day before.  I'm skeptical of that.  I think it

22     raises some real questions.

23         So, I am -- I'm not getting into the question

24     of the sanctions motion.  I will -- I know I will

25     prejudge that in the sense of saying I think it is

1    very unlikely that I would agree with plaintiffs

2    that the Court has jurisdiction to go forward

3    against the company on a sanctions motion.  To me

4    that's pretty clear.

5        You've got some cases that you've cited.  I

6    think that there are cases that -- more cases have

7    disavowed the reasoning of -- I think some of them

8    the reasoning is a little different.  It's a

9    contempt motion.  Your motion seeks sanctions, you

10   know, of a different variety than -- contempt is a

11   sanction that is coercive in nature and if the

12   other party does what the other party is supposed

13   to do, the contempt can be lifted.  And that was

14   the rational of at least some of these decisions.

15       But, you know, you're asking for striking the

16   answer, I don't know, but really serious sanctions

17   which could, in effect, I think result in liability

18   by the defendants and judgment for the plaintiffs.

19       So, if you want to continue to go down that

20   route, you can.  But it's -- I have looked at those

21   cases, and if I were to rule today, I would not

22   rule in your favor on that.  I'm not going forward

23   with the sanctions against the company.

24           MS. LUKASIEWICZ:  Your Honor, may I speak?

25           THE COURT:  Yes.

 1          MS. LUKASIEWICZ:  I understand that you've

 2    looked at the cases.  I mean, our respective -- at

 3    least all of the cases cited by defendants

 4    certainly were dealing with conduct that occurred

 5    after the bankruptcy, which I think the cases at

 6    least we cited occurred -- the conduct at question

 7    occurred prior to bankruptcy.  I understand that

 8    you're saying it's a contempt issue.  I think part

 9    of it also is though if it's dealing with contempt

10    meaning something to kind of punish or deal with

11    egregious behavior, which I think is what we've

12    alleged in the sanctions motion, at least in part,

13    it does make sense to move forward.

14        I think even aside from that though, as we said

15    in our papers, we would think it makes sense to

16    still certainly even without debtor defendant be

17    able to move forward.

18          THE COURT:  Yeah.  No, I understand that's

19    your position.

20          MS. LUKASIEWICZ:  Sure.

21          THE COURT:  And you're certainly free to

22    argue anything that you want to --

23          MS. LUKASIEWICZ:  Sure.

24          THE COURT:  -- but I would say that, you

25    know, my reaction when you brought it up on the

1   phone was that, you know, that was -- that was a

2   big surprise to me.  I've now read the cases.  I

3   don't think that they make a lot of sense to me.

4   One of the cases acknowledges that the lead case

5   was decided under a prior provision of the

6   bankruptcy code and it's been revised since then.

7       So I'm not likely to find them persuasive.  I

8   say that because I think in terms of going forward

9   in this case, you all ought to assume that I am

10  setting aside the issue of proceeding on the

11  sanctions motion against the company.  My judgment

12  is that is stayed, and I don't intend to proceed on

13  that.

14      Proceeding against the individual defendants on

15  a sanctions motion is, you know, fair game to --

16  to -- for me to decide, as is just proceeding on

17  discovery, and, you know, whatever else needs to

18  happen against the individual defendants.

19      Is there any other questions or any other

20  comments?

21          MS. LUKASIEWICZ:  I guess I just had one

22  comment.  To the extent that under -- and I'm not

23  obviously bankruptcy counsel, but I do understand

24  obviously you can file in the bankruptcy

25  proceedings relief of the stay for a specific

1  purpose.  Would that be something that your

2  court -- the Court would feel comfort in with

3  moving forward with the debtor defendant if that

4  was done to be able to deal with the sanctions

5  motion in that respect?

6          THE COURT:  Well, a couple things.  You

7  know, one of the questions is -- well, the

8  individual defendants may seek to have the stay

9  extended to them, and that issue arises, and I

10  think the cases I've cited will illustrate that

11  sometimes that motion is brought to the bankruptcy

12  court, and it is a motion that is sometimes

13  brought, as far as I can tell, by the bankrupt

14  company, by the estate, saying that, you know, you

15  should extend it to the individual defendants who

16  aren't debtors, because by allowing it to go

17  forward, it's going to have an adverse consequence

18  to the bankrupt estate.  And so it's not -- it's

19  not an action brought by the individual defendants.

20  It's brought by the bankrupt estate.  But the

21  argument is because we're the ones who are going to

22  end up, you know, being left holding the bag, we're

23  asking that the bankruptcy court extend the stay.

24      There are also cases in which the individual

25  defendants in the -- in the litigation that is at

1    issue make the application, like, for example, Mr.

2    Gershengorn can make the application here for a

3    discretionary stay.  As far as I can tell, the

4    courts consider essentially the same -- the same

5    factors in making a determination.  But I think

6    both the bankruptcy court and the district court

7    have some authority to say it wouldn't be

8    appropriate for the case to proceed or for certain

9    portion of the case.  I don't know that it has to

10   be a stay as to everything.

