UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
--------------------------------------

CHRISTOPHER HART, et al,

                    Plaintiffs,

              -vs-                        13-CV-6458

CRAB ADDISON, INC., et al,

                    Defendants.
------------------------------------


          Proceedings held before the

      Honorable Marian W. Payson, Kenneth B.

      Keating Courthouse, 100 State Street,

      Rochester, New York, on February 20, 2018.


      APPEARANCES:

      JESSICA L. LUKASIEWICZ, ESQ.,
      Appearing for Plaintiffs.

      MELISSA J. OSIPOFF, ESQ.,
      Appearing for Defendants.

      WILLIAM G. BAUER, ESQ.
      Appearing for Fisher & Phillips, LLC.

      Also present via telephone:
      Raymond A. Blanchett, III,
      Kevin Cottingim,
      Rodney Morris, Defendants.

      AUDIO RECORDER:  Catherine A. Marr

      TRANSCRIBER:     Michelle L. McLaughlin, RPR,
                       Court Reporter,
                       716/332-3560

      (Proceedings recorded by electronic sound
      recording, transcript produced by computer.)

1          THE COURT:  . . . Payson and, Mr. Morris,

2    you're on the phone?

3          MR. MORRIS:  Yes, ma'am.

4          THE COURT:  Okay.  And, Mr. Blanchett,

5    you're on the phone?

6          MR. BLANCHETT:  Yes, ma'am.

7          THE COURT:  Okay.  And we have been unable

8    to reach Mr. Cottingim.  So if he calls in, we'll

9    certainly connect him to the call.

10      And, gentlemen, if I can ask you just to sit

11   tight for a minute, I appreciate your making

12   yourselves available today.  I have scheduled the

13   argument or an appearance on the motion filed by

14   your lawyers to withdraw as counsel for you.  And I

15   wanted to hear whether you have a position on that

16   particular motion.  But before I take up that

17   particular discrete albeit important issue, I

18   wanted to ask counsel whether there have been any

19   developments since our conference -- I don't

20   know -- several weeks ago about your intentions

21   with respect to -- lets start with the case.

22      Miss Lukasiewicz?  Just -- why don't you sit,

23   or come to the podium, whatever you're more

24   comfortable.  But you need to pull a microphone

25   closer to you.

1          MS. LUKASIEWICZ:  Your Honor, since the

2     last time we were in front of the Court, the

3     corrective notice has been mailed, which I think

4     was highlighted for the Court.

5          THE COURT:  Yes.

6          MS. LUKASIEWICZ:  And we have requested I

7     think on two occasions for the rest of the policies

8     relating to the individual defendants.  We haven't

9     heard back.  I assume that probably is in

10    connection with the motion -- the reasons set forth

11    in the motion.  But we're still waiting for the

12    policies relating to the individual defendants to

13    be able to handle or to deal with that individual

14    issue.

15          THE COURT:  Okay.  All right.  Thank you.

16    What about the sanctions motion?  Is it your

17    intention to seek sanctions against the individual

18    defendants?  Is that something that you are -- you

19    feel you have a basis to pursue?

20          MS. LUKASIEWICZ:  I want to make sure I

21    answer that correctly.  I think our position is

22    that it was against all defendants --

23          THE COURT:  I mean --

24          MS. LUKASIEWICZ:  -- correct.

25          THE COURT:  -- your papers say that.

1    Since your papers were filed, of course, there have

2    been some supplemental filings, and there was one

3    filing -- I don't have it in front of me -- it was

4    an affidavit, and to the best of my recollection it

5    said that the individual defendants really had

6    nothing to do with compiling the class list.  It

7    seems to me if based on the order before you, and

8    us, you were of the view that your motion really is

9    directed -- well, in the first instance, towards

10   the company is no longer here, and I guess in the

11   second instance against counsel who advised the

12   company.  But you don't have a factual basis to

13   dispute that these individual defendants were not

14   involved in the compilation of the class list, and

15   you're not seriously going to be pursuing any

16   argument against them.  I would like to encourage

17   you to make that a -- your formal position so that

18   they know and I know whether they are facing a

19   sanctions hearing for class list issues.

20          MS. LUKASIEWICZ:  I think our -- it was

21   our intention to still proceed.  But I certainly

22   understand your -- the points you're raising.  If I

23   could ask for us to provide an update of our

24   position changes in a week or something shorter,

25   certainly we can do so.  I think while an affidavit

1   was submitted, certainly it wasn't in response to

2   the sanctions motion.  We didn't have an

3   opportunity to delve further into whether they were

4   involved.

