UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
--------------------------------------

CHRISTOPHER HART, et al,

                    Plaintiffs,

              -vs-                         13-CV-6458

CRAB ADDISON, INC., et al,

                    Defendants.
--------------------------------------


              Proceedings held before the

         Honorable Marian W. Payson, Kenneth B.

         Keating Courthouse, 100 State Street,

         Rochester, New York, on June 6, 2018.


         APPEARANCES:

         JESSICA L. LUKASIEWICZ, ESQ.,
         Appearing for Plaintiffs.

         CHRISTOPHER M. FARELLA, ESQ.,
         MELISSA J. OSIPOFF, ESQ., and
         BRIAN J. GERSHENGORN, ESQ.
         Appearing for Defendants.

         WILLIAM G. BAUER, ESQ.
         Appearing for Fisher & Phillips, LLC.


         AUDIO RECORDER:  Catherine A. Marr

         TRANSCRIBER:     Michelle L. McLaughlin, RPR,
                          Court Reporter,
                          716/332-3560




         (Proceedings recorded by electronic sound
         recording, transcript produced by computer.)

1              THE COURT:  . . . like to note their

2      appearances for the record.

3              MS. LUKASIEWICZ:  Good afternoon, your

4      Honor.  Jessica Lukasiewicz from Thomas and Solomon

5      on behalf of the plaintiffs.

6              THE COURT:  Okay.  Miss Lukasiewicz.

7              MR. BAUER:  Your Honor, William Bauer,

8      Woods Oviatt Gilman, appearing on behalf of the

9      Fisher Interested Parties.

10              THE COURT:  Okay.

11              MR. FARELLA:  And, your Honor, Christopher

12      Farella on behalf of the Epstein Becker and Green

13      for the Epstein Becker and Green firm and any of

14      the attorneys that represented Ignite.  Thank you.

15              THE COURT:  Mr. Farella, how are you?

16              MR. FARELLA:  I'm well, thank you, your

17      Honor.

18              THE COURT:  Good.  Okay.  So pending

19      before the Court for oral argument this afternoon

20      is plaintiffs' renewed motion for sanctions.  I am

21      certainly quite familiar with the record that gives

22      rise to the motions before the Court, and I have

23      carefully reviewed the motion papers and reviewed

24      various cases which relate to issues that had been

25      raised in the motion papers.

1          What I'd like to do is invite oral argument

2     from three counsel who are present, and I have

3     quite a number of questions that I have for each of

4     you.  I want to make sure that when we're done

5     today that nobody feels as if they have been

6     curtailed in arguing or presenting any facts to me,

7     so I will try to make sure that I give you enough

8     time to tell me what it is that you want to

9     emphasize.  But I will ask you a lot of questions,

10    and at the end, if there's anything you want to

11    say, please be sure and let me know that, okay?

12         Miss Lukasiewicz.

13             MS. LUKASIEWICZ:  Your Honor, we

14    appreciate that you're very familiar with the facts

15    in this case, and as set forth in our reply papers,

16    we believe that while we would be successful and we

17    should be successful in our current submissions, we

18    understand there's that strong desire by the

19    Second Circuit to have a full record with an

20    evidentiary hearing, and so we would respectfully

21    submit at this time that an evidentiary hearing is

22    scheduled and we move forward on that.

23             THE COURT:  What do I need to have a

24    hearing on?

25             MS. LUKASIEWICZ:  I think some of the

1  points that counsel has raised in their response

2  papers certainly -- and I think everything in the

3  sanctions motion but, you know, for example, they

4  have the Metzger affirmation, which is the first

5  time that that has been raised in response to the

6  sanctions motion, and I think certainly issues like

7  that would need to be raised and addressed and can

8  be addressed at a sanctions -- at an evidentiary

9  hearing.

10            THE COURT:  Okay.  So tell me what you

11  would envision would happen at a hearing.

12            MS. LUKASIEWICZ:  I think what we would

13  envision is that, you know, a -- you know, a status

14  conference would be scheduled in advance to see if

15  there's any discovery that would need to be done in

16  advance to limit anything that needs to be

17  addressed at the evidentiary hearing.  But it could

18  be anything from any of the issues addressed by a

19  defense counsel, again, any affidavits that they're

20  now putting in support of their motion or in their

21  opposition papers.  For example, I think, you know,

22  indicates that counsel is not responsible now for

23  any of the allegations in the sanctions motion.  So

24  I think that would need to be addressed through the

25  sanctions hearing.  And I think just for the

1   benefit of having a full record, since the Second

2   Circuit has had that propensity that a full record

3   needs to be satisfied before kind of deciding a

4   sanctions motion.

5       Again, we think we've set forth the basis, but

6   we do think that it would allow a full record to be

7   developed.  Anything additional that --

8           THE COURT:  Do you think the decision

9   about whether to have a hearing is a decision

10  that -- do you think I am required to have a

11  hearing, or do you think in an exercise of either

12  prudence or discretion I should have a hearing?

13          MS. LUKASIEWICZ:  I think that it's

14  probably somewhere in between those two answers.  I

15  guess I think that based on the Second Circuit's

16  decisions that it is the best idea and the way that

17  it should go in order to ensure that we have the

18  full record, I'm not sure if it's -- there is a

19  requirement based on my readings of it.  I just

20  think that that is something that would be

21  eventually, potentially that we would have to deal

22  with.  And I think, based on what counsel has

23  represented in the past, that they would certainly

24  likely appeal any decision.  So I think we are

25  addressing that before getting up to any appeal and

1   then coming back down and dealing with it two years

2   later.

3            THE COURT:  Okay.  You mentioned in your

4   answer something about discovery.  Am I correct

5   that there's -- no where in your papers do you make

6   an application for discovery.

7            MS. LUKASIEWICZ:  And I'm not sure that

8   there would be any necessary.  I'm just saying

9   there would be a status conference.  We can discuss

10  whether there would need to be any at that time,

11  and then quickly move forward with an evidentiary

12  hearing at that time.

13           THE COURT:  I'm not sure I would see the

14  need for a status conference.  It seems to me that

15  we have motions, motions are fully briefed, and

16  either I have a hearing or I don't have a hearing.

17  What about if I were to make a determination that

18  there was not a -- a sufficient either showing or

19  allegation of bad faith to warrant an evidentiary

20  hearing on the question of bad faith, do you think

21  that there still should be a hearing on any other

22  issue?

23           MS. LUKASIEWICZ:  Well, I'm not sure that

24  there's always a requirement of the bad faith.  It

25  could be the -- and I think we put in our papers

1      that the negligence or -- I believe it's negligence

2      or willfulness, that could go towards it.  There's

3      other factors that can be -- it's not just a

4      straight bad faith.  So I think it would still make

5      sense to go ahead again to develop that record to

6      make sure.  I think we -- based on defense

7      counsel's response, that makes the most sense,

8      since they've now raised points that can be parsed

9      out at the evidentiary hearing fully addressed at

10     that time.

11            THE COURT:  Okay.  Stick with me on the

12     issue of what I'm having a hearing on.  Let's

13     say -- let's say bad faith is -- is not an issue

14     that I intend to have a hearing on, and I'm not

15     saying I've made that determination.  But I think

16     typically in sanctions cases, it is -- excuse me,

17     in the context of an allegation of bad faith that

18     the Court says either a hearing is required in

19     order to make a determination or a hearing would be

20     helpful, prudent.  So, your contention that even if

21     bad faith were not an aspect to this motion, that

22     there are issues that need to be addressed at a

23     hearing, and we can address that at a status

24     conference and so forth.

25          You know, I'd like to find out from you, if

1    you're in a position to tell me with as much

2    specificity as possible, what exactly those issues

3    are beyond whether counsel took action that you

4    believe warrants sanctions, and that those actions

5    were motivated by bad faith.  So let's take the bad

6    faith off the table.  What do I need to have a

7    hearing on or what should I have a hearing on?

8         MS. LUKASIEWICZ:  I think our position is

9    is that we think we would submit submissions on

10   what we think is appropriate to do at the

11   evidentiary hearing, if that was something that the

12   Court was inclined to do other than, you know, what

13   I stated today, and we could brief any issues that

14   we think whether -- if the Court does not agree

15   about bad faith being a factor, if we need to, or

16   something that needs to be addressed at an

17   evidentiary hearing, we can certainly brief that in

18   advance of that evidentiary hearing so it's clear

19   and concise about what would be addressed at that

20   time.

21        THE COURT:  Well, I guess I'm trying to --

22   you put in a one-page reply that says we need to

23   have a hearing.  So it seems to me it's reasonable

24   to expect that you'd come to argument today telling

25   me what we need to have a hearing on, not I'm going

1      to get further submissions on that question.  And

2      I'm trying to find out whether your argument is

3      because you have alleged bad faith you're entitled

4      to have a hearing on that question, or whether you

5      are arguing, you know, as I said, even in the

6      absence of that, you're entitled to have a hearing.

7      And maybe, you know, the candid answer is I don't

8      really know as to whether we would have to have a

9      hearing if there weren't -- if there were not an

10     allegation of bad faith.

11            MS. LUKASIEWICZ:  I guess I would say that

12     I would probably want to further consider that if

13     there was not the bad faith thing on the table --

14     element on the table, and certainly we could submit

15     anything on that and follow up with you immediately

16     as to our position on that.  But I guess that would

17     be my position right now.

18            THE COURT:  Okay.  So if I were to ask you

19     right now, if I said, okay, in your reply you asked

20     for a hearing, we're going to have a hearing, you

21     know, two weeks from today, what witnesses do you

22     anticipate calling at the hearing?  You're not

23     today in a position to answer that question?

24            MS. LUKASIEWICZ:  I'm not in a position

25     today to outline what would be specifically

1  addressed, other than what we believe that we've

2  raised and defense counsel has raised in opposition

3  to the sanctions motion.  But I don't have point

4  items in order to address that.

5        THE COURT:  Okay.  As far as what is in

6  the record on the motion papers, what allegations

7  or what disputed facts are there that you think

8  give rise to the need for a hearing?

9        MS. LUKASIEWICZ:  I mean, I think

10 certainly, you know, defense counsel, as we saw in

11 the papers, certainly did not admit that they're at

12 fault for any of the actions or that there was

13 really misrepresentations made at any state.  So,

14 whether it relates to the class list or the

15 subsequent claims that we made, which is in towards

16 candor to the Court as well as plaintiff's counsel,

17 violating court orders, I think that's where there

18 is dispute, I believe into -- that at least defense

19 counsel raises and thinks that they're raising into

20 dispute on all of those claims.

21       THE COURT:  Okay.  Well, let's say --

22 let's talk about misrepresentations.  In a number

23 of cases you point to specific statements made by

24 defense counsel which you contend are sanctionable

25 because they really amount to misrepresentations.

1            MS. LUKASIEWICZ:  Correct.

2            THE COURT:  Correct?  So, we know what the

3      record is as to those statements, and either I have

4      copies of letters or we have transcripts.  So I

5      don't disagree with you that we have the plain

6      language, and I don't have in -- certainly in all

7      instances and maybe even in most instances, any

8      indication from counsel as to what was in their

9      mind when they -- when they made that statement or

10     not.  But what would you offer at a hearing on --

11     on that question?

12            MS. LUKASIEWICZ:  And it's difficult,

13     because I feel like it puts me in a tough position

14     to not make their argument.  Again, we think that

15     we could win on the sanctions motion on our

16     submissions, but, you know, I believe defense

17     counsel in one of their arguments about whether

18     they knew the exact number of errors at various

19     points and whether they could appear for the

20     June 6th hearing, there's some back facts that I

21     think have been brought up and whether or not they

22     were aware that they could not have somebody appear

23     at the June 6th hearing.  So I think facts like

24     that would be the types of examples.  But again, I

25     understand the Court is not interested in that at

1    this time.  But we would certainly think that we

2    could outline or brief those specific issues in

3    advance of any evidentiary hearing.  But those are

4    things off my head that I would think of.

