UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTOPHER HART, MARIA SARGENT,
TAYLOR RAMSEY, ANDREA RANDLETT,
SHELLY CARRERA, MICHAEL WILLIAMS,
LEAH HENCHELL, COURTNEY HOLLINS,
AMBER INGRAM, and WHITNEY DOLAN *on
behalf of themselves and all other employees
similarly situated*

                        Civil Action No. 13-cv-6458(CJS-MWP)

          Plaintiffs,

   v.

CRAB ADDISON, INC., d/b/a JOE'S CRAB
SHACK, IGNITE RESTAURANT GROUP,
INC., RAYMOND A. BLANCHETTE III,
KEVIN COTTINGIM, and RODNEY MORRIS,

         Defendants.

---

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE
ON BEHALF OF FISHER & PHILLIPS LLP,
BRIAN J. GERSHENGORN, MELISSA J. OSIPOFF AND SETH D. KAUFMAN**

---

DATED:    August 24, 2018
             Rochester, New York

                                WOODS OVIATT GILMAN LLP
                                William G. Bauer, Esq.
                                700 Crossroads Building
                                2 State Street
                                Rochester, New York 14614
                                585.987.2800

{6513711: }

**PRELIMINARY STATEMENT**

During the June 6, 2018 hearing, the Court put the Fisher Interested Parties "on notice" of its view that the record before the Court "gives rise to a reasonable inference that counsel has not met its obligations to be . . . properly involved in the correction of the errors [on the class list] and the . . . preparation of an accurate class list." (June 6, 2018 Tr., 56:14-19.) The Court invited the Fisher Interested Parties to supplement the record "if there is evidence that [they] think that [the Court] should hear with respect to . . . counsel's involvement in the process." (June 6, 2018 Tr., 57:13-16). The Fisher Interested Parties submitted the Declaration of Melissa J. Osipoff, Esq. dated July 26, 2018 (the "July 2018 Osipoff Declaration") to address the Court's stated concerns.

Despite recognizing the benefit of having a full record before the Court when addressing sanctions motions, Plaintiffs now ask the Court to disregard this highly relevant information submitted by the Fisher Interested Parties—even though the Court expressly invited the Fisher Interested Parties to supplement the record, if necessary. That Plaintiffs would request the Court strike from the record this clearly relevant information, *that the Court requested to hear,* is simply astounding, especially in light of the draconian sanctions they seek against defense counsel. If the Motion to Strike is granted, which it should not be, the Fisher Interested Parties will be denied the opportunity to fully defend themselves against Plaintiffs' meritless sanctions motion. Accordingly, Plaintiffs Motion to Strike should be denied.

Likewise, Plaintiffs' request, in the alternative, to conduct discovery regarding the information contained in the July 2018 Osipoff Declaration should be denied. Plaintiffs have repeatedly failed to meet their burden of showing any sanctionable conduct by the Fisher Interested Parties. Discovery now will be nothing more than a fishing expedition that will inevitably lead to additional motion practice regarding discovery of information protected by the

attorney-client and work product privileges. This should not be permitted, especially since the merits of this case are concluded.

Accordingly, the Fisher Interested Parties request the Court deny Plaintiffs' Motion to Strike in its entirety and grant the Fisher Interested Parties any relief deemed necessary in responding to Plaintiffs' Motion to Strike.

## ARGUMENT[1]

### I. The Court Invited Submission of the Information Contained in the Osipoff Declaration[2]

During the June 6, 2018 hearing, the Court probed into the contours of "an attorney's duty and responsibility with respect to compliance with a court order requiring that attorney's client to provide a class list . . ." (June 6, 2018 Tr. 50:10-13), an issue never put forward or addressed by Plaintiffs.[3] The Court broke down this perceived duty into three different parts:

