UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---------------------------------------- X

CHRISTOPHER HART, MARIA SARGENT, :
TAYLOR RAMSEY, ANDREA RANDLETT, :
and SHELLY CARRERA, MICHAEL :
WILLIAMS, LEAH HENCHELL, COURTNEY :
HOLLINS, AMBER INGRAM, and WHITNEY :
DOLAN *on behalf of themselves and all other* :
*employees similarly situated,* :
:
                              Plaintiffs,  :      Civil Action No. 13-cv-6458 (CJS-MWP)
:
            vs.                            :
:
CRAB ADDISON, INC., d/b/a JOE'S CRAB :
SHACK, IGNITE RESTAURANT GROUP, :
INC., RAYMOND A. BLANCHETTE III, :
KEVIN COTTINGIM, AND RODNEY :
MORRIS, :
:
                              Defendants.  :

---------------------------------------- X

**FISHER PARTIES' OBJECTIONS TO REPORT AND RECOMMENDATION**

Ian Shapiro
Reed A. Smith
COOLEY LLP
55 Hudson Yards
New York, New York  10001-2157
Telephone:  (212) 479-6000

and

William G. Bauer, Esq.
WOODS OVIATT GILMAN LLP
700 Crossroads Building
2 State Street
Rochester, New York 14614
Telephone:  (585) 987-2800

*Attorneys for Brian J. Gershengorn*
*and Melissa J. Osipoff*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................ 1

FACTUAL BACKGROUND ........................................................................... 2

1. The underlying lawsuit and the preparation of an accurate class list .................. 2

2. Renewed Motion for Sanctions, Ignite's Bankruptcy and Class Settlement ........ 6

3. The Metzger Declaration, the June 6, 2018 hearing, and the Osipoff Declaration ............................................................................................. 7

4. The October 25, 2018 Evidentiary Hearing ................................................. 8

5. The November 6, 2018 Order to Show Cause ............................................. 11

6. The Report & Recommendation ............................................................... 11

OBJECTIONS ........................................................................................... 13

I. THE COURT'S IMPOSITION OF FEES RELATING TO THE MAY 17, 2016 ORDER IS IN ERROR ............................................................................. 13

II. THE COURT'S IMPOSITION OF SANCTIONS BASED ON THE METZGER DECLARATION AND MAY 15 MEMORANDUM IS IN ERROR .......................... 16

A. The R&R impermissibly sanctions the Fisher Parties based on representations of which they received no notice ................................. 16

1. The OTSC was the only specific notice provided with respect to any sanctioned representation ............................................ 16

2. The R&R improperly relies on ostensible misrepresentations for which no notice was provided ............................................. 18

B. The R&R's Findings Of Misrepresentations Made In Subjective Bad Faith For An Improper Purpose Are Error ...................................... 19

1. The noticed statements were not misleading in their actual context ....... 21

2. The noticed statements were not "without color" ................................... 25

3. The noticed statements were not made in bad faith with the intent to mislead .................................................................... 26

4. The Effect of the R&R's Impermissible Reliance on Non-Noticed Statements ...................................................................... 28

III. THE SCOPE OF THE R&R'S RECOMMENDED AWARD OF FEES AND COSTS IS IN ERROR ............................................................................. 29

CONCLUSION ........................................................................................... 30

CERTIFICATION PURSUANT TO LOCAL RULE 72(C) ...................................... 31

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Ames Dep't Stores, Inc.*,
  76 F.3d 66 (2d Cir.1996).................................................................16

*Eisemann v. Greene*,
  204 F.3d 393 (2d Cir. 2000)............................................................20

*Enmon v. Prospect Capital Corp.*,
  675 F.3d 138 (2d Cir. 2012)..................................................... *passim*

*Goodyear Tire & Rubber Co. v. Haeger*,
  137 S.Ct. 1178 (2017)....................................................................29

*Kiobel v. Millson*,
  592 F.3d 78 (2d Cir. 2010) (Cabranes, J. concurring) .....................13, 26

*Kleehammer v. Monroe County*,
  2013 WL 1182968 (W.D.N.Y. March 20, 2013)...................................20

*Macolor v. Libiran*,
  2015 WL 1267337 (S.D.N.Y. March 18, 2015) ..................................20

*McCune v. Rugged Entm't, LLC*,
  2010 WL 1189390 (E.D.N.Y. 2010).................................................20

*Oliveri v. Thompson*,
  803 F.2d 1265, 1273 (2d Cir. 1986).................................................19

*Rankin v. City of Niagra Falls*,
  293 F.R.D. 375 (W.D.N.Y. 2013)................................................20, 26

*Revson v. Cinque & Cinque, P.C.*,
  221 F.3d 71 (2d Cir. 2000)..........................................................20, 21

*S.E.C. v. Smith*,
  710 F.3d 87 (2d Cir. 2013)..............................................................20

*Schlaifer Nance & Co. v. Estate of Warhol*,
  194 F.3d 323 (2d Cir. 1999)......................................16, 19, 20, 26

*Sierra Club v. U.S. Army Corps of Engineers*,
  776 F.2d 383 (2d Cir. 1985)............................................................19

## TABLE OF AUTHORITIES
### (continued)

**Page**

*StreetEasy, Inc. v. Chertok*,
   752 F.3d 298 (2d Cir. 2014)........................................................................................16

*Ted Lapidus, S.A. v. Vann*,
   112 F.3d 91, 96 (2d Cir. 1997)....................................................................................16

*Johnson ex rel. U.S. v. The Univ. of Rochester Med. Ctr.*,
   715 F.Supp.2d 427 (W.D.N.Y. 2010) .......................................................................20

*United States v. Seltzer*,
   227 F.3d 36 (2d Cir. 2000)..........................................................................................19

**Statutes**

28 U.S.C. § 1927.................................................................................................17, 19, 20

**Other Authorities**

Fed. R. Civ. P.
   11...............................................................................................................13, 20, 26
   11(b).............................................................................................................7, 17
   16(f)......................................................................................................14, 15, 16
   16(f)(2)...............................................................................................................15
   72(a).................................................................................................................13
   72(b)(2)...............................................................................................................13
   72(b)(2)-(3) .......................................................................................................13

## PRELIMINARY STATEMENT

Brian Gershengorn and Melissa Osipoff (the Fisher Parties), attorneys with Fisher & Phillips LLP, by their counsel, respectfully submit these Objections to a Report and Recommendation (the R&R) imposing sanctions for statements that the R&R finds to have been misleading.  The disputed statements were contained in motion papers filed on behalf of the Fisher Parties in opposition to Plaintiffs' motion for sanctions.  They concern the Fisher Parties' knowledge of their client's efforts to compile a list of putative class members—a matter that gave rise to protracted litigation, including motions for sanctions.  In the R&R, the Court rejected all of the Plaintiffs' allegations of misconduct with respect to the provision of the class list.  But the Court has recommended sanctioning the Fisher Parties for statements made about that conduct, in their defense of the sanctions motion, ostensibly in bad faith.

Judicial findings of bad faith against an attorney are matters of the utmost seriousness. The legal standards that must be satisfied before a Court may find that counsel acted in bad faith are restrictive, demanding "clear evidence" of conduct "so completely without merit as to *require* the conclusion that the conduct *must* have been undertaken for some improper purpose." *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012).  Here, the record does not evidence bad faith, but rather the Court's misreading of the limited purpose for which the Fisher Parties offered the disputed statements.  When the Fisher Parties understood how the Court was reading those statements, the Fisher Parties promptly supplemented the record and corrected the misunderstanding.  But the Court nevertheless proceeded to impose sanctions by reading the statements out of context and without regard to the purpose for which they were offered.  When the statements are read in the context in which they were offered, they are not misleading.  To the contrary, the R&R found that the facts they were offered to establish were true.

