UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

CHRISTOPHER HART, et al.,                       :        No. 13-CV-6458 (CJS)

                              Plaintiffs,        :

                    v.                          :

RAYMOND A. BLANCHETTE, III, et al.,             :

                              Defendants.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

**FISHER PARTIES' REPLY
TO OPPOSITION TO OBJECTIONS**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITES ......................................................................................................... ii

I.      THE STANDARD OF REVIEW IS DE NOVO ............................................................. 2

II.     THE COURT'S RECOMMENDATION RELATING TO THE MAY 17 ORDER ......... 2

III.    THE COURT'S RECOMMENDATION RELATING TO ALLEGED
        MISREPRESENTATIONS .............................................................................................. 5

CONCLUSION ......................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Caraballo v. Homecomings Fin.*,
 2013 WL 1499403 (S.D.N.Y. Apr. 12, 2013)................................................................5

*Chapman v. New York State Div. for Youth*,
 2007 WL 2437282 (N.D.N.Y. Aug. 21, 2007) (§1927)...............................................2

*Gelicity UK Ltd. v. Jell-E-Bath, Inc.*,
 2014 WL 1330938 (E.D.N.Y. Apr. 1, 2014) ...............................................................2

*Homkow v. Musika Records, Inc.*,
 2009 WL 721732 (S.D.N.Y. March 18, 2009) ............................................................2

*Kiobel v. Millson*,
 592 F.3d 78 (2010)........................................................................................................2

*Landeros v. Costello*,
 2012 WL 1004910 (E.D.N.Y. Feb. 3, 2012)................................................................5

*MHD-Rockland Inc. v. Aerospace Distributors Inc.*,
 102 F. Supp. 3d 734 (D. Md. 2015).............................................................................5

*Revson v. Cinque & Cinque, P.C.*,
 221 F.3d 71 (2d Cir. 2000)..........................................................................................10

*Schlaifer Nance & Co. v. Estate of Warhol*,
 194 F.3d 323 (2d Cir. 1999)..........................................................................................6

*StreetEasy, Inc. v. Chertok*,
 752 F.3d 298 (2d Cir. 2014)..........................................................................................6

*United States v. Seltzer*,
 227 F.3d 36 (2d Cir. 2000) (Opp. ) .......................................................................10, 11

*Vasconcellos v. City of New York*,
 2015 WL 13657551 (S.D.N.Y. June 25, 2015) ...........................................................2

**Statutes**

**Other Authorities**

Fed.R.Civ.P. 72(b) ................................................................................................................2

Rule 11(b) ..............................................................................................................................6

Rule 16 ................................................................................................................................3

Rule 16(f) ......................................................................................................................3, 4, 5

Rule 16(f)(1)(C) .................................................................................................................5

**PRELIMINARY STATEMENT**

This dispute arises from a class action brought under the FLSA in 2014, which settled in 2017 for $700,000, $280,000 of which was allocated as attorney's fees.  Before the case settled, Defendants – the Fisher Parties' clients – struggled to prepare an accurate class list to be used to notify the potential class of plaintiffs.

On May 17, 2016, Magistrate Judge Payson entered an order that required Defendants to produce a company witness to testify on June 6, 2016, about how the second inaccurate list provided to Plaintiffs in July 2015 was compiled and the "cause of the mistakes" in the list. Within a week of the May 17 Order (after conferring with their client) the Fisher Parties told Plaintiffs and the Court that no company witness was available to testify on that subject.  Now, three years after the May 17 Order, long after their clients settled the litigation in bankruptcy, the Fisher Parties are defending themselves against career-threatening sanctions for (i) failing to notify the Court with "greater dispatch" that no company witness was available to testify at the June 6, 2016 hearing about the subject of the May 17 Order, and (ii) two representations that Melissa Osipoff did not have knowledge of how the July List was created – and therefore could not have testified at the June 6, 2016 hearing about how the list was compiled or the cause of the mistakes.

The Fisher Parties sincerely regret any confusion they may have caused in the course of defending against a relentless three-year effort to sanction them.  But they did *not* violate any court orders and the two representations for which Judge Payson recommended sanctions were offered solely in support of a fact that Judge Payson does not dispute:  Osipoff could not have testified at the June 6, 2016 hearing about how the list was compiled or the cause of the errors in the List.