11       And I think that you, as the plaintiffs, have

12   the right as far as I know -- I didn't look at this

13   issue, but this is my recollection of bankruptcy

14   law, I think you can go to the bankruptcy court and

15   ask for relief from the stay.  I don't know how

16   likely it is that you would get it, but I think

17   that's -- so would I have comfort?  I don't think

18   it's a question of comfort.  I would say that I --

19   I feel as if any action against the company is

20   stayed by virtue of the automatic bankruptcy stay,

21   any action in this case, unless and until you

22   obtain an order granting relief from that stay.

23   So, the fact that you initiate proceedings isn't

24   going to change that.  You have to actually get the

25   bankruptcy court to lift the stay as it pertains to

 1   this litigation.

 2              MS. LUKASIEWICZ:  Yes, your Honor.

 3              THE COURT:  Okay.  Anything else?

 4              MR. GERSHENGORN:  Nothing from the

 5   defendants, your Honor.

 6              MS. LUKASIEWICZ:  Is there anything

 7   further we need to do?  We still have our sanctions

 8   motion pending obviously against not just every

 9   defendant.

10              THE COURT:  What I think -- there's

11   nothing to do on that because --

12              MS. LUKASIEWICZ:  We just -- obviously, if

13   we are able to move it forward and have a

14   scheduling order, that would be the best.  I mean,

15   I think it's -- it's been pending a few months at

16   this point.  So I think even defense counsel

17   represented in their reply that they don't deny

18   that jurisdiction at least for them would be --

19              THE COURT:  Okay.  Let's do this.  Today

20   is the 19th, right, of October.

21      Mr. Gershengorn, if you were going to make a

22   motion for stay on behalf of the individual

23   defendants, you should do that by no later than

24   November 9th.  If no motion for a stay has been

25   filed by November 9th, then what I would expect is

1   that I would issue probably a new scheduling order,

2   and if for some reason, Mr. Gershengorn, you decide

3   that, you know, you're not going to make a motion

4   for a stay, you know, one of the things that I

5   thought about is I encourage you, if there's any

6   margin in doing this, to talking about, you know,

7   what -- how can this case move forward in an

8   efficient way without being bogged down and one

9   motion after another motion after another motion

10  that's ultimately going to be time intensive and

11  expensive.

12      Last time I checked in, there was still a lot

13  of discovery that needed to take place.  Maybe you

14  guys can come up with a plan for proceeding

15  forward, this is what you're going to do over the

16  next three months, and we may have an answer -- I

17  mean, we may -- the company -- the bankruptcy

18  proceedings may be over at the end of November.  I

19  don't know how realistic that is, but I don't do

20  bankruptcy work, so I don't know.  They move pretty

21  quickly I think.  And, you know, we can see what

22  position we're in then.  So it may be that, you

23  know, if you -- if you all could agree there's some

24  things that need to be done and we can, you know,

25  and we can do them efficiently and without disputes

1       and conflicts.  And, you know, we don't have to map

2       out from here until the end of the case, because

3       some things are going to happen and we're going --

4       you know, we're going to know what the lay of the

5       land looks like a little better six months from

6       now.  But let's agree to a plan for the first --

7       I'm open to that.  If not, then I'll have to make

8       decisions on these issues as they arise.  Okay?

9              MS. LUKASIEWICZ:  Yes, your Honor.

10             THE COURT:  Okay.

11             MR. GERSHENGORN:  The only question I had,

12      your Honor, is I understand the Court's ruling

13      determination on the legal conflict issue as it's

14      presently before the Court.  In regards to the fact

15      that the firm is not being paid currently for the

16      individual defendants' representation, is that

17      something that the Court would take into

18      consideration down the road?

19             THE COURT:  Okay.  I am denying that

20      application today.  But I am -- I am doing so with

21      the understanding that, you know, six months from

22      now, or, you know, whenever you think that you are

23      justified in coming back and saying our situation

24      is really materially different than it was when you

25      saw me in October, you're free to do that, and, you

1   know, I will take another look at it.

2        MR. GERSHENGORN:  Thank you, your Honor.

3        THE COURT:  Okay.  All right.  Anything

4   else?

5        MS. LUKASIEWICZ:  Nothing further.

6        MR. GERSHENGORN:  Nothing further.

7        THE COURT:  Miss Osipoff, you may have

8   your chance yet.

9        MR. GERSHENGORN:  Thank you, your Honor.

10        THE COURT:  All right.  Have a nice day.

11        *    *    *    *    *    *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                      CERTIFICATION

2

3        I certify that the foregoing is a

4     correct transcription, to the best of my

5     ability, from the electronic sound recording

6     of the proceedings in this matter.

7

8

9                          s/Michelle L. McLaughlin
                           Michelle L. McLaughlin, RPR
10                            Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25