5          THE COURT:  Well, let me -- let's -- okay.

6   I'll come back to you --

7          MS. LUKASIEWICZ:  Sure.

8          THE COURT:  -- on that question as we play

9   out the question of withdrawal a little bit more.

10  Thank you.

11     Okay.  Let me begin, if I may, with Mr. Morris

12  and Mr. Blanchett.  I assume both of you have seen

13  the papers and are aware of the fact that your

14  lawyers have filed a motion to withdraw as your

15  counsel in this action.

16     Mr. Morris, you've seen the papers?  You're

17  aware of that?

18         MR. MORRIS:  Yes, your Honor.

19         THE COURT:  Okay.  Mr. Blanchett, have you

20  seen the papers, and are you aware of that

21  application?

22         MR. BLANCHETT:  Yes, I have.

23         THE COURT:  Okay.  All right.  Mr. Morris,

24  what is your position on that application?

25         MR. MORRIS:  You know, certainly I

1   understand their position to do so.  And if I may

2   take a step back.  I left the company in January

3   of 2014 and didn't really hear anything, no updates

4   whatsoever between that time and July of last year.

5   So certainly since that time we've had some limited

6   correspondence on that.  I certainly understand

7   their decision and desire to pull away, and that's

8   where I stand.  I understand.

9           THE COURT:  Okay.  Do you oppose the

10  application?

11          MR. MORRIS:  To answer that question I

12  would say I don't necessarily oppose it.  However,

13  based on where we are today, with, you know,

14  providing information on policies, et cetera, I

15  have provided all of my information to Fisher

16  Phillips.  So from my perspective I would hope that

17  there wouldn't be a need to seek additional counsel

18  on this issue.

19          THE COURT:  Okay.  Let me -- let me say I

20  can't predict what the disclosure of those

21  insurance agreements to plaintiffs' counsel is

22  going to yield, whether they're going to review

23  those agreements and agree or disagree with the

24  position taken by you or by your lawyers.  What I

25  can say is that right now the action is still

1      pending against you and Mr. Blanchett,

2      Mr. Cottingim, and there is a sanctions motion that

3      is currently pending against you, as well as

4      counsel, for various issues relating to the

5      preparation of the class list in this case.

6          So I understand that you hope that you will be

7      advised that you don't need to be concerned about

8      this lawsuit or any sanctions motion, that is not

9      the case right now.  Both the lawsuit and the

10     sanctions motion are still pending.  And so I

11     really want to know from you, the position by your

12     lawyers has been, among other things, that they

13     have not received assurances that you either have

14     the ability or are willing to pay the fees that

15     they would charge attendant to their

16     representation.  And, you know, they are entitled

17     to be paid for their representation of you.

18         So, I'm trying to figure out what exactly you

19     plan to do here.  I mean, you can't just sit back

20     and do nothing.  Your options are either to hire

21     new counsel to reach an arrangement with Fisher

22     Phillips regarding your current and continued

23     representation by them, or to represent yourself.

24     Most people don't like to represent themselves, but

25     that is an option.  You have been sued in your

1    individual capacity, so you would have the right,

2    if you wanted to, to represent yourself.  Those are

3    the threes options, and I'd like to know what your

4    plans are.  Or what your --

5              MR. MORRIS:  Your Honor, thank you for

6    that information.  That's the most thorough

7    explanation that I received to date.  You know,

8    assuming that this moves forward, you know, I have

9    explored other attorney representation, and

10   certainly was waiting to hear back from the Court

11   on next steps.

12             THE COURT:  Okay.

13             MR. MORRIS:  And certainly just wanted to

14   be certain that I wasn't charged for any expenses

15   relating to other sanctions from the attorneys.

16   So, you know, should this move forward, I would

17   hope that Fisher Phillips would provide all the

18   information I've given them to date to the

19   plaintiffs' counsel, and from that perspective I

20   would, you know, seek additional representation

21   outside of the current Fisher Phillips

22   organization.

23             THE COURT:  Okay.  Thank you, Mr. Morris.

24      Mr. Blanchett --

25             MR. BLANCHETT:  Yes, ma'am?

1          THE COURT:  -- did you hear my

2     conversation with Mr. Morris?

3          MR. BLANCHETT:  I did.

4          THE COURT:  Okay.  Can you tell me what

5     your position is on this application?