5              THE COURT:  Okay.  I'm not sure I have a

6    really good grasp of what your argument about what

7    you think we need to have a hearing on and how

8    you -- how you would see that hearing going

9    forward, and particularly since you're the

10   plaintiff, you have the burden of proof.  We had a

11   discussion -- somewhere in my notes I've got the

12   date, but I think it was the end of the summer

13   of 2016 with respect to this motion, and I had

14   discussed with plaintiff's counsel whether you

15   wanted to put witnesses on at that time or simply

16   offer your -- argue on the papers, and you elected

17   to argue on the papers.  And I understand that was

18   before you saw the defendants' response.  And

19   I'm -- and the one thing that you've specifically

20   identified for me, at least that I'm clear on

21   today, is the submission of the affidavit from

22   general counsel of Ignite, that you think raises

23   some factual issues that warrant a hearing.

24             MS. LUKASIEWICZ:  Correct.  And as we said

25   in our reply, we think it was based on hearsay and

1    not admissible anyway, but we do think --

2            THE COURT:  And your argument is that

3    there's a basis for the Court to simply to decline

4    to --

5            MS. LUKASIEWICZ:  To make a determination.

6            THE COURT:  -- to rely on it and say it's

7    not admissible.

8            MS. LUKASIEWICZ:  Correct.  We do.  But we

9    just think because of the Second Circuit's

10   propensity, it makes sense to develop the full

11   record at this time, even though we don't

12   necessarily -- we think that, yes, a decision could

13   be made, but to avoid any appeal risks that may

14   move forward, we think it makes sense at this time.

15       I do think, and as the Court indicated, when we

16   were asked about it, that was prior to any

17   response.  Obviously we didn't know what their

18   response could be.  I mean, not that it was likely,

19   but they could have admitted to everything or, you

20   know, not oppose it in the way that they did.  So I

21   think it was difficult for us to anticipate it at

22   that time and know for sure what -- what course

23   made sense from here.

24           THE COURT:  I'm not -- I'm not quarreling

25   with you as to whether you have a legal right in

1   reply to say that we think a hearing should be

2   ordered.  I'm just trying to probe as to if I were

3   to say yes, what am I getting myself in for?  I

4   mean, I'm certainly -- the last thing I want is

5   anymore discovery in a case in which the defendant

6   is -- I mean, the merits of this case are over.

7   The defendant has filed for bankruptcy.  I know

8   there's some individual defendants out there.

9   Seems to me the claims against the individual

10  defendants were not the heart of this -- this case,

11  and we could certainly be in proceedings relating

12  to sanctions attorneys against attorneys for far

13  longer than the case was being litigated, and

14  particularly if I -- if I were to agree to -- to

15  conduct discovery.  And I'm not interested in that.

16  I'm interested in resolving this in a fair way so

17  that all sides are fairly heard in an efficient

18  manner and ultimately as quickly as possible.  I've

19  got -- you know, we all have other things I think

20  that we would rather be doing than this particular

21  sanctions motion.

22           MS. LUKASIEWICZ:  And -- I'm sorry.

23           THE COURT:  Go ahead.

24           MS. LUKASIEWICZ:  And we agree.  And

25  that's why we think it makes sense to go forward

1    with the evidentiary hearing so that we're not

2    coming back on this issue potentially in a year or

3    two when it has been up for appeal, so I would --

4              THE COURT:  I know.  But I'm entitled

5    to --

6              MS. LUKASIEWICZ:  I would request that we

7    could do a submission.

8              THE COURT:  But I'm entitled -- I'm

9    entitled to --

10             MS. LUKASIEWICZ:  Correct.

11             THE COURT:  -- to know from you, when you

12   come in and say I want a hearing, what do you mean,

13   a hearing on what issues?  Who are going to be the

14   witnesses?  How is it going to proceed?  Not,

15   Judge, I think it's just better to have a hearing,

16   and we're, you know -- it's going to be less risky

17   for us that it ultimately comes back.

18             MS. LUKASIEWICZ:  We would ask to submit

19   submissions specifically on an evidentiary hearing

20   and what would be addressed and have obviously

21   defense counsel the opportunity to respond.  We

22   would think that would specifically address --

23             THE COURT:  Okay.  I'll reserve on that

24   request.  I'm not granting --

25             MS. LUKASIEWICZ:  Yes, your Honor.

1              THE COURT:  -- the right for any further

2      submissions at this time.  But I will reserve on

3      that application.  Let me ask you some other

4      questions other than hearing related questions.

5         Are you seeking sanctions against the firm

6      Ogletree Deakins?

7              MS. LUKASIEWICZ:  We are -- we're seeking

8      from either Ogletree Deakins, Fisher Phillips

9      wherever they have or are now, yes.

10             THE COURT:  Has Ogletree Deakins ever been

11     served with this motion?  I haven't heard from the

12     firm.  And Miss Osipoff and Mr. Gershengorn, as far

13     as I know, are still not -- no longer affiliated

14     with Ogletree Deakins.

15             MS. LUKASIEWICZ:  I just want to look at

16     my papers for one second, if I can.

17         I guess my answer would be that it would be

18     against Mr. Gershengorn and Miss Osipoff in their

19     capacity, so they have been notified about it, but

20     not against the firm individually.

21             THE COURT:  Okay.  So not against the firm

22     but against Miss Osipoff --

23             MS. LUKASIEWICZ:  Except to the --

24     correct.

25             THE COURT:  -- and Mr. Gershengorn.

1          MS. LUKASIEWICZ:  Having been working on.

2          THE COURT:  With respect to the Epstein

3     firm, does your motion seek sanctions against

4     individual attorneys at Epstein or the firm or

5     both?

6          MS. LUKASIEWICZ:  I believe it's only

7     against the firm.  I don't think we've identified

8     any specific attorneys.

9          THE COURT:  Okay.  All right.  With

10    respect to the various sanctions that you -- that

11    you seek, the original sanctions motion was filed

12    before the bankruptcy.  It was then renewed

13    pursuant to a court stipulated order.  I want to

14    just confirm --

15         MS. LUKASIEWICZ:  Sure.

16         THE COURT:  -- that my understanding is

17    consonant with your understanding that you are not

18    seeking any more -- any merits-based sanctions,

19    because the case as far as the company, it is over,

20    and you've withdrawn your motion for sanctions

21    against the individual defendants.

22         MS. LUKASIEWICZ:  So what we are seeking

23    is that if this had not happened and a significant

24    delay that was caused by the sanctions issues, the

25    sanctionable conduct, that it could have settled or

1    some other procedural posture could have happened

2    during that time.  So, yes, we think that those

3    allegations continue to exist, and there could have

4    been a different recovery for those individuals.

5              THE COURT:  No, no, no.  But merits-based

6    meaning that the answer is stricken, that judgment

7    is awarded in favor of the plaintiffs, all of those

8    types of sanctions are off the table because

9    there's no procedural vehicle in which they -- they

10   don't make sense anymore, right?

11             MS. LUKASIEWICZ:  Right.  Yes, I

12   understand that there's no --

13             THE COURT:  So as far as I can tell from

14   the papers, the sanctions that you are currently

15   seeking are -- and I'm taking this from your

16   papers -- written or verbal reprimands of counsel.

17             MS. LUKASIEWICZ:  Correct, your Honor.

18             THE COURT:  Reimbursement of costs and

19   fees.

20             MS. LUKASIEWICZ:  Correct, your Honor.

21             THE COURT:  Monetary sanctions against

22   counsel.

23             MS. LUKASIEWICZ:  Correct, your Honor.

24             THE COURT:  A requirement that future

25   courts be notified of attorney misconduct.

1          MS. LUKASIEWICZ:  Correct, your Honor.

2          THE COURT:  And referral of alleged

3   misconduct to disciplinary authorities, that is,

4   referral of the two identified lawyers.

5          MS. LUKASIEWICZ:  Yes, your Honor.  And I

6   did want to also identify -- it's on page 16 of our

7   brief -- but about Macaroni Grill employees, that

8   one would also be removed because that case has had

9   bankruptcy as well.

10          THE COURT:  Okay.  But I've identified

11   five different types of sanctions.  As far as I can

12   tell, those are the only potential sanctions that

13   are still at issue.

14          MS. LUKASIEWICZ:  I just want to make sure

15   you did identify, obviously, attorneys' fees.  I

16   know you said costs and expenses.

17          THE COURT:  Attorneys' fees.

18          MS. LUKASIEWICZ:  -- as resulting from

19   that conduct, okay.

20          THE COURT:  I have a feeling they may be

21   the most important thing --

22          MS. LUKASIEWICZ:  Right.

23          THE COURT:  -- that you're seeking.  No, I

24   had not overlooked that.

25          MS. LUKASIEWICZ:  Right.

1          THE COURT:  Okay.  So we are in agreement

2     on that?

3          MS. LUKASIEWICZ:  Yes, your Honor.  From

4     those lists I'm not aware of anything else outside

5     of that that we're continuing to --

6          THE COURT:  Okay.  I'm going to consider

7     that you've had the full opportunity to tell me if

8     there were anything else and that your agreement

9     with me as to this five means those are the five

10    that you're seeking.

11         MS. LUKASIEWICZ:  At this time, yes.  I

12    don't see any others.

13         THE COURT:  All right.  Can you confirm

14    for me that with respect to the first list, that

15    is, the March 2015 class list, there is no factual

16    or legal basis to award sanctions against

17    Miss Osipoff, Mr. Gershengorn or the firms that

18    they were affiliated with.

19         MS. LUKASIEWICZ:  So the only thing that I

20    would say in terms of that would be the failure to

21    correct it quicker, so that, for example, you know,

22    issuing -- I'm sorry, sending out that notice to

23    the hundred plus thousand people and then failing

24    to correct that resulted in a significant amount of

25    legal work.

1          THE COURT:  I'm talking about in

2    March 2015 --

3          MS. LUKASIEWICZ:  Correct.

4          THE WITNESS:  -- the first list was turned

5    over.

6          MS. LUKASIEWICZ:  Correct.

7          THE COURT:  That list had inaccuracies on

8    it.  But in terms of the preparation of that list

9    and the turning over of that list --

10          MS. LUKASIEWICZ:  Correct.

11          THE COURT:  -- in March, the preparation

12    of the first list that was inaccurate, you're not

13    seeking to impose sanctions against them for the

14    original preparation and turning over of that

15    inaccurate class list.

16          MS. LUKASIEWICZ:  Correct.  Only the

17    failure to correct it quicker.

18          THE COURT:  Okay.  All right.  What is

19    the -- what is or are the legal bases on which you

20    seek sanctions against Epstein?

21          MS. LUKASIEWICZ:  I know it was raised in

22    response to the motion that we somehow entered a

23    settlement that they would not be eligible to any

24    recovery through the Ignite action.  I think that

25    was raised in response to one of the briefs.  And

1    we don't think that is the case.  There certainly

2    hasn't been any exception.  That was counsel at the

3    time, the attorneys that were currently

4    representing Ignite that were excluded.  It wasn't

5    any former people who were representing them,

6    and -- you know, in any time, so that was specific

7    for current counsel.  So, we think certainly all

8    the bases that we set forth, whether it's Court's

9    inherent power, certainly we think that, you know,

10   FRCP 37(b), 16(f) and, you know, Section 1927, we

11   do think those are all appropriate.  And certainly,

12   you know, for example, Section 1927, we think that

13   it caused significant multiplication of proceedings

14   even before new counsel came on.  There was a lot

15   of letters and communications with the Court that

16   needed to be made that certainly would not have

17   been necessary and resulted in a significant amount

18   of motion practice, obviously, coming off that

19   first motion.