---

[1] For the convenience of the Court, the Fisher Interested Parties hereby incorporate by reference, as if fully set forth herein, the facts set forth in Defendants' Memorandum of Law in Opposition to Plaintiffs' Renewed Motion for Sanctions on Behalf of Fisher & Phillips LLP, Brian J. Gershengorn, Melissa J. Osipoff and Seth D. Kaufman (the "Fisher Interested Parties' Opposition to Sanctions") (Dkt. 546) and the Affirmation of William G. Bauer ("Bauer Aff.") in support thereof, together with exhibits A through I, dated May 15, 2018 (Dkt. No. 546-1), Defendants' Memorandum of Law in Support of Defendants' Motion for a Protective Order (the "Protective Order Brief") and the Affirmation of Seth D. Kaufman ("Kaufman Aff.") in support thereof, together with Exhibits A through Q, dated June 17, 2016 (Dkt. No. 359-01 through 359-19) and Defendants' Motion to Compel and for a Protective Order and the Affirmation of Melissa Osipoff in support thereof, together with Exhibits A through K ("Osipoff Aff."), dated November 2, 2015 (Dkt. No. 232-1 through 232-3).

[2] The Fisher Interested Parties intended the July 2018 Osipoff Declaration to comply with the Court's directive during the June 6, 2018 hearing. If the Court is inclined to strike the July 2018 Osipoff Declaration for non-compliance with the Court's directive, the Fisher Interested Parties hereby make an application to submit the July 2018 Osipoff Declaration.

[3] Though Plaintiffs generically sought sanctions against defendants and defense counsel for alleged failure to timely produce an accurate notice list, Plaintiffs never argued sanctions were warranted against the Fisher Interested Parties for an alleged failure to adequately discharge their duties to supervise the preparation of the July 2015 Class Notice List or to investigate the accuracy of that list once Plaintiffs raised concerns—despite having multiple opportunities to raise this argument. These issues were raised by the Court for the first time during the June 6,

- "[D]id the attorneys have a duty to inquire as to the accuracy of the class list after plaintiffs raised concerns regarding its size?"—an issue the Court noted was "more directly raised with the Epstein attorneys." (June 6, 2018 Tr. 50:20-25);

- [D]id the attorneys have a duty to oversee or supervise the production of the second class list, that would be the July 2015 class list, that purported to correct the error in the first list?" (June 6, 2018 Tr. 51:1-5); and

- "[D]id the . . . attorneys have a duty to inquire and investigate into the accuracy of the July 2015 class list after plaintiffs raised concerns regarding its accuracy [o]n March 16th?" (June 6, 2018 Tr. 51:5-9).

The Court put the Fisher Interested Counsel "on notice" that that the record before the Court may "give[] rise to a reasonable inference that counsel has not met its obligations . . . to be properly involved in the correction of the errors [on the class list] . . . and the preparation of an accurate class list," noting that the Court did not have anything in the record as to what, if anything, was done by the Fisher Interested Parties. (June 6, 2018 Tr. 56:14-19). The Court then invited the Fisher Interested Parties to present any relevant evidence that refuted this inference. *See* June 6, 2018 Tr. 57:13-18, 64:4-6 ("I want to make sure, you know, if . . . there is evidence that you think . . . that I should hear with respect to . . . counsel's involvement in that process, that you've put that before the Court . . ."; "[I]f there's anything more that you want me to hear on that . . . I will certainly entertain an application to . . . supplement the record.")

---

2018 hearing. Accordingly, the Fisher Interested Parties had not previously addressed these issues.

On July 26, 2018, in accordance with the Court's invitation to supplement the record and in an effort to address the Court's stated concerns, the Fisher Interested Parties submitted the July 2018 Osipoff Declaration via letter to the Court.

**II. The Subject Matter of the June 6, 2016 Hearing Never Included the Topics Discussed in the July 2018 Osipoff Declaration**