1

Under these circumstances, the Court erred in finding that the statements were offered for an improper purpose and the recommended sanctions were impermissible as a matter of law.

## FACTUAL BACKGROUND

### 1.    The underlying lawsuit and the preparation of an accurate class list

In August 2013, Plaintiffs sued Defendants Crab Addison, Inc., d/b/a Joe's Crab Shack, and Ignite Restaurant Group, Crab Addison's parent, as well as Raymond A. Blanchette, Kevin Cottingim, and Rodney Morris.  The lawsuit was brought on behalf of a proposed class of Joe's Crab Shack tipped employees who were paid a subminimum wage, and alleged violations of the Fair Labor Standards Act and related state laws.

On January 27, 2015 the Court conditionally certified the case as a collective action under the FLSA (the "Notice Order"), and in March 2015 Defendants produced a list of putative class members.  (R&R at 5.)  At the time the Defendants produced the March list, they were represented by Epstein Becker.  (*Id.* at 6.)  In June 2015, Plaintiffs raised concerns about the accuracy of the March list.  (*Id.* at 7.)  By that time, Brian Gershengorn and Melissa Osipoff, who were then lawyers at Ogletree Deakins, had substituted for Epstein Becker.  (*Id.* at 6-7.)   In July 2016, they left Ogletree Deakins for Fisher & Phillips, which is where they practice today. (*Id.* at 7 n.6.)

Gershengorn and Osipoff investigated Plaintiffs concerns, and on July 17, 2015 they produced a new list.  (*Id.* at 7-9.)  In mid-March, 2016 Plaintiffs' counsel informed Defendants that they believed that the July 2015 list had wrongly excluded 15 individuals.  (*Id.* at 9.)  Based on the identification of those 15 individuals, Plaintiffs filed a motion on March 22, 2016 to compel Defendants to provide the basis for not including the missing individuals, to produce a supplemental class list, and to request "a hearing date to determine appropriate sanctions."  (#

326 at 1.)  Defendants promptly agreed to "determine if there are any other putative class members who were inadvertently left off of the [July 2015 list]" and to "provide a supplemental class list."  (# 340 at 13.)  In reply, Plaintiffs asked the Court to compel defendants to produce a "witness for deposition who has knowledge of the compilation of the July 17, 2015 list." (#342 at 1.)  Plaintiffs explained that the purpose of the deposition was to "verify whether the new class list [was] accurate" and to "determine why errors were made in the past."  (*Id.* at 8.)

That was the Court's focus as well at oral argument on Plaintiffs' motion on May 17, 2016.  Judge Payson explained that her "principle [sic] focus [was] in getting a list that is accurate and reliable as possible," and she directed Defendants to "produce a corporate representative who could testify on the following subjects:  [h]ow the list [was] put together.  How many mistakes are there on the list?  What caused the mistakes?  How have those mistakes been rectified?  Is the list now accurate?  What is the degree of confidence in that – in that accuracy?"  (# 349 at 15-17.)  The Court then set a hearing date of June 6 for a representative of Ignite to provide that testimony. (*Id.* at 19.)  The Court further explained that the purpose of having a witness testify about those subjects – "how the July list was compiled, the cause of the mistakes, and whether or not the mistakes had been rectified"—was to ensure the list would be correct.  (*Id.* at 18.)

Four business days after that order, Gershengorn and Osipoff called Plaintiffs' counsel to let them know that the only person with any detailed knowledge of the July 2015 list was no longer with the company and not under Defendants' control.  (# 359-13 at 5-10.)  They also called Judge Payson's chambers to ask the Judge how she wanted them to proceed given the lack of a suitable corporate representative.  (*Id.*)  Judge Payson's clerk informed them that the Judge was out for the remainder of the week, they should write to the Court, and the Judge would likely

3

schedule a conference on her return.  (*Id.*)  On May 25, Gershengorn wrote the Court explaining that they had "confirmed with [their] client that the only person with any detailed knowledge of the [July 2015] list is no longer with the company and thus is not under Defendants' control," and requesting a telephone conference to discuss how to proceed with respect to the upcoming June 6, 2016 hearing in the absence of suitable corporate representative.  (# 359-13 at 2-3.)

The Court scheduled a conference call for June 1, 2016.  Gershengorn reported that Ignite's former General Counsel, Robyn Martin, was the only Ignite employee involved in the creation of the July 2015 list, that she was no longer with the company, and was unavailable to testify.  (R&R at 11.)  Gershengorn also reported that, based on the Fisher Parties' investigation, the July 2015 list was unreliable, and therefore, Osipoff had taken responsibility for preparing a new list.  (R&R at 11.)

In response to Gershengorn's disclosures, the Court decided that the subject of the June 6 hearing would no longer be the source of the errors in the July 2015 list but how Osipoff was preparing the new list to ensure its accuracy.  (*Id.* at 55; # 353 at 10: 9-12.)  The Court recalls that Gershengorn agreed to make Osipoff available to testify about how she was ensuring that the new list would be accurate.  (R&R at 11-12.)  Gershengorn and Osipoff recall that the Court ordered Osipoff to testify on that subject and to provide a declaration prior to testifying.  (*Id.*)  On June 2, Gershengorn wrote the Court to provide the declaration the Court requested, and stated she would be "prepared to testify . . . on the limited issue of the process being used to create the corrected class notice list." (# 359-14 at 2; R&R at 12.)

Shortly after confirming that Osipoff would testify, Defendants became concerned that Osipoff would be subject to cross-examination about her communications with Ignite relating to the July 2015 list, and that Plaintiffs' counsel would use the opportunity to induce a broader

waiver of Ignite's privilege.[1]  (# 359-16 at 3-4.)  Therefore, on June 3, at the express direction of Ignite's in-house counsel Leslie Oguchi, Gershengorn wrote Judge Siragusa to request a stay of Judge Payson's perceived order directing Osipoff to testify about the creation of the new list.  (*Id.*)  On June 5, Judge Siragusa denied Defendants' application because the docket did not reflect an order.  (# 359-19.)

The next day, Judge Payson convened the June 6 hearing.  Judge Payson confirmed that her original intent had been to have a corporate representative testify about the preparation of the July 2015 list, the source of the errors on that list, and whether or not the errors had been corrected (# 353 at 4-5),  and also confirmed that the focus of the hearing had changed to the preparation of the new list.  (*Id.* at 24-25; R&R at 55.)  Judge Payson also clarified that she had not ordered Osipoff to testify at the June 6 hearing but understood that Defendants would make her available.  (# 353 at 8, 23.)  Judge Payson expressed frustration that the Fisher Parties did not object on the June 1 call to producing Osipoff as a witness, but she was unwilling to order Osipoff to testify without first receiving briefing on whether or not Osipoff's anticipated testimony was privileged, which she ordered.  (*Id.* at 13-14, 21-24.)

Before the Court decided that issue, in August 2016, Defendants produced a third class list.  (R&R at 13.)  Judge Payson then modified the existing May 17 order in favor of a new order directing a supervised Rule 30(b)(6) deposition on the new list.  (*Id.*)  The Fisher Parties prepared Ignite's Vice President for Human Resources, Lisa Moore, to testify on the creation of the new August 2016 list, and the Court found that "Moore's testimony and declarations"

---

[1] Ignite's heightened concerns about the privilege were precipitated by Plaintiffs' letter to Judge Siragusa, also on June 2, misrepresenting the scope of Osipoff's anticipated testimony and suggesting that Osipoff would also be testifying about the "inaccuracy of the [July] list."  (# 351.)

provided "reasonable assurance that the methodology employed by defendants to prepare the August 2016 class list would produce an accurate class list and avoid the significant errors that permeated the prior lists." (*Id.* at 13-16.)