1

## I.      THE STANDARD OF REVIEW IS DE NOVO

Magistrates are not empowered to decide "dispositive" issues, they may only recommend a disposition for de novo review by the district court.  *See* Fed.R.Civ.P. 72(b); *Kiobel v. Millson*, 592 F.3d 78 (2010).  Judge Payson correctly recognized that, in this circuit, it is undecided whether sanctions issues decided here are dispositive or non-dispositive, *see Kiobel*, 592 F.3d at 79, and that she should therefore proceed by Report and Recommendation (R&R at 5 n4).  Under these circumstances, as numerous, recent decisions in this circuit attest, the prudent practice is that the district court applies de novo review.  *E.g.*, *Vasconcellos v. City of New York*, 2015 WL 13657551, at *1 (S.D.N.Y. June 25, 2015).[1]  Plaintiffs ignore Judge Payson's analysis and these authorities, asserting that the sanctions issues are not dispositive and clear error review applies (Opp. at 4).  In support, they cite one case, *Homkow v. Musika Records, Inc.*, 2009 WL 721732 (S.D.N.Y. March 18, 2009), applying clear error review to sanctions under §1927 and inherent authority, and cases addressing the settled question of discovery sanctions.  *Homkow* was decided prior to *Kiobel* and does not reflect the current state of the law.  In any event, whether the standard of review is de novo or clear error, the Court should reject the recommendation of sanctions.

## II.     THE COURT'S RECOMMENDATION RELATING TO THE MAY 17 ORDER

The R&R could not have been clearer that the ground on which Plaintiffs sought sanctions relating to the May 17 Order (and the ground on which Judge Payson evaluated sanctions relating to that order) was counsels' *failure to comply with the Order* by "fail[ing] to produce a witness at the June 6, 2016 hearing in accordance with" that order.  Judge Payson

---

[1]  *See also Gelicity UK Ltd. v. Jell-E-Bath, Inc.*, 2014 WL 1330938, at *1 n.1 (E.D.N.Y. Apr. 1, 2014); *Chapman v. New York State Div. for Youth*, 2007 WL 2437282, at *1 (N.D.N.Y. Aug. 21, 2007) (§1927).

2

rejected recommending sanctions on this ground.  But Judge Payson then recommended a

sanction on a different ground, for which the Fisher Parties did not receive notice.

Section III of the R&R addresses sanctions for the failure to comply with Court orders:

the Notice Order and the May 17 Order.  The section is called "Compliance with Court Orders."

In regards to the May 17 Order, Judge Payson explained that Plaintiffs' motion for sanctions is

based on counsels' failure to "*produce a witness at the June 6, 2016 hearing in accordance with

the Court's May 17, 2016 Order*" (R&R at 41 (emphasis added)).  Judge Payson then explained

that counsels' compliance with the Notice Order and May 17 Order was "most appropriately

assessed under Rule 16(f)," (R&R at 41), and she emphasized that the purpose of Rule 16 was to

ensure compliance with scheduling and pretrial orders (*see* R&R at 43 (explaining that the

purpose of Rule 16(f) to "obtain compliance with the particular order issued," "deter non-

compliance" and "ensure a party will not benefit from . . . failure to comply.")).

Judge Payson found that the Fisher Parties did not violate the May 17 Order or any court

order (R&R at 56 "On these facts, this Court cannot find that the Fisher Parties disobeyed a court

order.")).  Yet, despite concluding that there was no violation of an order, she found that counsel

"should have acted with greater dispatch to learn and notify the Court that no witness was

available" (R&R at 58).  Judge Payson found that the Fisher Parties' failure to notify the Court

that no company witness was available between May 17 and May 25 was "sufficiently remiss" to

warrant sanctions (R&R at 58).[2]

---

[2]  The Fisher Parties had, in fact, notified Plaintiffs' counsel even earlier, on May 23, by
telephone.  They also called Judge Payson's chambers on May 23, but were told that Judge
Payson was away through Memorial Day and that they should write a letter, which they
submitted on May 25 (#359-13 at 5-10).