6          MR. BLANCHETT:  Similar to Rodney.  I left

7     the company in November '15 and haven't heard

8     anything.  This came as a surprise that the company

9     would leave us unprotected as individual defendants

10    and when we're indemnified employees.  And, quite

11    frankly, this has just come down to finding the

12    money.  I mean, working with Fisher Phillips to

13    attempt to negotiate a smaller retainer -- just

14    giving an order of magnitude here, we were all sort

15    of wiped out by Ignite Restaurant Group, and it

16    just comes down to being able to afford coverage.

17    I heard your explanation of those.  Very helpful as

18    well.

19        So assuming that we can't come to terms on a

20    lesser retainer, it probably makes sense for the

21    three individual defendants to continue to be

22    represented by one law firm just in order to, you

23    know, save money in our own defense.  And, you

24    know, we'd get with Mr. Cottingim and Mr. Morris

25    and find other counsel I assume.

1        THE COURT:  Okay.  I'm just making some

2    notes.

3        MR. BLANCHETT:  My preference would be to

4    stay with Fisher Phillips, given that they've been

5    involved since Day One.  I mean, I don't know how

6    cumbersome or clumsy it is to make a change at this

7    point.  Those are things that we have to --

8        THE COURT:  Right.

9        MR. BLANCHETT:  We have to learn more in

10   order to make an informed decision.

11       THE COURT:  Okay.  Thank you,

12   Mr. Blanchett.  I'll get back to you and Mr. Morris

13   in just a minute.

14      All right.  Miss Osipoff, what would you like

15   to add?

16       MS. OSIPOFF:  Well, there's been some

17   additional correspondence that I think is pertinent

18   to this action, particularly with respect to

19   Mr. Cottingim, who is not on the phone --

20       THE COURT:  Okay.

21       MS. OSIPOFF:  -- that dissent after we

22   filed our reply brief.  I would like to provide it

23   to the Court in camera if you would like.

24       THE COURT:  Sure.  Thank you.

25       MS. OSIPOFF:  I provided every email.

1           THE COURT:  Okay.  All right.  I don't

2     think I have enough time on the bench to review all

3     of this correspondence.  Let me ask you,

4     Miss Osipoff, when we had a chambers conference a

5     couple of weeks ago, we talked about the fact that

6     the plaintiffs' position with respect to going

7     forward in this action was going to be informed

8     largely, if not exclusively, by insurance and the

9     availability of insurance coverage or the

10    nonavailability of insurance coverage.  I strongly

11    encouraged the counsel and the parties to continue

12    to talk, to exchange that information so that

13    everybody would have access to the same information

14    to see whether there could be an agreement reached

15    with respect to the underlying action.

16        Mr. -- I think it was Mr. Morris said to me on

17    the phone that he had provided you copies of

18    policies.  Are you in a position to be able to

19    provide those to counsel?

20          MS. OSIPOFF:  Yes.  So we already provided

21    to counsel the policies for the company.  We've

22    been working with the individuals to get copies of

23    their policies.  We have copies of Mr. Morris's

24    policies.

25          THE COURT:  And by, their policies, you

1    mean like personal umbrella --

2              MS. OSIPOFF:  Individual --

3              THE COURT:  -- policies.

4              MS. OSIPOFF:  Yeah, homeowners or umbrella

5    policies --

6              THE COURT:  Okay.

7              MS. OSIPOFF:  We have Mr. Morris's

8    policies, as well as the coverage denial letter.

9    We have Mr. Cottingim's policies.  And it's my

10   understanding that he's submitted the claim, but

11   has not heard back whether or not they're going to

12   agree that there is a claim.  We're going to deny

13   it.  And Mr. Cottingim has requested copies of his

14   policies, but we have not yet received them.  And

15   I'm not aware if he's actually submitted the claim

16   to the insurance policy -- to the company.

17             THE COURT:  Okay.

18             MS. OSIPOFF:  We had been hoping to get

19   all of them to be able to provide them to

20   plaintiffs' counsel all at once.  But we can

21   certainly provide them piecemeal.

22             THE COURT:  Okay.  What else did you want

23   to bring me up to date on?  Anything else?

24             MS. OSIPOFF:  The recent communications

25   from Mr. Cottingim was something that I wanted to

1    call to your attention, because we think it

2    evidences a breakdown in the attorney-client

3    relationship that would make certainly

4    representation of Mr. Cottingim an impossibility.

5              THE COURT:  Okay.  Well, just glancing

6    through them, I think they do raise some issues

7    that I had not seen raised in other correspondence

8    previously, and I would like to take some time to

9    review them.