20           THE COURT:  All right.  Let's stick with

21   Epstein.  Epstein was out of the case at the end of

22   March.

23           MS. LUKASIEWICZ:  Correct.  But their

24   conduct caused a significant amount of issues that

25   followed through, as we know, for 18 months or at

1   least -- and followed through for quite a while

2   since the last class list that we were provided

3   still said that there was, you know, 5,500 people

4   that in various ways were either included or still

5   should not have been included.  And sending out

6   notice to a hundred plus thousand people --

7                THE COURT:  So where do you draw the line

8   between when new counsel and their client bear full

9   responsibility for the failure to correct the

10  errors in the class list and the conduct going

11  forward?  I mean, either procedurally or

12  chronologically.  There must be some point in time

13  where you would say, okay, you know, we're not

14  seeking the whole Epstein responsible any longer

15  ten years down the road, because new counsel, you

16  know, didn't do what they were supposed to do for

17  ten years.

18               MS. LUKASIEWICZ:  I mean, certainly I

19  think the easiest is when counsel first was -- this

20  new counsel, Ogletree Deakins was in communication

21  with us.  I think that's one of the issues that

22  could potentially be addressed at the evidentiary

23  hearing.

24               THE COURT:  Well, I mean, when was that?

25  I mean, that was --

1          MS. LUKASIEWICZ:  I believe it was

2    approximately June 2016.

3          THE COURT:  All right.

4          MS. LUKASIEWICZ:  Or, I'm sorry, 2015 I

5    believe.

6          THE COURT:  You would agree with me, would

7    you not, that under the statute 1927 and under the

8    Court's inherent power that those sanctions -- that

9    those sanctions do require a showing of bad faith?

10         MS. LUKASIEWICZ:  I think there's

11   authority for certainly 19 -- Section 1927 that it

12   does not have to be the bad faith.

13         THE COURT:  And that's the -- that's the

14   Seltzer case --

15         MS. LUKASIEWICZ:  Correct.

16         THE COURT:  -- the Second Circuit case.

17   That's a somewhat narrow holding, isn't it?  That

18   would be you don't have to have bad faith if the

19   conduct -- challenged conduct was not undertaken

20   for the client's benefit.  But if it is, the

21   conduct that's challenged was undertaken for a

22   client's benefit, I think that case stands for the

23   proposition that a showing of bad faith would be

24   required before sanctions are imposed under 1927.

25         MS. LUKASIEWICZ:  I think we certainly

1    read it that, you know, a negligent or reckless

2    failure to perform their responsibilities would be

3    included.  But I understand your position.  But I

4    think we would think that their behavior does fall

5    upon this, that --

6          THE COURT:  I think it's pretty -- I think

7    that was pretty black letter in Seltzer, wasn't it,

8    a requirement of bad faith under those

9    circumstances?  Okay.  Let's put that --

10          MS. LUKASIEWICZ:  Okay.

11          THE COURT:  -- possible quarrel aside.

12   What I want to know is what can you point to in the

13   record that even suggests that the Epstein

14   attorneys were acting in bad faith?

15          MS. LUKASIEWICZ:  I think their repeated

16   representations that it was an accurate class list.

17          THE COURT:  Well, they believed it was an

18   accurate class list.  I mean, how does one infer

19   bad faith from turning over a class list in March,

20   and then they're out of the case at the end of

21   March, and, you know, we subsequently learned

22   something about how those errors occurred.  But how

23   can one reasonably infer from the fact that there

24   was a class list that was inaccurate and, you know,

25   within a matter of less than four weeks they're out

1    of the case that they acted with bad faith.  It's

2    not a question of negligence or --

3            MS. LUKASIEWICZ:  Sure.  I think when

4    counsel at the time from our office called and

5    inquired into that this did not seem like the

6    accurate class list, that we had, I believe,

7    initially 200,000 people were named on it.  And, in

8    fact, counsel had represented at various points it

9    was closer to 30,000.  So I think at that point

10   certainly, and when they're following back up and

11   saying, no, no, this is the correct list, and that

12   starts a large cycle of work, as we know, that

13   continues.  So I think certainly at that point that

14   those requests are being triggered, they have an

15   obligation to certainly look into it.  And it

16   certainly appears that they did not, since they

17   continued to make representations that it was an

18   accurate class list.

19           THE COURT:  Okay.  But the fact that it

20   starts, as you said, this large cycle, I'm not sure

21   that that has any relevance to whether they acted

22   in -- in bad faith.

23           MS. LUKASIEWICZ:  Well, I think --

24           THE COURT:  I think what you're saying is

25   the fact that there was such a significant

1    discrepancy between the number of people that they

2    had -- as I understand it, that they had discussed

3    with you, they reasonably expected to be on the

4    class list, and the number that was, in fact, on

5    the class list --

6              MS. LUKASIEWICZ:  And there were

7    subsequent inquiries into it.  It didn't stop there

8    that we took that class list and mailed it out.

9    There was subsequent inquiries as to how could this

10   list be so different from what was initially told

11   us?  And there was assurances that no, this is the

12   correct list.  So I think maybe if all of those

13   factors did not join together, you know, that may

14   be a different circumstance.  But this is not in

15   isolation that they handed us a list, and we sent

16   it out where you may read some cases out there that

17   I do think exist.  This is different.  This is

18   where there's assurances it's correct.  We're

19   following up and saying hey, this seems like an

20   excessive amount, and we're -- we're assured, no,

21   this is correct.

22             THE COURT:  What -- have you been able to

23   find any cases that illuminate the question of the

24   extent to which an attorney may properly rely on

25   his or her or their clients, at least in the first

1    instance, in preparing a class list in a case like

2    this, a case like this where the class lists

3    consists of people who were employed by the

4    defendant company?

5             MS. LUKASIEWICZ:  Not that I'm aware of

6    right now.  And certainly we can address that

7    later, at a later date if you prefer.

8             THE COURT:  Well, my question is, is it

9    your contention that the Epstein attorneys failed

10   in their duty in the preparation of the list or

11   that they failed in a duty that they had once

12   potential errors were brought to their attention?

13            MS. LUKASIEWICZ:  I think both.  We would

14   say that it's both, the initial preparation and the

15   failure to correct those once-raised issues upon,

16   and certainly being aware that it was incorrect.

17            THE COURT:  Okay.  But you haven't been

18   able to find any cases -- or you haven't found any

19   cases that deal specifically with the question of

20   what an attorney's obligation is with respect to

21   complying with a court's order that class lists be

22   turned over?

23            MS. LUKASIEWICZ:  I mean, other than what

24   I can say is I certainly they have an obligation as

25   officers of the court to represent things

1    accurately and do their -- do their job.  But I

2    have not looked into that specifically, but I

3    certainly can if the Court wants any research on

4    that.

5         THE COURT:  With respect to the question

6    of fees and costs, what are the total amount of

7    fees and costs that are at issue in this motion?

8    Do you have that information?

9         MS. LUKASIEWICZ:  I don't have that in

10   front of me.  Obviously we prepared that for

11   mediation purposes or anything like that, but it is

12   not submitted in our brief.

13        THE COURT:  Okay.  If I, at the end of the

14   day on this motion, were to agree with you that

15   counsel is responsible for some dereliction of duty

16   that gives rise to costs and fees, but that that

17   dereliction of duty occurred during a narrow period

18   of time than you say for the year and a half that I

19   think you're -- close to year and a half, year and

20   three months that you're seeking sanctions -- how

21   do I decide what fees and costs should be assessed

22   relative to something less than the whole kit and

23   caboodle that you're arguing for?

24        MS. LUKASIEWICZ:  I mean, certainly for

25   our purposes, our fees are obviously broken down

1    and categorized.  You know, I have personally done

2    that, so various issues.  So I think it certainly

3    depends on what the Court believes.  I mean, we

4    believe that the last 18 months out of the normal

5    litigation, you know, any of that behavior is

6    sanctionable.  But it could easily be specified for

7    certain conduct.  We just think it's difficult,

8    because things aren't often in isolation and that

9    becomes very difficult.  The amount of phone calls

10   and mail and things like that just from each

11   mailing is quite significant, and that starts, you

12   know, a lot of other issues that come off of that.

13   The motion to compel, for example, that we raised

14   when the second class list -- and I don't even know

15   what version it was, but the version that Fisher

16   Phillips provided, you know, that was conversations

17   with counsel significantly before the motion

18   itself.  And then there was a lot of subsequent

19   conversations, and as we know, we didn't get the

20   class list till April.  We first raised the list in

21   March of that year.  So it's quite a few months,

22   and, you know, we can isolate them.  But I'm just

23   saying that often the issues fall into each other

24   and continue to start the next potential isolation.

25            THE COURT:  Okay.  But that evidence is

1   not before the Court at this time as to --

2           MS. LUKASIEWICZ:  Correct.  Because,

3   again, we think all behavior during this time is

4   sanctionable.  We did not parse it out because --

5           THE COURT:  Okay.  If -- if the company

6   were here, I have no doubt that you would be

7   arguing strenuously in support of the imposition of

8   sanctions against the company and perhaps against

9   counsel as well.  I'm not going to suggest that you

10  wouldn't be looking for an imposition of sanctions

11  against counsel.  But my question is how do I

12  approach the question of apportioning

13  responsibility?

14          MS. LUKASIEWICZ:  So, you know, I think

15  from our perspective, I mean, if we look at the,

16  you know, candor to the Court and various

17  representations both made to the Court and

18  plaintiffs' counsel as to the accuracy of the class

19  list or in regards to the June 6th hearing, we

20  believe that those are -- you know, can be very

21  clearly tied to defense counsel.  They were the

22  ones making the representations.  They were the

23  ones indicating that there was only a few people

24  who were errors on the class list.  So, I believe

25  that, you know, it's easy to tie it to counsel.

1    But, again, if we think that an evidentiary hearing

2    certainly could be appropriate if there's any

3    issues that need to be more fully developed on the

4    record, we certainly can do so.  But we think it is

5    clear based on the current record that --

6            THE COURT:  So you think that the record

7    here justifies an award of a hundred percent fees

8    and costs against counsel?

9            MS. LUKASIEWICZ:  Yes, your Honor.

10           THE COURT:  Okay.  I have gone through the

11   questions that I had for you.  Do you have anything

12   else that you want to add at this time?

13           MS. LUKASIEWICZ:  No.  Again, we would

14   just say that, you know, we think with the Second

15   Circuit's history, as I said before, that an

16   evidentiary hearing is appropriate, but I've raised

17   that already.

18           THE COURT:  All right.  Thank you.

19       All right.  Which of you would like to start?

20   Okay, Mr. Bauer, you're being pointed to.

21           (Indiscernible cross-talk.)

22           THE COURT:  Mr. Farella, why don't you

23   come up here to the podium.

24           MR. FARELLA:  Thank you, your Honor.  Your

25   Honor, thank you, again, for allowing me to appear

1    and argue this motion.

2         THE COURT:  And I should -- and I should

3    apologize, because I did not look at the docket

4    sheet to refresh my recollection as to whether you

5    represented the defendant in the action.

6         MR. FARELLA:  I did not.

7         THE COURT:  You did not.

8         MR. FARELLA:  No.

9         THE COURT:  You're just sanctions counsel?

10        MR. FARELLA:  I'm deputy general counsel

11   of Epstein Becker and Green.  So in these types of

12   motions, I do appear on behalf of the firm.