During the May 17, 2016 hearing, the Court set an evidentiary hearing for June 6, 2016, at which the Court wanted a corporate representative to testify as to how the July 2015 Notice List was put together, how mistakes were on the list, what caused those mistakes, whether the mistakes have rectified, whether the class list was now accurate, and the degree of confidence in that accuracy. (May 17, 2016 Tr. 16:4-16:10). At that time, though the Fisher Interested Parties were aware that Ms. Martin had left Ignite, they were *not* aware that she did not receive assistance from anyone else who would be able to testify as to the preparation of the list, and thus could not raise the issue on May 17. (Metzger Decl., ¶ 11.) After the Order was issued, Ignite looked into who could testify about the preparation of the July 2015 Class List, and ultimately confirmed that Ms. Martin was the only person involved in the preparation. (*Id.*, ¶ 18.) Thus, nobody else at Ignite could testify as to how the July 2015 Class List was prepared and what caused any errors. (*Id.*) Once it became clear that Defendants could not comply with the Court's May 17th Order, the Fisher Interested Parties immediately reached out to Plaintiffs' counsel and then to the Court, as the Court had directed.[4] On May 25, 2016, the Fisher Interested Parties wrote to the Court and stated that "[w]e have now confirmed with our client that the only

---

[4] During the May 17 hearing, the Court stated, "[a]s I said, if there's something you need from me before then - - excuse me - - let me know, I'm happy to talk to you, okay? I am interested in trying to work with you and see that you all work together to get these - - to get the list accurate and to address any what I would say are legitimate, genuine questions that plaintiffs' counsel and the Court have about, you know, how is it that the list has what sounds like it's more than, you know, an isolated person here or there who have been - - I think it sounds like wrongly excluded rather than last time it was a whole bunch of people who were included. So third times is going to be a charm, okay?" (May 17, 2016 Transcript, at 19-20).

4

person with any detailed knowledge of the July 2015 Revised Notice List is no longer with the company and thus is not under Defendants' control." As a result, the Fisher Interested Parties in their May 25th letter, "respectfully request[ed] a telephone conference to discuss how to proceed with respect to the June 6, 2016 hearing in the absence of a witness knowledgeable about the preparation of the July 2015 Revised Notice List. . . "

On June 1, 2016, the Court held a conference call with the parties during which defense counsel explained the absence of a witness knowledgeable about the preparation of the July 2015 Class Notice List. Defense counsel further explained that, rather than trying to correct the July 2015 Class Notice List, defense counsel, and more specifically, counsel of record Melissa Osipoff, was preparing a new class list so counsel could ensure the list would be prepared accurately. The Court reiterated the need to ensure the accuracy of this new list, and as defense counsel understood it, ordered Ms. Osipoff to testify at the June 6 hearing about the steps taken to prepare this third class list. As defense counsel has repeatedly acknowledged, there was a genuine misunderstanding as to whether the Court ordered Ms. Osipoff to testify. ***However, there is no dispute as to what Ms. Osipoff's contemplated testimony was intended to cover— the steps being taken to prepare the third class list.*** Indeed, at Plaintiffs' counsel's suggestion, the Court requested Ms. Osipoff submit a declaration by the close of business the following day in advance of her testimony. The declaration itself confirms that it was being submitted "to describe the process being used to prepare the [c]orrected [c]lass [n]otice [l]ist." (June 2, 2016 Declaration of Melissa Osipoff).[5]

Despite this indisputable record, Plaintiffs' counsel now claims that Ms. Osipoff was supposed "to testify about the preparation of the July 2015 notice list at the June 6, 2016

---

[5] During the June 6, 2018 hearing, the Court acknowledged that the June 2, 2016 declaration "dealt with what [Ms. Osipoff] was doing to prepare a third list." (June 6, 2018 Tr. at 58:15-17).

hearing" (Pl. Br. at 2)—a blatant misrepresentation—and argues that the July 27, 2018 Osipoff Declaration should be stricken from the record because defense counsel previously refused to permit Ms. Osipoff to testify about the preparation of the July 2015 notice list—another blatant misrepresentation.[6] As is abundantly clear, it was never contemplated that Ms. Osipoff would testify about the preparation of the July 2015 Class Notice List; Ms. Osipoff's potential testimony was limited solely to the steps being taken to prepare the third class notice list—a task taken on by counsel on its own initiative, given the importance of ensuring this third list was done correctly.[7] Ms. Osipoff could not and cannot testify about preparation of the July 2015