## 2.    Renewed Motion for Sanctions, Ignite's Bankruptcy and Class Settlement

While the Fisher Parties prepared the new, accurate August list, Defendants also moved for reconsideration of Judge Payson's June 2016 order setting a date for a sanctions hearing on the ground that Plaintiffs had not provided "sufficient notice of the challenged conduct, the relief sought, or the legal bases for the sanctions." (# 432 at 10.)  The Court agreed, holding that notice of sanctions must include, "at the very least," "an identification of the particular statements by reference to page and line number," and ordered Plaintiffs to amend parts of their notice of sanctions. (*Id.* at 12.)

Plaintiffs filed an amended notice of sanctions on March 10, 2017, and a renewed motion for sanctions on March 31. (## 439, 455.) The renewed motion sought sanctions against Defendants and their counsel for failure to produce an accurate list in a reasonable period of time; their "conduct . . . in addressing and remedying the class list issues as well as [their] filings and pleadings regarding the class list;" and their "failure to have a witness testify at the July 6, 2016 hearing." (# 455-1.)

Further consideration of the motion was deferred by Ignite's petition for bankruptcy filed June 6, 2017. (# 485.)  In the bankruptcy case, Plaintiffs settled their underlying FLSA claim for $700,000, and Plaintiffs' counsel received $280,000 of that amount as attorneys' fees. (# 546-1 Exs H, I at 128-29 ¶ 5, 132 ¶ 9.)  Plaintiffs' settlement also released Ignite from the claim for sanctions. *Id. at* 131 ¶ 8.)

But Plaintiffs reserved sanctions claims against the Fisher Parties. (*Id.*)  After the case settled, Plaintiffs renewed their motion for sanctions against the Fisher Parties relying

exclusively on the notices of sanctions (original and amended) they had filed a year earlier, in March 31, 2017.  (# 544.)

### 3.    The Metzger Declaration, the June 6, 2018 hearing, and the Osipoff Declaration

In response to Plaintiffs' renewed motion against the Fisher Parties alone, the Fisher Parties retained William G. Bauer, formerly a magistrate judge in this District, to represent them in opposing the motion.[2]  Under Judge Bauer's signature, the Fisher Parties submitted their memorandum in opposition to Plaintiffs' renewed motion on May 15, 2018.  (# 546.)[3]  Their opposition brief relied extensively on a declaration by Steve Metzger, Ignite's General Counsel from July 2016 until December 2017.  (# 546-1, Ex A.)  The Fisher Parties relied on the Metzger Declaration to explain that Ignite was responsible for the errors in the March and July 2015 class lists and that Ignite's General Counsel, Robyn Martin, was the only individual at Ignite with knowledge of the July 2015 list who could have testified as Ignite's corporate representative at the June 6, 2016 evidentiary hearing.  (# 546.)  Metzger also explained that Martin's employment with Ignite ended shortly before the June 6, 2016 hearing, that she did not respond to attempts to contact her, and therefore, "there was nobody else at Ignite who could" testify at the June 6, 2016 hearing.  (# 546 at 14.)

The Court held oral argument on Plaintiffs' renewed motion on June 6, 2018.  At the argument the Court let the Fisher Parties know that, as a result of the Metzger Declaration, she had now developed concerns about whether the Fisher Parties had discharged a perceived duty to

---

[2]   Plaintiffs also continued to pursue the Epstein Becker firm regarding the errors in the first class list, before the Fisher Parties began representing Ignite.

[3]   By signing the May 15, 2018 memorandum, Judge Bauer, who had been retained in January, certified that to the best of his knowledge, information and belief formed after an inquiry reasonable under the circumstances, that the factual contentions in his memorandum had evidentiary support and were not being presented for an improper purpose.  Fed. R. Civ. P. 11(b).

supervise the preparation of the July class list.  (# 557 at 53, 56-57).  This was the first time that

either the Court or Plaintiffs had suggested that the Fisher Parties could be sanctioned for failing

to diligently supervise their client's work on the class list.  Recognizing that the record had not

been developed on this point, Judge Payson asked the Fisher Parties' counsel to provide evidence

of the Fisher Parties' "involvement in the process."  (*Id.* at 56-57.)  Judge Payson did not ask the

Fisher Parties or their counsel to describe their involvement *at* the oral argument.[4]  Rather, Judge

Payson said her intention was to place the Fisher Parties on notice that the Court was inferring

that they were not as involved as they should have been in the preparation of the list and that she

would, therefore, entertain applications to supplement the record.  (*Id.* at 57, 62-64, 87.)  As the

Court had suggested, the Fisher Parties offered supplemental evidence, on July 26, through the

declaration of Osipoff, which describes how Osipoff supported Martin by answering questions as

Martin prepared the July 2015 list and then also vetted a draft of the list shortly before producing

it to Plaintiffs. (# 560.)

### 4.    The October 25, 2018 Evidentiary Hearing

Plaintiffs moved to strike Osipoff's declaration, and the Court denied their motion

provided that the Fisher Parties made Metzger and Osipoff available for cross-examination by

Plaintiffs.  (# 567.)  Both of them appeared to defend their declarations at an evidentiary hearing

on October 25, 2018.  (# 575).

On Plaintiffs' examination of Metzger, counsel asked him about the statement in

paragraph 21 of his declaration that "[Osipoff] didn't have any knowledge about the creation of

---

[4]  The Court also acknowledged that the information she was seeking might implicate Ignite's
attorney-client privilege, and Judge Bauer confirmed that he believed that the Fisher Parties were
constrained by the attorney-client privilege from describing their communications with their
client about the preparation of the July list and their investigation of the errors in the list after
March 2016. (# 557 at 55, 60-65, 85.)

the July 215 Class Notice List."  (# 575 at 38: 15-17.)  Metzger explained that his "understanding was that she was not involved with gathering the information for the first two class lists." (*Id.* at 38: 18-22.)[5]  Likewise, on Plaintiffs' examination of Osipoff, she confirmed that she was not involved in the process of compiling or preparing the July 2015 list.  (*Id.* at 52: 4-13.)  She did not know what data Martin used to compile the July 2015 list, and she never discussed with Martin the process used to compile the list.  (*Id.* at 63: 20-64: 1).

Plaintiffs' counsel then asked Osipoff to describe the support she provided to Martin while Martin was compiling the July 2015 list.  (*Id.* at 67: 23-68: 3.)  Judge Bauer objected to the question as requiring Osipoff to disclose privileged communications.  (*Id.* at 68: 11-12.)  But the Court overruled the objection and directed Osipoff to describe the oversight and support described in paragraph 6 of her declaration.  (*Id.* at 68: 13-22.)  Osipoff explained that she answered Martin's questions relating to whether or not certain individuals should be included in the class.  (*Id.* at 68: 23-69: 6.)  She confirmed that the questions she was asked did not relate to the process Martin used to identify the individuals who should be included in the class.  (*Id.*)  Plaintiffs' counsel also asked Osipoff to describe the steps she took to vet the accuracy of the proposed July 2015 list, as described in paragraph eight of her declaration.  (*Id.* at 69: 12-13.)  Osipoff expressed her concern that describing the vetting would disclose privileged communications, but the Court directed her to describe the vetting.  (*Id.* at 69: 19-23.)  Osipoff explained that she supervised a paralegal who ran reports on the list provided by Ignite to

---

[5]  When asked whether defense counsel had any further involvement in the creation of the July list beyond providing the list to Plaintiffs' counsel, Metzger said that he did not have any knowledge of counsel's further involvement and that Plaintiffs' counsel should ask Osipoff about that.  (# 575 at 38: 23-39: 5.)

determine "[w]ho was included?  What positions were they in?  What stores did they work at?[6]

We also just looked generally at the fact of the document. Do dates make sense?  You have hire

date, termination date.  Do those dates make sense?"  (*Id.* at 69: 24-70: 8.)  She also compared

the July list to the original March 2015 list to develop an understanding of who was no longer on

the list.  (*Id.* at 76: 2-6.).  In sum, Osipoff described running reports to identify anomalies in the

list, which she then communicated to Martin for further consideration.  Thus, when asked to

address Metzger's statement in paragraph 21 of his declaration that Osipoff "had no knowledge

about the creation of the July 2015 class notice list," Osipoff explained that she did not believe

her vetting amounted to knowledge of how the list was created.  (*Id.* at 104: 2-105: 11.)