In their opening brief, the Fisher Parties objected to this recommended sanction because they never received notice that they could be sanctioned for their failure to act with "greater dispatch." They only received notice that they could be sanctioned for failure to comply with the May 17 Order. In response to this objection, Plaintiffs cited specific portions of their Amended Notice of Sanctions (#439) and their Memorandum of Law in Support of Plaintiffs' Motion for Sanctions (#455). (Opp. at 10-11). Yet, none of those citations constitute notice that Gershengorn and Osipoff could be sanctioned for the *timeliness* of their communication with the Court about whether a corporate witness was available to testify on the subject of the May 17 Order. Even Judge Payson did not understand that Plaintiffs were moving for sanctions based on the Fisher Parties' failure to act with greater dispatch. When referring to the basis for Plaintiffs' motion as it related to the May 17, 2016 Order, Judge Payson wrote that Plaintiffs sought sanctions for counsels' failure to comply with the Order, not their failure to act with greater dispatch (R&R at 41).

The Fisher Parties also objected to the Court's ground for sanctions as beyond the scope of Rule 16(f). Judge Payson did not find that counsel either failed to obey the May 17 Order (subparagraph (A)), failed to appear at the June 6 hearing (subparagraph (B)), or were substantially unprepared to participate or did not participate in good faith in the June 6 hearing (subparagraph (C)). To the contrary, the Fisher Parties *did* appear at the June 6, 2016 hearing and participated in good faith. The R&R does not find that the Fisher Parties did not participate in good faith. On their client's instruction, the Fisher Parties did object to Osipoff testifying, at least without further briefing on the attorney-client privilege, and Judge Payson adjourned the hearing until Ignite's objection was briefed (#353 at 13-14, 21-24).

In response, Plaintiffs do not argue that counsels' alleged failure to act with greater dispatch fell within one of those three statutory grounds.  Rather, Plaintiffs argue Rule 16(f) also authorizes sanctions for the "failure to communicate with the Court with respect to the failure to appear" (Opp. at 11).

In support of this purported common law expansion of the statute, Plaintiffs rely on three cases (Opp. at 18).  None of them support the imposition of sanctions for the Fisher Parties' failure to act with greater dispatch, and each of them relied on conduct that was sanctionable under the express terms of 16(f).  In *Landeros v. Costello*, 2012 WL 1004910 (E.D.N.Y. Feb. 3, 2012) *"plaintiff failed to appear in court on February 2, 2012, as ordered,"* in violation of Rule 16(f)(1)(C) which "provides in pertinent part, that the  Court 'may issue any just orders . . . if a party or its attorney fails to obey a scheduling order or other pretrial order.'"  *Id.* at *1.  In *Caraballo v. Homecomings Fin.*, 2013 WL 1499403 (S.D.N.Y. Apr. 12, 2013), defendants appeared at a court-ordered settlement conference unprepared to discuss settlement, violating a court order that directed such preparation.  And in *MHD-Rockland Inc. v. Aerospace Distributors Inc.*, 102 F. Supp. 3d 734, 738 (D. Md. 2015) plaintiff was sanctioned for "fail[ing] to obey a pretrial order within the meaning of Rule 16(f)(1)(C)," when it unilaterally canceled a court-ordered settlement conference and "revoked the mandate" of its counsel to participate.  These cases do not contemplate any expansion in the reach of the statute and do not authorize the imposition of sanctions on the Fisher Parties who appeared for their client, participated in good faith, and did not violate any court order.

## III.   THE COURT'S RECOMMENDATION RELATING TO ALLEGED MISREPRESENTATIONS

Part III of the R&R addresses the Fisher Parties' representations to the Court.  The only representations addressed in the R&R are from the Metzger Declaration and the Memorandum of

Law.  In advance of the R&R, Judge Payson provided notice of the specific representations she

was considering as a basis for sanctions in an Order to Show Cause (#580).  The Order to Show

Cause identified eight specific statements, only three of which were from the Metzger

Declaration and the Memorandum of Law.  Of those three statements, only two were addressed

in the R&R.

    The rest of the representations from the Metzger Declaration and Memorandum of Law

discussed in the R&R cannot be a basis for sanctions because they were *not* included in the

OTSC.  *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999)

(Explaining that "only conduct explicitly referred to in the instrument providing notice is

sanctionable"); *see, e.g., StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 310 (2d Cir. 2014) (Vacating

sanctions insofar as they relied on representations that were not specified in "the instrument by

which defendant received notice.").  In opposition, Plaintiffs minimize the significance of the

statements that Judge Payson included in the Order to Show Cause as just "some examples" and

argue that the R&R should not be limited to those eight (Opp. at 26).  Plaintiffs are wrong, and it

would be grossly unfair to sanction the Fisher Parties based on representations that were not

included in the Order to Show Cause.  The Order to Show Cause did not describe the eight

representations it presented as examples.  Rather, it expressly ordered the Fisher Parties to show

cause "why *the representations identified above* did not violate Rule 11(b) . . . and why sanctions

based upon *those representations* are not otherwise warranted pursuant to 28 US.C. § 1927

and/or this Court's inherent powers," (#580) (emphasis added).  In reliance on that

understanding, the Fisher Parties' brief in response to the OTSC was only addressed to those

eight, identified statements (#579 at 7-18).