10         Let me step back a minute and ask -- this is --

11   this is an unusual posture insofar as the lawsuit

12   was originally filed against a company, now a

13   bankrupt debtor, and three individual defendants

14   who were high-level employees with that company.  I

15   have not seen the retainer letter with the company.

16   I have seen the engagement letters dated 2013 with

17   the individuals.  And as best I interpret these

18   letters and understand them, what they appear to

19   reflect is that the company was undertaking to pay

20   for the representation of the company and the

21   individual defendants.  There's nothing in the

22   letter that says the individual defendants are

23   jointly and severally responsible.  Doesn't

24   directly say that under the terms of the letter for

25   the fees.

1        So, the company, as part of its bankruptcy, has

2    resolved this matter.  I understand that there is

3    still a large sum that's outstanding from the

4    company to Fisher Phillips or the prior law firm

5    with which you and Mr. Gershengorn were affiliated.

6    But my -- so, I would agree that these engagement

7    letters, they are premised on conditions that no

8    longer exist.  They are premised on the

9    understanding expectation that the company is

10   around and that the company will be paying the

11   bills.

12        MS. OSIPOFF:  That's right.  That's why we

13   provided new engagement letters.

14        THE COURT:  Okay.  I getcha, and I don't

15   think that that's unreasonable.  And I haven't

16   looked at the law on this particular question.  The

17   question I have is you are counsel to the

18   individual defendants.  You've made notices of

19   appearance.  You have defended them up to this

20   point.  The company is no longer a defendant in

21   this action, at least for all intents and purposes,

22   if not formally, and they are not in a position to

23   continue to pay the bills.  So I would agree with

24   you that you are entitled to new engagement letters

25   that sets -- that set forth the terms of any

1    continued representation, including the client's

2    obligation to pay fees and an understanding of what

3    those fees are.

4        I'm not -- the question I have is are you

5    entitled to another retainer?  There's a retainer

6    that has been paid to you by the company to secure

7    the representation of the company and the

8    individual defendants.

9            MS. OSIPOFF:  We never had a retainer with

10   the company.  They were being billed on a monthly

11   basis.

12           THE COURT:  Okay.  So, my question is,

13   have you billed the individual defendants for any

14   services that you've rendered since the company has

15   been declared bankrupt, not for services that have

16   been incurred prior to that date that they have

17   failed to pay, or is this a dispute about a

18   retainer?  And I'm not convinced that you're

19   entitled to a retainer.  You already represent

20   them.  You're entitled to be paid for your services

21   on a going-forward basis.  And certainly the

22   individual defendants are entitled to say we'd

23   rather be represented by other counsel, or they are

24   entitled to say, and you're entitled to say, these

25   are our fees, and they may or may not be able to

1    afford them.

2         But if the dispute is about whether they should

3    put money forward as a retainer, I'm not

4    necessarily convinced that you're entitled to a

5    retainer under circumstances where you're already

6    representing somebody.  So, I'm wondering what your

7    response to that is.

8              MS. OSIPOFF:  We haven't sent out any

9    bills to the individual defendants since we don't

10   have the engagement letters in place yet.  So we

11   don't have a mechanism as to how the fees are going

12   to be split against the three individuals.  But

13   it's my understanding that there's tens of

14   thousands of dollars in legal fees that have been

15   expended on their behalf since the company filed

16   for bankruptcy that we haven't sent invoices for.

17   But, you know, it's our understanding that the

18   individuals have no interest in paying those.

19             THE COURT:  Well, I guess my view would be

20   that you should be obligated to come back to me and

21   establish your entitlement to charge them a

22   retainer.  I'm not convinced you get to charge them

23   a retainer.  As I said, I'm persuaded that you're

24   entitled to be paid for your services, and there is

25   case law that says before you let counsel out for

1   nonpayment there has to be proof of at least a bill

2   and nonpayment, as opposed to just a sort of

3   theoretical -- I shouldn't say theoretical -- but

4   some conversation about whether they are willing to

5   pay a retainer or not willing to pay a retainer.

6         So, did you look up that issue about whether --

7   whether you are legally entitled or even ethically

8   entitled to charge a retainer to clients --

9              MS. OSIPOFF:  We didn't --

10             THE COURT:  -- whom you already represent?

11             MS. OSIPOFF:  -- look at that issue

12   specifically.  But I think retainer or not, the

13   individuals have indicated that they're not willing

14   to pay our fees.  So, you know, even if we took the

15   retainer out of the engagement letter, if they're

16   not willing to pay our fees, we're back to not

17   being pay.