13        THE COURT:  Okay.  All right.  Thank you.

14

15        MR. FARELLA:  Thank you, your Honor.  Your

16   Honor, I think your colloquy with plaintiffs'

17   counsel sort of hinted at a number of issues that I

18   want to address very briefly.  I believe they are

19   addressed in our briefing, but the factors that are

20   underlying these requests for relief, I know they

21   toss around the idea of negligence, but there has

22   to be some type of culpable conduct, a level of

23   intent or maliciousness that is just not present in

24   the record against Epstein, Becker and Green.  As

25   described in Epstein, Becker and Green's brief as

1   well as in the submissions by Ignite's present

2   counsel, those underlying facts of what Epstein

3   Becker did in this extremely small window that they

4   were involved in this case do not demonstrate any

5   flouting of a court order, any type of

6   misrepresentations.  Misrepresentations would be

7   knowing the facts are true in one respect and

8   misrepresenting those truths to another person in

9   order to induce them to do something.  That simply

10  was not the case here.  As the Metzger affidavit

11  sets forth, Ignite's in-house counsel had prepared

12  these -- had prepared these lists and assured

13  everyone those lists were correct, and that's where

14  the basis of the representations that Epstein

15  Becker attorneys did, came from.

16      Now, in our brief it was before Mr. Metzger had

17  put the submission in, we had put a footnote saying

18  we had concerns about attorney-client privilege

19  and, you know, describing the conversations that

20  occurred, but you certainly could see the

21  implications from Mr. Metzger's affidavit where he

22  states that we believe -- we did not discover --

23  Ignite did not discover these errors until later.

24  Epstein Becker was already out of the case.  At the

25  time Epstein Becker was being told this is the

1  accurate list of all of our employees and we handed

2  it over.  When questioned, we go back, the same

3  list is recompiled in a more efficient way we

4  thought.  And as Mr. Metzger says in paragraph 6 of

5  his affidavit, the same error ended being

6  compounded because no one recognized that there was

7  this extra file.

8         THE COURT:  Okay.  Let me ask you the same

9  question that I asked Miss Lukasiewicz.  Did

10  counsel have a duty to supervise, oversee the

11  production of the class list?

12         MR. FARELLA:  Did counsel, meaning Epstein

13  Becker?

14         THE COURT:  Yes.

15         MR. FARELLA:  Okay.  Well, I believe that

16  the duty -- we fulfilled that duty, because we go

17  to the client, we say to the client we need this

18  list of employees.  This is not something that's in

19  Epstein Becker's control.  The client provides us

20  lists.  We get the lists.  Frankly, surprised by

21  the size, because, again, we're not walking away

22  from the idea that we had a thought that it was a

23  smaller list of people.  We questioned the counsel,

24  we get back from them the same list, and they say

25  this is our list.  This is accurate.  I don't know

1   how Epstein Becker can go in and say to the client,

2   I need to look at all of your underlying employment

3   data.

4          THE COURT:  No, but what counsel can do is

5   say tell me how this was put together.

6          MR. FARELLA:  Right.

7          THE COURT:  Tell me how do you reconcile

8   the fact that you believe there were going to be

9   30,000 employees that met this definition and now

10  you're giving me 200.  We need an explanation for

11  that.  So I'm not suggesting that the law imposes a

12  duty on counsel to go to a client's office and work

13  with the files and essentially compile the list

14  himself or herself.  But the question here is, you

15  know, what supervision occurred, what questions

16  were asked.  When there was a discrepancy of a

17  magnitude of a difference between 30,000 and

18  200,000 people, is it enough to just say, can you

19  tell me is it accurate?  Oh, it is?  Okay, thank

20  you.  Does that discharge counsel's -- and I don't

21  have any information about what Epstein did or

22  didn't do in the course of inquiring into that.

23          MR. FARELLA:  Correct.  You don't, your

24  Honor.  And I certainly can proffer here.  But I

25  think the Metzger affidavit actually sets forth

1    the, what can be implied, which is questions were

2    raised.  Epstein Becker was told it was the merger

3    of two different lists that came from two different

4    payroll accounts.  That accounted for the

5    ballooning of the list and the fact that it was in

6    such disarray originally.  Then when it was recast,

7    they were told that that's the sole reason for why

8    it was done.

9              THE COURT:  And when it was recast, it

10   went from what number to what number?

11             MR. FARELLA:  I don't recall the exact

12   numbers it was recast.  What we did is compiled it

13   from 250 individual spreadsheets --

14             THE COURT:  Right.

15             MR. FARELLA:  -- I believe into one spread

16   sheet.

17             THE COURT:  Right.

18             MR. FARELLA:  And I don't think the number

19   changed -- I don't want to make a representation.

20   But I don't believe the number changed between the

21   two lists that the Epstein Becker firm gave to

22   them.  But I think just the number of spreadsheets

23   changed.

24      Now, again, Epstein Becker never had the

25   ability to even go further.  From the time that the

1  list was actually compiled in the original -- in

2  the original form that it was compiled, until the

3  time that Epstein Becker was given notice that

4  there was a problem from plaintiffs' counsel and

5  started to investigate it, it was only a couple of

6  weeks.  And Epstein Becker was then out of the

7  case.  And during that time, as Mr. Metzger's

8  affidavit states, Epstein Becker was being told

9  that this list was accurate and this -- it was

10  compiled in this sort of, you know, two -- merger

11  of two lists and came together, and that's what

12  resulted in the greater number of people that were

13  part of it that originally we did not anticipate.

14     But then Epstein Becker's out.  And new counsel

15  is left with the unenviable task of having to clean

16  this up.  And as we've learned through the process,

17  and I've learned from just reading the cold record,

18  that it took months and months and months beyond

19  that to even find the error and to correct it.  And

20  even knowing that there was an error and knowing

21  that there were too many people, it was still

22  difficult to finally cull that list down.

23     So to visit upon Epstein Becker who was in the

24  case for just a couple of weeks on this issue, to

25  say then that they were somehow derelict or in a

1    way didn't discharge their duties seems to be

2    rather unfair, because Epstein Becker did not have

3    the opportunity to, one, discover the problem and

4    try to remedy it.  We were just somewhat,

5    unfortunately, only in the case for a very brief

6    time on this issue.

7              THE COURT:  With respect to the motion as

8    against Epstein, do you believe that a hearing is

9    required or justified?

10             MR. FARELLA:  I do not.  I think, in fact,

11   your Honor can use discretion as to whether the

12   Court has enough before it to make a decision

13   that's based upon the facts.  In this case --

14             THE COURT:  Do you -- have you put

15   everything before the Court that you think is

16   necessary for the Court to make that determination?

17             MR. FARELLA:  I do, your Honor.  Besides

18   the -- and relying upon also the submissions by, I

19   guess, co-counsel at this point, but previous --

20   subsequent defense counsel, since we were the

21   previous counsel, I would submit that there is

22   enough here to determine Epstein Becker's --

23   Epstein Becker's state of mind and how they

24   proceeded with the case, yes, I do.

25             THE COURT:  Let me ask you a slightly

1    different question.  If -- let's assume for the

2    moment -- and I certainly have not made this

3    finding -- but for purposes of this question just

4    assume with me that I found that there was a duty

5    that Epstein had and that Epstein did not

6    adequately discharge that -- that duty to be more

7    involved in suit creating or supervising or

8    investigating errors in the March 2015 class list.

9    And let's assume we're looking at this as a

10   question of Rule 16 sanctions.  Costs and fees are

11   generally required to be reimbursed where there has

12   been a violation, unless the conduct was

13   substantially justified or an award of costs and

14   fees would be otherwise unjust.  That's the

15   language that I'm sure you're familiar with.  Is

16   there any other evidence with respect to that

17   consideration?  I've looked at cases, and there are

18   certainly a number of cases.  I haven't done a full

19   canvassing, but a number of cases that would

20   indicate -- and this is sort of consistent with

21   what I thought they would say -- that on that

22   particular question it would be the violaters,

23   because it would depend on the court finding that

24   there's been a violation, that it's the violater's

25   burden to show that such an award would be unjust,

1    or that their conduct was substantially justified.

2              MR. FARELLA:  Correct.

3              THE COURT:  Do you -- do you feel as if

4    the record before the Court is adequate from your

5    perspective on that issue?  And if so, what would

6    you point me to to illuminate that determination?

7              MR. FARELLA:  Sure.  So I do believe that

8    it is adequate on that perspective.  I think that,

9    first, just the temporal issue of how long Epstein

10   Becker was in the case on this issue between the

11   time when the list was provided, the question that

12   got raised, and then the attempts to try and

13   resolve it, and then we were gone.  We were out of

14   the case.  So the ability to try and even remedy it

15   even further was lost to us.  And so visiting

16   sanctions upon us would, in fact, be unfair in that

17   situation.  Because again, the Metzger affidavit at

18   paragraphs 4 through 6 sets forth how it is that

19   these lists were created and the representations

20   that were being made from our client to us, meaning

21   Epstein Becker, about the lists, and it -- and, you

22   know, in response to our inquiries.  And that alone

23   demonstrates that we were not conducting ourselves

24   improperly before the Court.  We were -- we were

25   telling the Court and counsel the truth as we knew

1    it at the time.  And I think that that -- there's

2    enough evidence in the record at this point in time

3    that would allow this Court to make that

4    determination.

5                  THE COURT:  Okay.  All right.

6    Mr. Farella, anything else you do want --

7                  MR. FARELLA:  I do have one piece.  It was

8    raised about the settlement in the bankruptcy.  And

9    I call your Honor's attention to Exhibit I that was

10   filed with the Metzger affidavit.  Paragraph 8 of

11   the settlement that took place in the bankruptcy

12   court says releases.  And, you know, typically in

13   settlements we have -- as lawyers we have these

14   general releases that start from basically the day

15   the earth cooled to the effective date and

16   encompass all claims at all times, and that's the

17   type of release that we have in this case.  And it

18   says that -- in plain language that all claims are

19   resolved against all parties and their agents and

20   attorneys.  But there's a specific carve-out for

21   the Fisher Phillips people.  And I apologize to

22   them for that.  But there is a specific carve-out

23   for them.  And so it was contemplated by

24   plaintiffs' counsel that they needed to make that

25   specific carve-out.  And here --

1              THE COURT:  Can you read me the carve-out?

2              MR. FARELLA:  Absolutely.  It says,

3      attorneys, parentheses, excluding Brian

4      Gershengorn, Melissa Osipoff, and Seth Kaufman of

5      Fisher Phillips, LLP, and previously associated

6      with Ogletree, Deakins, Nash, Smoak and Stewart,

7      Fisher and Phillips LLP, and Ogletree, Deakins,

8      Nash, Smoak, and Stewart, PC, end parentheses.

9      There's nothing in their that excepts out Epstein

10     Becker and Green, Kenneth Kelly, Jeff Ruzal or any

11     other Epstein Becker attorney.  This -- it also

12     has -- this settlement agreement has the typical

13     entire agreement merger clause at the end that says

14     this encompasses our entire agreement.  All parties

15     were involved.  All parties had counsel.  All

16     parties signed off.  I believe that that has

17     preclusive effect on the plaintiffs from seeking

18     costs and claims against Epstein Becker.  But with

19     that, I have no further --

20             THE COURT:  Okay.

21             MR. FARELLA:  Thank you, your Honor.

22             THE COURT:  Okay.  Thank you.  I'm going

23     to take a five-minute recess before I come back to

24     you, Mr. Kelly [sic].

25             (Short recess was taken.)

1          THE COURT:  Please be seated.  Okay.

2     Mr. Bauer.

3          MR. BAUER:  Good afternoon, your Honor.

4          THE COURT:  How are you?

5          MR. BAUER:  Your Honor, we're here after a

6     series of procedural steps that the Court has

7     implemented to address this final issue in a case

8     that's taken on, respectfully, kind of a life of

9     its own, which is something that the circuit is

10    very cautious about.  But the Court addressed this

11    issue back in September of 2016 and gave

12    plaintiffs' counsel the option of how they wished

13    to proceed in presenting this sanction issue.  And

14    it was the choice at that point was do you want

15    oral testimony -- and this was at the conclusion of

16    the 30(b)(6) examination of Miss Moore.  Do you

17    want to proceed by way of written -- oral

18    testimony, live testimony, or do you want to

19    proceed by way of writing?  And the plaintiffs'

20    counsel at that point opted when -- after various

21    descriptions of the parade of horribles that they

22    had said existed here, that they would lay them

23    bare in their -- in their motion and pursue this in

24    a written form.

25         That motion followed in March of 2017.  And

 1    following the bankruptcy proceedings, this -- the

 2    Court asked that we address that early in this

 3    year, 2018.  And defendants responded to that

 4    motion, although the motion was then a year old,

 5    and obviously significant events had occurred in

 6    the interim with the Ignite filing for bankruptcy

 7    protection and the ultimate settlement of the

 8    underlying merits of the litigation.