---

[6] In the ultimate example of irony, Plaintiffs' brief—submitted in connection with a motion in which they seek sanctions for, among other things, misrepresentations by counsel—is itself replete with misrepresentations. In addition to repeated misrepresentations about the scope of Ms. Osipoff's prior contemplated testimony, Plaintiffs erroneously contend that "[D]efendants . . . plainly disregarded deadlines for the filing of their opposition papers. . . For example, rather than respond to the [sanctions] motion on April 14, 2017, on April 10, 2017, defendants sent a letter to the Court seeking (improper) guidance from the Court as to how to respond to the sanctions motion." Pls. Br. at 3. Defendants did not disregard the deadline for filing their opposition papers—Defendants submitted the April 10, 2017 letter to the Court in accordance with the Court's Order regarding briefing on Plaintiffs' sanctions motion. (Dkt. 432 at 13) ("[P]laintiffs shall file their written submission on or before March 31, 2017. Defendants shall advise this Court in writing by no later than April 10, 2017, whether they wish to respond to plaintiffs' submission in writing or through the presentation of witnesses at a hearing. A schedule for further proceedings will be set upon the Court's receipt of defendants' April 10, 2017 letter.")

[7] Putting aside Plaintiffs' misrepresentations regarding the subject matter of Ms. Osipoff's prior-contemplated testimony, Plaintiffs distort the record by claiming the Fisher Interested Parties "willfully withheld" this testimony before and "blatantly refused to testify" at the June 6, 2016 hearing. (Pls. Br. at 6). During the June 6, 2016 hearing, the Fisher Interested Parties requested to brief the issue of attorney testimony and the Court permitted such briefing. (Kaufman Aff., Ex. M, at 21-27.) After considering Defendants' subsequently filed Motion for a Protective Order (Dkt. 359), *the Court ultimately decided not to order Ms. Osipoff to testify*. (See Bauer Aff. Ex. B, at 29-33; Dkt. 386.) Instead, the Court modified its May 17, 2016 Order to allow Defendants to satisfy that Order "through a 30(b)(6) deposition of a corporate representative." (Bauer Aff. Ex. B, at 30.) On September 13, 2016, the Court participated in a 30(b)(6) deposition of Lisa Moore the then Vice President of Human Resources for the Ignite Group, conducted pursuant to the Court's modified order. Plaintiffs' contention that Fisher Interested Parties "blatantly refused to testify" is nothing more than a complete and utter distortion of this record.

6

{6513711: }

Class Notice List *as that was prepared solely by the former General Counsel of Ignite.* Nothing in the July 27, 2018 Osipoff Declaration is to the contrary. Rather, the July 27, 2018 Osipoff Declaration makes abundantly clear that "Ignite prepared the [July 2015 Class Notice List] internally" but that "Ogletree nevertheless provided oversight and support to Ms. Martin on various issues that arise during the preparation and then worked to vet the accuracy of the corrected class list prepared by Ms. Martin." (July 27, 2018 Osipoff Decl., ¶ 6.) Indeed, during the June 6, 2018 hearing, the Court acknowledged that the June 2, 2016 declaration "dealt with what [Ms. Osipoff] was doing to prepare a third list" and "doesn't shed any light on what happened" before the May 17th, 2016 hearing. (June 6, 2018 Tr., 58:15-17; 59:15-19). The July 2018 Osipoff Declaration does not touch on either the preparation of the July 2015 Class Notice (the topic that the Court originally ordered a corporate deponent to testify about during the June 6, 2016 hearing) or the steps taken to prepare the third class notice list (the topic of Ms. Osipoff's contemplated testimony and Ms. Moore's eventually testimony). Rather the declaration describes—in a factual way that does not reveal attorney-client privilege information—defense counsel's role in; (i) providing oversight and support to Ignite on various issues that arose during the preparation of the corrected July 2016 Class Notice List; (ii) vetting the accuracy of the corrected July 2016 Class Notice List prepared by Ignite and (iii) investigating the errors Ignite made with that list which were later discovered.[8] (July 2018 Osipoff Dec., ¶ 2, 6.)