When the witness examination concluded, the Court expressed its concern about the

statement in paragraph 21 of Metzger's declaration that Osipoff had no knowledge of the

creation of the July 2015 list:

> The concern is whether there was a statement that was submitted to the Court.
> You know, I have no knowledge.  Therefore, there's no basis to sanction
> attorneys.  It's purely a company issue.  Then I raise the question of, well you
> have some diligence and obligation.  And then I get an affidavit that says well,
> actually, I was overseeing it.  I was answering questions.  I was vetting it.  There
> were changes that were made.  And I think it fairly raises the question of how that
> squares, that testimony squares with a statement that I have no knowledge of the
> creation of the class list.

(*Id.* at 112: 5-15.)  She also invited Plaintiffs' counsel and the Fisher Parties to submit additional

briefs addressing that concern.  (*Id.* at 109, 111-112.)

---

[6]  Osipoff explained that they identified the fact that the list was missing the employees from one store, although she could not recall whether Martin had already identified that omission by the time she had uncovered it.  (# 575 at 73: 2-23.)

5.       **The November 6, 2018 Order to Show Cause**

Shortly after the hearing, the Court issued an Order to Show Cause (the OTSC), to "ensure that the Fisher Interested Parties are fully aware of both the conduct and legal authority at issue and that they have an opportunity to be fully heard before a decision is rendered." (#580 at 3 n1.)  The OTSC identified eight specific statements for which the Court was considering imposing sanctions.  First, the Court identified the same statement in paragraph 21 of the Metzger Declaration that Osipoff "had no knowledge about the creation of the July 2015 Class Notice List." (*Id.* at 1.)  Then the Court identified seven additional statements, five of them dated before the bankruptcy and settlement of the underlying claim.  (*Id.* at 2-3.)  The remaining two statements were from Defendants' May 15, 2018 Memorandum in opposition to Plaintiffs' renewed sanctions motion, and each relied on portions of the Metzger Declaration.  (*Id.* at 3.)

The OTSC also explained that the statements it had identified were in addition to the Notice and Supplemental Notices of sanctions provided by the Plaintiffs in July 2016 (# 371-1) and March 2017 (# 439).  (*Id.* at 3 n1.)

6.       **The Report & Recommendation**

The R&R addressed three types of conduct for which the Plaintiffs sought sanctions against the Fisher Parties:  (1) the Fisher Parties' alleged repeated non-compliance with Judge Siragusa's Notice Order; (2) their alleged false and misleading representations to the Court about the class lists; and (3) their failure to produce a witness to testify at the June 6, 2016 court-ordered hearing.  (R&R at 36).

Regarding the first type of conduct, the court held that there was no basis for sanctioning the Fisher Parties for the March 2015 list because it was produced before the Fisher Parties entered their notice of appearance.  (*Id.* at 47.)  She also held that there was no basis for sanctioning the Fisher Parties for the July 2015 list and the delay in producing the corrected

August 2016 because she found that the Fisher Parties "acted with sufficient diligence to ensure that an accurate list would be produced." (*Id.* at 53.)

Regarding the third type of conduct, the Court found that the Fisher Parties did not disobey a court order because the May 17, 2017 Order scheduling the June 6th hearing required a "company witness with meaningful knowledge of the compilation of the July 2015 class list." The Court agreed with the Fisher Parties "that the record before the Court . . . demonstrates that the only Ignite representative with that personal knowledge was its former General Counsel [Martin], who was no longer with the company and not cooperating with it." (*Id.* at 56-57.) Thus, the Court concluded that the only "reasonable response under the circumstances was to advise the Court that no company witness with meaningful knowledge could be produced by Ignite, and the Fisher Parties did that." (*Id.* at 57.)

Nevertheless, the Court found that "Gershengorn and Osipoff should have acted with greater dispatch to learn and notify the Court that no witness was available," and concluded this conduct was "sufficiently remiss to warrant an order requiring them to reimburse plaintiffs' counsel for their attorneys' fees and costs incurred from May 17, 2016, through June 6, 2016, to prepare and attend the hearing. (*Id.* at 58.)

The Court then addressed the second type of conduct and found that none of the conduct or representations cited by Plaintiffs in their Notice or Amended Notice of Sanctions warranted sanctions. (*Id.* at 73.) With respect to the eight representations identified in the Court's own OTSC, the Court did not even address six of them.[7]

---

[7]   The Court did not address any of the representations dated before the bankruptcy and settlement of the underlying claim.

The only representations in the OTSC for which the Court imposed sanctions were the statement in paragraph 21 of the Metzger Declaration that "Ms. Osipoff had no knowledge about the creation of the July 2015 Class Notice List" and the statement in the Fisher Parties' May 15, 2018 memorandum that Gershengorn and Osipoff "only had knowledge of efforts to create a new[,] [third] list from scratch." (*Id.* at 65, 67.)

While the R&R also discusses and refers to other statements in the Metzger Declaration and the Memorandum, none of those other statements were identified in the OTSC. (# 582 at 17-21, 66-67.)

## **OBJECTIONS**[8]

## I. THE COURT'S IMPOSITION OF FEES RELATING TO THE MAY 17, 2016 ORDER IS IN ERROR

Plaintiffs' Notice of Sanctions sought sanctions for the Fisher Parties' failure to have a witness testify at the scheduled June 6, 2016 hearing. (371-1 at 2.) The court denied Plaintiffs' request for sanctions on this basis.

The Court held that it could not find that the Fisher Parties disobeyed the May 17, 2016 Order because that Order required a "company witness with meaningful knowledge of the

---

[8] The standard of review for the R&R is de novo because the R&R was expressly written as a recommended disposition and assumes a right to de novo review. Under a plain reading of Rule 72(b)(2)-(3) if, as here, the magistrate's order takes the form of a recommended disposition, then review is de novo. Even if Judge Payson had not issued a recommendation, review would be de novo because the matters decided are properly classified as dispositive matters for purposes of Rule 72(b)(2). *See, e.g., Kiobel v. Millson*, 592 F.3d 78, 85 (2d Cir. 2010) (Cabranes, J. concurring) (approving sister-circuit holdings that Rule 11 sanctions are dispositive matters for purpose of magistrate judge jurisdiction). Moreover, as the R&R properly notes, given the lack of authority in this Circuit on the scope of a magistrate's jurisdiction to sanction on the bases invoked in this case, courts have wisely elected to proceed with due caution and apply de novo review. (R&R at 5 n4.) Even if de novo review were not applicable, for the reasons detailed in the main text, the sanctions recommended in this case are "clearly erroneous" and are "contrary to law" both substantively and procedurally. Fed. R. Civ. P. 72(a).

compilation of the July 2015 class list," and the court agreed that the "only Ignite representative with that personal knowledge was its former General Counsel who was no longer with the company and not cooperating with it."  (R&R at 56-57.)  The Court further found that the Fisher Parties acted reasonably by advising the Court that "no company witness with meaningful knowledge could be produced by Ignite."  (*Id.* at 57.)