The two sanctioned representations that were included in the Order to Show Cause both relate to the Court's May 17, 2016 Order, an order which Judge Payson found that the Fisher Parties did not violate.  The first sanctioned representation, from paragraph 21 of the Metzger Declaration ("Ms. Osipoff did not have knowledge about the creation of the July 2015 Notice List") was part of a broader explanation about why Osipoff did not testify at the June 6, 2016 hearing.  The second sanctioned representation from the Memorandum of Law ("Defendants' Counsel only had knowledge of the efforts to create a new list from scratch") was offered to rebut Plaintiffs' description of what was said at the June 1, 2016 conference call about whether Osipoff could testify.  In neither case were the Fisher Parties addressing whether or not they caused errors in the July 2015 List or trying to disclaim responsibility for those errors, as Judge Payson and the Plaintiffs contend.  They were addressing a much narrower point why Osipoff could not have testified about the original subject of the June 6th hearing, which Judge Payson described as "how the July list was compiled" and the "cause of the mistakes" (#389 at 18).

The sanctioned representations were thus offered to support an argument which Judge Payson does not dispute:  Osipoff could not have testified about "how the July List was compiled."  Judge Payson did not find in the R&R that Osipoff had meaningful knowledge of that subject and could have testified in place of or educated an Ignite representative to testify about that subject at the June 6, 2016 hearing.

The purpose of the class list was to identify all Ignite employees whose conditions of employment placed them within the proposed class.  The process of pulling that data and consolidating the results generated names of employees that should not have been included in the class and excluded names that should have been included (R&R at 13-16 (describing the errors discovered in comparing the July 2015 list to the correct August 2016 list)).  There is no dispute

7

that Osipoff did not participate in this process.  Osipoff did not designate data to be pulled and did not participate in pulling data or compiling the results (#575 60:9-62:8).  Thus, she could never have testified about why this process had failed to produce an accurate list or how to fix the process (*see* R&R at 51 (finding that Osipoff appropriately "deferr[ed] to General Counsel" to compile the July 2015 List).

Osipoff did participate in vetting the list after it was compiled, by running queries on the list itself – not on the underlying databases that were used by Ignite to compile the list – to identify any facially apparent anomalies.  Osipoff brought these anomalies to Ignite's attention so that Ignite could make necessary corrections (R&R at 51).  In that respect, Osipoff had knowledge of "errors."  But the limited errors Osipoff's vetting process detected were not the errors to be addressed at the June 6 hearing.  Ignite corrected the errors uncovered by the vetting process before the list was provided to Plaintiffs in July 2015 (R&R at 51; #575 75: 12-76: 6, 76: 15-77: 16).  The subject of the June 6 hearing was the errors in the July 2015 List actually provided to Plaintiffs, which made the list non-compliant with this Court's notice order, not the limited errors that were corrected before the list was provided to Plaintiffs.  Osipoff did not have knowledge of how Ignite's compilation of the list generated errors, nor of the thousands of errors in the July 2015 List that her vetting process did not detect.  (In addition to vetting the list that was compiled by Ignite to identify anomalies, Osipoff answered some questions from Ignite concerning whether specific individuals should be included within the proposed class (#575 68:13-70:18).)

Plaintiff's opposition brief cynically insists on confusing these important distinctions between knowledge of how Ignite's compilation of the list generated thousands of undetected errors and of how Osipoff's vetting process detected different, limited, specific errors.  Plaintiffs

do not argue that Osipoff participated in pulling data or compiling the results, because they know

that she did not.  Rather, they invoke her post-compilation vetting and knowledge of the specific

errors identified (and corrected by Ignite) during the vetting process to argue that she had

knowledge of "the creation of the list," and therefore that the two sanctioned statements are

misrepresentations (Opp. at 28-29).