18             THE COURT:  Okay.  I didn't hear that

19   exactly in what Mr. Morris and Mr. Blanchett said

20   to me on the phone today.  They were talking more

21   about a retainer.

22         So, Mr. Morris, what is your position if the

23   retainer is not an issue, the issue is just paying

24   the bills on a going-forward basis, what is your

25   position with respect to both your ability to pay

1   those fees and your willingness to pay those fees

2   charged by Fisher Phillips?

3           MR. MORRIS:  Well, I think from a

4   going-forward basis that would be from today

5   forward, we've had no visibility or very limited

6   visibility on what the reference points for tens of

7   thousands of dollars.  I certainly don't have that

8   money and have no ability to pay that.

9       If it is a reasonable hourly rate, certainly

10  that would be something that I would be amenable

11  to.  But that's never been the discussion.  It was

12  always about a retainer first.

13          THE COURT:  Mr. Blanchett?

14          MR. BLANCHETT:  I'm in the same place as

15  Mr. Morris.  And, you know, I have been

16  corresponding with Fisher Phillips, you know, over

17  the last whatever, ten days or so that -- like I

18  had mentioned before, trying to negotiate a

19  retainer, never about any individual hourly rate.

20  I mean, I totally get that they deserve to be

21  compensated for their time.  It's just a matter of,

22  you know, ability.

23      These cases are incredibly expensive for

24  companies.  I mean, for individuals it's

25  impossible.  And I'd be bankrupt.  I mean, we've

1   already been wiped out, like I said by this, and

2   then the flood in Houston.  I don't know where I'm

3   supposed to find the money to pay for this defense.

4         THE COURT:  Okay.  Anybody have anything

5   else they want to add right now?  Okay.

6      Mr. Morris and Mr. Blanchett, if I can just ask

7   you to hold on for a minute, I'm going to go off

8   the bench and confer with my law clerk for a few

9   minutes, and then I'll be right back.

10        MR. BLANCHETT:  Okay.  Thank you.

11        (Short recess was taken.)

12        THE COURT:  Okay.  Mr. Morris,

13  Mr. Blanchett, are you still on the phone?

14        MR. MORRIS:  Yes, ma'am.

15        MR. BLANCHETT:  Yes, ma'am.

16        THE COURT:  All right.  So --

17        MR. COTTINGIM:  Kevin Cottingim is on as

18  well.

19        THE COURT:  Mr. Cottingim, and you were

20  unavailable at 3:00.  Why?

21        MR. COTTINGIM:  I had a flight delay.  I

22  was on an airplane, and I called in as soon as I

23  got off the plane.

24        THE COURT:  Okay.  Well, I've -- I've

25  heard oral argument.  Miss Osipoff has given me

1    copies of some correspondence you've had with her

2    recently that I have not had a chance to read as

3    carefully as I need to.  I flipped through it.  So,

4    let me tell you what I would propose we do.

5         With respect to the insurance agreements that,

6    Miss Osipoff, they -- have you provided those to

7    plaintiffs' counsel yet?

8              MS. OSIPOFF:  Only the ones for the

9    corporation, not for the individuals.

10             THE COURT:  Okay.  So you have done that.

11   You have those?

12             MS. OSIPOFF:  Yes, your Honor.

13             THE COURT:  Okay.  Are you satisfied that

14   you have what you need to with respect to the

15   question of coverage through those policies, that

16   is, that there would be no coverage under those

17   policies?

18             MS. LUKASIEWICZ:  I think we'd reserve our

19   right once we see the rest of the policies if we

20   had any follow-up questions.  We just thought it

21   made sense to look at everything all together just

22   to make sure that we had no follow-up questions.

23   But at this time we have nothing further.

24             THE COURT:  Okay.  What other insurance

25   policies are you looking for?  You're looking for

1    homeowners and any umbrella liability policies?

2              MS. LUKASIEWICZ:  Yes, your Honor.  Any

3    personal policies they may have.

4              THE COURT:  Okay.  Mr. Morris,

5    Mr. Blanchett, and Mr. Cottingim, I -- assuming

6    that you each have a policy or policies that are

7    homeowners and umbrella policies, I would encourage

8    you to provide those to Miss Osipoff, if you have

9    not done so already, you know, tomorrow.  What I'd

10   like to do is have those policies provided to

11   plaintiffs' counsel so that I can learn, as I'm

12   sure you are interested in learning, whether

13   plaintiffs intend to pursue this action against

14   you.  If they don't, it's in everybody's interest

15   to know that sooner rather than later.  It is in

16   everybody's interest to know whether you are

17   pursuing sanctions against the individual

18   defendants.