 9        In February of this year, the plaintiffs -- or

10    defendants submitted a detailed briefing and

11    factual support in opposition to each of the

12    allegations that had been raised that support the

13    argument of sanctions, and argued I think very

14    strenuously that plaintiffs had not met their

15    burden of showing that the behavior which they were

16    complaining of, counsel's behavior, because that,

17    that's all that's left is the Fisher Interested

18    Parties, rose to the level of a violation that

19    warranted sanctions, which is -- is a significant

20    and important component when another member of the

21    bar accuses a member of the bar of behaving in such

22    a way that it is for the purpose of harassment or

23    for delay, or that someone intentionally

24    misrepresents or intentionally behaves in such a

25    way that violates their -- their oath and their

1    duty to the Court, that these -- these sanctions be

2    imposed.  And in response to that submission by the

3    defendants, there was some detailed conversations

4    with the Court, and the plaintiffs withdrew their

5    motion.

6        Presumably when they refiled that motion it

7    would have been seasonably updated to reflect what

8    had happened and would have also addressed the

9    various concerns and issues that the defendants had

10   laid bare in their February submission.  But none

11   of that happened.  The motion in its form from

12   March of 2017 was merely resubmitted.

13       Defendants again replied making their arguments

14   and indicating to the Court I think most

15   strenuously that the plaintiffs had not met their

16   burden to even shift the duty over to the -- to the

17   defendants to establish that there were -- there

18   was conduct here that would warrant sanctions.

19       And I point to the Court's discussion about bad

20   faith.  I think the Seltzer decision which was

21   cited in the two-page reply that we got in response

22   to -- I think that was about the fifth time that

23   the plaintiffs could have addressed the various

24   factual issues that had been raised.  The two-page

25   reply affidavit -- brief that we got said well,

1    Seltzer requires a hearing.  But Seltzer's got some

2    real important language that I think hones in on

3    why this is such an important and significant

4    matter.  Seltzer says that while the Second Circuit

5    reviews the court's decision as an abuse of

6    discretion, it urges the district court or the

7    lower courts to exercise restraint and care with

8    their discretion when it comes to the issue of

9    sanctions.

10        It also points to the fact that when an

11   attorney as an advocate is acting on behalf of

12   their client, under 1927 there has to be a finding

13   of bad faith.  And under the inherent powers of the

14   court, Seltzer says there should be conduct akin to

15   bad faith when the attorney is acting as an

16   advocate.  And there's not a single notion in any

17   of the papers that -- that the plaintiffs have had

18   ample opportunity to provide that suggests that any

19   of the Fisher Interested Parties ever acted in bad

20   faith or intended to harass or intended to delay or

21   act in a vexatious manner that would warrant the

22   very, very serious sanctions that are being sought

23   here.

24        And, frankly, from my standpoint, even today

25   when the Court poses the issue of what would we

1    have a hearing on, no grounds or facts can be

2    established or even articulated on the record that

3    supports that.  And, in fact, the one example that

4    plaintiffs' counsel used was a statement made by

5    Mr. Gershenheim [sic] at a conference with the

6    Court that he misrepresented some fact about the

7    list.  And -- and that transcript, your Honor,

8    which is part of our exhibits, and it's -- it's the

9    first thing that Mr. Gershengorn says is I think

10   it's the latter, your Honor.  I honestly don't know

11   the scope of that yet.  I mean, how that language

12   could be interpreted as a misrepresentation to the

13   Court is he lays out the fact that he doesn't

14   honestly know at that point and is hesitant to make

15   any statements on the record that might be

16   considered to be misleading.

17       I think the submissions that we've made,

18   Mr. Metzger's declaration, the transcripts that

19   have been placed into the record, none of that,

20   none of that is remotely addressed or controverted

21   by the plaintiff, despite the fact that they've had

22   multiple opportunities to address those.  And to

23   say that now we can brief it later, we can have a

24   hearing, it's -- it's too late in the game.  The

25   Court set the path on this application, gave the

1   plaintiffs every full and fair opportunity to

2   present their evidence, and quite frankly, they

3   failed to meet their burden.  It shifts over the

4   burden of persuasion to the defendants.

5           THE COURT:  All right.  So, just to be

6   crystal clear on that, the defendants' position is

7   that no hearing is either required or justified?

8           MR. BAUER:  Yes, your Honor.  And the only

9   evidence that the -- that the defendants have been

10  constrained and been unable to present at this

11  point would be attorney-client communications that

12  would be -- that may be probative to some of these

13  issues.  But, quite frankly, we didn't address that

14  issue from the simple fact that we don't believe

15  that the defendant -- excuse me, the plaintiff

16  has -- has even met the burden on a threshold issue

17  of any conduct or behavior that falls under either

18  Rule 16, Rule 37.

19          THE COURT:  All right.  Well, under

20  Rule 16 there's no showing of bad faith required.

21          MR. BAUER:  There is not, your Honor,

22  you're correct.

23          THE COURT:  You agree with that?

24          MR. BAUER:  That's correct.

25          THE COURT:  And I think it's -- well, let

1    me ask you these questions in the order in which I

2    have them.

3              MR. BAUER:  Okay.

4              THE COURT:  And, you know, if you have

5    other argument, I'm certainly happy to hear it.

6              MR. BAUER:  That's fine, your Honor.

7              THE COURT:  I think this, you know, this

8    case raises a question that I have not found any

9    cases that have dealt with it at least head on.

10   You know, what is an attorney's duty and

11   responsibility with respect to compliance with a

12   court order requiring that attorney's client to

13   provide a class list so that notice -- very

14   important notice is sent to those persons, and they

15   can make a decision about whether to opt in to that

16   litigation or not.  And I think that there -- and

17   I'm interested in your answer.

18       Let me just say that in terms of my thinking

19   about it, I break it down into three different

20   parts.  One is, you know, did the duty -- did the

21   attorneys have the duty to inquire as to the

22   accuracy of the class list after plaintiffs raised

23   concerns regarding its size?  That's an issue that

24   I think is more directly raised with the Epstein

25   attorneys, and we talked a bit about that.  Second

1    question is did the attorneys have a duty to

2    oversee or supervise the production of the second

3    class list, that would be the July 2015 class list,

4    that purported to correct the error in the first

5    list?  And then third, did the duty -- attorneys

6    have a duty to inquire and investigate into the

7    accuracy of the July 2015 class list after

8    plaintiffs raised concerns regarding its accuracy

9    in March 16th?  And did they have a duty then to

10   become involved in supervising or more the

11   investigation into those alleged inaccuracies?  And

12   when I think about it -- and again, I haven't found

13   any case law that -- that addresses this directly.

14   It seems to me to make some logical sense to begin

15   with the proposition that giving substantial

16   latitude to one's client, substantial deference to

17   one's client initially to say here is the

18   definition of the class list, it's people who

19   worked at your company or your restaurant from this

20   period to this period or in these stores.  You go

21   to your people at the company and come back to me

22   and give me a class list.  I may be wrong about

23   this, but, you know, my thinking is logically it

24   makes sense that at the beginning of that process

25   it wouldn't be unreasonable to give considerable

1    deference to the client to prepare that list and to

2    say that these are our employees who meet the

3    definition.

4        But at some point when it is clear that they

5    haven't done that and they have failed

6    significantly, at least in terms of numbers, it

7    seems to me further logical to assume that an

8    attorney's duties and responsibilities then are

9    heightened and sharpened, and they then do have an

10   ongoing responsibility of management and

11   supervision to ensure that the Court's order is

12   being complied with.

13       You see a sort of similar analysis in the

14   litigation hold scenario, where, you know, you

15   issue a litigation hold notice, but that's not

16   enough to discharge counsel's responsibility.  They

17   have to make sure that it's being executed

18   properly.  If there are problems that are raised,

19   they have to get involved.  That seems to me, you

20   know, in a big picture, what -- what has happened

21   here.  And as you know, because you're very

22   familiar with the record, on a number of occasions

23   and with, you know, I would say, you know,

24   increasing intensity as the case moved on, I

25   expressed greater and greater frustration that we

1    could not get an accurate class list.

2       And so you put a lot of reliance on the Metzger

3    affidavit, which strikes me as a little bit of a

4    double-edged sword.  I mean, on the one hand when

5    attorneys are being accused of bad faith -- and I

6    agree with you that that's a very serious charge to

7    be leveled at an officer of the court -- to be able

8    to say, you know, it wasn't involved in that, makes

9    sense that that would be a response to bad faith.

10   No, I wasn't misrepresenting.  I didn't know the

11   facts.  You know, and I don't want to completely

12   discount that as a concern of the Court.  But I

13   will say, at least as I sit here today, I have a

14   greater concern about whether the record gives rise

15   to a reasonable inference that counsel did not

16   adequately discharge its duty of supervision and

17   management of compliance with the court order.  And

18   to say we can't have anything to do with it to some

19   degree kind of proves that more than it -- it may

20   refute bad faith, but it -- so -- put a lot of

21   questions in there, but I'm curious as to -- as to

22   how you see those principles applying to the

23   preparation of a class list in compliance with an

24   order of the court.

25          MR. BAUER:  I think your -- your

1      discussion with Epstein's counsel and kind of

2      segregating that first piece of the original list,

3      I don't think that -- that that duty -- I think

4      it's say fair, as you've said, to rely on the

5      client who's most familiar with the systems and the

6      way the payroll records were maintained and who --

7      who -- who was responsible for those.  It's fair to

8      put that initial burden on the -- on the client.

9      And we know from Metzger and we know from

10     Miss Moore's that this was not a press of a couple

11     of buttons and out spit the list of these various

12     seasonal and temporary and short-term workers that

13     may have worked in these restaurants.

14         I think getting to the second point that once

15     the first list came out and folks looked back and

16     said, gee, now it's 2,000 people, how did we get

17     from everybody thinking that it was 30,000 to

18     200,000 --

19                 THE COURT:  Right.

20                 MR. BAUER:  -- is, to some degree, a

21     little bit of a temporal issue for the Fisher

22     Phillips Interested Parties as well.  Because they

23     actually first -- I think a notice of appearance

24     was filed in April of that year.  And -- and the

25     process had begun to say what went wrong, and the

1   counsel, at least from Mr. Metzger's description

2   said we've got this.  We'll go back and go through

3   what we did, and that will be a way to reconcile

4   what we did wrong.  And I think that that resulted

5   in the list that was tendered in I believe July.

6   And it took everyone a significant period of time

7   following that, comparing those lists and

8   determining ultimately what errors may have existed

9   in -- in that list.

10      Again, being constrained to some degree by

11  attorney-client privilege, I'm -- the Fisher

12  Phillips' parties and lawyers did not sit on their

13  hands and say there's nothing we can do to get this

14  list accurate.  I think they --

15          THE COURT:  Okay.  But I don't have

16  anything in the record about -- about what they

17  did.  I will say that with respect to the July 2015

18  class list, my recollection of that -- and I didn't

19  go back and look at all the docket entries on

20  that -- was that I had a number of telephone

21  conferences I think in the summer of 2015 with

22  counsel about getting that class list accurate.

23  And there were -- you know, there were a number of

24  letters that were sent to the best of my -- to the

25  best of my recollection, and I certainly, you know,

1    had conversations with counsel about the need to

2    get that class list, you know, prepared and to get

3    the errors corrected.

4        I don't -- and, you know, I don't think it will

5    come as a surprise to you, because it's pretty

6    evident from the face of the transcript of the

7    May I think 16th or 17th, 2016, hearing, you know,

8    I still look at that transcript, and what I take

9    away from the transcript, more than the question of

10   how many people were affected, you know, which

11   we've talked about in the past, is what seems to me

12   to be a pretty stunning lack of information about

13   what is going on with the list.  I mean, that's --

14   and, you know, in part, I'm putting you on notice

15   that I think that that transcript gives rise to a

16   reasonable inference that counsel has not met its

17   obligations to be involved in the -- to be properly

18   involved in the correction of the errors and the --

19   and the preparation of an accurate class list.