---

[8] Plaintiffs' contention that the Fisher Interested Parties "intentionally withheld" this information prior to submission of the declaration is simply untrue—the Fisher Interested Parties had no prior reason to provide this information since Plaintiffs never raised the argument that sanctions against the Fisher Interested Parties for an alleged failure to adequately discharge their duties to supervise the preparation of the July 2015 Class Notice. Tellingly, in July and August 2016 (when the issue of whether Ms. Osipoff should testify was pending), the Fisher Interested Parties offered, in lieu of attorney testimony, to fly to Rochester so counsel could have a fulsome

7

Furthermore, Plaintiffs' argument that the Fisher Interested Parties should not be permitted to submit information now that they purportedly previously refused to provide is nothing more than a red herring. In their Sanctions Motion, Plaintiffs seek draconian sanctions, without any legal support, including recovery of substantial attorneys' fees and costs, monetary sanctions, notification of future courts of any action taken in this case in conjunction with any applications for admission, and referral of defense counsel's conduct to attorney disciplinary authorities. Regardless of the subject matter of any previously contemplated testimony by Ms. Osipoff (which, as detailed above, was on a different topic than what is covered by the July 2018 Osipoff Declaration), the Fisher Interested Parties should not now be limited in presenting their defense against these draconian sanctions. The Court put the Fisher Interested Parties "on notice" of an inference the Court was making from the record before it. The July 2018 Osipoff Declaration addresses that inference. Consideration of the July 2018 Osipoff Declaration is necessary for a fair resolution of Plaintiffs' sanctions motion.

### III. Plaintiffs Should Not Be Permitted to Conduct Discovery on the Osipoff Declaration

Plaintiffs now seek to engage in a fishing expedition "to conduct discovery relating to the Osipoff Declaration" and ask the Court to require the Fisher Interested Parties to bear the costs of all such discovery. (Pls. Br. at 7). This request should be denied.

As detailed in the Fisher Interested Parties' Opposition to Sanctions and discussed further at the June 6, 2018 hearing, Plaintiffs have failed to meet their burden of showing any sanctionable conduct by the Fisher Interested Parties. In light of this failure, Plaintiffs' request to conduct discovery, at the expense of the Fisher Interested Parties, should be denied. Indeed,

---

discussion of the class notice list issues—which flies in the face of Plaintiffs' claim that the Fisher Interested Parties "intentionally withheld" this information. Indeed, it was Plaintiffs who insisted they would only be satisfied with on-the-record testimony and thus this discussion never took place. (Bauer Aff., Ex. C.)

8

the Court already expressed its disinterest in permitting discovery in connection with Plaintiffs' sanctions motion. (June 6, 2018 Tr.) ("[T]he last thing I want is anymore discovery in a case in which . . . the merits of this case are over.") Notably, Plaintiffs fail to articulate what discovery they even seek, but rather ask to conduct broad discovery "relating to the Osipoff Declaration." If permitted to conduct discovery, Plaintiffs will undoubtedly seek information protected by the attorney-client and work product privileges which will inevitably lead to additional, substantial motion practice.[9] The Court should not permit this multiplication of the proceedings, especially in light of the fact that all defendants have been dismissed from this action and the case is substantively completed.

## CONCLUSION

For all of the foregoing reasons, it is respectfully submitted that the Court deny Plaintiffs' Motion to Strike in its entirety and grant the Fisher Interested Parties any relief deemed necessary in responding to Plaintiffs' Motion to Strike.

Dated: August 24, 2018
      Rochester, New York                                      WOODS OVIATT GILMAN LLP

                                                           By:     s/: William G. Bauer
                                                                        William G. Bauer, Esq.
                                                                        700 Crossroads Building
                                                                        2 State Street
                                                                        Rochester, New York 14614
                                                                        585.987.2800

---

[9] The parties already went down this road when Plaintiffs sought to serve subpoenas seeking information protected by the attorney-client and work product privileges on current and former in-house and outside counsel in July 2016—before Plaintiffs' counsel sought to brief their sanctions motion rather than have a hearing. (*See* Dkt. 377.)