Nevertheless, the Court also found that "Gershengorn and Osipoff should have acted with greater dispatch to learn and notify the Court that no witness was available." Based on that lack of "dispatch," the Court awarded Plaintiffs' counsel their "attorneys' fees and costs incurred from May 17, 2016 through June 6, 2016, to prepare for and attend the hearing." (*Id.* at 57.)

The Court's legal basis for awarding Plaintiffs' counsel their fees and costs was Rule 16(f).  (*Id.* at 58.)  Rule 16(f) authorizes sanctions when a lawyer (A) fails to appear at a scheduling or other pretrial conference; (B) is substantially unprepared to participate – or does not participate in good faith – in the conference; or (C) fails to obey a scheduling or other pretrial order.  In this case, the Court's imposition of fees pursuant to Rule 16(f) is in error because the Fisher Parties never received notice of the conduct for which the Court awarded fees and costs, and the conduct for which the Court imposed the fees does not fall within any of the bases for imposing sanctions under Rule 16(f).

Notice of sanctions requires notice of the "specific conduct or omission for which sanctions are being considered," and the conduct must be "explicitly referred to in the instrument providing notice."  *See* Point II(A), *infra*.  Here, Plaintiffs' notice of sanctions only provided notice that they were seeking sanctions for the Fisher Parties' failure to have a witness testify at the June 6, 2016 hearing.  But the Court found that the Fisher Parties did not disobey the May 16, 2016 Order, or any other order, in failing to have a witness at the June 6, 2016 conference.

Instead the Court recommended sanctions based solely on the Fisher Parties' failure to act with "greater dispatch" to notify the Court that there was no company witness available to testify at the June 6 hearing.  Since the Fisher Parties never received specific notice of that allegation, the Court's recommendation was in error.

Moreover, even if Plaintiffs or the Court had provided notice that a lack of dispatch could be a basis for awarding fees and costs, the Court's decision would be in error because the Fisher Parties' alleged lack of dispatch is not a basis for imposing sanctions under Rule 16 (f).  The Fisher Parties did not fail to obey a court order (16(f)(1)(C)), and any "lack of dispatch" did not amount to a failure to appear at the June 6 conference (16(f)(1)(A)), or a failure to participate in the conference (16(f)(1)(B)).

Moreover, Rule 16(f)(2) provides that even if the sanctioned party failed to comply with a court order, which is not the case here, sanctions are unwarranted if the party's non-compliance was substantially justified.  Here it was not unreasonable for the Fisher Parties to confer with their client before confirming with the Court that there was no corporate representative available to testify about the how the July 2015 list was compiled.  Even if Gershengorn and Osipoff had reason to believe that no one other than Martin would be able to testify on Ignite's behalf and had reason to believe that she was unavailable, they had not been asked to represent those facts to the Court before the Court asked them to produce a witness at the May 17 conference. Therefore, like most reasonably prudent lawyers, they would have waited until they could confirm their understanding with their client to let Plaintiffs and the Court know that there was no corporate representative available to testify.  Under those circumstances, the Fisher Parties

submit that the delay of four business days was substantially justified and does not represent the kind of disregard of scheduling orders that Rule 16(f) is intended to address.[9]

## II.   THE COURT'S IMPOSITION OF SANCTIONS BASED ON THE METZGER DECLARATION AND MAY 15 MEMORANDUM IS IN ERROR

### A.   The R&R impermissibly sanctions the Fisher Parties based on representations of which they received no notice

The R&R bases its recommendation in part on representations for which no notice was provided, which is contrary to law.  Although, as discussed below, the additional representations are no more sanctionable than the noticed representations, this Court's review should be confined to those statements to which the Court specifically ordered the Fisher Parties to respond.

#### 1.   The OTSC was the only specific notice provided with respect to any sanctioned representation

"'[D]ue process requires that courts provide notice and opportunity to be heard before imposing *any* kind of sanctions.'"  *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997) (quoting *In re Ames Dep't Stores, Inc.,* 76 F.3d 66, 70 (2d Cir.1996)).  The subject of potential sanctions must receive notice of both:  "(1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered."  *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999).  "[O]nly conduct explicitly referred to in the instrument providing notice is sanctionable."  *Id.*; *accord StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 310 (2d Cir. 2014) (vacating award of

---

[9]  Even if an award of fees were appropriate for the Fisher Parties' lack of dispatch, the period for which fees and costs should be awarded would be the period from May 17, at the conclusion of the conference, to May 23, when the Fisher Parties notified Plaintiffs that there was no corporate representative available to testify.  Their lack of dispatch between May 17 and May 23 could not have the been cause of any of the fees Plaintiffs incurred after that date. (*See* Point IV, *infra*.)

sanctions to the extent it relied on conduct beyond that specified in the instrument that provided notice.).

Judge Payson invoked the legal standard repeatedly.  Among other things, in ruling on the motion for reconsideration, she correctly required plaintiffs to amend their original notice of sanctions to spell out specific conduct, including "the particular statement[s]" that they alleged to be sanctionable, by reference to page and line number.  (# 432 at 11-12).  Consistent with the Court's application of the correct legal standard, in the OTSC, the Court identified eight specific statements for which the Court was considering sanctions "for misrepresentations made to the Court," quoting the specific language at issue and citing the record.  (# 574 at 1.)  Underscoring the limited and specific scope of the notice, the OTSC concludes by specifically directing the Fisher Parties to show cause "why the representations *identified above* did not violate Rule 11(b) of the Federal Rules of Civil Procedure and why sanctions based upon those representations are not otherwise warranted pursuant to 28 U.S.C. § 1927 and/or this Court's inherent powers."  (*Id.* at 3) (emphasis added).

The R&R only discusses representations in the Metzger Declaration and the Fisher Parties May 15, 2018 Memorandum in Opposition to Plaintiffs sanctions motion (the Memorandum).  Thus, unless a statement in the OTSC is either from the Metzger Declaration or the Memorandum, the statement is irrelevant to the present dispute.  Only one of the eight statements identified is from the Metzger Declaration (an excerpt from paragraph 21 quoted as "Osipoff 'had no knowledge about the creation of the July 2015 Class Notice List'") and only two are from the Memorandum (from pages 14 and 19 respectively). (*Id.* at 1, 3.)

The OTSC was the only instrument purporting to provide any notice  of potentially sanctionable statements in the Metzger Declaration or Memorandum.  Plaintiffs' Amended

17

Notice of Sanctions (# 439), was filed in March 2017, many months before the Fisher Parties submitted the Metzger Declaration and Memorandum and was never amended thereafter.[10] Thus, with respect to the Metzger Declaration and Memorandum, the only potentially sanctionable statements are the three statements specifically identified in the OTSC.

### 2. The R&R improperly relies on ostensible misrepresentations for which no notice was provided

While the OTSC identified only one statement from the Metzger Declaration, excerpted from paragraph 21, the R&R analyzes sanctions with respect to additional statements in the Declaration for which no notice was provided. The R&R relies not just on additional statements from paragraph 21, but on statements taken from paragraphs 20, 22 and 11-12 of the Declaration, which discuss separate subject matter. Likewise, with respect to the Memorandum, the R&R goes beyond the statements identified in the OTSC. While the R&R quotes one of the two noticed statement from the Memorandum ("'Counsel only had knowledge of efforts to create a new [,] [third] list from scratch.' (# 546 at 19)"), it goes on to discuss additional statements from pages 4-5 of Docket #546. (R&R at 67.) These additional statements were never identified as potentially sanctionable.