Plaintiff's opposition brief fails to address the context in which these representations

were offered, or the argument that they were actually used to support.  Plaintiffs only offer the

conclusory argument that "there is no context in which the statement that 'Ms. Osipoff had no

knowledge about the creation of the July 2015 Class Notice List' is accurate" (Opp. at 28).

When analyzed in the specific context in which they were offered, the disputed representations

are not misleading.  They were marshalled only to support the argument that Osipoff could not

have addressed the compilation of the July 2015 List at the June 6, 2016 hearing, an argument

Judge Payson does not dispute.  Even Plaintiffs admit that Osipoff did not know how Ignite

compiled the July 2015 List.  (*See* #576 at 8 (describing Osipoff as "ignorant" of the process

Ignite used to compile the list).)[3]

In this context, the sanctioned representations are not without color or offered for an

improper purpose.  They are essentially true.  The Fisher Parties did not have knowledge

remotely sufficient to testify on the subject, and it was reasonable for them to rely on those

representations to explain why Osipoff did not testify on that subject at the June 6, 2016 hearing.

Plaintiff's opposition brief devotes three pages to arguing that the Fisher Parties had an improper

---

[3]  That these two representations were offered for a proper purpose is further confirmed by the
fact that the Memorandum of Law offering these two representations was signed by William
Bauer, a former Magistrate Judge in this Court.  By signing the brief, he represented that its
factual contentions had evidentiary support and that the arguments it included were not being
presented for an improper purpose.

purpose (Opp. at 32-34).  But they never address the Fisher Parties' actual purpose, either to

dispute it or to explain why it was improper.  They characterize the Fisher Parties' purpose

generally as attempting to persuade the Court that they should not be sanctioned.  But that

general purpose is not bad faith.  It is reasonable for a party subject to sanctions to try to

persuade the court that sanctions are unwarranted.

Plaintiffs also belabor the fact that the Fisher Parties did not correct the Court's

misunderstanding of the intended significance of the Metzger Declaration until the Court brought

it to their attention at oral argument, as if this were evidence of the bad faith (Opp. at 33).  It is

not.  It was a reasonable response to learning that certain statements in the Metzger Declaration

had created a misimpression.

For all these reasons, the record does not come close to satisfying the "restrictive" legal

standards for imposing sanctions.  *See Eisemann v.* Greene, 204 F.3d 393, 396 (2d Cir. 2000).  A

court may not impose sanctions under § 1927 or inherent authority unless there is "*clear*

*evidence* that the challenged are *entirely without color*," *Revson v. Cinque & Cinque, P.C.*, 221

F.3d 71, 78 (2d Cir. 2000) (internal quotation marks omitted) and "are so completely without

merit as to *require* the conclusion that they *must have been* taken for some improper purpose."

*Enmon*, 675 F.3d at 143 (quoting *Schlaifer*, 294 F.3d at 336) (emphasis added).  Here, a proper

purpose is apparent from the face of the disputed documents, and there is no meaningful

evidence that the Fisher Parties purpose was otherwise.  Imposing sanctions on this record is

contrary to law and is clear error.[4]

---

[4]  Plaintiffs contend that a finding of bad faith is not required to support sanctions because this
case falls under the narrow exception set forth in *United States v. Seltzer*, 227 F.3d 36 (2d Cir.
2000) (Opp. at 32, n. 14).  The R&R did not sanction under *Seltzer*, and Plaintiffs did not file
objections to the R&R in that respect.  Accordingly they have waived this argument.  Moreover
this case is not within the rule of *Seltzer*.  It involves the submission of pleadings to the Court,

## CONCLUSION

The Court should reject the R&R insofar as it recommends the award of sanctions against

the Fisher Parties.

Dated: New York, New York
      September 13, 2019

COOLEY LLP


By:    */s/Ian Shapiro*
       Ian Shapiro
       Reed A. Smith

55 Hudson Yards
New York, New York  10001-2157
Telephone:  (212) 479-6000

WOODS OVIATT GILMAN LLP
William G. Bauer
1900 Bausch & Lomb Place
Rochester, New York  14604
Telephone:  (585) 987-2800

*Attorneys for the Fisher Parties*

---

which is "integrally related to the attorney's role as an advocate."  227 F.3d at 40.  Whether the Fisher Parties were representing their client, Ignite, or themselves as defendants in a sanctions proceedings, or were represented by Mr. Bauer who submitted the Memorandum of Law and exhibits, including the Metzger Declaration, has no bearing on the application of *Seltzer*.