19      There are issues with respect to the withdrawal

20   motion that preclude me from deciding that motion

21   today.  But in any event, it's neither here nor

22   there if you're not going to pursue the action

23   against the individual defendants, and you're not

24   going to pursue sanctions against the individual

25   defendants, and then, you know, you'll take a

1    position to date I understand that you wish to

2    pursue your sanctions motions against attorneys.

3    And Mr. Bauer has been retained by Fisher Phillips,

4    and I know I've gotten a previous response by prior

5    counsel -- whose name I can't remember right now.

6              MS. LUKASIEWICZ:  Epstein, Becker and

7    Green.

8              THE COURT:  Yes.  And I will schedule that

9    matter.  Clearly the issue of the individual

10   defendants is going to slow all of that down, and

11   I'm not interested in putting them through the

12   anxiety and the cost of dealing with these

13   complicated counsel issues if there really isn't a

14   basis to go forward against them.  And I think that

15   it is in everybody's interest to try to determine

16   that.  I'm not criticizing you, because I know you

17   have asked for some additional policies, and you're

18   entitled to see them.

19       I'm glad that the individual defendants,

20   Mr. Morris, Mr. Blanchett, Mr. Cottingim, are all

21   on the phone.  Please get those policies, if you

22   haven't already, to Miss Osipoff, you know, within

23   a day or two, because what I'm going to do is put

24   this matter on my calendar again for the same time

25   a week from now, and I'd like to have some answers.

1          So I'd like you to work with me, gentlemen,

2     Mr. Morris, Mr. Blanchett, Mr. Cottingim, to get

3     the information that will enable decisions to be

4     made so that you know when we're talking about

5     counsel, whether this case is going to proceed, and

6     then you can make some decisions about whether you

7     are going to hire new counsel, whether you wish to

8     continue to be represented by Fisher Phillips.  If

9     Fisher Phillips intends to pursue the question of a

10    retainer, I would require you to provide to me some

11    case law establishing your legal entitlement to

12    that, because I'm skeptical about that aspect, but

13    I agree with you that you're entitled to be paid,

14    but I'm not sure the record, if we're just talking

15    about payment, entitles you to get out now, because

16    I don't think there has been a bill sent and

17    nonpayment made.

18         But if we can resolve the issue with the

19    individual defendants, we can resolve the whole

20    issue of counsel.  And then we just have that one

21    sanctions motion, and we can get that done and

22    heard, and we'll be done.  Okay.

23              MS. LUKASIEWICZ:  Can I speak briefly,

24    your Honor?

25              THE COURT:  Yes.

1          MR. COTTINGIM:  Your Honor, this is Kevin

2     Cottingim.  One thing I want to tell you is I can't

3     find copies of my insurance policies, but I have

4     asked the insurance company to provide them to me.

5     They said it will take them about three days to do

6     it.  I've asked for it twice.  And as soon as I get

7     them I'll forward them on.

8          THE COURT:  Okay.  I mean, all I can tell

9     you, Mr. Cottingim, is to just let them know that

10    the Court has required you to produce them.  They

11    probably won't care that they hear that.  I say

12    that only because sometimes you might get somebody

13    on the other end of the phone who says oh, okay,

14    well then we really will make a special effort to

15    get it -- to get it sooner.  So, it's, as I said --

16         MR. COTTINGIM:  In further support --

17         THE COURT:  -- Mr. Cottingim, as I said, I

18    think this may be in your interest to get this

19    information to plaintiffs' counsel as quickly as

20    possible so that while this case has all of our

21    attention, we can get as many decisions made and to

22    do it in a manner that makes sense.  I don't want

23    to keep you all in the case if it is a foregone --

24    not a foregone conclusion, but if after plaintiffs'

25    counsel has enough time to digest the insurance

1    policies, they're in agreement that the case is not

2    going to proceed against you.  So I don't want to

3    go through this whole rigmarole and make a

4    determination about whether you, you know, have to

5    get new counsel or not if the case isn't going to

6    go forward.