20       Now, certainly those reasonable inferences

21   could be wrong.  But what I'm saying is I don't

22   have any information.  I don't have -- you know, I

23   have a Metzger affidavit that basically says, you

24   know, in-house counsel prepared that July 2017 list

25   with no one else's help.  And then I have a hearing

1    in May of 2016 in which counsel says I don't really

2    know -- I don't know the scope of the -- of the

3    errors, and I don't know the cause of the errors,

4    and I would say, you know, did not -- at least

5    didn't tell the Court when I said we're going to

6    have a hearing and have somebody from the company

7    testify, we don't have anybody who can tell you

8    about that.  That, to me, is some admission that

9    they didn't know facts that I would expect counsel

10   to know, given the fact that we were a year and a

11   half past Judge Siragusa's order and this was, you

12   know, the third time around.

13       So I want to make sure, you know, if -- if --

14   if there is evidence that you think that -- that I

15   should hear with respect to, you know, counsel's

16   involvement in that process, that you've put it

17   before the Court, because those are the inferences

18   that seem reasonable to me.  And I don't have

19   evidence -- I don't think I have evidence that --

20   that refutes those inferences.

21           MR. BAUER:  Well, I think, your Honor,

22   that -- and I'm -- I'm -- I just want to pause for

23   a moment, because there was a statement in -- in

24   plaintiffs' motion that attributed that during the

25   period, or several months in -- in 2000 -- between

1    2015 and in 2016 when you had that -- that hearing,

2    that both sides were working what I would describe

3    as behind the scenes trying to determine the

4    accuracy of that -- of that second list.  And the

5    discussions about the -- who then plaintiffs'

6    counsel could be communicating with, and whether

7    notices had to be returned and lists had to be

8    returned.  And you do have Miss Osipoff's

9    declaration that was submitted in advance of the --

10   the hearing on the 6th or the meeting with the

11   Court on the 6th that detailed at least efforts and

12   responses to what she knew at that time.

13        THE COURT:  I think -- I don't have

14   Miss Osipoff's affirmation in front of me.  I'm

15   sure I've got it in the stack here somewhere.  My

16   recollection is that that affidavit dealt with what

17   she was doing to prepare a third list.  Am I right

18   about that?

19        MR. BAUER:  Yes, your Honor.

20        THE COURT:  Okay.  I don't think the third

21   list is -- is at issue.  From my perspective right

22   now, you know, any issues relating to the third

23   list have been put to bed.  We had a hearing on

24   that.  I issued a decision on that.  I don't think

25   the record before me has raised any issues that

1    would merit my quarreling with anything Miss

2    Osipoff did.  If Miss Osipoff had prepared the

3    first list, I think we wouldn't be here.  And

4    that's kind of my point.  You know, she got

5    involved.  I ultimately questioned whether, you

6    know, she should have worked with somebody from the

7    company so we didn't get into that other issue

8    about not having somebody for the hearing.  But

9    ultimately she got very involved, and there's

10   nothing in the record that suggests to me that she

11   didn't do what she was supposed to do, and that the

12   third class list that was prepared was -- was

13   either fully accurate or so substantially accurate

14   that there are no issues.

15       So, I think, you know, her affidavit doesn't

16   shed any light on what happened up to the point

17   that she -- and I think the record before me now

18   says the hearing that occurred in May occurred

19   either the 17th or 18th of May here.

20           MR. BAUER:  Yes.

21           THE COURT:  That Miss Osipoff essentially

22   took over the -- and started the preparation of an

23   entirely new list, the third list, either that very

24   day or the next day.  And I don't think the record

25   before me raises any questions with respect to the

1    preparation of that third list.  But I think the

2    record has precious little in it with respect to

3    what, if anything, counsel was doing from, lets

4    say, March of 2016 when plaintiffs filed a motion

5    that said hey, there's some inaccuracies.  And my

6    best recollection is the defendant said well,

7    they're really limited.  There's no big deal and

8    there's always a few -- you know, a handful of

9    errors.  And lo and behold there were some pretty

10   substantial inaccuracies in it.

11       But there's nothing in the record that gives me

12   any indication that counsel was working with --

13   with their client to address those inaccuracies, to

14   correct those inaccuracies, in a meaningful way, in

15   a way I think that would discharge their duty.

16              MR. BAUER:  Again, your Honor --

17              THE COURT:  Now, do you have a -- do you

18   ever a -- is the privilege applicable?  The case is

19   over as to the company.

20              MR. BAUER:  But the --

21              THE COURT:  Sanctions are not sought

22   against the individual defendants.  Is there any

23   question as to whether your clients are bound by

24   privilege from saying, you know, this is -- number

25   one, this is what I did, and number two, this is

1   what I told my clients to do with respect to the

2   preparation of the list?

3           MR. BAUER:  Well, I think, your Honor, I

4   do think that -- that the client is the only one

5   who can waive that privilege.  And the client is

6   not party to this proceeding or even bringing the

7   claim, but rather an adverse party that's seeking

8   to recover those.  And those communications with

9   the client involving what -- what we did and what

10  we were telling the client and what the client was

11  telling us during that period of time would be

12  privileged.

13      And -- and I think that's one of the

14  constraints, and this -- this was addressed in --

15  in a couple of the proceedings before your Honor,

16  including the hearing that was targeted for the --

17  the June 6th time frame was that what could be said

18  about the -- because at that point Ignite had not

19  filed for bankruptcy protection.  They were still

20  an active patient in the proceeding.  And the

21  ongoing communications were subject to motions

22  and -- and applications for sanctions and costs at

23  that point.

24      So I think it -- it does put the attorneys at

25  that time, and now, in a position where to disclose

1    client communications I think is -- is a -- there

2    could be, I guess, in camera presentation to the

3    Court as to what was happening at that point, but

4    the privilege is of the client's to waive.  And I'm

5    not aware of that -- that that's happened.  In

6    fact, there's an application -- now that the

7    bankruptcy is completed, but two of the

8    individual -- there's application pending before

9    the Court to withdraw as their counsel.  So, I --

10   and I --

11            THE COURT:  Well, if I can return to the

12   point I was making, and again, it is because I

13   think we would all agree that the Second Circuit

14   has issued, you know, a number of statements of

15   guidance and counsel which are, you know, sometimes

16   challenging to follow in the details of these

17   particular issues.  And, you know, I think

18   fundamentally one of the most important messages

19   from the Second Circuit is that when motions like

20   this are brought, it is essential to ensure that

21   those on the other side are given due process, that

22   is notice of what the alleged sanctionable conduct

23   is, and we went through that.  And ultimately I did

24   order that there be further -- that there -- that

25   the notices of sanctionable conduct be supplemented

1    and an opportunity to be heard -- which is -- which

2    is where we are today.

3              MR. BAUER:  Correct.

4              THE COURT:  I think the fact that there

5    are attorney-client privilege issues which it seems

6    to me arise in every one of these kinds of

7    sanctions hearings is not a basis to say nah, their

8    privilege is here and so therefore the opposing

9    party doesn't have the right to seek sanctions,

10   because, you know, the privilege issues are too

11   thorny and difficult to work through, and it would

12   be -- it would be unfair.  You know, I'm certainly

13   sensitive to the fact that I want to make sure that

14   your clients are heard as fully and thoroughly as

15   they are able to be heard on these issues.  And so,

16   you know, part of my purpose today is to -- is to

17   put you on notice of the fact that when I go back

18   to that May hearing, those seem to be reasonable

19   inferences to draw from statements made by

20   Mr. Gershengorn to the Court.

21       It's not that I'm looking at a record of

22   nothing and saying, gee, I think it's fair to

23   assume that counsel wasn't involved in this

24   process.  I'm saying I think it's fair to assume

25   from the facts and statements made at that hearing,

1    that counsel was not as involved in supervising the

2    preparation of an accurate class list as was

3    warranted by the facts of this case.  And, you

4    know, if there's anything more that you want me to

5    hear on that, you know, I will certainly entertain

6    an application to -- to supplement the record, and

7    I -- you know, I hear that what you're saying is

8    you think there's nothing more than that you can

9    offer because of the constraints of attorney-client

10   privilege.

11          MR. BAUER:  Well, your Honor, I'm looking

12   back at -- at the proceeding on the 17th, and I

13   guess to some degree to what the Court thought

14   Mr. Gershengorn's statements were that recognizing

15   that perhaps that they were not as involved as they

16   should have been.  If the Court is alluding to the

17   fact that he couldn't say with certainty the extent

18   of the errors on the list, I think he was being

19   very, very cautious to avoid creating some notion

20   or -- or suggesting that there were events or

21   circumstances here that didn't -- that would

22   mislead the Court or others.

23       And I -- I think, Judge, to go back to a more

24   basic proposition, you made this kind of akin to

25   the -- to litigation hold.  I -- I think that there

1    are oftentimes when counsel -- I mean, I can't

2    think of a case when counsel isn't working with

3    their clients in some form or another to comply

4    with a variety of obligations that the Federal

5    Rules provide, whether it be initial disclosures,

6    document disclosure, interrogators, or the like.

7    And then I guess you go back to the basic

8    proposition, Rule 16 says now was there a

9    disobedience of the court order?  And -- and are we

10   imposing a higher -- that if there's delay or

11   inadvertence, is that a -- a disobedience of the

12   Court order?

13        THE COURT:  And I'm not sure Rule 16

14   requires -- I mean, I thought about the way the

15   plaintiffs have framed their motion for sanctions.

16   Disobedience to me connotes willfulness.  I mean,

17   you willfully are disobedient.

18        MR. BAUER:  To me as well.

19        THE COURT:  The plaintiffs also seek

20   sanctions for -- I don't know if it's continued,

21   persistent noncompliance with court orders, and I

22   would agree with plaintiffs that Rule 16 does

23   afford the Court the discretion to impose sanctions

24   for continued noncompliance with a court order that

25   may arise from negligence.  So, I don't -- I

1    don't -- there doesn't have to be a finding of bad

2    faith under Rule 16.  To the extent that

3    plaintiffs' motion seeks sanctions based on

4    disobedience, I know they would say that they think

5    that is a reasonable inference from the record.

6    But even if I were to disagree with them on that, I

7    think noncompliance alone can be a basis for

8    Rule 16 sanctions.

9         MR. BAUER:  Again, obviously this was a

10   matter that was under the Court's supervision and

11   without lack of involvement on both counsel.  And I

12   would accept the Court's invitation that a

13   post-hearing submission on that very narrow issue

14   of that period of time, and I can offer to the

15   Court what I think the record contains, that that

16   overrides the inference that -- that the Court has

17   drawn from that delay period.  I don't think

18   that -- that the plaintiffs have necessarily

19   pointed to that particular set of events by the

20   defendants as a -- as a basis for sanctions, and

21   certainly wasn't articulated by counsel here or

22   specifically in the papers.  I also think that --

23        THE COURT:  You're talking about

24   non-compliance?

25        MR. BAUER:  The Rule 16.  What the Court

1   is specifically talking about in the period of time

2   that the Court is addressing.

3           THE COURT:  Well, number two, specific

4   conduct at issue in the sanctions hearing, the

5   defendants' repeated failure to produce an accurate

6   class list in a timely fashion as directed by the

7   Court.  I mean, that's what I interpreted that --

8   that number two to be directed at.