Notice for these additional statements was inadequate. The additional statements were not identified in the instrument providing notice, and they addressed different subject matter from the noticed statements in the Metzger Declaration and the memorandum, calling for a

---

[10]  The Order to Show Cause comments that Plaintiffs' reply brief on their motion to strike Osipoff's declaration provided "notice prior to the evidentiary hearing of Plaintiffs' contention that Osipoff's declaration was inconsistent with both Metzger's affidavit and previous statements made during the course of this litigation." (#574 at 3 n1; *see also* R&R at 34.) This is not notice of sanctions as required by the Court of Appeals, and the OTSC does not state otherwise. Notice that an adversary may characterize a party's position as inconsistent with the party's prior position, is neither specific notice that the adversary is seeking sanctions for specified misrepresentations, nor notice of the legal standards under which sanctions are sought.

different analysis to show why they were offered in good faith for a proper purpose.  The inadequate notice is underscored by the Fisher Parties' brief in response to the OTSC, where the Fisher Parties respond exactly as directed by the Court, addressing each of the eight statements for which the Court had ordered them to respond in turn, and no others.  (# 579 at 7-18.)

Accordingly, the R&R is in error insofar as it awards sanctions in reliance on statements for which the Fisher Parties received no notice.  The only statements this Court should consider as potentially sanctionable are those specifically identified in the OTSC.

**B.     The R&R's Findings Of Misrepresentations Made In Subjective Bad Faith For An Improper Purpose Are Error**

The R&R recommends sanctions under 28 U.S.C. § 1927 and this Court's inherent authority.  The standards for imposing sanctions on counsel under either of these two sources of authority are essentially the same (*see* R&R at 61).  *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) (explaining that § 1927 and inherent authority authorize standards against different classes of person, but under the same legal standard).

To impose sanctions pursuant to its inherent power or § 1927, a district court must find that the challenged actions or claims (1) are "'without a colorable basis,'" and (2) were taken "'in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay.'"  *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (quoting *Schlaifer*, 194 F.3d at 336).[11] "The test is conjunctive and neither meritlessness alone nor improper purpose will suffice." *Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383, 390 (2d Cir. 1985).

---

[11]  Where a court relies on its inherent power there is a narrow exception to the bad faith requirement, inapplicable here, for cases involving conduct towards the court on matters outside of counsel's role as an advocate.  *See United States v. Seltzer*, 227 F.3d 36 (2d Cir. 2000) (sanction imposed for counsel's failure to return timely to the courtroom).

Application of these tests is exacting.  Sanctions may not be imposed unless there is "clear evidence that the challenged actions are *entirely without color* . . . and [are taken] for . . . improper purposes," and a "high degree of specificity in the factual findings of [the] lower courts."  *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000) (internal quotation marks omitted).  The "threshold for colorability is low," *McCune v. Rugged Entm't, LLC*, 2010 WL 1189390, *4 (E.D.N.Y. 2010), and the standard of proof for bad faith is intentionally "restrict[ ]."  *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000).  "Bad faith may be inferred '*only* if actions are so completely without merit as to *require* the conclusion that they *must have* been undertaken for some improper purpose such as delay."  *Enmon*, 675 F.3d at 143 (quoting *Schlaifer*, 194 F.3d at 336.) (emphasis added).

Where sanctions are based on alleged factual misrepresentations, analysis of bad faith focuses on whether the disputed statements were made with the intent to mislead the court to obtain some advantage.  *See, e.g., Rankin v. City of Niagra Falls*, 293 F.R.D. 375, 379, 381 (W.D.N.Y. 2013) (Rule 11); *Macolor v. Libiran*, 2015 WL 1267337, * 4 (S.D.N.Y. March 18, 2015) (Rule 11 and inherent authority).  The types of statement that have incurred sanctions from this Court and in this Circuit, are unequivocal falsehoods uttered to obtain some litigation advantage, and thus giving rise to a strong inference of intent to mislead and bad faith.[12]

The record in this case cannot support the requisite findings that the Fisher Parties' conduct was "clear[ly] "entirely without color," "completely without merit," and "*must have*

---

[12]  *See, e.g., S.E.C. v. Smith,* 710 F.3d 87, 91 (2d Cir. 2013); *Kleehammer v. Monroe County*, 2013 WL 1182968 (W.D.N.Y. March 20, 2013); *Rankin* 293 F.R.D. 375 at 381; *Enmon*, 675 F.2d at 143; *Johnson ex rel. U.S. v. The Univ. of Rochester Med. Ctr.*, 715 F.Supp.2d 427, 430 (W.D.N.Y. 2010). Misrepresentation cases have frequently been decided under Rule 11's subjective bad faith standard.  In that regard, we note that Rule 11 lacks an express "improper purpose" element, and that there is disagreement over whether subjective bad faith under Rule 11 is defined as restrictively as bad faith under § 1927 and inherent authority, which is at issue here.

been undertaken for some improper purpose" in bad faith.  *See Enmon*, 675 F.3d at 143; *Revson*, 221 F.3d at 78.  The recommended sanctions are, therefore, impermissible as a matter of law.

### 1.    The noticed statements were not misleading in their actual context

#### a.    The Metzger Declaration Statement

The first noticed statement discussed in the R&R, excerpted from the Metzger Declaration at ¶ 21, says that "Osipoff 'had no knowledge about the creation of the July 2015 Class Notice List'." (# 574 at 1, R&R at 65.)  The subject of ¶ 21 is the June 1, 2016 conference call with the Court, and Ignite's subsequent determination that it would not be appropriate for Osipoff to testify at the June 6, 2016 hearing.  (# 546, Ex A at ¶ 21.)  As the R&R recites, the Court's May 17, 2016 order for the June 6 hearing required Ignite to produce "a company witness with meaningful knowledge of the compilation of the July 2015 class list."  (R&R at 56.)  Subsequently, "[b]ased upon representations made by the Fisher Parties [that no witness with meaningful knowledge of the compilation of the July 2015 List was within their control], the scope of the [June 6] hearing shifted to the preparation of a new class list by Osipoff."  (*Id.*)  The purpose of the June 6 hearing was explicitly *not* to evaluate sanctions with respect to the July 2015 Class List.  (*Id.* at 54-56.)

Thus, the motion for sanctions based on the events of the June 6 hearing implicated:  (1) the failure to produce a corporate witness with "meaningful knowledge of the compilation of the July 2015 class list," and (2) Ignite's decision that it would not produce Osipoff to testify about her work to create the third class list.  (As the Court understood and the Metzger Declaration states, the latter decision was rooted in concerns over attorney-client privilege.  (546-1, Ex A at ¶ 21.))

The noticed statement appears, in the following sentence of paragraph 21:

> Whether or not the Court Ordered Ms. Osipoff to testify, Ignite ultimately did not
> believe it was appropriate for Ms. Osipoff to testify about her efforts to correct the
> July 2015 Class Notice List - and *Ms. Osipoff had no knowledge about the
> creation of the July 2015 Class Notice List.*

From the face of the Declaration itself, it is clear (1) that the first two clauses of the sentence

(before the dash) address Ignite's concern that  Osipoff should not testify about her efforts to

prepare the third class list – the second subject of the June 6 hearing, and (2) that the final clause

addresses  Osipoff's lack of knowledge of the first subject of the hearing – the source of the

errors in the July 2015 List.  In this context, where "knowledge" is reasonably understood as

knowledge relevant to the cause of the errors in the list, it was not misleading to state that

Osipoff had "no knowledge" about the creation of the July 2015 List.  It is true that Osipoff did

not know how Ignite compiled the list and introduced the errors into the list, and that she

therefore could not have testified on the first subject of the June 6 hearing (or educated an Ignite

witness to testify), and the R&R does not find otherwise.  Thus, the final clause, which is the

clause for which the Court imposed sanctions, was intended to lead the Court to the truth that

Osipoff could not have provided meaningful testimony on the errors in the July list.