7         So I am sympathetic to your wanting to know

8    that.  I'm also sympathetic that the plaintiffs'

9    counsel is not yet in a position to make that

10   determination.  So, you know, I will do what I can

11   to, you know, hold their feet to the fire once they

12   have the information in order to get you a prompt

13   decision.  But they're not in a position to do that

14   yet.  So I know, Mr. Cottingim, you hear me.  I'm

15   just trying to really emphasize to you the

16   importance of trying to put the pressure on the

17   agency to provide you copies.  There's no way --

18             MR. COTTINGIM:  Your Honor, in further --

19             THE COURT:  Let me ask you, Mr. --

20             MR. COTTINGIM:  I requested them online.

21   But I'm going to call them too.

22             THE COURT:  Yeah.  Mr. Cottingim, I can

23   just -- in my personal experience with my insurance

24   company is I can go online and click on my policy.

25   Have you tried that?

 1              MR. COTTINGIM:  I did that, and it only

 2      gave me the one-page summary, and that's where it

 3      said to request the full policy, and I would get it

 4      in three to four business days.

 5              THE COURT:  Okay.

 6              MR. COTTINGIM:  And I haven't got it yet.

 7      But I'll call them too.

 8              THE COURT:  Okay.  Well, call -- and you

 9      should all, if you haven't gotten them to

10      Miss Osipoff, call as soon as we are done today or

11      first thing tomorrow morning and communicate with

12      her as to the status.  Okay, Mr. Cottingim?

13              MR. COTTINGIM:  I will.

14              MR. BLANCHETT:  Your Honor, may I ask --

15      this is Ray Blanchett.  Can I ask one clarifying

16      question?

17              THE COURT:  Yes.

18              MR. BLANCHETT:  I provided a copy of my

19      umbrella policy to Miss Osipoff.  And I opened up a

20      claim and an underwriter or someone has to review

21      the claim.  So what we've been waiting for I

22      believe and what's a pregnant lump is for them to

23      weigh in whether or not there's coverage in this

24      case.  So are you asking just for the policy --

25              THE COURT:  I'm just asking -- I'm asking

1    for just the policies now.

2              MR. BLANCHETT:  Okay.  Okay.  Thank you.

3              THE COURT:  Okay.  All right.

4              MR. MORRIS:  Your Honor, this is Mr.

5    Morris here.  I'd like to just go back on record

6    saying I did provide that information as requested

7    on February 2nd.

8              THE COURT:  Okay.  And my law clerk has

9    just suggested that I emphasize to you all to ask

10   the insurance company to email the policy to you

11   rather than to mail it to you.

12             MR. COTTINGIM:  Great point.  I will

13   definitely do that.

14             THE COURT:  That's what she's here for.

15       Okay.  Now, Miss Lukasiewicz, who represents

16   the plaintiffs, has wanted to say something.  So go

17   ahead.

18             MS. LUKASIEWICZ:  As soon as we get those

19   insurance policies, again, we will look at them,

20   reevaluate whether it still makes sense to proceed

21   on the sanctions motion.

22             THE COURT:  Okay.

23             MS. LUKASIEWICZ:  The other thing I was

24   just going to ask, we would request the ability to

25   submit any response to the extent that Miss Osipoff

1    submits any briefing on the retainer issue.  We

2    request --

3                THE COURT:  Yes.  Yes.

4                MS. LUKASIEWICZ:  -- the ability to

5    actually read the brief, that it's not submitted in

6    camera, just because it has, as indicated in our

7    papers, it's difficult to respond without seeing

8    the --

9                THE COURT:  Okay.  That's fine.  If

10   there's any briefing on the retainer agreement, I

11   would imagine that it can either be submitted

12   without the necessity for sealing or at least

13   redacted so -- the particular facts may be

14   redacted, but the legal argument you're entitled

15   to, and I'll give you a chance to respond to that.

16               MS. LUKASIEWICZ:  Thank you, your Honor.

17               THE COURT:  Okay.  So, we're going to

18   convene again.  You don't have to fly to Rochester.

19   We can just do this all by phone.  Mr. Morris,

20   Mr. Blanchett, Mr. Cottingim, and counsel, please

21   make themselves available a week from today, same

22   time, and maybe we can have some answers or at

23   least some progress.  So I would ask you to --

24   everybody to put this on the front burner, and

25   let's, you know, attend to it, and that's part of

1    the reason I'm giving you a week rather than

2    longer, because I think it helps move it along.

3        Mr. Bauer has been sitting in the back of the

4    courtroom.  He represents Fisher Phillips, and the

5    fact that you were here has reminded me, did I give

6    you a briefing schedule?

7            MS. OSIPOFF:  Yes, your Honor.  I was just

8    going to raise that.  There's an opposition that's

9    due on the sanctions piece on March 2nd.