9       Again, if I can step back a little bit and say,

10  I mean, if we are -- and again, I acknowledge the

11  plaintiffs are seeking far greater sanctions than

12  this, and their view is that the conduct at issue

13  is more egregious than what I'm talking about right

14  now.  But if we look at just the question of

15  noncompliance with Judge Siragusa's order, you

16  know, I think conceded failure to provide an

17  accurate class list until August of 2016, '16,

18  which was a year and seven months, a year and eight

19  months after Judge Siragusa's order, and we look at

20  the question of whether there -- the defendants

21  and/or their counsel -- or I should say their

22  counsel, because the defendants aren't here -- bear

23  responsibility for that noncompliance or bear some

24  responsibility for the noncompliance.  And one of

25  the sanctions available to the Court is -- and

1     would be required to be imposed under the

2     circumstances are fees and costs.  And it seems to

3     me, if you step back, it's almost a matter of

4     equity.  All right.  Judge Siragusa had an order

5     here.  The order said you're going to give us a

6     class list of these people who fit this definition.

7     Inexcusably took a year and eight months to get

8     that right, notwithstanding two sets of counsel,

9     notwithstanding a number of -- I mean, many, many

10    conferences with the Court, motions and so forth,

11    who should bear the costs, literally, the costs and

12    the fees of what it took to eventually get that

13    class list?  And judged that way, it doesn't seem

14    to me that what plaintiffs are asking for is -- you

15    know, offends basic, you know, notions of fairness

16    and equity.  It seems fair and equitable.

17         You know, that is a separate question from

18    whether the record here justifies the imposition of

19    sanctions because counsel acted in bad faith,

20    counsel made misrepresentations on the record,

21    counsel failed to have a witness ready to go with a

22    hearing when the Court ordered it, and there was no

23    legal excuse for not having the witness available.

24    You know, those are all issues that are before the

25    Court.

1        But I think that, you know, the Court

2    throughout these proceedings tried to articulate

3    this is a case that needs to move forward.  There

4    are people out there who deserve to be informed of

5    this litigation and deserve to be given the chance

6    to opt-in or opt-out, and for the case to proceed.

7    That is my primary goal is getting an accurate

8    class list.  There were various, you know,

9    allegations that were raised at different times

10   along the way.  You know, I tried to keep my main

11   focus on lets get the class list.  We can sort all

12   that other stuff out later.  It's a really

13   important responsibility.  And it took a long time

14   to get it right, and there was a lot of costs that

15   was incurred in getting it right.  Who bears that?

16        MR. BAUER:  Well, your Honor, you -- I'd

17   again ask plaintiffs' counsel in -- in the -- how

18   do you apportion responsibility --

19        THE COURT:  Right.

20        MR. BAUER:  -- when the party, the client,

21   who, undisputed in the record, had taken a leading

22   role in this preparation, and it was its books and

23   records and its vendors that were dependent upon is

24   not here.  And your Honor had said it at least once

25   and I think a couple other times in the course of

1    this proceeding that in the abundance of caution,

2    you said let's get on with the list.  This is a

3    fee-shifting -- this is a fee-shifting case.  We

4    can take care of a lot of this at the end if it's

5    incurred more expense.

6        Now, no one wanted Ignite to go belly up.  And

7    it resulted in some monetary reward ultimately that

8    could be obtained in the bankruptcy proceeding.

9    But when we talk about fairness and equity, I'm

10   not -- I'm not certain that there's anything that

11   suggests that -- that the plaintiffs' counsel -- or

12   excuse me, defendants' counsel didn't discharge

13   their responsibilities on behalf of their client,

14   and that albeit that it took a longer period of

15   time than anyone wanted, it ran into some real

16   difficulties and some complexities that no one

17   anticipated.

18       But to shift -- to suggest that because the

19   attorneys are now the only ones standing, that they

20   bear the brunt of that, or that they should have to

21   pay fees that were incurred that normally would be

22   argued at the end of the case, and, in fact, were

23   argued in the bankruptcy court as to what would be

24   a justifiable fee for the work that was done and

25   the amount that was recovered, I'm not --

1          THE COURT:  Let me ask you that question.

2     How do I address the issue of apportionment, and

3     what factors should be considered, and what's the

4     evidence in the record to help me apply those

5     factors and make that determination?

6          MR. BAUER:  Well, I think the -- and I

7     would deal strictly with apportionment, not

8     amounts, your Honor, because I don't have any --

9          THE COURT:  I know your answer to

10    apportionment is zero.  I get that.  But let's, for

11    purposes of this, assume that I'm -- I'm, you know,

12    this side of zero.

13         MR. BAUER:  Well, I think the Metzger

14    declaration demonstrates the -- that some of the

15    efforts that counsel was taking, the in-house

16    counsel was taking and the complexity.  I think

17    Miss Moore's testimony, the 30(b), put an

18    exclamation point on that because she explained in

19    more detail that there were multiple vendors for

20    multiple entities that were under the Ignite

21    banner.  I think that the temporal aspect of the

22    fact that -- that Fisher Phillips was not involved

23    on the outset of this but inherited -- when it came

24    in in April of 2015, inherited this -- this

25    problem, and not only had to rectify it, but also

1    work diligently to try to even understand how this

2    had come to happen.  And there was also a period of

3    time when plaintiffs' counsel was themselves going

4    through and trying to sort out and even exploring

5    the prospects of another class.  And I can't -- I

6    can't account for how much of this delay and lack

7    of attention on the original list goes to that fact

8    that there was some distractions and motions with

9    respect to efforts to initiate other class actions,

10   and to -- and to communicate.  I know that the

11   parties stepped up and paid the costs of the

12   initial mailing and took responsibility for the

13   fact that what went out on that original list was

14   wrong and paid the expense of that.

15       And, in fact, there was a sanction motion

16   pending at that point that was resolved under those

17   circumstances, which leads me to believe the

18   inference was that the client, who paid those

19   expenses, beared the brunt of -- of what had

20   happened and what the delays were.

21       And so I think it's those aspects that the

22   apportionment here is -- I think when attorneys

23   are -- are doing the best they can on behalf of

24   their clients, and to suggest because they're the

25   last ones standing, that they should be apportioned

1   with that responsibility, I don't -- I don't think

2   the -- I don't think the plaintiffs have met their

3   burden on that.  And I don't think -- I think on

4   this record it would -- it would suggest that,

5   especially when the Court points to the fact when

6   Miss Osipoff had total control of it, efforts

7   happened, and everything was done with dispatch.

8           THE COURT:  Okay.  I don't know that I

9   have a basis to find dispatch.  There's been no

10  challenge to that.  I think from May 18th to the

11  end of August, I don't have any reason in the

12  record to dispute the final product of that.  No

13  challenge was brought to the question of dispatch.

14  I'm not suggesting that -- I think that that effort

15  was or wasn't undertaken with dispatch, because

16  that was never an area of inquiry.  But I'm not

17  concerned with the third list.

18          MR. BAUER:  Okay.

19          THE COURT:  What else did you want to tell

20  me?

21          MR. BAUER:  Your Honor, I will rest on the

22  papers.  I'll answer -- be happy to answer any

23  other questions that you have.  I would reiterate

24  the fact that there are some, as the Court went

25  through today and outlined some of the sanctions

1    that remain, gleaning out of the papers, the sale

2    papers, from a year or more ago, there certainly is

3    no reference or anywhere in the record that

4    suggests some type of punitive award or some type

5    of attorney discipline.  There's no references to

6    the code of professional responsibility or any --

7    any violations that are alleged on behalf of the

8    defense counsel.  And I -- I think those

9    considerations can be dismissed summarily for

10   simply lack of any attention other than perhaps an

11   initial statement in one of the papers.

12       And I do harken back to the circuit's view that

13   any -- any application for sanctions be viewed

14   very -- with restraint and very carefully.  It's a

15   very -- and the Seltzer decision talks about the

16   very fine line that the Court has to draw between

17   advocacy and representing a client, and under its

18   circumstances and engaging in some kind of behavior

19   that's intended to delay or obstruct or harass or

20   be in bad faith.  And I just think the record is

21   devoid of any -- any evidence that shifts the

22   burden on any of the issues before the Court over

23   to the defendants.

24              THE COURT:  Thank you.

25              MR. BAUER:  Thank you, Judge.

1          MS. LUKASIEWICZ:  Briefly?

2          THE COURT:  Yes.

3          MS. LUKASIEWICZ:  I just want to very

4     briefly come back to the Metzger declaration.  I

5     think it's telling that both in the papers and both

6     counsels today every answer was well, the Metzger

7     declaration says this.  This is the first time we

8     have really heard about Metzger.  In fact, there

9     was no one with knowledge when we went back in the

10    days when we were trying to figure out what was

11    going on, they said there was no one.  We didn't

12    know about Martin.  We didn't know about anyone at

13    that time.  So this is the exact reasons why we're

14    saying that, you know, the evidentiary hearing

15    makes sense and discovery potentially on that kind

16    of issue.  We have not heard these before, and, in

17    fact, every reliance is upon how Metzger knew all

18    this stuff.  We don't think it's proper and

19    admissible.  But they're raising all these

20    arguments in regard to Metzger and reliance upon

21    obviously that Metzger shows that they're not

22    responsible.  So certainly we think that that is

23    telling.

24        I would also say that, you know, the Court has

25    raised the two issues that it was continuing to

1    look into legally about, you know, what is the

2    attorney's duty, you know, to following up with

3    counsel -- I'm sorry, their client.  If the Court

4    wants any briefing, again, we are happy to do so on

5    that, as well as privilege.  I think the Court, you

6    know, this is the first time we heard about the

7    privilege argument in regards to this, but

8    certainly we don't think that there's privilege,

9    but we'd be happy to brief that as well, should the

10   Court want any further submissions on that.

11       But again, we just think that, you know,

12   highlighted by the Metzger declaration statements

13   today that an evidentiary hearing bringing any of

14   these new discovery, you know, that has been raised

15   may make sense, makes the most sense, and, you

16   know, we can provide a witness list and an exhibit

17   list in advance certainly of that hearing.

18       That's it for me, unless the Court has more

19   questions.

20           THE COURT:  What about the argument by

21   Mr. Farella that the agreement in the bankruptcy

22   matter forecloses this claim against Epstein?

23           MS. LUKASIEWICZ:  We disagree.  It was an

24   agreement with Ignite, and it was -- this is about

25   Epstein Becker's behavior and conduct.  And we

1    believe that -- and they were prior counsel.  We

2    believe that they are not excluded from here, and

3    it wasn't necessary to exclude them, and we think

4    that they are still fully --

5          THE COURT:  Because counsel shouldn't

6    reasonably be read to include prior counsel, only

7    current counsel, is that --

8          MS. LUKASIEWICZ:  I think certainly, yes,

9    correct.  Prior counsel, and, again, we're going

10   against their specific conduct.  We're not going --

11   you know, we are not obviously going against Ignite

12   any longer, and these are about counsel's behavior.

13         THE COURT:  But at the time the claims

14   that were --

15         MS. LUKASIEWICZ:  They were representing

16   Ignite, I don't disagree with that.

17         THE COURT:  You were seeking that relief

18   from Ignite as well as their counsel?

19         MS. LUKASIEWICZ:  When we initially filed

20   it, yes, we were seeking against.  But I think also

21   to make clear that it's not, as to just suggested

22   today, well, this is all maybe by counsel that this

23   is just what's left, and we're just -- they're

24   stuck with getting the consequences of their

25   behavior.  Well, no, it's their behavior that

1   they're stuck with getting the consequences of.

2   It's not because Ignite is gone.  It's because we

3   had these repeated failure to comply with the

4   Court's order that took 18 months to get a list,

5   that -- during that time maybe the case could have

6   been, you know, resolved, maybe there could have

7   been judgments.  But instead, 18 months later or

8   so, you know, bankruptcy was filed.  So I think it

9   has a significant impact on the case.  And we're

10  not saying well, you're just the last man standing,

11  you're responsible for it.  It's because their

12  behavior made them responsible.

13      I will just also clarify when we spoke earlier

14  and you inquired about what sanctions we were

15  specifically seeking, it's just on page 17 -- I

16  don't think you had pointed to this, so I just

17  wanted to direct.  Page 17 of our initial brief it

18  refers to striking the affirmative defense, which I

19  think we discussed, but about the recovery that was

20  precluded by applicable statutes of limitations.