### b.        The Memorandum Statement

The other noticed statement discussed in the R&R, excerpted from the Memorandum of

Law (#546 at 19), was offered for an even narrower purpose than the sanctioned statement in the

Metzger Declaration.  It was offered expressly to rebut a single, specific contention at page 8 of

plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Sanctions  (the March 2017

Memorandum on which Plaintiffs relied exclusively in their renewed motion).  (# 455-1 at 12.)

There, Plaintiffs contended that, during the June 1, 2016 conference call with the Court,

"'defense counsel stated that Melissa Osipoff had understood what had happened' to cause the

errors on the July 2015 Class List." (# 546 at 19 (quoting plaintiffs' Mem. of Law # 455-1 at

12.))  The Fisher Parties' brief responded with the sanctioned statement.  (*Id.*)  Here is the

statement in the context in which it was offered:

> *Plaintiffs' contention (# 455-1 at 12 (Numbered page 8):*
>
> The Court held a telephone conference with counsel on June 1, 2016. Although defense counsel claimed no one currently at the company had personal knowledge of the creation of the list, defense counsel stated that Melissa Osipoff had understood what had happened and would also be overseeing the creation of the new list.
>
> *Fisher Parties' response (# 546 at 19):*
>
> [O]ne unsupported, and brazenly false, assertion made by Plaintiffs is that during the June 1, 2016 conference call "defense counsel stated that Melissa Osipoff had understood what happened" to cause errors in the July 2015 Class List (Dkt. 455-1, at p.8.)  This is, as the Court is aware, contrary to Defendants' repeated assertions (both on the June 1 conference call and since) that no one left under Ignite's control had knowledge of the July 2015 Class List (a fact confirmed by the Metzger Decl., ¶ 21), and that Defendants' Counsel only had knowledge of efforts to create a new list from scratch.

The first part of the statement, addressing Ignite's knowledge of the preparation of the

July 2015 Class is simply true – Ignite's former general counsel, Ms. Martin, was the only

person with such knowledge and was not under Ignite's control, and the Court agreed with that

conclusion.  (R&R at 56-57.)  The Court based its sanctions recommendation on the second part

of the sentence which states: "Defendants' Counsel only had knowledge of efforts to create a

new list from scratch."  Here again, the Fisher Parties were responding specifically to a specific

factual allegation which implied that  Osipoff could have testified about the source of the errors

in the July 2015 Class List.  In the context of the narrow, specific issue the Fisher Parties were

explicitly addressing, it was not misleading to say that counsel only had knowledge of efforts to

create the new third list.  Like the final clause of ¶ 21 of the Metzger Declaration, this statement

led to an accurate and truthful understanding of the fact that  Osipoff did not know the source of

the errors in the July 2015 List, and could only have provided meaningful testimony concerning the second subject of the June 6 hearing.

> **c.    The Court understood that the two noticed statements were susceptible to different interpretations and that the record might need supplementation**

The R&R never addresses the actual context in which the two noticed statements were offered, which is necessary to determine the Fisher Parties' specific purpose for offering the noticed statements.  To the contrary, the R&R interprets the noticed statements broadly, literally and out of context, as assertions that Osipoff knew *nothing at all* "about how the [July 2015] list was prepared," and thus as misrepresentations. (R&R at 69.)  Yet the record makes clear that the Court was aware that the statements need not be so interpreted and the Metzger Declaration was not necessarily a complete record of the Fisher Parties' involvement with the July list.

As the R&R explains, the Court informed the Fisher Parties at the oral argument, "citing the Metzger Declaration itself . . . that it reasonably inferred that the Fisher Parties had not been involved with the July 2015 class list," "clearly articulat[ing] its understanding from the Metzger Declaration" and "putting to rest" any doubt about how it was interpreting the declaration. (*Id.* at 67.)  Thus, the Court was letting the Fisher Parties know how it was interpreting the declaration because the Court understood that there could be uncertainty about how it was interpreting the declaration and, in effect, that the "reasonabl[e] infer[ence]" she was drawing was not the only inference that could be drawn.  In fact, she acknowledged that her "reasonable inferences could be wrong." (# 557 at 56.)

The Court also recognized that the record might be incomplete with respect to the inference she was drawing, and she expressly acknowledged that the record might be incomplete on the Fisher Parties' involvement because of the Fisher Parties' potential privilege and work product concerns.  (*Id.* at 60, 63-64.)  For these reasons, the Court concluded by stating that it

would "certainly entertain an application – to supplement the record." (*Id.* at 64.)  Osipoff's declaration then corrected the Court's misimpression that the Fisher Parties had nothing at all to do with the July list, while confirming their central contention that Osipoff had no knowledge of the source of *the errors* in the July list.

It is difficult to reconcile the Court's own awareness that the inference it was drawing from the noticed statements could be wrong and that the record might well be incomplete, as well as its willingness to invite the Fisher Parties to supplement the record, with the R&R's insistence that the noticed statements were misrepresentations.  If one possible inference from the Metzger Declaration was that the Fisher Parties "had not been involved" with the July list, it was at least as reasonable (if not far more plausible) to infer that the two noticed statements were directed to the narrower points that they were intended to address in context, and were never intended to describe every aspect of the Fisher Parties' involvement with the July list.  Because the noticed statements served a narrow, legitimate purpose when viewed in their proper context, they are more than "colorable," and they cannot serve as the basis for the required inference of bad faith.

### 2.    The noticed statements were not "without color"

The R&R does not explicitly analyze whether the noticed statements were "entirely without color."  They are not.  Conduct is "entirely without color" when it lacks any legal or factual basis. *Enmon*, 675 F.2d at 143.  The statements in this case had a substantial basis in fact – they were true in all respects relevant to the specific purpose for which they were presented. They can be misunderstood as misleading only if removed from the context in which they were offered and interpreted over-literally as categorical assertions that  Osipoff  knew *nothing at all* about the July list.  As such, they stand in sharp contrast to the unequivocally false and misleading statements that have incurred sanctions from this Court and in this Circuit.  *Cf.*

*Rankin,* 293 F.R.D. at 381 (counsel's representations in support of motions for extensions of time, that she had a substantive opposition to a summary judgment motion "lacked a colorable basis in fact," where she had not even reviewed the summary judgment motion); *Enmon*, 675 F.2d at 143 (counsel's representation in TRO application that TRO would merely "ensure the status quo is maintained," had no colorable basis where TRO would enjoin an undisclosed, pending federal action, making the TRO unlawful).

A factual statement is not "clear[ly]" "entirely without color," *Enmon,* 675 F.3d at 143, just because it can be read over-literally, out-of-context, as stating something false. If that were the standard, inadvertent errors and overstatements would routinely expose counsel to sanction for bad faith, chilling ordinary and permissible advocacy. *See Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010) ("Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement.") (quotation marks and citation omitted).

### 3.   The noticed statements were not made in bad faith with the intent to mislead

However the R&R tries to characterize the two noticed statements, there is nothing in this record to show bad faith, particularly when measured against the exacting standards the law demands. Nothing about the Fisher Parties' presentation or use of the noticed statements comes remotely close to *requiring* the conclusion that the Fisher Parties' "*must have*" acted in bad faith for an improper purpose. *See Enmon*, 675 F.3d at 143; *Schlaifer*, 194 F.3d at 336.