10            THE COURT:  For the individual defendants.

11            MS. OSIPOFF:  For everybody, the

12    individuals and --

13            MR. BAUER:  It said the individuals, not

14    -- it didn't say us.

15            THE COURT:  Okay.  Why don't you come up

16    to the podium, just so the --

17            MR. BAUER:  Your Honor, I read the

18    scheduling order last night, and it does -- it only

19    references the -- I read the scheduling order last

20    evening, and it only references the individual

21    defendants.

22            THE COURT:  Yes, you're right, it only

23    references the individual defendants.

24            MR. BAUER:  And I did have a conversation

25    with Mr. Lingle.  I've had a number of

1    conversations with him over the last week or so,

2    and one of the things we both were aware that the

3    March 16th date that the Court had set as a return

4    date, both he and I were unavailable because of

5    other engagements.  So I don't know if -- if we

6    need to get this issue perhaps squared away.  I'm

7    prepared to go forward and to prepare papers in

8    opposition on behalf of Fisher Phillips and the

9    individual attorneys that I represent.  I can do it

10   in compliance with that scheduling order or --

11        THE COURT:  Okay.  Let's -- let's do it in

12   compliance with that scheduling order, that is, a

13   response by Fisher Phillips by March 2nd.  I'm

14   happy to adjust the March 16th deadline -- oral

15   argument date.  We can talk about that maybe next

16   Tuesday if you like, or we can -- I can do that by

17   email.  We can adjust that date.

18        MR. BAUER:  Okay.

19        THE COURT:  Okay?

20        MR. BAUER:  Great.

21        THE COURT:  All right.

22        MS. LUKASIEWICZ:  Your Honor, I am out of

23   the country next -- a week from today.  But I'm

24   confident somebody from my office will be

25   available.  I just wanted to let the Court --

1           THE COURT:  But it's so pleasant dealing

2     with you.

3           MS. LUKASIEWICZ:  I'm sure Nelson Thomas

4     wants to be back.

5           THE COURT:  I'm sure he does too.

6           MS. OSIPOFF:  Just to clarify, will there

7     be an opposition due on behalf of the individual

8     defendants to the sanctions motion on March 2nd, or

9     will that be adjourned?

10           THE COURT:  I don't think I can do that

11     right now.  This issue is up in the air, and I

12     think that you and they are entitled to clarity in

13     your relationship before you have to put in

14     something as important as a response.  I think it's

15     up in the -- you know, it's certainly up in the air

16     as to whether the plaintiffs will be proceeding to

17     seek sanctions against them.  So I don't see any

18     reason, and I see a lot of reasons not to require a

19     response by the individual defendants.  It may --

20     you know, if they are still in the case, if there's

21     still going to be a sanctions motion against them,

22     I recognize, Mr. Bauer, that may ultimately mean

23     that the sanctions proceedings get extended, but it

24     may well be that they are out of the case, and we

25     can go forward.  So I'd like to keep the March 2nd

```
1   deadline.  We'll find an oral argument date that
2   works for everybody.  I am going suspend that
3   scheduling order as it pertains to the individual
4   defendants.  I had hoped to be able to resolve that
5   issue today and we could move forward.  But I
6   can't.
7              MS. LUKASIEWICZ:  Thank you, your Honor.
8              MS. OSIPOFF:  Thank you, your Honor.
9              MR. BAUER:  Thank you, Judge.
10             THE COURT:  Anything else?  Okay.  Thank
11  you.  Thank you, gentlemen.
12             MS. OSIPOFF:  Thank you.
13             MR. COTTINGIM:  Yeah, one other thing,
14  your Honor.  This is Kevin Cottingim.  I just want
15  to formally apologize for being late for the call.
16  If there was any way I could have got here on time,
17  I would have been.
18             THE COURT:  Okay, Mr. Cottingim.  We'll
19  talk to you next week.
20             MR. COTTINGIM:  Thank you.
21             THE COURT:  Okay.  Thank you.  Goodbye.
22             MR. COTTINGIM:  Thank you.  Goodbye.
23             THE COURT:  We'll just say the
24  continuation of the oral argument.  Okay.
25             *     *     *     *     *     *
```

1                              CERTIFICATION

2

3          I certify that the foregoing is a

4      correct transcription, to the best of my

5      ability, from the electronic sound recording

6      of the proceedings in this matter.

7

8

9                              s/Michelle L. McLaughlin
                               Michelle L. McLaughlin, RPR
10                                Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25