21  It is still our position that, you know,

22  plaintiffs -- opt-in plaintiffs' claims were

23  destroyed or damaged by the delay.  And we would

24  continue to say that that is an appropriate

25  sanction.

1           THE COURT:  But what is the sanction that

2    you're looking for?

3           MS. LUKASIEWICZ:  Any recovery that was

4    precluded because the statute of limitations

5    because they weren't getting notice and during this

6    time the case has since been in bankruptcy.

7           THE COURT:  What does that mean?  What

8    does that mean?

9           MS. LUKASIEWICZ:  Meaning that the case --

10   their recovery could have been resolved at that

11   time if there was not notice issues.  So any

12   recovery that they are -- they were seeking

13   could -- we're saying that essentially that they

14   could have gotten a recovery on their claims if it

15   wasn't for the significant delay that was caused by

16   counsel.

17          THE COURT:  So, you're seeking the Court

18   to -- I mean, you haven't said here are 3,568

19   plaintiffs who have a claim during this period of

20   time, and this person is seeking $87 and this

21   person is seeking $253.  Is that what you're

22   talking about?

23          MS. LUKASIEWICZ:  We have not specified,

24   correct, as to the specific individuals named or

25   the damages amounts.  It's just one of our requests

1    that we are asking, and obviously we could do

2    damage calculations or submit anything, you know,

3    specifically on that.  But we think that we're

4    first at the point of what sanctions are

5    appropriate.

6        And again, you know, we think that really this

7    is an evidentiary hearing issue more dealing with

8    the new issues and claims, reliance as defenses

9    raised by defense counsel and should be at the

10   evidentiary hearing.  But I just wanted to point

11   out that we see that as different than the

12   affirmative defenses just being barred.

13       If the Court has no further questions --

14           THE COURT:  Hold on.

15           MS. LUKASIEWICZ:  Oh, okay.

16           THE COURT:  I may have further questions.

17       All right.  Thank you.

18           MS. LUKASIEWICZ:  Thank you, your Honor.

19           MR. BAUER:  Your Honor, may I just

20   briefly?

21           THE COURT:  Okay.

22           MR. BAUER:  On that last point, it talks

23   about the striking of affirmative defenses, tolling

24   of statute of limitations, and any -- and how that

25   may apply.  I think the Court addressed that in the

1    beginning.  With the litigation with Ignite being

2    over, any question regarding the merits of a claim,

3    would be -- would have been resolved in the

4    bankruptcy proceeding.  And there's nothing in any

5    of the briefing or submissions that addresses this

6    issue of somehow the class members having a

7    class --

8              THE COURT:  I agree that I don't see that

9    as an argument that's fully presented.

10             MR. BAUER:  And two things.  One, the

11   Metzger declaration was provided in -- with our

12   first submission and it's been there.  There was

13   certainly nothing addressing that -- it was

14   provided once, and then the motion was withdrawn.

15   It was provided again, and no attack in any of the

16   reply papers on the validity or the admissibility

17   or for the Court to consider --

18             THE COURT:  I think the admissibility is

19   challenged.  I thought I recalled seeing that, that

20   the evidence was not admissible.

21             MR. BAUER:  I don't know.  In the three or

22   four pages that I saw, I don't think that that was

23   addressed, your Honor.

24             MS. LUKASIEWICZ:  Your Honor, I think it

25   is in the first paragraph as well.

1          THE COURT:  Do you want to say anything in

2     particular to the -- Mr. Bauer, to the issue of

3     whether the Court has the discretion to order an

4     evidentiary hearing limited to Mr. Metzger's

5     testimony?

6          MR. BAUER:  Do I -- do I have --

7          THE COURT:  Anything you want to say to

8     that?  I think it's a fair point that at oral

9     argument there has been considerable reliance

10    placed by defendants on assertions made in his

11    affidavit, typically, and you reference, as I did,

12    the fact that initially plaintiffs' counsel said

13    we're not asking for live testimony to support our

14    motion, and in the colloquy that I had with --

15    let's see, on September 13th, 2016, I said if you

16    want to offer your case for a written submission,

17    your direct case, you're welcome to do that.  You

18    can't make a direct case in writing and then say

19    well, on second thought, we'd like to call a bunch

20    of witnesses.  I mean, at that point the burden

21    would then shift to the defendants and any argument

22    you'd make down the road for live testimony would

23    be as a matter of rebuttal.  And I think that's, in

24    essence, what Miss Lukasiewicz is saying with

25    respect to Mr. Metzger.  That argument, at least

1    right now after two hours of argument, seems to be,

2    you know, a more forceful argument for the Court's

3    exercise of its discretion to say all right, we're

4    not going to have a free-ranging hearing, but

5    you've relied -- you put in an affidavit of

6    Metzger.  You know, produce him.  You can examine

7    him or not, as you wish, but he should be made

8    available for cross-examination.

9              MR. BAUER:  Well, your Honor, I guess my

10   reaction to that is I go back to the Court's

11   initial -- the way this hearing was put in -- or

12   the way that this procedure was put in place back

13   in September, and I see the address in the argument

14   saying our response consists largely of hearsay and

15   perhaps inadmissible evidence.  I may have missed

16   it, but I don't see anything specific that relates

17   to Mr. Metzger.

18             THE COURT:  But their response is we

19   should have a hearing.  You put in opposition

20   papers that relied significantly on this affidavit

21   as has been -- as you continue to do at oral

22   argument.  They have asked for a broad hearing.

23   I'm not so sure I'm inclined to a free-ranging

24   hearing that is preceded by a status conference and

25   discovery or anything of that nature.  But the

1    simple notion that you're relying on factual

2    assertions, and we should have an evidentiary

3    hearing to at least allow counsel to examine the

4    witness that you're relying is not a --

5           MR. BAUER:  Your Honor, from -- from my

6    perspective, it -- it -- the burden was on them

7    initially.  We submitted evidentiary -- and we

8    don't think they ever met that burden.  And we

9    submitted evidence that -- that supports our

10   position.  To now let them go back and say well, we

11   chose this path, but we're -- we're now going to

12   ask for a broad hearing because we didn't -- we

13   didn't -- we didn't decide to do that first to meet

14   our burden, I think is -- it seems to me from the

15   Seltzer decision that the hearing requirements from

16   the Second Circuit are provide due process to those

17   accused of -- of -- involved in sanctionable

18   conduct and have notice and an opportunity to be

19   heard.

20          THE COURT:  So you can get to the right

21   and truthful and fair response that will be.

22          MR. BAUER:  Correct.

23          THE COURT:  That certainly isn't intended

24   to insulate somebody to allow them to put in an

25   affidavit and say we're the accused ones, and

1   therefore you don't get to have any

2   cross-examination on that.

3          MR. BAUER:  But there's not a single fact

4   that they put forward that suggested what

5   Mr. Metzger said is not truthful and not accurate.

6   And --

7          THE COURT:  Okay.  Well, I'll -- I will --

8   I will go back and look at that issue carefully.

9   Again, you know, I'm putting -- I just wanted to

10  put you on notice as I sit here that that argument

11  seems to be an argument that -- that may have some

12  force.  It may be I look at Mr. Metzger's affidavit

13  and think that I don't really need to hear from

14  him, not because I reached the conclusion that you

15  do, but because, as I've said, I think there are

16  reasonable inferences that are to be drawn from the

17  record, and Mr. Metzger's affidavit doesn't do

18  anything to rebut those reasonable inferences.

19         MR. BAUER:  And, your Honor, I -- if the

20  Court would find it helpful, I would be prepared to

21  submit in camera a -- information that relates to

22  that period of time.

23         THE COURT:  Okay.  I'm not -- I'm

24  certainly not prepared to take an in camera

25  submission without briefing on the question of an

1     in camera submission.  I don't want an in camera

2     submission from counsel that says this is what we

3     did, and therefore I'm left with a decision to

4     write that is not tested by input from the other

5     side, and relies on, you know, in camera

6     submissions.  So, I don't -- I'm not inclined to

7     grant the request to take an in camera submission.

8               MR. BAUER:  Very well.

9               THE COURT:  Okay.

10              MR. BAUER:  Thank you.

11              THE COURT:  Mr. Farella.

12              MR. FARELLA:  If I may --

13              THE COURT:  You came for a five-minute

14     argument.

15              MR. FARELLA:  I did.  I thought I was

16     going to be home by now.  Your Honor, just on that

17     issue that you inquired of plaintiffs' counsel

18     about the release, paragraph 8, again, I just want

19     to -- to say that it releases claims that are

20     foreseen or unforeseen in law, equity, or otherwise

21     from the beginning of time to the effective date.

22     When counsel said well, you know, prior counsel

23     wasn't involved, Ogletree was a prior counsel.

24     They were carved out.  Epstein Becker was not.  So

25     I just want to make that clear.  Thank you, your

1    Honor.

2              THE COURT:  Thank you.

3              MR. BAUER:  Your Honor, if we may, I do

4    want to examine, as the Court has raised this issue

5    of attorney-client privilege, and I may just

6    reserve the right to submit something to the Court

7    if -- if our research on that issue dictates.

8              THE COURT:  Okay.  I know that there have

9    been a number of requests to take supplemental

10   submissions.  And I am -- I'm not granting that

11   relief right now.

12       I think, Mr. Bauer, if you investigate that

13   issue and there is something that you would like to

14   submit on that, if you would, in the first

15   instance, send me a letter and tell me that's what

16   you'd like to do.  We can hear from counsel and I

17   can make a decision on that.

18              MR. BAUER:  I appreciate that, your Honor.

19              THE COURT:  Okay.  Anything else?

20              MS. LUKASIEWICZ:  I guess would we have

21   the same ability to, if we research it and come

22   across something, at least raise it to the Court

23   and see if at that time we would just want the

24   complimentary --

25              THE COURT:  You all are free to write me

1      at any time and say would you like to hear more

2      from me on this, and I will promise you I will make

3      a decision about whether I want to hear more from

4      you on something.

5          Okay.  All right.  So, nobody commented on the

6      fact that this is the two-year anniversary of the

7      June 6th hearing.  I thought, Mr. Bauer, you

8      might -- you might mention that.

9              MR. BAUER:  I was mindful of it.

10             THE COURT:  Not something that -- that I

11     had in mind when I scheduled it, but it sort of

12     seemed karmic or something.  All right.  Travel

13     safely.  Nice to see you.

14         Oh, I'm sorry.  Wait.  You can go.  We're not

15     going to be to be talking about you in absentia.  I

16     want to talk about the individual defendants.

17         Maybe -- maybe I can ask Miss Osipoff,

18     Mr. Gershengorn to come forward.  I want to know

19     what progress has been made, if any, in trying to

20     sort out the insurance question.

21         Thank you, Kristen.

22             MS. LUKASIEWICZ:  Your Honor, we now have

23     received all of the subpoenaed documents from Star

24     Insurance, and based on the representations that

25     we've received, everything in the individual

1    policies from the individuals, as long as that is

2    accurate, we are prepared to withdraw them as

3    defendants.

4              THE COURT:  Okay.  And you're prepared --

5              MS. LUKASIEWICZ:  And we can prepare a

6    stipulation as to that and circulate it to defense

7    counsel.  It's just that it took some time to get

8    all of the stuff, so we can circulate in a week or

9    so.

10              THE COURT:  Today's Wednesday.  Can I have

11   that by no later from a week from today?

12              MS. LUKASIEWICZ:  Absolutely, your Honor.

13   At least I can circulate it.  Yes, I will make sure

14   to circulate it to defense counsel, and we can

15   raise it forward.

16              THE COURT:  Okay.  Very good.  Okay.

17   Thank you.

18              *      *      *      *      *      *

19

20

21

22

23

24

25

1                        CERTIFICATION

2

3        I certify that the foregoing is a

4     correct transcription, to the best of my

5     ability, from the electronic sound recording

6     of the proceedings in this matter.

7

8

9                         s/Michelle L. McLaughlin
                          Michelle L. McLaughlin, RPR
10                            Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25