On their face, the noticed statements were offered for a limited and entirely legitimate purpose, as evidence and argument that  Osipoff lacked the requisite knowledge to testify about the errors in the July 2015 List, which was simply true.  (Point A, *supra.*)  Nor, contrary to any suggestion in the R&R, did the Fisher Parties make improper use of the noticed statements to mislead the court in briefing the sanctions motion.  (*See* R&R at 25.)  Paragraph 21 of the

Metzger Declaration, the source of the first noticed statement, is referred to three times in the Memorandum:  It is cited within the second noticed statement (the statement within the Memorandum), discussed in detail in Point II(B)(1)(b), *supra*; it is cited in the Memorandum's statement of facts as evidence of Ignite's inability to produce a witness in compliance with the May 17, 2016 Order (# 546 at 14); and it is cited as evidence that it was Ignite's decision to assert its attorney-client privilege with respect to Osipoff testifying about the third class list at the June 1, 2016 hearing.  (*Id.* at 21.)  All these uses are narrowly confined to the purpose for which the noticed statement and Paragraph 21 were offered on their face, confirming that the statements were *not* designed to promote any misleading inference and not offered in bad faith.

These facts preclude a finding that the statements *must have* been presented in bad faith, and preclude the imposition of sanctions.  That the statements could also be taken over-literally and out-of-context as suggesting something untrue does not come close to "requir[ing] the conclusion that they must have been" presented in bad faith with the intention to mislead.  *See Enmon*, 675 F.3d at 143.

The Fisher Parties' supplementation of the record to correct the Court's overly broad interpretation of their pleadings is additional, affirmative evidence of their good faith.[13]  The R&R appears to fault the Fisher Parties because "[w]hen the Court articulated that it understood the Metzger Declaration to state that the Fisher Parties had had no involvement [with the July list], they did not correct the Court's understanding of the facts."  (R&R at 70.) That criticism is unfair and is not supported by the record.  At the oral argument the Court made clear that it did

---

[13]  The Court acknowledges that if the Fisher Parties had disclosed their oversight and vetting, the "Court would have found that they had adequately discharged their obligations with respect to the two Orders central to the motion."  (R&R at 72).  The Court refers to that fact as "iron[ic]. (*Id.*)  But the Fisher Parties respectfully submit that that fact is further evidence that the Fisher Parties had no motive to conceal their oversight and vetting.

not want to hear about additional factual materials, but that it would entertain applications to supplement the record. (#557 at 55: 10-14, 64: 3-6.) The Fisher Parties should not be faulted for failing to speak up at the oral argument—where they were represented by counsel—when the Court had indicated that it wanted written submissions, and they made a detailed, sworn submission that corrected the Court's misunderstanding.[14]

### 4. The Effect of the R&R's Impermissible Reliance on Non-Noticed Statements

As discussed in Point I, the R&R's findings rely liberally on statements in the Metzger Declaration and the Memorandum for which the Fisher Parties never received notice and which are, therefore, not properly before the Court. The R&R fails to distinguish between noticed and non-noticed statements, and impermissibly relies on non-noticed statements to analyze intent with respect to the noticed statements. (*See* R&R at 65, 67.) Because the R&R's findings with respect to the noticed statements are impermissibly based in the additional non-noticed statements, the R&R necessarily lacks the high degree of specificity in its factual findings that is required to support an award of sanctions. The non-noticed statements infect the R&R's entire analysis of alleged misrepresentations and render its recommendation unsound.

Further, the R&Rs substantive analysis of the non-noticed statements is just as flawed as its analysis of the noticed statements. The R&R ignores the specific context in which those non-noticed statements were offered, and draws "reasonable inferences" from the statements that go beyond their intended, limited, context-dependent meaning. (R&R at 66, 68.) In particular, it

---

[14]   In fact, when the Fisher Parties' counsel attempted to address the Court's concern on the spot, stating that while he "was constrained to some degree by the attorney/client privilege," the Fisher Parties "did not sit on their hands," the Court interrupted him to say that she had nothing "in the record" about what they did. (# 557 at 55.) Coupled with the Court's willingness to "entertain an application to – to supplement the record," this left the impression that neither party should not be offering extra-record evidence ad hoc at the oral argument.

purports to infer from the Metzger Declaration an "assertion that no one at Fisher Phillips was involved in the preparation of the July [2015] list." (*Id.* at 68.)  There is no statement in the Metzger Declaration or Memorandum that no one at Fisher Phillips was involved in the preparation of the July 2015 List, and no statement intended to imply the same.  The Memorandum does not argue that Ignite's outside counsel, had *nothing* to do with preparing the July list.  It argues that Ignite was solely responsible for the *errors* in the list, which caused the continuing non-compliance with this Court's Order (a conclusion with which the R&R agrees).  If the non-noticed statements were properly before the Court, which they are not, then all the objections raised with respect to the R&R's analysis of the two noticed statements would apply.

## III.   THE SCOPE OF THE R&R'S RECOMMENDED AWARD OF FEES AND COSTS IS IN ERROR

Even if sanctions were permissible on this record – they are not – the R&R's recommendations vastly exceed the permissible scope of an award in this case.  Regardless of the source of authority for sanctions, any sanction imposing attorneys' fees and costs "must be compensatory rather than punitive in nature."  *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017).  A court may "shift only those attorney's fees incurred because of the misconduct at issue," evaluated under the familiar "but-for" causation test.  *Id.* at 1186, 1187.

Here, the alleged misconduct occurred with the 2018 filing of the Memorandum, which relied on the Metzger Declaration; and it concluded when the Court's misunderstanding of the record was corrected by Osipoff's declaration.  The R&R, however, recommends shifting all "fees and costs associated with the filing and briefing of the original motion (excluding the filings providing the further specificity order by the Court)."  (R&R at 73.)  Such an award would reach back to March 2016, more than two years before the ostensible misconduct occurred, well beyond July 2018 when any misunderstanding was corrected.  An award of that scope is inherently punitive and is impermissible as a matter of law.

## CONCLUSION

For the reasons stated above, the Fisher Parties respectfully request that the Court reject the R&R insofar as it recommends the award of sanctions against the Fisher Parties.

Dated: May 17, 2019

COOLEY LLP

By:  _____/s/ Ian Shapiro_____
         Ian Shapiro
         Reed A. Smith

55 Hudson Yards
New York, New York 10001-2157
Telephone: (212) 479-6000

and

William G. Bauer, Esq.
WOODS OVIATT GILMAN LLP
700 Crossroads Building
2 State Street
Rochester, New York 14614
Telephone:  (585) 987-2800
*Attorneys for Brian J. Gershengorn*
*and Melissa J. Osipoff*

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 72(c)</u>

Pursuant to the Local Rules of this Court, Rule 72(c), I certify that the attached

Objections to the Report and Recommendation, entered March 29, 2019, recommending the

imposition of sanctions on Brian Gershengorn and Melissa Osipoff, raise no new legal or factual

arguments with the exception that the Objections raise the following legal arguments that could

not have been raised prior to the issuance of the Report and Recommendation itself: that the

recommendation relies on conduct beyond the conduct for which the Fisher Parties received

notice (Points I, II(A)); that the factual findings are insufficiently specific to support an award of

sanctions (Point II(B)(4)); that, given the findings of misconduct, the scope of the award of

attorneys' fees exceeds what is permitted by law (Point III).

<u>/s/</u> Ian Shapiro

COOLEY LLP
*Attorneys for Brian J. Gershengorn
and Melissa J. Ospioff*